UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEREK A. HEYLIGER,

                                    Plaintiff,

                                                        9:18-cv-0336
v.                                                      (TJM/TWD)


KARIN WEST and TOM FORBES,

                                    Defendants.

_____

APPEARANCES:                        OF COUNSEL:

DEREK HEYLIGER
12-B-0269
Plaintiff, *pro se*
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

HON. LETITIA JAMES                  ERIK BOULE PINSONNAULT, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

This *pro se* lawsuit commenced by Plaintiff Derek Heyliger, an inmate in custody of the

New York State Department of Corrections and Community Supervision ("DOCCS"), under 42

U.S.C. § 1983, has been referred for Report and Recommendation by the Hon. Thomas J.

McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

72.3(c). The claims against Defendants Karen West and Tom Forbes remaining following initial

review of the amended complaint are: (1) denial of access to the courts; (2) interference with the free flow of legal mail; and (3) gross negligence based on the alleged interference with his legal mail. (Dkt. Nos. 7, 8.) Currently before the Court is Defendants' motion to dismiss the amended complaint in its entirety pursuant to Rule 12(b)(6). (Dkt. No. 15.) Plaintiff responded in opposition to the motion and Defendants filed a reply. (Dkt. Nos. 17, 18.) For the following reasons, the Court recommends that Defendants' motion be granted.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff commenced this action on March 7, 2018. (Dkt. No. 1.[1]) By Decision and Order entered May 10, 2018, the following claims against the "Doe" defendants survived initial review conducted pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and required a response: (1) denial of access to the courts; (2) interference with the free flow of legal mail; and (3) gross negligence based on the alleged interference with legal mail. (Dkt. No. 4.)

With the assistance of the Office of the New York State Attorney General, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam), Karen West and Tom Forbes were identified as the "Inmate Correspondence Office/mail room" employee and the "Business Office administrator," respectively. (Dkt. No. 5.) Plaintiff was thereafter directed to review the status report and prepare an amended complaint which substituted named individuals in place of the "Doe" defendants and to make any other corrections as necessary. (Dkt. No. 6.)

---

[1] Plaintiff's complaint was received for filing and docketed by the Clerk's Office on March 19, 2018. (Dkt. No. 1.) On March 7, 2018, Plaintiff's complaint was signed and, therefore, the Court deems the original complaint "filed" pursuant to the Prison Mailbox Rule on March 7, 2018. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). The date that a complaint is signed is the date that the prisoner is presumed to have handed that complaint to a prison guard for mailing. *See Garraway v. Broome Cty.*, No. 5:03-CV-0681 (TJM), 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006).

2

On July 19, 2018, Plaintiff filed a proposed amended complaint identifying Karen West and Tom Forbes as two of the "Doe" defendants.  (Dkt. No. 7.)  On initial review, it was observed that the relevant factual assertions set forth in the amended complaint were virtually identical in content to those set forth in the original complaint.  (Dkt. No. 8 at 2-3.[2])  By Decision and Order entered August 13, 2018, the amended complaint was accepted for filing and Plaintiff's First Amendment and common law claims against Defendants West and Forbes survived initial review.  (Dkt. No. 8 at 4.)

Defendants now seek dismissal of the amended complaint for failure to exhaust administrative remedies.  (Dkt. No. 15-1 at 6-11.)  Defendants further contend a single instance of alleged mail interference does not rise to the level of a constitutional violation.  *Id*. at 11.  Regarding the state claim, Defendants argue Plaintiff's gross negligence claim is barred by New York Corrections Law § 24 and, alternatively, upon dismissal of Plaintiff's federal claims, the District Court should decline to exercise supplemental jurisdiction.  *Id*. at 12-13.  Plaintiff has responded and Defendants have replied.  (Dkt. Nos. 17, 18.[3])

**B.    Plaintiff's Claims[4]**

On October 25, 2016, while housed in the Special Housing Unit ("SHU") at Great Meadow, Plaintiff sought to send legal mail addressed to the Clerk of the New York State Court

---

[2]  Page references to documents identified by docket number are to the page number assigned by the Court's CM/ECF electronic docket system.  Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.  Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[3]  Notwithstanding Plaintiff's untimely opposition, in deference to his *pro se* status, the Court will consider Plaintiff's response.  (*See* Dkt. Nos. 16, 17.)  Additionally, Defendants had an opportunity to reply on the merits to Plaintiff's response and did so.  (Dkt. No. 18.)

[4]  In light of the procedural posture of this case, the following recitation is drawn principally from Plaintiff's amended complaint (Dkt. No. 7), the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

of Claims and to the New York State Office of the Attorney General, each of which pertained to an excessive force incident that occurred at Clinton Correctional Facility ("Clinton") on October 28, 2015.  (Dkt. No. 7 at ¶¶ 16, 17, 18.[5])  "Enclosed inside of the legal mail," Plaintiff sent a third envelope addressed to the "Great Meadow . . . Inmate Correspondence Office/Mail room officer/and Business Office, . . . putting [Defendants] on notice that the legal mail had a legal filing deadline date of October 28, 2016, and must be processed and mailed immediately to the addressed parties."  *Id*. at ¶ 17.  Plaintiff provided an Affidavit of Service dated October 26, 2016[,] . . . to both the Office of the Attorney General and the Clerk[] of the New York State Court of Claims."  *Id*. at ¶ 18.

On the morning of October 25, 2016, a non-party SHU corrections officer picked up "all three envelopes" from Plaintiff's cell gate, which at that time were sealed.  *Id*. at ¶ 19.  On October 28, 2016, "the envelope addressed to the Court of Claims Clerk was returned to [P]laintiff open[] with red ink substance on and under the left side seal flap cover of the envelope[,] which indicated that . . . West and/or Forbes . . . attempted to unseal the . . . legal mail without ripping the envelope."  *Id*. at ¶ 20.[6]  "As a result, [P]laintiff's claim had to be re-mailed to the Court of Claims Clerk on Monday October 31, 2016[,] and was filed untimely."  *Id*. at ¶ 21.

Plaintiff claims Defendants:

> mishandled and interfered with plaintiffs legal mail deliberately
> with gross negligence, by ripping open, and returning said legal
> mail to plaintiff with intentions of interfering with the free flow of
> plaintiffs legal mail to the New York State Court of Claims with

---

[5]  The Court takes judicial notice that an alleged October 28, 2015, excessive force incident at Clinton is the subject of another federal lawsuit filed by Plaintiff in this District, captioned *Heyliger v. Cymbrak, et al*., No. 9:17-cv-00912 (DNH/CFH).

[6]  Plaintiff does not claim that his letter to the Office of the Attorney General was returned.

the goal of plaintiff's claim received late by the Court and
ultimately dismissed as being filed untimely.

*Id*. at ¶ 23.  Moreover, Plaintiff contends Defendants were "placed on notice" of the October 26,

2016, filing deadline.  *Id*.

On October 31, 2016, "[a]fter receiving the returned mailed, Plaintiff filed a grievance

titled 'Deliberate Interference With My Timely Access to the Court.'"  *Id*. at ¶¶ 10, 25.  Plaintiff

enclosed a copy of this grievance with his "claim" that he "re-mailed" to New York State Court

of Claims Clerk.  *Id*.  Additionally, Plaintiff sent the Court of Claims Clerk an Affidavit of

Service dated October 26, 2016, a "separate letter notifying the Court of . . . [Defendants']

interference with [Plaintiff's] timely access to the Court[,]" and "the envelope" that was opened

and returned to him on October 26, 2016. *Id*. at ¶¶ 27, 28.  Although Plaintiff "submitted this

claim to be re-mailed" on October 31, 2016, "West failed to mail Plaintiff[']s legal mail until late

November 2016[,]" and [the legal mail] was not received by the New York State Court of Claims

until December 2, 2016[.]"  *Id*. at ¶ 30.

Thereafter, on October 27, 2017, the State of New York moved to dismiss Plaintiff's

claim "on the sole basis of the Claim being filed untimely" with the Court of Claims.  *Id.* at ¶ 32.

On January 8, 2018, New York Court of Claims Judge Frank P. Milano granted the motion to

dismiss due to Plaintiff's failure to timely file his claim.  *Id.* at ¶ 34.

### C.    Administrative Remedies

Plaintiff claims his administrative remedies were "unavailable."  *Id*. at ¶¶ 10-15.  As set

forth above, on October 31, 2016, Plaintiff filed a facility grievance concerning the "deliberate

interference" with his "timely" access to the courts, which he sent to the Inmate Grievance

Resolution Committee ("IGRC") for "processing."  *Id*. at ¶ 10.  On or about January 3, 2017,

Plaintiff "filed an appeal of the denial of [his] October 31, 2016, grievance number GM-61637-

17 to CORC." *Id*. at ¶ 11. "Finally, after [he] failed to receive an answer to [his] grievance in

over one (1) year . . . from CORC," Plaintiff commenced this action. *Id*. at ¶ 12. Plaintiff

contends that:

> Based of CORC's failure to provide plaintiff with a timely answer
> to plaintiff's grievance in accordance with DOCCS directive 4040
> § 701.6(G)(2) and directive 4040 § 3(ii); this failure rendered
> plaintiff's grievance exhaustion remedies unavailable.

*Id*. at ¶ 13. Plaintiff further states: "Upon information and belief CORC did not send notice to

plaintiff that plaintiff's grievance number GM-61637-17 regarding mail tampering was received

by CORC until approximately the month of April of the year 2018." *Id*. at ¶ 14. "Finally, on

July 10, 2018, Plaintiff received a decision from CORC denying [the] grievance. The CORC

hearing date on the grievance decision was dated June 20, 2018." *Id*. at ¶ 15.

## III.    LEGAL STANDARD GOVERNING RULE 12(b)(6) MOTION TO DISMISS

A defendant may move to dismiss a complaint "for failure to state a claim upon which

relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the

complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which

requires that a complaint include "a short and plain statement of the claim showing that the

pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction

of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the

complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim

for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . .

[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to

relief." *Id*. at 679 (internal citation and punctuation omitted).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id*. at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).  Moreover, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.*

## IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.     Legal Standard

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Id.* at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly"). In New York State prisons, DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. *Id.* § 701.5(a)(1). "The complaint may only be filed at the facility

where the inmate is housed even if it pertains to another facility." *Id*. A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. *Id*. § 701.8(b), (c). The superintendent has twenty-five days from the date of its receipt to render a decision. *Id*. § 701.8(g). An inmate may appeal the superintendent's decision to CORC within seven days of its receipt. *Id*. § 701.8(h).

As can be seen, at each step of the IGP, a decision must be rendered within a specified time period. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." *Id*. § 701.6(g)(2); *see also Smith v. Kelly*, 985 F. Supp. 2d

275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).").

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and citations omitted)). In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id*. at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an

administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones*, 549 U.S. at 211-17. If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies before commencing suit, his complaint may be dismissed for failure to state a cognizable claim. *Id.* at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure); *Brito v. Vargas*, No. 01-CV-7753(FB/LB), 2003 WL 21391676, at *2 (E.D.N.Y. June 16, 2003) (granting the defendants' motion to dismiss complaint in which inmate plaintiff admitted that he did not exhaust the grievance process).

### B.    Analysis

Plaintiff pleads the grievance procedure was unavailable to him due to CORC's untimely response. (Dkt. No. 7 at ¶¶ 10-15.) Where, as here, a plaintiff pleads exhaustion of available administrative remedies, a defendant may move to dismiss for failure to exhaust administrative exhaustion grounds.

Defendants argue Plaintiff's federal causes of action should be dismissed because he failed to wait for a CORC decision before commencing suit and, therefore, he failed to exhaust

his administrative remedies as required by the PLRA. (Dkt. No. of 15-1 at 6-11.) Defendants further argue that receiving a decision from CORC *after* commencing litigation, as alleged in this case, does not satisfy the PLRA's requirement that administrative remedies be exhausted *before* filing suit, and, therefore, Plaintiff's unexhausted federal claims must be dismissed. *Id.* Turning to the issue of "availability" based on CORC's alleged failure to provide a "timely answer" to Plaintiff's grievance appeals, Defendants point out that courts in this District have repeatedly held such delay does not excuse an inmate's failure to fully exhaust his administrative remedies prior to commencement of an action. *Id.* at 10.

Here, Plaintiff admits he had not received a decision from CORC before he filed this lawsuit. (Dkt. No. 7 at ¶¶ 10-15.) Further, while CORC appears to have ultimately ruled on Plaintiff's grievance, a post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced. *See, e.g.*, *Shepard v. Lempke*, No. 9:10-CV-1524 (TJM/DEP), 2017 WL 1187859, at *3 (N.D.N.Y. Mar. 30, 2017) (collecting cases). Thus, the Court agrees with Defendants that Plaintiff failed to exhaust his administrative remedies as required by the PLRA.[7]

The question remains, however, whether Plaintiff has plausibly alleged unavailability under *Ross*. Plaintiff claims he filed his grievance appeal to CORC on January 3, 2017, and after waiting more than one year for a response from CORC, he commenced this action on March 7, 2018, because CORC's inordinate delay rendered his administrative available unavailable. (Dkt. Nos. 1; 7 at ¶¶ 11, 15.)

---

[7] However, to the extent Defendants contend "there is authority for the proposition that CORC's 30-day time limit to render a decision on a grievance appeal is "directory, not mandatory," (*see* Dkt. No. 15-1 at 10), the Court finds such argument to be without merit. *See* *Mayandeunas v. Bigelow*, No. 9:18-cv-1161 (GTS/TWD), 2019 WL 3955484, at *5 (N.D.N.Y. Aug. 22, 2019).

"Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies." *Feliz v. Johnson*, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 3491232, at *1 (N.D.N.Y. Aug. 1, 2019) (citing *Hayes v. Dahkle*, No. 9:16-cv-1368 (TJM/CFH), 2018 WL 7356343, at *9 (N.D.N.Y. Dec. 11, 2018) (analyzing Second Circuit split), *adopted by*, 2019 WL 689234 (N.D.N.Y. Feb. 19, 2019)).  To be sure, "[c]ourts within this District have found that a delay by CORC does not constitute a basis on which to excuse a plaintiff's failure to exhaust." *Id.* (citing *Casey v. Brockley*, No. 9:13-CV-1271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), *adopted by*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust."); *Ford v. Smith*, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding CORC's six-month delay in responding to the plaintiff's appeal did not render the grievance process unavailable)).

Nevertheless, more recently a number of the courts in this District deciding the issue of availability of exhaustion when CORC has failed to render a timely decision have considered the issue under *Ross* and have concluded that exhaustion was unavailable to inmates in various instances where CORC had failed to decide an appeal in a timely manner under the regulations. *See, e.g.*, *Mayandeunas*, 2019 WL 3955484, at *5 (denying summary judgment on exhaustion grounds where CORC's failure to timely decide a prisoner's grievance appeal of a period of 134 days rendered the plaintiff-prisoner's administrative remedies unavailable after *Ross*); *High v. Switz*, No. 9:17-CV-1067(LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), *adopted by*, 2018 WL 3730175 (N.D.N.Y. Aug 6, 2018); *Bell v. Napoli*, No. 9:17-CV-850 (ATB), 2018

WL 6506072, at *4-5 (N.D.N.Y. Dec. 11, 2018); *see also Rodriguez v. Reppert*, No. 14-CV-671-RJA-MJR, 2016 WL 6993383, at *2-3 (W.D.N.Y. Nov. 11, 2016).

Notably, in *Mayandeunas*, it was determined that "whether the permissible period of delay for a CORC decision is 80 days[,] 90 days or 120 days, the Second Circuit would consider 134 days to be too long. At some point CORC must face the consequences of its delays." *Mayandeunas*, 2019 WL 3955484, at *5. Notably, the District Court scrutinized the numerous decisions cited by the undersigned in the May 21, 2019, report-recommendation and counsel in the defendants' objections thereto, many of which Defendants also rely upon in support of their pending motion to dismiss, including *Bell*, *High*, *Casey*, *Rodriguez v. Heit*, No. 9:16-CV-706 (GTS/ATB), 2018 WL 3121626, at *3-4 (N.D.N.Y. Mar. 30, 2018), *adopted by*, 2018 WL 2316687 (N.D.N.Y. May 22, 2018); *Toliver v. Stefinik*, No. 9:12-CV-0077 (MAD/ATB), 2016 WL 3349316, at *7 (N.D.N.Y. June 15, 2016); *Berkley v. Ware*, No. 9:19-CV-1326 (LEK/CFH), 2018 WL 3736791, at *5 (N.D.N.Y. July 6, 2018), *adopted by*, 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018). *Id.*, *see also* Dkt. Nos. 15-1 at 9-10; 18 at 2. Specifically, the District Court found more persuasive the on-point decisions that expressly applied *Ross*, which relied on the concepts of regulations being a "dead end" and/or too "opaque," such as *Bell* and *High*. *See Mayandeunas*, 2019 WL 3955484, at *3.[8] Conversely, the District Court found to be less

---

[8] For example, in *High*, in resolving whether administrative remedies were "available" when CORC failed to respond within the thirty-day timeframe contemplated by the regulations, the court observed that the regulations "'do not describe a mechanism' for appealing or advancing a grievance when a grievant does not receive a response from the CORC, as there is no next step to which a grievant may appeal." *High*, 2018 WL 3736794, at *5 (quoting *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016)). Therefore, the court concluded that because, among other factors, the plaintiff failed to receive a response from the CORC within the timeframe prescribed by the statute, the plaintiff's administrative remedies, while not fully exhausted, were unavailable. *Id.* In *Bell*, the court noted that "the regulations contain[ed] no instructions on how an inmate should proceed if the CORC continue[d] to ignore him after he [had] been informed that his appeal was 'received.'" *Bell*, 2018 WL 6506072, at *6-7.

persuasive the decisions that were not on-point, were issued before *Ross* (on June 6, 2016), or did not expressly apply *Ross*, such as *Berkley*, *Toliver*, and *Rodriguez v. Heit*. *Id*.

Here, in light of the foregoing, and assuming, as alleged, that Plaintiff waited more than one year beyond the thirty-day deadline for CORC to issue its decision before commencing this action, this Court would recommend finding that Plaintiff's administrative remedies were unavailable under *Ross* and, therefore, would recommend denying Defendants' motion to dismiss on exhaustion grounds. However, upon closer review, the Court must point out that Plaintiff pleads he did not receive notice that his grievance was received by CORC until "approximately" April of 2018. (Dkt. No. 7 at ¶ 14.)

As set forth above, under the regulations, CORC is required to render a written decision within thirty days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii). In *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:14-CV-124, 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016), *aff'd*, 692 F. App'x 668 (2d Cir. 2017) (summary order), the District Court determined the plaintiff did not exhaust his administrative remedies because he failed to take further action under § 701.5(d)(3)(i) when he did not receive written notice of receipt by CORC within 45 days of filing his appeal:

> Although the Court is sympathetic to the fact that it was the inmate grievance office that failed to transmit Plaintiff's appeal to CORC until five months after he filed it, Plaintiff is also at fault for not taking any further action during this time period. More specifically, 7 N.Y.C.R.R § 701.5(d)(3)(i) states that "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, *the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC*."

*Id*. (alterations and emphasis in original). The Second Circuit affirmed, holding, in relevant part:

> Gizewski makes no persuasive argument that administrative remedies were unavailable. The Department of Corrections

> provided a procedure for administrative remedies, and Gizewski
> used it with considerable (though incomplete) success. He was
> therefore obligated to exhaust those remedies before bringing this
> action. The district court held that Gizewski failed to exhaust all
> of his claims because his final administrative appeal was still
> pending when he filed his complaint.

*Gizewski*, 692 F. App'x at 670.

Here, in his opposition to Defendants' motion, Plaintiff further pleads, in relevant part:

> Finally, after plaintiff failed to receive an response to plaintiff[']s
> grievance for over one (1) year from CORC, On January 15, 2018
> Plaintiff wrote to Inmate Grievance Director Karen Bellamy of the
> Central Office Review Committee (CORC) concerning their
> failure to raspond to his grievance appeal being that plaintiff did
> not receive a response from CORC informing him that his
> Grievance Appeal had been received, processed nor filed with
> CORC.
>
> After not receiving a reply from CORC concerning his grievance
> appeal letter on February 25, 2018 plaintiff drafted an original
> complaint which was then signed on March 7, 2018.

(Dkt. No. 17 at 4.[9]) Thus, the Court finds this case aligns more with *Gizewski* than

*Mayandeunas* and *Bell*. Here, like *Gizewski*, there was a specific direction in the procedures for

Plaintiff to follow, *i.e.*, "[i]f a grievant does not receive a copy of the written notice of receipt [by

CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in

writing to confirm that the appeal was filed and transmitted to CORC," 7 N.Y.C.R.R §

701.5(d)(3)(i), whereas in *Mayandeunas* and *Bell*, the regulations contained no instructions on

how an inmate should proceed if CORC continued to "ignore" a *received* appeal, making the

---

[9] Plaintiff's opposition papers are properly considered in connection with Defendants'
motion to dismiss only to the extent that they are consistent with the allegations in his complaint.
*See Rresto-Otero v. Mohammad*, No. 9:17-CV-1115 (GLS/DEP), 2018 WL 5795508, at *2 n.4
(N.D.N.Y. Oct. 3, 2018) (citing *Planck v. Schenectady Cty.*, No. 12-CV-0336 (GTS/DRH), 2012
WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (citing cases)).

administrative remedy unavailable under *Ross* and *Williams*. Consequently, the Court finds Plaintiff failed to exhaust his available administrative remedies prior to commencing suit.[10]

Moreover, to the extent Plaintiff argues that "special circumstances" excuse his failure to exhaust, (*see* Dkt. No. 17 at 8-9), "that avenue has been foreclosed." *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016). The Supreme Court has rejected the notion that "special circumstances" may justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. As the Second Circuit has explained, "*Ross* largely supplants our *Hemphill* [*v. New York*, 380 F.3d 680 (2d Cir. 2004)] inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams*, 829 F.3d at 122.

In sum, Plaintiff was under no obligation to plead facts demonstrating that he complied with the PLRA' exhaustion requirement prior to filing this action. Nonetheless, the face of Plaintiff's amended complaint and his opposition submission reveal that he failed to exhaust his administrative remedies prior to commencement of this action, and the Court is unable to conclude that Plaintiffs' failure to exhaust his administrative remedies should be excused due to unavailability. Accordingly, the Court agrees with Defendants that Plaintiff prematurely filed this action and, consequently, recommends that his federal civil rights claims be dismissed.[11]

The Second Circuit has recognized that failure to exhaust administrative remedies is usually a "curable, procedural flaw" that can be fixed by exhausting those remedies and then

---

[10] To the extent Defendants rely on two-state court decisions as "authority for the proposition that CORC's 30-day time limit to render a decision on a grievance appeal is 'directory, not mandatory,'" (Dkt. No. 15-1 at 10), the Court finds such argument to be without merit for the same reasons as discussed in *Mayandeunas*. *See Mayandeunas*, 2019 WL 3955484, at *5.

[11] Consequently, the Court will not address the sufficiency of Plaintiff's federal claims. (*See* Dkt. Nos. 15-1 at 11; 17 at 10-12; and 18 at 2-3.)

reinstituting the suit. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001) (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *see, e.g.*, *Fabrizio v. Annucci*, No. 9:18-CV-0339 (GTS/DEP), 2019 WL 3351643, at *9 (N.D.N.Y. June 27, 2019) (dismissing the plaintiff's federal claims without prejudice on exhaustion grounds); *Loccenitt v. LaBrake*, No. 14-CV-6703-FPG, 2018 WL 826850, at *3 (W.D.N.Y. Feb. 12, 2018) (same). Requiring Plaintiff to initiate a new suit may seem judicially inefficient. However, the Second Circuit has specifically stated that allowing this type of suit to move forward "undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Neal*, 267 F.3d at 123; *see also Rodriguez v. Rosner*, No. 9:12-CV-958 (TJM/ATB), 2012 WL 7160117, at *4-5 (N.D.N.Y. Dec. 5, 2012), *adopted by*, 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013).

Here, inasmuch as Plaintiff claims CORC issued its decision on June 10, 2018, the Court recommends dismissing Plaintiff's federal claims without prejudice so that Plaintiff is afforded the opportunity to commence a new action should he so choose.

## V.    STATE LAW CLAIM

In addition to the civil rights claim, Plaintiff brings a state law claim of gross negligence based on the alleged interference with his legal mail. (Dkt. No. 7 at ¶¶ 23, 25.) Defendants argue: (1) Plaintiff's state law claim is barred by New York Corrections Law § 24; and (2) the District Court should decline to exercise supplemental jurisdiction upon dismissing Plaintiff's federal claims. (Dkt. No. 15-1 at 12-13.) Plaintiff has not responded to either contention.

Where a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3). The decision is a discretionary one, and its justification "lies in

considerations of judicial economy, convenience and fairness to litigants[.]" *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Specifically, the Second Circuit has instructed "if [all] federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Castellano v. Bd. of Tr.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers*, 383 U.S. at 726); *see, e.g.*, *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 426 (E.D.N.Y. 2017) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction.") (citations omitted).

Here, inasmuch as the Court is recommending dismissal of Plaintiff's federal claims, the Court recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claim.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 15) be **GRANTED** and that Plaintiff's federal civil rights claims be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claim; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 29, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 *1  *Pro se* plaintiff Kody Weidman ("Weidman" or
"Plaintiff"), an inmate in the custody of the New York
State Department of Corrections and Community Supervision
("DOCCS"), instituted this action pursuant to 42 U.S.C. §
1983, alleging that he was denied adequate medical treatment
in violation of his rights under the Eighth Amendment.
Defendant has moved to dismiss the complaint on the
basis that Weidman has failed to exhaust his administrative
remedies.

**II. Background**

Plaintiff has alleged the following facts, which the Court
accepts as true for purposes of this motion to dismiss pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure
("Rule 12(b)(6)"). *E. g., Jaghory v. New York State Dep't of
Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted).
On September 3, 2012, Plaintiff was bitten on his left cheek
by a spider. He reported it and was sent to sick call. However,
the head nurse refused to treat him, and as a result, his left
cheek "swell[ed] up and start[ed] to pus", and became painful.
Dkt # 1, p. 3 of 4. Plaintiff contacted "D.I. Delmani", who
in turn contacted "the sgt", who took him to the hospital at
Lakeview on September 6, 2012. *Id.* There, Plaintiff was seen
by a doctor who gave him "sulfamethox" and applied a heat
pack to his face. The "pus and swelling then went down." *Id.*

Plaintiff did not file a grievance but instead proceeded directly
to this Court, filing his complaint on September 14, 2012.
Defendants filed a motion to dismiss on March 18, 2013. The
complaint was dismissed for failure to prosecute on June 19,
2013, but was reinstated on June 25, 2013. The matter was
transferred to the undersigned on February 20, 2014. For the
reasons set forth below, the motion to dismiss is granted, and
the complaint is dismissed in its entirety with prejudice.

**III. Defendant's Motion to Dismiss**

Defendant asserts that it is clear from the face of Plaintiff's
complaint that he has failed to exhaust his administrative
remedies by filing a prison grievance, and therefore his
complaint warrants dismissal pursuant to Rule 12(b)(6). In
response to Defendant's non-exhaustion argument, Plaintiff
simply restates the basis for his grievance as his reason for
not exhausting his administrative remedies.

 **A. Administrative Exhaustion**

The Prison Litigation Reform Act of 1995 (the "PLRA"),
Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an
inmate to exhaust all available administrative remedies before
filing suit in federal court. Specifically, Section 1997e(a) of
Title 42 U.S.C. provides that "[n]o action shall be brought
with respect to prison conditions under section 1983 of
this title, or any other Federal law, by a prisoner confined
in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted." 42
U.S.C. § 1997e(a). The Supreme Court has ruled that the
exhaustion requirement "applies to all inmate suits about
prison life, whether they involve general circumstances or
particular episodes, and whether they allege excessive force
or some other wrong[,]" *Porter v. Nussle,* 534 U.S. 516, 532,
122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

 *2  It is well established that exhaustion requires that "a
prisoner must grieve his complaint about prison conditions
up through the highest level of administrative review" before
filing suit. *Porter v. Goord,* No. 01 Civ. 8996(NRB), 2002
WL 1402000, at *1 (S.D.N.Y. June 28, 2002) (citing *Neal
v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("[G]rievances
must now be fully pursued prior to filing a complaint in
federal court."); other citation omitted)); *see also Booth v.
Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d
958 (2001) (noting that inmate, who conceded nonexhaustion
below, "did not, however, go beyond the first step, and never
sought intermediate or final administrative review after the

prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

**B. Analysis**

**\*3** Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite) as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust them, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City*

of N.Y., No. 12 CV 5850(CM), 2013 WL 3833001, at *4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

### C. Whether Dismissal Is With or Without Prejudice

**\*4**  When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam* ) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, *5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,* 205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures,

on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

**\*5  IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 21391676
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jonas Antonio BRITO, Plaintiff,

v.

Ulyses VARGAS, Health Service Administrator,
Metropolitan Detention Center (MDC);
Mr. Raines, Counselor, MDC; and Dennis
W. Hasty, Warden, MDC, Defendants.

No. 01–CV–7753(FB)(LB).
|
June 16, 2003.

**Synopsis**

Inmate brought *Bivens* action against metropolitan detention center and individuals, claiming inadequate medical treatment. Defendants moved to dismiss. The District Court, Block, J., held that failure to exhaust administrative remedies barred claim.

Case dismissed.

West Headnotes (1)

**[1]**   **United States**
            Exhaustion of remedies

Failure of inmate to exhaust administrative procedures available to him at detention center precluded *Bivens* claim that authorities provided inadequate medical care when they delayed treatment of broken knee for four days. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a); 28 C.F.R. § 542; Fed.Rules Civ.Proc. Rule 12(b)(6), 28 U.S.C.A.

4 Cases that cite this headnote

**Attorneys and Law Firms**

Jonas Antonio Brito, Brooklyn, NY, pro se.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, by Orelia E. Merchant, Assistant United States Attorney, Brooklyn, NY, for Defendants.

*MEMORANDUM AND ORDER*

BLOCK, District Judge.

**\*1** *Pro se* plaintiff Jonas Antonio Brito ("Brito"), a federal prisoner, brings this *Bivens* action, alleging that while he was incarcerated at the Metropolitan Detention Center, he suffered a broken right knee and was not treated by the medical staff for four days. Defendants move to dismiss for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), or alternatively, move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or for summary judgment pursuant to Rule 56. Defendants issued Brito the requisite Local Rule 56.2 notice of motion. In opposition to the motion, Brito submitted a memorandum and several exhibits.

Defendants argue, *inter alia,* that Brito's claims should be dismissed pursuant to Rule 12(b)(1) because he has failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). The PLRA mandates that plaintiffs fully exhaust a prison's administrative grievance procedures prior to bringing *Bivens* claims against federal officers in their individual capacities in federal court. *See* PLRA, 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Booth v. Churner,* 532 U.S. 731, 735, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (requiring plaintiffs to complete all stages of administrative process for claims to be deemed exhausted); *see also Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). To exhaust in the federal prison system, prisoners must comply with a four-step process codified at 28 C.F.R. § 542, which requires that:

an inmate must first attempt to informally resolve his claims. *See* 28 C.F.R. § 542.13(a). Second,

if dissatisfied with the informal resolution, the inmate must use a designated form to submit a written "Administrative Remedy Request" to the Warden within twenty days of the events triggering the complaint. *See* 28 C.F.R. § 542.14(a). Third, if the formal request is denied, the inmate must appeal to the appropriate BOP Regional Director. *See* 28 C.F.R. § 15(a). Finally, an inmate must appeal a negative decision by the BOP Regional Director to the BOP's Office of General Counsel within thirty days of the date of the Regional Counsel's decision. *Id.*

*Indelicato v. Suarez,* 207 F.Supp.2d 216, 218–19 (S.D.N.Y.2002). Failure to exhaust the PLRA's administrative remedies is an affirmative defense. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999).

Although defendants move to dismiss for failure to exhaust pursuant to Rule 12(b)(1), the Court agrees with the majority of the courts in the Eastern and Southern Districts of New York to have addressed the question that exhaustion under the PLRA is not a jurisdictional prerequisite. As Judge Chin recently noted in his thorough opinion in *McCoy v. Goord,* —— F.Supp.2d ——, No. 01 CV 3133, 2003 WL 1479232 (S.D.N.Y. March 25, 2003), although "the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional," "the majority of the courts to ... address the issue have agreed that exhaustion in the PLRA context is not jurisdictional [.]" *Id.* (collecting cases). The majority's conclusion is well supported by the rationale that unlike subject matter jurisdiction, which must be pled, *see* Fed.R.Civ.P. 8(a), and is not waivable, *In re Stock Exchs. Options Trading Antitrust Litig.,* 317 F.3d 134 (2d Cir.2003), "exhaustion [under the PLRA] need not be pled, ... and may be waived." *McCoy,* 2003 WL 1479232 (citing *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.2002) and *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002)). Accordingly, the Court concludes that defendants' motion to dismiss for failure to exhaust is more appropriately addressed under Rule 12(b)(6). *See Dimick v. Baruffo,* No. 02 CV 2151, 2003 WL 660826, at * 2 n. 1 (S.D.N.Y. Feb.28, 2003) (concluding that motion to dismiss for failure to exhaust under PLRA is "more appropriately addressed under Rule 12(b)(6)").

**\*2** In his Complaint, Brito does not claim that he has exhausted his administrative remedies. Instead, he states that

> [t]here [are] no real grievances in this place but only a facade and sham named BP 9, BP 10, [and] BP 11 that only satisfy and cover[ ] the BOP staff members. In fact, such administrative remedies exist only for aesthetic [ ] purposes and [are] of no value for any inmate.

Compl. at 1. Brito's claim that the administrative remedies set forth in 28 C.F.R. § 542 are "a sham" is unavailing. *See Giano v. Goord,* 250 F.3d 146, 150–151 (2d Cir.2001) ("[T]he alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so."). The Court need not resort to material outside the complaint to determine whether Brito has exhausted his remedies; it is clear from the face of his complaint that he has not. "An affirmative defense may be raised by a ... motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.' " *McCoy,* 2003 WL 1479232 (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998)).

Accordingly, pursuant to Rule 12(b)(6), the Court dismisses Brito's complaint, without prejudice, for failure to exhaust. *See Morales v. Mackalm,* 278 F.3d 126, 128 (2d Cir.2002) ("[I]f a district court dismisses a prisoner's complaint for failure to exhaust administrative remedies, it should do so without prejudice.").

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21391676

**Brito v. Vargas, Not Reported in F.Supp.2d (2003)**

2003 WL 21391676

---

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1187859
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eon SHEPHERD, Plaintiff,
v.
Superintendent LEMPKE, et al., Defendants.

9:10-CV-1524
|
Signed 03/30/2017

**Attorneys and Law Firms**

George H. Lowe, Upnit Kaur Bhatti, Bond, Schoeneck Law Firm, Syracuse, NY, for Plaintiff.

Eon Shepherd, Romulus, NY, pro se.

Cathy Y. Sheehan, New York State Dept. of Corrections, Auburn, NY, Oriana L. Carravetta, New York State Attorney General, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

**\*1**  This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, Chief United States Magistrate Judge, for the purpose of holding an evidentiary hearing and issuing a report and recommendation addressing exhaustion of administrative remedies. In his October 28, 2016 Report and Re commendation, Dkt. No. 252, Magistrate Judge Peebles provides a thorough review of the numerous claims in this matter that are based on events occurring between April 2008 and November 2010 at five separate prison facilities operated by the New York State Department of Corrections and Community Supervision ("DOCCS"),[1] and of the procedural history of this case.[2] Magistrate Judge Peebles also placed the claims potentially implicated by defendants' exhaustion defense, together with

the circumstances surrounding plaintiff's efforts to exhaust available administrative remedies, into four groupings, "each of which includes common circumstances insofar as exhaustion is concerned." Rep. Rec. p. 13.

[1]  "Generally speaking, Shepherd alleges that he was sexually and physically assaulted, and deprived of his freedom of religion, procedural due process, access to the courts, and adequate medical care." Rep. Rec. p. 3.

[2]  Part of this procedural history is that the Court adopted Magistrate Judge Peebles's previous recommendation to grant defendants' motion that plaintiff's claims be divided into three categories with each group being tried separately. *See* Rep. Rec. p. 6; *see also* Dkt. No. 202. At the time this decision was entered, the three groups anticipated for purposes of trial were:
(1) All claims involving events at the Clinton Correctional Facility, plus a medical indifference claim against Dr. Amatucci arising from events at the Downstate Correctional Facility, and related claims against defendants Artus, Amatucci, Lashway, and Menard.
(2) All claims involving events at the Five Points Correctional Facility against defendants Barber, Bower, Carlee, Cioffa, Jones, Evans, Prebalick, and Ramus, plus plaintiff's due process claim against defendants Cunningham and Bezio arising from the events at the Green Haven Correctional Facility.
(3) All remaining claims, including those relating to events at the Upstate Correctional Facility, plus an excessive force cause of action against defendant Cambria based upon the events at an undetermined location. This third trial will include the following defendants: Belsio, Cambria, Colvin, Holmes, Fairchild, Atkinson, Chesbrough, Lempke, Rock, Rowe, and Rozwell.
*See* Rep. Rec. p. 6; *see also* Dkt. No. 202.

Based upon the evidence adduced at the hearing, Magistrate Judge Peebles recommends:

(1) The following claims should be deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05, 108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05, 108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |

2017 WL 1187859

| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

**\*2** (2) The following claims proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
| --- | --- | --- |
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued asHawthorne) | Medical Indifference | Clinton |

(3) The following claims should be dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |

2017 WL 1187859

| 10 | Bower | Failure to Protect | Five Points | 15 |
|----|-------|-------------------|-------------|----|
| 11 | Bower | Retaliation | Five Points | 15 |
| 1 | Evans | ReligiousInterfer. | Five Points | |

(4) The following claims should be dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amende Complaint ¶ |
|-----------|------|-----------------|----------|--------------------|
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims should be dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|------|-----------------|----------|---------------------|
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious Interference | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious Interference | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious Interference | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |

and,

(6) The matter should be set down for trial involving the remaining claims.

Plaintiff filed objections through appointed counsel, Dkt. No. 253, and on a *pro se* basis, Dkt. No. 255; and defendants filed objections. Dkt. No. 254.

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008); *see Frankel v. N.Y.C.*, 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

### a. Plaintiff's Objections

#### 1. Post-Commencement Exhaustion

**\*3** Plaintiff objects through counsel and on a *pro se* basis to Magistrate Judge Peebles's conclusion that plaintiff's claims that were exhausted after the action was commenced but before an amended complaint was filed ("Group Two," Claim Nos. 6, 36, 37 and 38) are nonetheless unexhausted under the holding of *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Plaintiff argues that although the Second Circuit stated in *Neal* that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal," the Circuit's decision did not specifically address situations where, as here, a claim is exhausted after commencement but prior to the filing of an amended complaint. Pl. Obj., p. 2. The Court finds no basis to reject Magistrate Judge Peebles's conclusion in this regard.

As Magistrate Judge Peebles explained:

> It is not clear from the court's decision in *Neal* that the plaintiff had included new claims in his amended complaint that were not asserted in his original complaint. In his *amicus curiae* brief to the Second Circuit, however, the New York State Attorney General explained that the plaintiff's amended complaint included newly asserted deliberate medical indifference causes of action that were not originally pleaded. Amicus Brief, *Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001) (No. 99-0253), 2001 WL 34121400, at *2-4. The Second Circuit affirmed the district court's dismissal of all of the plaintiff's claims, including the deliberate medical indifference causes of action, because none of them had been fully exhausted by the time the plaintiff filed his original complaint. *Neal*, 267 F.3d at 121-23.

Rep. Rec. p. 21, n. 16.

Thus, Magistrate Judge Peebles concluded that "[w]hile some circuits analyzing this fact pattern have permitted plaintiffs to litigate the causes of action that were newly included in an amended complaint and fully exhausted by the time the plaintiffs filed the amended complaint, the Second Circuit squarely addressed those facts in *Neal* and concluded otherwise." *Id.* p. 22 (citing *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010); *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005)). The Court agrees with Magistrate Judge Peebles's conclusion. Moreover, the courts in this District have almost uniformly held that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted); *see Thousand v. Corrigan*, 2017 WL 1093275, at *3 (N.D.N.Y. Mar. 23, 2017)(quoting *Guillory*); *Reid v. Marzano*, 2017 WL 1040420, at *2 (N.D.N.Y. Mar. 17, 2017)(quoting *Guillory*); *Kearney v. Gebo*, 2017 WL 61951, at *2 (N.D.N.Y. Jan. 4, 2017)(quoting *Guillory*); *Toliver v. Fischer*, 2016 WL 3351974, at *4 (N.D.N.Y. Mar. 22, 2016)(quoting *Guillory*), report and recommendation adopted *sub nom. Toliver v. Stefinik*, 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Klein v. Fischer*, 2015 WL 5174031, at *19 (N.D.N.Y. Sept. 2, 2015) ("Furthermore, a post-exhaustion amendment of the

2017 WL 1187859

complaint cannot cure an exhaustion defect existing at the time the action was commenced.")(citing *Kasiem v. Switz*, 756 F. Supp.2d 570, 575 (S.D.N.Y. 2010) in turn citing *Neal*, 267 F.3d at 122); *see also* *Stimpson v. Comm'r Correction Off.*, 2017 WL 326314, at *2 (D. Conn. Jan. 23, 2017).[3] The Court finds that under *Neal*, post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced. Thus, plaintiff's objection on this ground is overruled.

[3]        ("[P]risoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See* *Woodford v. Ngo*, 548 U.S. 81, 83–85 (2006). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See* *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Accordingly, I instructed Stimpson that any amended complaint must include allegations regarding any attempts by him to exhaust administrative remedies with regard to his claims prior to filing this lawsuit.")

### 2. Challenge to Credibility Assessment

**\*4** With respect to Groups 3 and 4, Magistrate Judge Peebles recommended dismissal of claim nos. 5, 7, 9, 12, 14, 24, 29, 30 and 33, because he did not find plaintiff's testimony relative to exhaustion of those claims to be credible. Rep. Rec. at 26, *see id.*, pp. 24-26.[4] Plaintiff argues through counsel that because the Court must conduct a *de novo* determination when objections are filed, the Court has discretion to conduct its own hearing in order to make its own assessment of credibility. Plaintiff himself, in his *pro se* submission, also challenges Magistrate Judge Peebles's credibility determinations, arguing that all of his testimony should have been deemed credible.

[4]        In this regard, Magistrate Judge Peebles wrote:
            Having reviewed the evidence and observed his demeanor, I conclude that, with limited exception, which will be discussed more below, plaintiff was not credible insofar as he testified that he submitted grievances concerning the incidents that are the basis for his claims in groups three and four. It is worth noting that, while plaintiff was able to produce alleged copies of the grievances and follow-up letters that relate to the claims in group three at the exhaustion hearing, those documents were not provided to defendants during the course of discovery.

Dkt. No. 249-2 at 79. Plaintiff explained that he failed to produce those documents earlier in the litigation because he had sent copies of the grievances and letters to his family members for safekeeping but was only recently able to retrieve them. *Id.* at 83-85. Plaintiff did not offer any explanation as to why copies of some but not all of his grievances and letters were available from his family members. Moreover, his explanation concerning which of his family members possessed those grievances has been inconsistent. At the hearing, plaintiff testified that the copies were retrieved from his son, *id.* at 84, but plaintiff testified under oath during his deposition that his wife was in possession of any document that had not previously been produced during discovery. *Id.* at 85-86.

Plaintiff's credibility must be measured with his prior grievance history as a backdrop. Plaintiff is no stranger to the grievance process, and there is no evidence that, aside from the grievances related to the claims in groups three and four, plaintiff has experienced any difficulty in filing and pursuing grievances over the course of his incarceration. Indeed, according to Jeffrey Hale, the Assistant Director of the DOCCS Inmate Grievance System, as of one day prior to the start of the hearing, plaintiff had appealed 445 grievances to the CORC, with an additional nine appeals then-pending. Dkt. No. 249-2 at 128-29. The sheer number of grievances that plaintiff has pursued during his incarceration leaves no doubt that he is well-versed in the grievance process.

In my view, the evidence adduced by the parties with regard to the claims in group three and four support a recommended finding that, except with respect to claims 15, 20, 23, and 32, all of the claims are unexhausted and subject to dismissal on that basis. Although plaintiff adduced purported copies of grievances and/or letters regarding his exhaustion attempts in connection with claims 9, 12, 14, 29, 30, and 33, all of which are part of group three, there is no independent evidence to corroborate plaintiff's testimony in this regard. In addition, there is no record evidence at all to support plaintiff's hearing testimony that he filed grievances regarding claims 5, 7, and 24 in group four. Because I did not find plaintiff's testimony credible for the reasons already discussed above, I recommend the court dismiss claims 5, 7, 9, 12, 14, 24, 29, 30, and 33 as unexhausted.

**\*5** Neither plaintiff's counsel nor plaintiff himself have presented sufficient reasons for the Court to exercise its discretion and conduct its own hearing. Because Magistrate Judge Peebles was in a position to view plaintiff's testimony and assess his credibility based on his demeanor and in light of

2017 WL 1187859

the other evidence presented in the case, *see* Rep. Rec. 24-26, and because plaintiff has not presented sufficient reasons to conclude that Magistrate Judge Peebles erred in his credibility determination, the Court adopts those determinations and overrules plaintiff's objection on this ground.

### 3. Burden of Proof

Plaintiff argues in his *pro se* submission that Magistrate Judge Peebles improperly placed the burden upon him to prove that he exhausted his administrative remedies. There is no merit to this contention. As Magistrate Judge Peebles explained, the Prison Litigation Reform Act imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, including a mandatory requirement that the inmate exhaust his administered of remedies. While exhaustion is a condition precedent to bringing suit by an inmate, Magistrate Judge Peebles indicated that "[i]n the event *a defendant establishes* that the inmate plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal." Rep. Rec., p. 8 (emphasis added). In light of this statement clearly placing the burden on the defendants to establish plaintiff's failure to comply with administrative exhaustion procedures, plaintiff's objection on the ground that he was required to prove exhaustion in the first instance is disingenuous. The objection is overruled.

### b. Defendants' Objections

#### 1. Claim 4 against Artus

Claim 4 is a religious freedom claim in Group One against defendant Artus stemming from incidents spanning from October-December 2009 at Clinton Correctional Facility. Defendants argue that because plaintiff's grievance list from 2009 at Clinton Correctional Facility reveals only two grievances, neither of which asserted denial of religious freedom, plaintiff could not have exhausted his administrative remedies on this claim. Def. Mem. Law, p. 2. For the reasons that follow, the objection is overruled.

Magistrate Judge Peebles addressed defendants' contention that plaintiff failed to exhaust the available administrative remedies against defendant Artus (as well as against defendants Colvin and Lempke) on the Group One claims because plaintiff did not file any grievances that specifically

identified Artus or complained of his conduct. In denying the argument, Magistrate Judge Peebles correctly recognized that "the weight of authority ... suggests that inmate-plaintiffs need not file grievances identifying particular individuals or articulating a particular theory of liability (much less specifically grieve a supervisor theory of liability)." Rep. Rec. p. 19 (citing, *inter alia*, *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006))("In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.")(interior quotation marks and alteration omitted)). However, Magistrate Judge Peebles also indicated in a footnote: "In attacking the claims falling into group one, defendants have not argued that plaintiff failed to file grievances regarding the underlying constitutional deprivations. Accordingly, I have not scoured the available record to determine whether plaintiff did, in fact, file grievances addressing those violations." Rep. Rec. p. 19, n. 15. Thus, defendants appear to be raising an issue that was not presented to Magistrate Judge Peebles.

**\*6** While the question of "[w]hether a party may raise a new legal argument ... for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit, ... [s]ome courts in this circuit have stated, as a general matter, that a 'party waives any arguments not presented to the magistrate judge.' *Levy v. Young Adult Institute*, 2015 WL 1958889, at \*4 (S.D.N.Y. Apr. 30, 2015). Other courts have held that district courts should not consider belatedly made arguments because doing so negates "efficiencies gained through the Magistrates Act and would permit litigants to change tactics after the issuance of [a report and recommendation]." *Amadasu v. Ngati*, 2012 WL 3930386, at \*5 (E.D.N.Y. Sept. 9, 2012). District Judge D'Agostino has held that "[l]egal arguments may not be raised for the first time in an objection." *Lewyckyj v. Colvin*, 2014 WL 3534551, at \*2 (N.D.N.Y. July 17, 2014)(citing *Abu–Nassar v. Elders Futures. Inc.*, 1994 WL 445638, \*5 n. 2 (S.D.N.Y. Aug. 17, 1994))("If the Court were to consider ... untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.").

The Court finds that the defendants have waived the argument that plaintiff's grievances from 2009 at Clinton Correctional

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 33 of 178
Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

Facility failed to assert the basis of a denial of religious freedom claim against Artus. Defendants could have raised the argument before Magistrate Judge Peebles who conducted an extensive review of the claims in this matter and a thorough fact-finding hearing. To allow defendants to raise the matter now would undermine the authority of Magistrate Judge Peebles, negate the judicial efficiencies gained through the report and recommendation procedure, and seemingly allow defendant to raise a new argument in a forum that does not ordinarily invite adversarial responses. Moreover, defendants failed to attach to their objections the two grievances to which they refer, nor do they point the Court to where in the record the grievances could be found. Thus, efficiency and fairness does not militate in favor of considering the matter now. Still further, the defendants fail to provide any reason why the issue was not raised before Magistrate Judge Peebles, and the Court does not find that manifest injustice will result if the new argument is not considered. Accordingly, defendants' objection in this regard is overruled.

### 2. Claims against Colvin & Lempke

Claims 16, 17, and 18 against defendant Colvin, and claims 26, 27, 28 against defendant Lempke, are for excessive use of force, denial of religious freedom, and retaliation allegedly occurring at Upstate Correctional Facility. *See* Am. Comp. ¶¶ 86, 105 and 108. Defendants argue that because (1) the Amended Complaint "generally reads in chronological order; (2) paragraph 86 is embedded in the section entitled "Denial of Medical Care;" and, (3) paragraph 86 encompasses paragraphs 62-109, "it is clear from reading this section of the amended complaint as a whole that plaintiff is referring to a time period prior to, or at most, to June 22, 2010. This is such because the subsequent paragraph, 87, clearly begins with allegations stemming from June 22, 2010." Def. Mem. L. p. 2. Defendants further assert that "Plaintiff's movement history shows that between August 7, 2009 and June 22, 2010, he was not housed at Upstate." *Id.* From this, defendants argue that because "supervisors cannot be liable for the conduct, policies or procedures of staff at a different facility," *id.,* Colvin and Lempke cannot be held responsible for claims 16, 17, 18, 26, 27, and 28. *See id.* ("[I]rrespective of whether [plaintiff] filed grievances regarding the underlying claims contained in paragraph 86, plaintiff's claims against Colvin and Lempke are misplaced in their capacity as supervisors because these defendants could not have had any control over the conditions in another facility, and therefore they were not personally

involved."). Thus, defendants contend that the Court should "dismiss these claims against Colvin and Lempke." *Id.*

**\*7** Defendants' argument is not addressed to Magistrate Judge Peebles's recommendation that dealt with whether plaintiff exhausted his administrative remedies, but rather to whether claims 16, 17, 18, 26, 27, and 28 are legally viable. Because this objection is not addressed to an alleged error by Magistrate Judge Peebles in recommending whether plaintiff exhausted administrative remedies, but rather appears to be an attempt to convert a 28 U.S.C. § 636(b)(1) objection into a Rule 56 summary judgment motion, the objection is overruled. Defendants can challenge the sufficiency of these claims at the time of trial.

### 3. Claims against Artus, Colvin, and Lempke

Defendants make similar arguments addressed to the legal sufficiency of claims brought against Artus, Colvin, and Lempke in paragraphs 105 and 108. For the reasons discussed above, defendants' objections in this regard are overruled. Again, defendants can challenge the sufficiency of these claims at the time of trial.

### 4. Claims 15, 20, 23, and 32

Claims 15, 20, 23, and 32 against Defendant Prebalick, Cioffa, Evans and Jones allege excessive use of force and the failure to protect on May 6, 2010. With regard to administrative exhaustion of these claims, Magistrate Judge Peebles found:

> All of these claims relate to the same incident that allegedly occurred on May 6, 2010, and involved the use of force by defendants Prebalick, Cioffa, and Evans. Dkt. No. 45 at 5. Plaintiff also alleges that defendant Jones was present for, and failed to protect him from, the use of force. *Id.* In support of plaintiff's contention that he filed a grievance, dated May 7, 2010, regarding the excessive force and failure to protect claims asserted against defendants Prebalick, Cioffa, Evans, and Jones, plaintiff adduced, *inter alia*, a letter he addressed to Karen Bellamy, the DOCCS Director of Inmate Grievance, dated August 13, 2010, inquiring about the status of "several grievances [he had filed] in May 2010[.]" Exhs. P-E-6, P-G-6. Bellamy responded to plaintiff in a letter dated September 22, 2010, pointing out that her review of prison

2017 WL 1187859

records demonstrated that plaintiff had filed six grievances at Five Points in May 2010. Exhs. P-E-7, P-G-7. By the time plaintiff sent his letter to Bellamy on August 17, 2010, he had received a response to five other grievances he had filed in May 2010. Exhs. D-7, D-8, D-9, D-10, D-11. It remains a mystery why some of the grievances filed by plaintiff at Five Points in May 2010 were processed but not the grievance allegedly relating to the incident involving defendants Prebalick, Cioffa, Evans, and Jones on May 6, 2010. One possible explanation is that plaintiff did not actually file a grievance. Another possibility is that, assuming plaintiff filed the grievance, prison officials interfered, intentionally or not, in a manner that resulted in plaintiff's grievance never being processed. Unlike plaintiff's testimony regarding other claims in groups three and four, his testimony regarding claims 15, 20, 23, and 32 is accompanied by his letter to Bellamy, which is stamped as having been received by Bellamy's office, and Bellamy's response to his letter. Exhs. P-E-6, P-E-7, P-G-6, P-G-7. Because the contents of those letters plausibly suggest that plaintiff's grievance related to the incident on May 6, 2010, involving defendants Prebalick, Cioffa, Evans, and Jones was submitted but never processed, I have credited plaintiff's testimony regarding the claims arising from that incident only. Accordingly, I recommend defendants' motion to dismiss be denied with respect to claims 15, 20, 23, and 32.

**\*8** Rep. Rec. pp. 28-29.

Defendants argue, *inter alia*, that "[a]lthough the last line of plaintiff's letter to Bellamy indicates 'please find the enclosed unanswered grievances,' and even affording plaintiff the benefit that the letters contained in [the various exhibits] are the enclosure he is referring to, plaintiff still falls short of proper exhaustion. Respectfully, [Magistrate Judge Peebles] did not address the next inquiry which is whether plaintiff appealed the non-response to the Superintendent." Def. Mem. L., p. 3.

In *Johnson v. Tedford*, 616 F. Supp. 2d 321 (N.D.N.Y 2007), the court indicated that "in light of the Second Circuit's [*Hemphill v New York*, 380 F.3d 680 (2d Cir. 2004) ] decision, several Southern District cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review." *Id.* at 326. However, and despite that the exceptional circumstance exception of *Hemphill* has recently

been abrogated, [5] *Johnson* has been repeatedly distinguished by the Northern District. As Chief Judge Suddaby wrote in *Smith v. Kelly*, 985 F. Supp. 2d 275 (N.D.N.Y. 2013):

> There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number. After carefully reviewing this case law, the Court finds that the weight of authority (and better-reasoned authority) answers this question in the affirmative. The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), and the plaintiff adequately describes the failure to process the grievance, there is something for the superintendent to review.

*Id.* at 281–82 (N.D.N.Y. 2013)(collecting cases).

[5]     In *Ross v. Blake*, —— U.S. —— 136 S. Ct. 1850 (2016), the Supreme Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. *Ross* has been interpreted as abrogating the special-circumstances exception set forth in *Hemphill*. *See Riles v. Buchanan*, 656 Fed. Appx. 577, 581 (2d Cir. 2016)("Finally, to the extent Riles relies on our decision in *Hemphill* ... to argue that special circumstances excuse his failure to exhaust available remedies, that avenue has been foreclosed.") (citing *Williams v. Priatno*, 829 F.3d 118, 123, 2016 WL 3729383, at \*4 (2d Cir. July 12, 2016))(explaining that *Ross* abrogated the special-circumstances exception and "supplant[ed] our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available").

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 35 of 178

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

**\*9** Based on the weight of authority, the Court agrees with defendants that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must itself be appealed to the next level, including the CORC, in order to properly complete the grievance process. *See Simmon v. Uhler*, 2015 WL 5655561, at \*4 (N.D.N.Y. Sept. 24, 2015) ("[T]he failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must be appealed to the next level, including the CORC, in order to properly complete the grievance process.")(citing *Pacheco v. Drown*, 2010 WL 144400, at \*19 & n. 21 (N.D.N.Y. Jan. 11, 2010); *Smith v. Kelly*, 985 F. Supp.2d at 281–82 & n. 8 (N.D.N.Y. 2013)); *Goodson v Silver*, 2012 U.S. Dist. LEXIS 137177, at \*11, 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2012) (stating that "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process"); *Veloz v New York*, 339 F. Supp.2d 505, 516 (S.D.N.Y. 2004) (holding that an inmate in the New York State system was required to appeal even if he did not get a response to allegedly misplaced or destroyed grievances).

The law is clear that simply writing letters to supervisory officials is insufficient to exhaust administrative remedies, *Simmon*, 2015 WL 5655561, at \*4 n. 5 (citing *Perez v. Blot*, 195 F. Supp. 2d 539, 544-45 (S.D.N.Y. 2002) (citing cases)); *Masas v. Conte*, 2015 U.S. Dist. LEXIS 50527 (N.D.N.Y Mar. 25, 2015), so plaintiff's letter to Bellamy does not satisfy his exhaustion obligation. Moreover, there is no evidence that plaintiff, "an experienced *pro se* litigant who has filed multiple actions in this and other courts as a New York State prison inmate," Rep. Rec. 2, who undoubtedly was familiar with the grievance and appeal process, *see* Hear Tr. pp. 113:15 – 116:6, [6] 128:21-129:4, [7] Def. Post-Hearing Mem. L. p.

10, [8] appealed the non-response to his grievance addressed to the facts underlying claims 15, 20, 23, and 32 against Prebalick, Cioffa, Evans and Jones. Accordingly, these claims are dismissed for failure to exhaust administrative remedies.

[6]    Jeffrey Hale, Assistant Director of the Central Office Review Committee, testified at plaintiff's evidentiary hearing that there are safeguards in place in DOCCS' grievance process for inmates specifically for this type of situation, as plaintiff purports to be. Hear Tr. pp. 113:15 – 116:6. That is, if an inmate does not receive a response to a grievance, "[t]hey just write a simple note to the IGRC clerk or they can address it to the inmate grievance program supervisor requesting to appeal that grievance to the next level of review." Hear Tr. p. 113:15-23. Mr. Hale testified that inmates have a two week timeframe within which to file an appeal of a non-response to the Superintendent, and, in addition, inmates also have the same recourse for filing a late appeal as they would a timely appeal. *Id.* 114:9-115:25.

[7]    Mr. Hale testified that, at the time of plaintiff's hearing, plaintiff had successfully exhausted 445 grievances and had 6 appeals pending. Hear. Tr. pp.128:21-129:4.

[8]    Defendants contend that Plaintiff successfully exhausted an estimated 300 grievances at the time he filed this law suit. Def. Post-Hearing Mem. L., p. 10 (citing Hearing Ex. D-3).

## IV. CONCLUSION

For the reasons discussed above, Magistrate Judge Peebles's October 28, 2016 Report and Recommendation, Dkt. No. 252, is accepted in part and rejected in part, as follows:

(1) The following claims are deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|---|---|---|---|---|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05,108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05,108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |

2017 WL 1187859

| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

**\*10**  (2) The following claims will also proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
| --- | --- | --- |
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

(3) The following claims are dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 21 | Evans | ReligiousInterfer. | Five Points | 32 |

(4) The following claims are dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims are dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |

The Court Clerk's Office shall now schedule three trials for the remaining claims in accordance with the Court's September 22, 2015 Decision and Order, Dkt. No. 202, taking into account claims and defendants that are dismissed from the action by this Decision and Order. To aid the Court Clerk's Office in scheduling these trials, each part shall submit, within thirty (30) days, a status letter indicating the claims and defendants that remain pending and that they contend should be tried in each of the trials ordered by the Court on September 22, 2015, Dkt. No. 202.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1187859

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 3491232
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Juan FELIZ, Plaintiff,
v.
Vonda JOHNSON, MD, Clinton Annex Correctional
Facility; Amber Lashway, Nurse Practitioner,
Clinton Annex Correctional Facility; and
Paul Harriman, Nurse Assistant, Clinton
Annex Correctional Facility, Defendants.

9:17-CV-1294 (DNH/ATB)
|
Signed 08/01/2019

**Attorneys and Law Firms**

JUAN FELIZ, Plaintiff pro se, 16-A-4711, Greene
Correctional Facility, P.O. Box 975, Coxsackie, NY 12051.

HON. LETITIA JAMES, Attorney General for the State of
New York, OF COUNSEL: KEITH J. STARLIN, ESQ., Ass't
Attorney General, The Capitol, Albany, NY 12224, Attorney
for Defendants.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

 *1  Pro se plaintiff Juan Feliz brought this civil rights action
pursuant to 42 U.S.C. § 1983. On June 6, 2019, Magistrate
Judge Andrew T. Baxter advised by Report-Recommendation
that defendants' motion for summary judgment be granted and
that the action be dismissed in its entirety without prejudice
for failure to exhaust administrative remedies. Plaintiff timely
filed objections to the Report-Recommendation along with a
motion to amend his complaint.

In his objections, plaintiff advises that on February 13,
2019, "**after over fourteen (14) months**," the Central Office
Review Committee ("CORC") finally issued its decision on
grievance FKN-13836-17 pertaining to unaddressed medical
needs and the alleged falsification of his medical records
by staff at Clinton Correctional Facility. Pl.'s Obj. ¶ 8, ECF
No. 35 (emphasis in original). In his motion to amend, he
"concedes that he submitted the Complaint in this case at
bar, prior to receiving the CORC decision." Feliz Decl., ¶

3, ECF No. 36–1. Thus, he admits that he failed to exhaust
administrative remedies prior to commencing suit in federal
court. He nonetheless argues he may proceed because the
grievance process was unavailable to him and he is therefore
excused from exhausting. Plaintiff contends the grievance
process was unavailable due to the fact that it " 'operates as
a simple dead end' because DOCCS CORC consistently fails
to timely issue its decision in conformity with 7 NYCRR §
701.5(d)(3)(ii)." Pl.'s Obj. ¶ 11.

The Supreme Court identified three circumstances where
administrative remedies may be unavailable to a prisoner.
Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). First, "an
administrative procedure is unavailable when (despite what
regulations or guidance materials may promise) it operates
as a simple dead end—with officers unable or consistently
unwilling to provide any relief to aggrieved inmates." Id.
"Next, an administrative scheme might be so opaque that
it becomes, practically speaking, incapable of use." Id.
Lastly, administrative remedies are unavailable where "prison
administrators thwart inmates from taking advantage of a
grievance process through machination, misrepresentation, or
intimidation." Id. at 1860.

In the Report-Recommendation, Magistrate Judge Baxter
addressed the unavailability of the grievance process and
concluded "there is no indication on the record that the
grievance process was unavailable to the plaintiff." Report-
Rec. 10. Magistrate Judge Baxter detailed and rejected
plaintiff's allegations that the process was unavailable due to
lack of a translator and also rejected plaintiff's argument that
the grievance process does not apply to the instant matter. Id.
11.

The Report-Recommendation did not (nor at first glance
the summary judgment briefing) address CORC's fourteen
month delay in rendering a decision on FKN-13836-17.
Courts within this Circuit are split as to whether a delay
by CORC constitutes unavailability that would excuse a
plaintiff's failure to exhaust his administrative remedies. See
Hayes v. Dahkle, No. 9:16-CV-1368, 2018 WL 7356343, at
*9 (N.D.N.Y. Dec. 11, 2018), report-recommendation and
order adopted by, 2019 WL 689234 (N.D.N.Y. Feb. 19,
2019) (McAvoy, S.J.) (analyzing Second Circuit split). Courts
within this District have found that a delay by CORC does
not constitute a basis on which to excuse a plaintiff's failure
to exhaust. See, e.g., Casey v. Brockley, No. 9:13-CV-01271,
2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-
recommendation and order adopted by, 2015 WL 7864161

(N.D.N.Y. Dec. 3, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust."); Ford v. Smith, No. 9:12-CV-1109, 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (McAvoy, S.J.) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable).

**\*2** There is no need to decide whether CORC's fourteen month delay in this case rendered the grievance process unavailable to plaintiff. This is not a case where the plaintiff " 'appealed every grievance in this instant matter to the CORC,' and after CORC failed to respond within the thirty-day time frame, he 'didn't know what else to do.' " Hayes, 2018 WL 7356343, at *9; see also Peoples v. Fischer, No. 11 Civ. 2694, 2012 WL 1575302, *6 (S.D.N.Y. 2012) reconsideration granted in part, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative decision."). Nor is this a case

> where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present [motion] had been filed.

High v. Switz, No. 9:17-CV-1067, 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), report-recommendation and order adopted by, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (Kahn, J.).

Instead, on November 13, 2017, in grievance FKN-13836-17 and subsequent addendums to that grievance, plaintiff complained of his medical care in regard to cancer treatment and for the first time made an allegation about falsified documents by staff stating he had no cancer. [1] On November

16, 2017, the Inmate Grievance Resolution Committee ("IGRC") responded in writing to grievance FKN-13836-17. Plaintiff appealed the IGRC decision to the Superintendent on November 16, 2017. [2]

[1]  At the time he filed FKN-13836-17, plaintiff was housed at Franklin Correctional Facility, though the grievance expressed plaintiff's complaints regarding his medical care at both Clinton Correctional Facility and Franklin Correctional Facility.

[2]  Plaintiff thereafter filed additional grievances regarding his medical care and treatment, which were filed as addendums to pending grievance FKN-13836-17 and which are detailed in the Report-Recommendation.

Plaintiff initiated this action on November 27, 2017. Prior to that date, the Superintendent had not yet issued a response on grievance FKN-13836-17 and therefore plaintiff could not yet have appealed the Superintendent's decision to CORC, nor obviously received any decision from CORC. On November 30, 2017, after plaintiff filed the instant Complaint, the Superintendent responded to plaintiff's appeal, finding his claims to be without merit. On December 1, 2017, plaintiff appealed the Superintendent's decision to CORC, and as discussed above, CORC issued its decision on February 13, 2019.

As Magistrate Judge Baxter explained in the Report-Recommendation, plaintiff did not fully exhaust his administrative remedies prior to commencing this action because he filed his federal complaint before completing the DOCCS grievance process. Any delay by CORC in responding to plaintiff's last level of appeal is irrelevant to whether the grievance process was unavailable to plaintiff at the time he filed this suit. This is not a situation where plaintiff filed his federal complaint while waiting months for CORC's response. To the contrary, the IGRC's and the Superintendent's responses to grievance FKN-13836-17 were timely, and plaintiff had not yet even appealed the relevant grievance to CORC at the time of filing this action.

**\*3** Plaintiff has made no other nor new arguments regarding why or how the grievance procedures were unavailable to him at the time he filed this suit. Any efforts plaintiff may have made since the filing of his Complaint, including his subsequent and timely appeal to CORC, do not cure his failure to exhaust because the PLRA requires that administrative remedies be exhausted before commencing a lawsuit. Therefore, nothing in plaintiff's objections or his

motion to amend change the fact that plaintiff failed to exhaust his administrative remedies at the time he brought suit. Moreover, plaintiff's motion to amend fails to comply with Northern District of New York Local Rule 7.1(a)(4) which requires a party moving to amend to attach an unsigned copy of the proposed amended pleading to its motion papers.

Therefore, based upon a de novo review of the portions of the Report-Recommendation to which plaintiff objected, the Report-Recommendation is accepted and adopted in all respects. See 28 U.S.C. § 636(b)(1). Plaintiff's motion to amend will be denied both for his failure to comply with the Local Rules and also because there are no set of facts that could cure the instant basis for dismissal.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE;

3. Plaintiff's motion to amend, ECF No. 36, is DENIED; and

4. The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2019 WL 3491232

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 7356343
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Taheen HAYES, Plaintiff,
v.
T. DAHKLE, et al., Defendants.

No. 9:16-CV-1368 (TJM/CFH)
|
Signed 12/11/2018

**Attorneys and Law Firms**

Taheen Hayes, 05-A-3850, Elmira Correctional Facility, P.O. Box 500, Elmira, New York 14902, Plaintiff pro se.

OF COUNSEL: HELENA O. PEDERSON, ESQ., Assistant Attorney General, Atorney General for the State of New York, The Capitol, Albany, New York 12224, Attorney for Defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Christian F. Hummel, U.S. Magistrate Judge

**\*1** Plaintiff pro se Taheen Hayes ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants, Superintendent ("Supt.") Daniel F. Martuscello, Deputy Superintendent of Security ("DSS") Raymond Shanley, Corrections Officer ("C.O.") T. Dahkle, C.O. Jason A. Meier, C.O. Gregory E. Langtry, C.O. Stephen A. Bence, C.O. E. Coon, C.O. K. Hoffman, and Officer Rehabilitation Counselor ("O.R.C.") James Iarusso – who, at all relevant times, were employed at Coxsackie Correctional Facility ("Coxsackie") – violated his constitutional rights under the First and Eighth Amendments. Dkt. No. 12 ("Am. Compl."). Presently pending before the Court is defendants' Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 58. Plaintiff opposed defendants' motion, and defendants filed a reply. Dkt. Nos. 67, 69. For the following reasons, it is recommended that defendants' motion be granted on the basis of plaintiff's failure to exhaust his claims, excluding his Eighth Amendment sexual assault claim. As to plaintiff's sexual assault claim, it is recommended that such claim be dismissed on the merits. Alternatively, if the District Judge should not agree with the undersigned's recommendation as to plaintiff's failure to exhaust, it is recommended that defendants' motion be granted in part and denied in part.

**I. Background**

**A. Plaintiff's Recitation of the Facts**

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II infra. On or about April 15, 2016, C.O. Dahkle subjected plaintiff to sexual abuse and retaliated against him in response to plaintiff's February 2016 grievance against him. Am. Compl. ¶ 1. While conducting the frisk, C.O. Dahkle "had his lower body (genitals) pressed up against [plaintiff's] butt" and tightly pressed his hands down plaintiff's back and "into the crack of his butt (inside) all the way down and around [his] [groin]." Id. ¶ 4. During the subsequent search of plaintiff's cell, C.O. Dahkle asked, "[d]o you consider yourself a male or female?" and "[d]o you suck dick or fuck men?" Id. ¶ 6. On April 16, 2016, plaintiff reported the incident to the Prison Rape Elimination Act ("PREA") hotline. Id. ¶ 7. The next day, plaintiff again reported the incident to the PREA hotline and filed a grievance with Coxsackie. Id. ¶¶ 8-9. On April 18, 2016, plaintiff reported the sexual assault to Supt. Martuscello during the Superintendent's "rounds" in the cafeteria. Id. ¶ 10. Supt. Martuscello informed plaintiff that someone would contact him about the incident. Id. ¶ 11. Later that day, plaintiff was interviewed by the Office of Mental Health and Coxsackie Medical staff. Id. ¶ 12.

On May 15, 2016, C.O. Hoffman "falsified a misbehavior report which subjected [plaintiff] to confinement for retaliation ... because [plaintiff] filed a sexual assault complaint against T. Dahkle and was rumored by Coxsackie Correctional Officers to be working with the Office of Special Investigation." Am. Compl. ¶¶ 19, 20. The following day, plaintiff was placed in keeplock [2] pending a disciplinary hearing for C.O. Hoffman's misbehavior report. Id. ¶ 20.

[2] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving

him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

**\*2** On May 16, 2016, plaintiff met with C.O. Meier and non-party C.O. Rowe. Am. Compl. ¶ 21. When asked why he was keeplocked, plaintiff explained C.O. Hoffman's alleged retaliatory misbehavior report. Id. C.O. Meier called plaintiff a "fucking liar" and stated that he heard plaintiff telling other inmates to call the PREA hotline and falsely report incidents of sexual abuse. Id. Plaintiff assured C.O. Meier that he was mistaken, and C.O. Meier became "very upset" and agitated and ordered plaintiff back to his cell. Id. ¶¶ 21, 22. Later that day, plaintiff attended his keeplock admission interview with a non-party nurse while in the presence of C.O. Meier and C.O. Rowe. Id. ¶ 23. The nurse asked plaintiff if he had been sexually abused while in Coxsackie. Id. ¶ 24. When plaintiff answered affirmatively, C.O. Meier "went crazy," yelling, "faggots like you get C.O.'s [sic] fucking fired. You want to play these fucking games?" Id. C.O. Meier pointed his fingers directly in plaintiff's face and threatened to "fuck [plaintiff] up right now." Id. ¶¶ 26, 27.

On May 17, 2016, plaintiff was transferred to the Special Housing Unit ("SHU").[3] Am. Compl. ¶ 30. On May 23, 2016, plaintiff again expressed his fear and frustrations about his safety to Supt. Martuscello and DSS Shanley, showing them the allegedly false May 15, 2016 misbehavior report from C.O. Hoffman and explaining C.O. Meier's threats. Id. ¶ 32. Supt. Martuscello and DSS Shanley told plaintiff to resolve his problems at an upcoming disciplinary hearing. Id.

[3]    SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

On May 26, 2016, plaintiff filed a grievance for the "constant retaliatory practices by way of disciplinary action and harrasment [sic] from C.O. Hoffman, threats from C.O. Meier for filing grievances and a sexual complaint on Dahkle." Am. Compl. ¶ 36. In this grievance, plaintiff also "raise[d] the issue of the failure to protect" and how he feared for his life. Id. Plaintiff sent a copy of this grievance to Supt. Martuscello. Id. On June 10, 2016, plaintiff was released from SHU. Id. ¶ 37. When plaintiff asked his O.R.C. Counselor why a disciplinary hearing for C.O. Hoffman's misbehavior report had never

been conducted, the Counselor told him that the misbehavior report did not exist. Id.

On June 11, 2016, Supt. Martuscello and DSS Shanley ordered plaintiff to the Captain's office. Am. Compl. ¶ 39. Supt. Martuscello yelled at plaintiff for filing complaints about the alleged sexual assault and other harassment to outside New York State agencies. Id. DSS Shanley warned plaintiff that because he was the Deputy Director of Security, if plaintiff initiated any further complaints, "anything [could] happen to [him]" for "security reasons." Id. Supt. Martuscello threatened that if plaintiff continued to "make an issue," he would place him back in SHU. Id. ¶ 41. Four days later, plaintiff filed a grievance regarding this meeting. Id. ¶ 42. Plaintiff also filed a complaint with non-party Anthony J. Annucci, the acting Commissioner of DOCCS, regarding the sexual abuse, threats, harassment, and retaliatory practices he experienced at Coxsackie. Id.

On June 20, 2016, plaintiff was transferred to a different housing unit. Am. Compl. ¶ 43. Upon arrival, C.O. Hoffman stated, "[d]on't get comfortable Hayes, you'll be out of here soon." Id. C.O. Hoffman further stated, "you mess with one of us (C.O.'s) you got to deal with all of us." Id. On July 7, 2016, C.O. Hoffman banged on plaintiff's cell, and told him that the May 15, 2016 misbehavior report he filed against plaintiff "don't [sic] exist" and that "Dahkle said hi." Id. ¶ 47.

On July 12, 2016, plaintiff attended a grievance hearing concerning a recent grievance for SHU mail pickup. Am. Compl. ¶ 48. O.R.C. Iarusso was present at the hearing. Id. Plaintiff requested permission to inquire about his grievance against Supt. Martuscello and DSS Shanley that had not been filed, and O.R.C. Iarusso denied that request, stating that he did not care about plaintiff's grievance. Id. ¶¶ 48, 49. He further informed plaintiff that he had thrown away plaintiff's grievance and that "as far as [he] was concerned, any grievances about the Superintendent [he] would never personally file anyway." Id.

**\*3** On July 30, 2016, C.O. Meier attacked plaintiff from behind and slammed him into the ground. Am. Compl. ¶ 55. C.O. Meier then sat on plaintiff's back and repeatedly punched him in the back, head, and face with closed fists. Id. ¶ 56. C.O. Langtry, C.O. Bence, and C.O. Coon joined in, kicking and punching plaintiff all over his body as he lay handcuffed on the floor. Id. ¶ 57.

### B. Defendants' Recitation of the Facts

In support of this motion, defendants filed a Statement of Material Facts. [4]

[4]    Local Rule 7.1(a)(3) states:
Summary Judgment Motions
Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.
N.D.N.Y. L.R. 7.1(a)(3).

### 1. April 15, 2016 Pat Frisk

On April 15, 2016, plaintiff was the subject of a scheduled, routine cell search that had been pre-approved by DSS Shanley. Dkt. No. 58-3 ¶ 4. C.O. Dahkle carried out the search. Id. Pursuant to DOCCS policy, plaintiff was pat frisked prior to the cell search. Id. ¶¶ 5, 6. As part of the pat frisk, C.O. Dahkle patted down plaintiff's arms, shoulders, chest, back, each leg, in between each leg, and along the front of plaintiff's pants' zipper. Id. ¶ 8. C.O. Dahkle conducted the entire pat frisk outside of plaintiff's clothing. Id. "The standards for inspection of an inmate's person allow for contact with the genitalia, groin, breast, inner thighs, and buttocks." Id. ¶ 9. C.O. Dahkle conducted the April 15, 2016 pat frisk without incident, and no contraband was found. Id. ¶ 10.

After the pat frisk, C.O. Dahkle ordered plaintiff to stand on the wall and observe his cell being searched. Dkt. No. 58-3 ¶ 11. C.O. Dahkle did not find contraband in plaintiff's cell, and plaintiff returned to his cell. Id. Insofar as C.O. Dahkle made contact with plaintiff's genitalia or buttocks during the pat frisk, such contact was minimal and solely as a result of conducting the pat frisk. Id. ¶ 12. C.O. Dahkle did not make any sexual or derogatory comments toward plaintiff during the pat frisk. Id. ¶ 14. Nevertheless, plaintiff reported the pat frisk as an alleged sexual assault in violation of PREA. Id. ¶ 15. An investigation following the PREA complaint found no sexual contact or abuse by C.O. Dahkle. Id. ¶ 16. During plaintiff's physical examination by the medical staff, plaintiff did not complain of injuries from the April 15, 2016 pat frisk, and the medical staff did not observe any injuries. Id. ¶ 17.

### 2. May 15, 2016 Misbehavior Report

**\*4** On May 15, 2016, C.O. Hoffman issued plaintiff a Tier II misbehavior report, accusing plaintiff of creating a disturbance, refusing a direct order, harassment, lying, and threats. Dkt. No. 58-3 ¶ 18. Plaintiff served one day in keeplock pending review of the May 15, 2016 misbehavior report as plaintiff received a Tier III misbehavior report on May 16, 2016, "for which he would have been confined in keeplock pending review." Id. ¶ 19. Plaintiff served thirty days in keeplock and sustained a loss of certain privileges in relation to the May 16, 2016 misbehavior report. Id. Plaintiff received a Tier III misbehavior report on May 17, 2016, which resulted in ninety days in SHU and a loss of certain privileges. Id. ¶ 20.

Pursuant to the May 15, 2016 misbehavior report, C.O. Hoffman overheard plaintiff telling another inmate about calling the PREA hotline to make "bogus complaints in order to cause trouble for staff." Dkt. No. 58-3 ¶ 21. C.O. Hoffman gave plaintiff a direct order to stop yelling, and plaintiff stated that he had not been yelling. Id. C.O. Hoffman informed plaintiff that he had overheard his conversation, and gave plaintiff a second direct order to stop yelling. Id. The misbehavior report then states that plaintiff cursed at C.O. Hoffman, and threatened to file a complaint or lawsuit against him. Id. At the time he authored the May 15, 2015 misbehavior report, C.O. Hoffman was unaware of plaintiff's PREA complaint against C.O. Dahkle. Id. ¶ 25. Although the alleged misconduct was later corroborated during a subsequent investigation, the May 15, 2016 misbehavior

report was later expunged for unknown reasons. Id. ¶¶ 27, 28-29.

### 3. Plaintiff's Verbal Complaints about C.O. Meier

"To the extent that [Supt.] Martuscello and [DSS] Shanley ever advised plaintiff to handle any issue through the disciplinary process, it would have been to handle his misbehavior reports through the disciplinary process." Dkt. No. 58-3 ¶ 30. Pursuant to DOCCS policy, "an inmate's verbal complaints of threats by a Correction Officer are delegated to a Sergeant for investigation." Id. ¶ 32. If an inmate's complaint was found to be credible, then the investigation would be referred to the Office of Special Investigations ("OSI"). Id. As such, Supt. Martuscello and DSS Shanley had no personal involvement in investigating plaintiff's complaints. Id. ¶ 33. Although neither Supt. Martuscello nor DSS Shanley recall speaking with plaintiff regarding any alleged threats by C.O. Meier in May 2016, "there is no reason to believe that the process for verbal complaints did not occur." Id. ¶ 34. Moreover, Supt. Martuscello and DSS Shanley do not have the authority to transfer plaintiff to another facility. Id. ¶¶ 41, 42. Supt. Martuscello and DSS Shanley also were not responsible for C.O. assignments, and, thus, could not assign C.O. Meier to a different housing block. Id. ¶ 43. The Use of Force report concerning C.O. Meier's alleged use indicates that "only necessary and appropriate force was used to regain control of the situation, and that such force was unrelated to any alleged threats made by [C.O.] Meier." Id. ¶ 45.

### 4. June 2016 Meeting with Supt. Martuscello and DSS Shanley

An inmate who has been penalized with time in SHU may have any portion of that time deferred up to 180 days. The Hearing Officer who handles the disciplinary hearing makes the decision to defer time. If the inmate has no disciplinary infractions during the deferral period, the penalty is expunged. However, if the inmate has a subsequent disciplinary infraction during the deferral period, the deferred

time may be invoked following a hearing on the subsequent disciplinary infraction. The Hearing Officer, at his or her discretion, makes the decision to invoke deferred time following the hearing on the subsequent disciplinary infraction.

**\*5** Dkt. No. 58-3 ¶ 46 (internal citations omitted). Supt. Martuscello does not recall meeting with plaintiff on June 11, 2015. Id. ¶ 48. He did not threaten plaintiff with deferred SHU time, and, as Superintendent, does not make the decision as to whether to invoke an inmate's deferred SHU time. Id. ¶¶ 47, 49. If Supt. Martuscello did discuss deferred SHU time with plaintiff, "it would have been to remind Plaintiff of the rules for deferred SHU time: that if Plaintiff received a misbehavior report for a disciplinary infraction while he had deferred SHU time, the Hearing Officer could decide to invoke that deferred SHU time." Id. ¶ 51.

### 5. July 12, 2016 Grievance Hearing

On July 12, 2016, plaintiff attended a "grievance hearing" on his complaint regarding mail in SHU. Dkt. No. 58-3 ¶ 53. On that date, O.R.C. Iarusso worked as a staff representative for the Coxsackie Inmate Grievance Program ("IGP"). Id. ¶ 54. Prior to his July 12, 2016 grievance hearing, plaintiff had attempted, on multiple occasions, to discuss other grievances, including a grievance against Supt. Martuscello, after O.R.C. Iarusso told him he would look into these grievances at a later date. Id. ¶ 56. O.R.C. Iarusso informed plaintiff that the purpose of the July 12, 2016 hearing was to discuss plaintiff's grievance regarding SHU mail. Id. ¶ 56. "As part of a broader exchange, after Plaintiff's persistent questions and demands about other grievances, Defendant Iarusso told Plaintiff that he, personally, would not file a grievance against the Superintendent." Id. ¶ 58. As a IGP Staff Representative, O.R.C. Iarusso is not responsible for filing inmate grievances. Id. ¶ 55. O.R.C. Iarusso did not tell plaintiff that he would not file plaintiff's grievance against Supt. Martuscello and DSS Shanley, and had no intention of deterring plaintiff from filing grievances against Coxsackie staff. Id. ¶¶ 59, 62. Further, O.R.C. Iarusso did not threaten to discard plaintiff's grievance against Supt. Martuscello and DSS Shanley, nor did he discard such grievance. Id. ¶¶ 63, 64. In fact, plaintiff's grievance against Supt. Martuscello and DSS Shanley was filed and consolidated with plaintiff's grievance concerning an alleged loss of programs. Id. ¶ 65.

#### 6. July 30, 2016 Use of Force

On July 30, 2016, C.O. Coon and C.O. Bence "responded to a Watch Commander Response" that stated that plaintiff had attempted to assault C.O. Meier. Dkt. No. 58-3 ¶¶ 67, 68. C.O. Meier first used his body weight to restrict plaintiff's movement until at least one of plaintiff's arms could be secured, as plaintiff resisted C.O. Meier's attempts to regain control of the situation. Id. ¶ 69. C.O. Langtry then secured plaintiff's right arm behind his back. Id. ¶ 70. When C.O. Bence arrived, he assisted C.O. Meier and C.O. Langtry by securing plaintiff's left arm behind his back until mechanical restraints could be applied. Id. ¶ 71. When C.O. Coon arrived, he observed plaintiff laying on the floor with his hands secured behind his back by the other corrections officers. Id. ¶ 72. After the corrections officers secured plaintiff's arms behind his back, C.O. Coon applied mechanical restraints to plaintiff's wrists. Id. ¶ 73. An unnamed corrections officer then escorted plaintiff to the medical department. Id. ¶ 74.

C.O. Coon and C.O. Bence authored memorandum documenting their actions on July 30, 2016 using normal and ordinary DOCCS procedure following a Use of Force incident. Dkt. No. 58-3 ¶ 76. C.O. Bence used minimal force to secure plaintiff's left arm behind his back in an attempt to regain control of the situation after plaintiff's alleged attempted assault on staff and resistance. Id. ¶ 77. C.O. Coon's only role in the July 30, 2016 Use of Force incident was to apply mechanical restraints to plaintiff's wrists. Id. ¶ 79. Plaintiff's medical records indicate that, following the July 30, 2016 Use of Force incident, he sustained a cut above his eye that required stitches.

#### II. Discussion [5]

[5]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

#### A. Legal Standard

**\*6** "A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if its may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law....

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion

Defendants contend that plaintiff failed to exhaust his remaining claims except for his Eighth Amendment sexual assault claim. Def. Mem. of Law at 4 n.2, 6. Plaintiff claims that administrative remedies were unavailable to him. Dkt. No. 67-1 ("Pl. Opp.") at 4-6. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

\*7  Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016). [6]

[6]    In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies? [7]

[7]    First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

**\*8** Defendants do not dispute that plaintiff filed grievances pertaining to a majority of his claims in the underlying action. However, defendants argue that plaintiff "knowingly filed the complaint before he received notice of CORC's determinations" regarding his grievances. Def. Mem. of Law at 9 (emphasis omitted). On June 17, 2016, plaintiff filed a filed grievance (CX-18983-16) alleging that C.O. Hoffman falsified a misbehavior report in retaliation for plaintiff reporting an alleged sexual assault by C.O. Dahkle. Dkt. No. 58-2 ¶ 93. CORC rendered their determination on grievance CX-18983-16 on February 22, 2017, and mailed the disposition to plaintiff on March 3, 2017. Id. ¶ 94. On July 25, 2016, plaintiff filed a grievance (CX-19053-16) alleging that O.R.C. Iarusso informed plaintiff that he would not file plaintiff's grievances complaining about Supt. Martuscello. Id. ¶ 95. Plaintiff did not claim that O.R.C. Iarusso's alleged actions were retaliatory. Id. CORC rendered their determination on grievance CX-19053-16 on April 12, 2017, and mailed the disposition to plaintiff on April 22, 2017. Id. ¶ 96.

On July 25, 2016, plaintiff filed a grievance (CX-19054-16) alleging that he had been removed from his mess hall job in retaliation for filing a PREA complaint. Dkt. No. 58-3 ¶ 97. Plaintiff also alleged that when he attempted to address his removal with Supt. Martuscello and DSS Shanley, they intimidated him, and Supt. Martuscello threatened to invoke plaintiff's "deferred time" in SHU. Id. Plaintiff claimed that Supt. Martuscello and DSS Shanley intimidated and threatened him after plaintiff brought up previous complaints and grievances. Id. CORC rendered their determination on grievance CX-19054-16 on May 3, 2017, and mailed the disposition to plaintiff on June 5, 2017. Id. ¶ 98. On August 9, 2016, plaintiff filed a grievance (CX-19094-16) alleging that C.O. Meier and other unnamed corrections officers assaulted him on July 30, 2016 in retaliation for reporting an alleged sexual assault by C.O. Dahkle. Id. ¶ 99. Plaintiff also alleged that Supt. Martuscello failed to take "responsible action to protect [plaintiff's] safety" prior to the July 30, 2016 incident. Id. Plaintiff did not allege that DSS Shanley failed to protect him from the alleged excessive use of force. Id. ¶ 100. CORC rendered their determination on grievance CX-19094-16 on May 31, 2017, and mailed the disposition to plaintiff on July 10, 2017. Id. ¶ 102. Plaintiff filed the original complaint in this action on November 17, 2016. See Dkt. No. 1.

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F.Supp.2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted). The record is clear that plaintiff filed this action on November 17, 2016, and, at that time, CORC had yet to issue decisions on grievances CX-18983-16; CX-19053-16; CX-19054-16; and CX-19094-16. See Dkt. No. 58-18 at 9-21. DOCCS IGP Assistant Director Rachael Seguin declared that, based on her review of DOCCS records, CORC mailed their determinations on plaintiff's grievances CX-18983-16; CX-19053-16; CX-19054-16; and CX to the Coxsackie Inmate Grievance Review Committee ("IGRC") for transmittal to plaintiff on March 3, 2017; April 22, 2017; June 5, 2017; and July 10, 2017 – nearly three and a half months after plaintiff commenced this action. See Dkt. No. 58-18 ("Seguin Decl.") ¶¶ 16, 20, 24, 28. Moreover, the undersigned notes that the fact that plaintiff received the CORC responses after the filing of his original complaint does not cure the procedural defect. See Gizewski v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:14-CV-0124(GTS/DJS), 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016) ("It is well established that [r]eceiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice.") (internal quotation marks and citations omitted). Thus, the record is clear that plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit as CORC's decisions were outstanding. See Peoples, 212 F.Supp.2d at 142; McMillian, 2017 WL 8894737, at *2; White, 2011 WL 4478988, at *3.

### 2. Availability of Administrative Remedies

**\*9** Plaintiff contends that he should be excused from the exhaustion requirement because administrative remedies were unavailable to him "due to the three rules of Ross v. Blake." Pl. Opp. at 4-5. First, plaintiff maintains that

he "appealed every grievance in this instant matter to the CORC," and after CORC failed to respond within the thirty-day time frame, he "didn't know what else to do." Id. at 5. Second, plaintiff claims that he was confused how to grieve his retaliation claims as he had been "directed to write the Office of Special Investigation," but never received a reply. Id. at 6. Finally, plaintiff contends that Supt. Martuscello, DSS Shanley, C.O. Hoffman, O.R.C. Iarusso, and C.O. Meier "individually and collectively thwarted him from using the grievance process." Id.

As to plaintiff's claim that the grievance process was unavailable due to CORC's delay in rendering their decision on his grievances, the undersigned notes that this is a close question. There is no dispute that plaintiff completed the grievance procedure as to grievances CX-18983-16, CX-19053-16, CX-19054-16, and CX-19094-16. See Dkt. No. 58-18 at 9-21. Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. Compare Casey v. Brockley, No. 9:13-CV-01271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-recommendation and order adopted by 2015 WL 7864161 (N.D.N.Y., Dec. 03, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust.") and Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable) with Rossi v. Fischer, No. 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate.") and Peoples v. Fischer, No. 11 Civ. 2694(SAS), 2012 WL 1575302, *6 (S.D.N.Y. 2012) on reconsideration in part, 898 F.Supp.2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination.").

In High v. Switz, this Court excused the plaintiff's failure to exhaust his administrative remedies

where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present [motion] had been filed.

High v. Switz, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), report-recommendation adopted by 2018 WL 3730175 (N.D.N.Y., Aug. 6, 2018). Although plaintiff authored letters dated August 11, 2016 and September 10, 2016 requesting to appeal grievances CX-18983-16 and CX-19094-16 directly to CORC due to the Superintendent's failure to render a decision within the twenty-five calendar day time limit, see Seguin Decl. ¶¶ 14, 26; Dkt. No. 58-5 at 16, 44-45, plaintiff has not proffered evidence that he wrote to the Coxsackie IGRC or CORC regarding the timeliness of CORC's response. See 7 N.Y.C.R.R § 701.5(d)(3)(i) ("If a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.").

*10 Unlike the plaintiff in High, there is no indication in the record that plaintiff wrote to CORC regarding the status of his appeal and CORC further neglected to respond. See 2018 WL 3736794, at *5. Thus, the undersigned concludes that CORC's delay in rendering a decision on plaintiff's grievances did not excuse plaintiff from the exhaustion requirement. See Couvertier v. Jackson, No. 9:12-CV-1282 (DNH/DEP), 2014 WL 2781011, at *5 (N.D.N.Y. June 19, 2014) ("An administrative delay in processing or deciding an inmate's appeal of a grievance, however, does not constitute a special circumstance justifying excusal of the exhaustion requirement.") (citing Ford v. Smith, No. 12-CV-1109, 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) ) ("CORC's failure to act within the time frame set out in the regulations does not constitute special circumstances justifying the failure to exhaust."); cf. Henderson v. Annucci, No. 14-CV-445A,

2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance relating to the October 22, 2013 incident, such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA.").

Next, plaintiff claims that he was confused how to grieve his retaliation claims as he had been "directed to write the Office of Special Investigation," but never received a reply. Pl. Opp. at 6. Plaintiff further states that "through the confusing text and decision [he] didn't know what to do or who should he address the retaliation from defendants about his PREA complaints." Id. In support of his argument, plaintiff cites to five entries in the record, including (1) the CORC decision's for grievances CX-18983-16, CX-19054-16, and CX-19094-16; (2) an email from non-party IGP Coordinator Chris VanBergen to the Office of Special Investigations stating that grievance CX-19054-16 appears to be related to plaintiff's April 17, 2016 PREA complaint, and forwarding that grievance to that office "for whatever action is deemed appropriate"; and (3) a memorandum authored by non-party Lt. E. Pahl, dated September 21, 2016, concerning grievance CX-19094-16 and C.O.'s Meier's alleged use of excessive force. See Dkt. No. 58-5 at 731, 761, 767, 775, 788. To the extent that plaintiff's argument can be interpreted as suggesting that he was unsure how to grieve his retaliation claim against O.R.C. Iarusso, this claim must fail. It is clear that plaintiff knew of the grievance process at Coxsackie, as he appealed the grievances in this action to CORC; moreover, plaintiff filed at least two grievances alleging retaliation by Coxsackie staff members in the underlying action. See generally Dkt. No. 58-5. Thus, plaintiff's argument suggesting that he was confused as to how to file a retaliation grievance is misplaced.

Finally, plaintiff contends that defendants Supt. Martuscello, DSS Shanley, C.O. Hoffman, C.O. Meier, and O.R.C. Iarusso thwarted him from using the grievance process. Pl. Opp. at 6. Plaintiff claims that "every[ ]time [he] use[d] the Coxsackie grievance system to report misconduct or retaliation from defendants ... [he] was further retaliated against." Dkt. No. 67-3 ¶ 65. "Administrative remedies are not available if prison officials 'interfere[ ] with an inmate's pursuit of relief' by, for example, misinforming an inmate as to the applicability of the grievance process to the inmate's claims." Kendall v. Cuomo, No.1:12-CV-3438 (ALC)(RLE), 2017 WL 4162338, at *3 (S.D.N.Y. Sept. 19, 2017) (citing Ross. 136 S.Ct. at 1860); see also Veloz v. New York, 339 F.Supp.2d 505,

515-16 (S.D.N.Y. 2004) (noting that "[w]hen an inmate's reasonable attempts to exhaust administrative remedies are impeded by a correctional officer" the remedy is unavailable). The undersigned concludes that there is no evidence in the record that any of the defendants interfered with plaintiff's pursuit of the grievance procedure. In fact, the record clearly establishes that plaintiff was able to access the grievance process as he filed six grievances while housed at Upstate. See Seguin Decl. at 9.

*11 As plaintiff's bare assertions that defendants thwarted his attempts to file grievances are insufficient to render the grievance process unavailable, defendants have met their burden of showing that plaintiff has failed to exhaust his administrative remedies as to all of his remaining claims, with the exception of his Eighth Amendment sexual assault claim. Accordingly, it is recommended that defendants' Motion for Partial Summary Judgment be granted as to these claims.

### C. Eighth Amendment

#### 1. Sexual Assault Claims

Plaintiff claims that C.O. Dahlke sexually assaulted him during a pat frisk on April 15, 2016. Am. Compl. ¶ 1. Defendants argue that plaintiff's Eighth Amendment claim must fail because any contact C.O. Dahlke made with plaintiff's body was incidental and a necessary component of the pat frisk. Def. Mem. of Law at 10-13. "Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997).

In Crawford v. Cuomo, the Second Circuit stated that a single incident of sexual abuse may violate the Eighth Amendment if it is "sufficiently severe or serious." 796 F.3d 252, 257 (2d Cir. 2015). The Crawford Court explained:

> [t]o show that an incident or series of incidents was serious enough to implicate the Constitution, an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia.

> A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment. Similarly, if the situation is reversed and the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact.

Id. Ultimately, in assessing whether an Eighth Amendment violation has occurred, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." Id. at 257-58 (citing Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (determining that an Eighth Amendment inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.") ).

Plaintiff claims that during the pat frisk, C.O. Dahkle "had his lower body (genitals) pressed-up against [his] butt," as his hands "press[ed] tightly down [plaintiff's] back and into the crack of [his] butt (inside) all the way down and around [his] groan." Am. Compl. ¶ 4. However, as defendants indicate, the pat frisk occurred prior to a scheduled, routine search of plaintiff's cell, and pat frisks are required before a corrections officer undertakes a cell search. See Def. Mem. of Law at 11; DOCCS Dir. 4910, Dkt. No. 58-10 at 17 ("Each day, the living quarters of a number of inmates in each housing unit will be searched by correctional employees in accordance with a schedule issued by the Deputy Superintendent of Security or equivalent.... Inmates present shall be pat frisked and may also be scanned with a hand-held metal detector."). Such pat frisks relate to the safety and security of the facility by ensuring that inmates do not possess contraband. See Def. Mem. of Law at 12. Pursuant to Directive 4910, "[c]ontact through the clothing with the genitalia ... and buttocks is a necessary component of a thorough pat frisk. However, staff must avoid any penetration of the anal or genital opening

through the clothing during a pat frisk." Dkt. 58-10. Although plaintiff contends that C.O. Dahkle "press[ed] tightly down [plaintiff's] back and into the crack of [his] butt," Am. Compl. ¶ 6, and testified that the search "felt funny" and "more so [a] massage or a caress," there is no indication that C.O. Dahkle penetrated plaintiff's anus, intentionally or otherwise, or in any way squeezed or fondled his genitals. See Dkt. No. 58-9 ("Pl. Dep.") at 58; Def. Mem. of Law at 12. In fact, plaintiff testified that the search occurred outside of his clothing. See Pl. Dep. at 54. Further, that C.O. Dahkle conducted a thorough search and "may have made contact with [p]laintiff's genitalia and/or buttocks" is insufficient to establish that he conducted the search with an intent to humiliate plaintiff or arouse himself. See Shaw v. Prindle, 661 F. App'x 16, 19 (2d Cir. 2016) (summary order) (concluding that the court "cannot infer solely from the thoroughness of the search — described as "excessive searching of [the] crotch area and in between his buttocks and massaging of his rectum and groin area" — that the defendant "intended to search ... with intent to arouse or gratify [his] sexual desires or to humiliate [the plaintiff]") (alterations and internal quotation marks omitted).

*12 Moreover, although plaintiff contends that C.O. Dahkle made statements like "[d]o you consider yourself a male or female?" and "[d]o you suck dick or fuck men?", Am. Compl. ¶ 6, these comments, made subsequent to the pat frisk, are insufficient to establish that C.O. Dahkle initiated the frisk to humiliate plaintiff or otherwise sexually gratify himself. See Shepherd v. Fischer, No. 08-CV-9297 (RA), 2018 WL 3122503, at *4 (S.D.N.Y. June 26, 2018) ("Comments by a defendant during an interaction thus constitute relevant evidence."); Allen v. Graham, No. 9:16-CV-0047 (GTS/ATB), 2017 WL 5957742, at *6 (N.D.N.Y. Dec. 1, 2017) (concluding that the plaintiff's allegations that the defendant corrections officer "made a few callous and/or offensive remarks while caressing Plaintiff's chest and repeatedly groping Plaintiff's genitals and buttocks" does not amount to an Eighth Amendment violation) (citing Amaker v. Fischer, No. 10-CV-0977A, 2014 WL 8663246, at *3 W.D.N.Y. Aug. 27, 2014 (recommending the dismissal of Eighth Amendment sexual-assault claim based on a pat-frisk in which defendant "rub [bed] plaintiff's penis, fondl[ed] and squeez[ed] plaintiff's buttocks and [ran] his index finger across plaintiff's anus," while making inappropriate remarks to plaintiff), report-recommendation adopted by 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015) ). The undersigned also notes that the substance of C.O. Dahkle's alleged comments, while inappropriate, are not of the kind courts find sufficient to implicate the Eighth Amendment. See Allah v. Morrison,

No. 14-CV-6735, 2016 WL 4017340, at *3-4 (W.D.N.Y. July 22, 2016) ("[The defendant's] alleged taunts to [the plaintiff], including the statements, 'you know what I want' and 'give me what I want and you'll get what you want', suggest that [the defendant's] conduct was designed to humiliate [the plaintiff], gratify herself, or both."); see also Crawford, 796 F.3d at 259 ("[The defendant's] demeaning comments, including the statements '[t]hat doesn't feel like a penis to me,' [and] 'I'll run my hands up the crack of your ass if I want to' ... suggest that [the defendant] undertook the search in order to arouse himself, humiliate [the plaintiff], or both.").

Thus, the undersigned finds that C.O. Dahkle's alleged contact with plaintiff was incidental to a routine pat frisk, see Crawford, 796 F.3d at 257, and it is recommended that defendants' motion on this ground be granted.

### 2. Excessive Force

Defendants move for summary judgment on plaintiff's excessive force claim as it pertains to C.O. Bence and C.O. Coon. See Def. Mem. of Law at 19-22. Plaintiff contends that during the July 30, 2016 use of force incident, C.O. Bence and C.O. Coon kicked and punched him all over his body as he lay handcuffed on the floor. Am. Compl. ¶ 57. To state a prima facie claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999). The objective element of the excessive force analysis is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm [ ] constitute[s an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9, 112 S.Ct. 995). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10, 112 S.Ct. 995 (internal quotation marks and citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Id. (quoting Hudson, 503 U.S. at 7, 112 S.Ct. 995). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "[1] the extent of the injury and the mental state of the defendant[;] [2] ... the need for the application of force; [3] the correlation between that need and the amount of force used; [4] the threat reasonably perceived by the defendants; and [5] any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

**\*13** The undersigned concludes that plaintiff has failed to establish both the objective and subjective elements of his prima facie excessive force claim. Both C.O. Bence and C.O. Coon declared that they responded to a "Watch Commander Response" on July 30, 2016 under the belief that plaintiff had attempted to assault C.O. Meier. Dkt. No. 58-11 ("Bence Decl.") ¶ 5; Dkt. No. 58-12 ("Coon Decl.") ¶ 5. C.O. Bence declared that when he arrived at the incident, he assisted other officers in securing plaintiff's left arm behind his back until mechanical restraints could be applied. Bence Decl. ¶ 7. After both of plaintiff's arms were secured behind his back, a third corrections officer applied mechanical restraints to plaintiff's wrists. Id. ¶ 8. C.O. Coon declared that he assisted in applying the mechanical restraints. Coon Decl. ¶ 7. Plaintiff was then escorted to the medical department. Bence Decl. ¶ 9. Although plaintiff contends that C.O. Coon and C.O. Bence kicked and punched him while he lay handcuffed on the ground, Am. Compl. ¶ 57, plaintiff's medical records are not consistent with such injuries. See Dkt. No. 58-8 at 18-20.[8] Moreover, plaintiff's medical records do not show injuries to plaintiff's arms or wrists that belie C.O. Bence and C.O. Coon's statements that they only secured plaintiff's arm behind his back and applied mechanical restraints, respectively. See id.; Bence Decl. ¶ 7-8; Coon Decl. ¶ 7. Still, "certain actions, including malicious use of force to cause harm, constitute Eighth Amendment violations *per se*." Blyden, 186 F.3d at 263 (emphasis in original). Although plaintiff's medical records do not support the injuries plaintiff purports to have incurred, "any or even no injuries resulting from the events plaintiff

described could amount to a per se constitutional violation." [Brown v. Dubois](), No. 9:15-CV-1515 (LEK/CFH), 2017 WL 2983305, at *9 (N.D.N.Y. June 16, 2017) (citing [Baskerville v. Mulvaney](), 411 F.3d 45, 48-49 (2d Cir. 2005) ); [Tafari v. McCarthy](), 714 F.Supp.2d 317, 352 (N.D.N.Y. 2010) (internal quotation marks and citation omitted) (denying the defendants' motion for summary judgment because although the plaintiff's injuries were de minimis, "the extent of injury suffered by the inmate is only one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.")

8       Although plaintiff's medical records indicate a laceration over his eye, plaintiff attributed that injury to C.O. Meier. Pl. Dep. at 103-04.

The undersigned finds that there is no indication in the record that C.O. Bence or C.O. Coon acted with malicious or sadistic intent. Both defendants declared that they arrived at the incident with the understanding that plaintiff had assaulted a staff member. Bence Decl. ¶ 5; Coon Decl. ¶ 5; Dkt. No. 58-8 at 2. C.O. Bence declared that the "minimal force [he] used to secure [p]laintiff's left arm behind his back was necessary and appropriate under the circumstances, given his attempted assault on staff and resistance to staff attempts to regain control of the situation." Bence Decl. ¶ 12. Thus, "the force exerted upon plaintiff was applied in a good-faith effort by [the defendants] to maintain or restore discipline following [plaintiff's alleged] ... behavior." [Chambliss v. Rosini](), 808 F.Supp.2d 658, 669 (S.D.N.Y. 2011). Moreover, as defendants point out, plaintiff testified that he "assume[d]" C.O. Bence and C.O. Coons were kicking and punching him, but that there was a possibility that they did not take part in the alleged excessive force. See Pl. Dep. at 109-110. Although plaintiff seems to walk back on this testimony in his opposition papers, see Pl. Opp. at 15-17, plaintiff has failed to proffer evidence, aside from his conclusory allegations, that contradicts defendants' account of events.

Thus, because plaintiff has not submitted "proof that tends to show that the alleged force used against him was employed maliciously and sadistically to cause harm, he has failed to satisfy the subjective prong of his excessive force claim." [Chambliss](), 808 F.Supp.2d at 669 (citing [Engles v. Dunbar](), No. 09 Civ. 2457(NRB), 2010 WL 5538517, at *7 (S.D.N.Y. Dec. 30, 2010) (concluding that the subjective component of excessive force test not satisfied where uncontroverted evidence established that force was used not maliciously or

sadistically, but instead to transport the plaintiff in order to receive medical attention); [Houston v. Horn](), No. 09 Civ. 801(DLC), 2010 WL 1948612, at *12 (S.D.N.Y. May 13, 2010) (concluding that the plaintiff failed to satisfy subjective element of excessive force claim where he failed to submit proof that contradicted evidence that force was only used to restore discipline after the plaintiff failed to comply with an officer's order) ). As such, plaintiff has failed to establish the "necessary level of culpability, shown by actions characterized by wantonness." [Sims](), 230 F.3d at 21. Accordingly, it is recommended that defendants' motion on this ground be granted.

### D. First Amendment

**\*14**  Defendants move for summary judgment on plaintiff's retaliation claims as they pertain to C.O. Hoffman, Supt. Martuscello, and O.R.C. Iarusso. Plaintiff claims that: (1) C.O. Hoffman "falsified a misbehavior report which subjected [plaintiff] to confinement for retaliation ... because [plaintiff] filed a sexual assault complaint against T. Dahkle and was rumored by Coxsackie Correctional Officers to be working with the Office of Special Investigation," Am. Compl. ¶¶ 19, 20; (2) Supt. Martuscello threatened to invoke plaintiff's "deferred SHU time" if he continued to file grievances against Coxsackie staff, id. ¶¶ 39-41; and (3) O.R.C. Iarusso intentionally destroyed his grievances against Supt. Martuscello, id. ¶ 49.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]' " See, e.g., [Davis v. Goord](), 320 F.3d 346, 352 (2d Cir. 2003) (quoting [Dawes v. Walker](), 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by [Swierkiewicz v. Sorema, N. A.](), 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ). A retaliation claim under [Section 1983]() may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. See [Ashcroft v. Iqbal](), 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); [South Cherry St., LLC v. Hennessee Grp. LLC](), 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under [Section 1983](), a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " [Espinal v. Goord](), 558 F.3d 119, 126 (2d Cir. 2009) (quoting [Gill v. Pidlypchak](), 389

F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560, 122 S.Ct. 992).

To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity. See Espinal, 558 F.3d at 128. The Second Circuit has concluded that use of the prison grievance system constitutes a protected activity. See Gill, 389 F.3d at 384; Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) ("Moreover, intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") (alteration and internal quotation marks omitted); see also Roseboro v. Gillespie, 791 F.Supp.2d 353, 367 (S.D.N.Y. 2011) (finding that the filing of a grievance is a protected activity); Mateo v. Fischer, 682 F.Supp.2d 423, 433 (S.D.N.Y. 2010) (same). As plaintiff alleges that C.O. Hoffman, Supt. Martuscello, O.R.C. Iarusso retaliated against him because of his PREA complaint, plaintiff has satisfied the first prong of the test as he has engaged in a protected activity. See Gill, 389 F.3d at 384; Am. Compl. ¶¶ 19, 20, 39-41, 49.

### 1. C.O. Hoffman

Defendants argue that plaintiff's retaliation claim against C.O. Hoffman concerning the alleged falsified May 15, 2016 misbehavior report must fail because plaintiff cannot establish adverse action or causal connection. See Def. Mem. of Law at 15-16. In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." Davis, 320 F.3d at 353. "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga Cnty., 549 F.Supp.2d 204, 215 (N.D.N.Y. 2008). A defendant's retaliatory filing of a falsified misbehavior report that results in disciplinary segregated confinement constitutes adverse action. See Gill, 389 F.3d at 384 (finding that a false misbehavior report that resulted in the plaintiff's placement in keeplock constituted adverse action); Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (emphasis added) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.").

**\*15** The record indicates that plaintiff spent one day in keeplock as a result of the May 15, 2016 misbehavior report.

See Dkt. No. 58-7 at 2-4. Courts in this Circuit are split as to what length of time in disciplinary segregation constitutes adverse action. See Gill v. Hoadley, 261 F.Supp.2d 113, 123-24 (N.D.N.Y. 2003) (finding that keeplock confinement of four and twenty-one days constitutes adverse action); Gill v. Tuttle, 93 F. App'x 301, 303-04 (2d Cir. 2004) (summary order) (declining to grant summary judgment on the plaintiff's retaliation claim where the plaintiff spent nine days in keeplock). In Keesh v. Goord, the Western District of New York found that the plaintiff's one day in keeplock pursuant to an alleged false misbehavior report constituted adverse action where the record suggested that plaintiff may have been deprived of meals during his confinement. See Keesh v. Goord, No. 04-CV-0271, 2007 WL 2903682, at *10 (W.D.N.Y. Oct. 1, 2007). Similarly, in Gill v. Tuttle, the Second Circuit found that a "genuine, material question of fact [existed] as to whether a similarly situated person of ordinary firmness would have filed such a grievance, particularly in light of the continued denial of permission to attend religious callouts." Gill, 93 F. App'x at 304. Unlike in Keesh and Gill, there is no indication that plaintiff suffered adverse conditions such as lack of food or denial of religious services during his one-day confinement. See id.; Keesh, 2007 WL 2903682, at *10. As such, the undersigned declines to conclude that C.O. Hoffman's May 15, 2016 misbehavior report that resulted in one-day confinement in keeplock constituted an adverse action.

Even assuming plaintiff had established adverse action, the undersigned finds that such adverse action is not causally connected to plaintiff's filing of the PREA complaint against C.O. Dahkle. The plaintiff bears the burden of establishing that "the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Gayle, 313 F.3d at 682. A plaintiff "may do so with circumstantial evidence if it is 'sufficiently compelling[.]' " Kotler v. Donelli, 382 F. App'x 56, 57-58 (2d Cir. 2010) (summary order) (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) ).

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's

prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.

Baskerville v. Blot, 224 F.Supp.2d 723, 732 (S.D.N.Y. 2002).

Although C.O. Hoffman's misbehavior report occurred one month after plaintiff filed the PREA complaint against C.O. Dahkle, and, therefore, demonstrates temporal proximity between the protected activity and the adverse action, see Smith v. Miller, No. 15-CV-9561 (NSR), 2017 WL 4838322, at *8 (S.D.N.Y. Oct. 23, 2017) (concluding that the plaintiff had established temporal proximity where the plaintiff's grievance and the alleged false misbehavior report were separated by only one month), plaintiff fails to establish that his PREA complaint against C.O. Dahkle was a substantial or motivating factor in C.O. Hoffman's decision to issue him a misbehavior report. See Gayle, 313 F.3d at 682. Plaintiff seems to suggest that because C.O. Dahkle and C.O. Hoffman worked on the same unit floor on May 14 and 15, 2016, C.O. Hoffman was aware that plaintiff had filed a PREA complaint, see Pl. Opp. at 10; however, there is no indication that C.O. Hoffman knew of plaintiff's PREA complaint at the time he authored the misbehavior report. C.O. Hoffman declared that he was not aware of the PREA complaint on May 15, 2016. See Dkt. No. 58-14 ("Hoffman Decl.") ¶ 10. Plaintiff does not allege that C.O. Hoffman made any reference to the PREA complaint when he authored the misbehavior report on May 15, 2016. See Tirado v. Shutt, No. 13-CV-2848, 2015 WL 774982, at *10 (S.D.N.Y. Feb. 23, 2015) ("Absent evidence that any defendant knew about his ... grievance, [the plaintiff] has failed to provide any basis to believe that they retaliated against him for a grievance in which they were not named."), adopted in relevant part by 2015 WL 4476027 (S.D.N.Y. July 22, 2015); Am. Compl. ¶¶ 19, 20.

*16 To the extent that plaintiff references statements that C.O. Hoffman allegedly made on June 20, 2016 and July 7, 2016, warning plaintiff not to get comfortable in his housing unit because "[you] mess with one of the C.O.'s [you] got to deal with all of [us]," and stating that "you won't fucking quit complaining right, well the misbehavior report don't exist anymore" and "Dahkle said hi," the undersigned notes that the Court already concluded that these statements lacked the specificity and seriousness to deter inmates from exercising their First Amendment rights. See Dkt. No. 33 at 18-19. Moreover, plaintiff alleges that these statements were made

well after C.O. Hoffman issued the misbehavior report, and, therefore, do not establish that C.O. Hoffman had a retaliatory motive when he issued the misbehavior report on May 15, 2016.

Furthermore, the undersigned notes that retaliation is not "reasonably inferred" where a plaintiff's complaint does not involve the defendant alleged to have retaliated against him. Olutosin v. Lee, No. 14-CV-00685 (NSR), 2018 WL 4954107, at *11 (S.D.N.Y. Oct. 12, 2018) (citing Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) ). "Retaliation claims have been dismissed when they are supported only upon complaints against another officer." Jones v. Fischer, No. 9:10-CV-1331 GLS/ATB, 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013) (citing Hare v. Hayden, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") ). Plaintiff's speculation that C.O. Hoffman retaliated against him because of his PREA complaint against C.O. Dahkle is not supported by the record. Accordingly, it is recommended that defendants' motion on this ground be granted.

## 2. Supt. Martuscello

Defendants argue that plaintiff's retaliation claim against Supt. Martuscello must fail because plaintiff cannot establish adverse action or causal connection. See Def. Mem. of Law at 17-18. As to plaintiff's allegation that Supt. Martuscello threatened to invoke plaintiff's "deferred SHU time" if he continued to file grievances against Coxsackie staff, Am. Compl. ¶¶ 39-41, the undersigned concludes that this does not amount to adverse action. "Case law reflects that verbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered." Lunney v. Brureton, No. 04 CIV. 2438LAKGWG, 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007). Plaintiff contends that during an interview with Supt. Martuscello on June 11, 2016, Supt. Martuscello "started yelling at [him] about all [his] complaints to outside agencies" and reminded plaintiff of his deferred SHU time, "implying that if [plaintiff] continued to make a[n] issue, [Supt. Martuscello would] set [him] up and put [him] back in [SHU]." Am. Compl. ¶¶ 39-41. Supt. Martuscello declared that

an inmate who has been penalized with time in SHU may have any portion of that time deferred up to 180 days. The Hearing Officer who handles the disciplinary hearing makes the decision to defer time. If the inmate has no disciplinary infractions during the deferral period, the penalty is expunged. However, if the inmate has a subsequent disciplinary infraction during the deferral period, the deferred time may be invoked following a hearing on the subsequent disciplinary infraction.

Dkt. No. 58-17 ("Martuscello Decl.") ¶ 9. Although Supt. Martuscello declared that he did not recall meeting with plaintiff on June 11, 2016, he stated that, he recalled that plaintiff had several disciplinary infractions at Coxsackie, and, to the extent that he discussed plaintiff's deferred SHU time, "it would have been to remind him of the rules for deferred SHU time: that if he received a misbehavior report for a disciplinary infraction while he had deferred SHU time, the Hearing Officer could decide to invoke that deferred SHU time." Id. ¶ 13.

 *17  Although the undersigned previously found that, given the context and specificity of Supt. Martuscello's statements – referencing plaintiff's deferred SHU time and discussing plaintiff's grievances and complaints – similarly-situated person of ordinary firmness could be deterred from filing grievances, Dkt. No. 33 at 22, the fully developed record now establishes that, as Superintendent, Supt. Martuscello did not have the authority to determine whether to invoke an inmate's deferred SHU time. Martuscello Decl. ¶ 10. Moreover, the fact that Supt. Martuscello never followed through on his threats "softens the deterrent considerably." Mateo v. Fischer, 682 F.Supp.2d 423, 434 (S.D.N.Y. 2010).

Furthermore, as defendants note, insofar as Supt. Martuscello did make the alleged statements, there is no indication in the record that plaintiff's complaints and/or grievances were a substantial or motivating factor in doing so, as Supt. Martuscello declared that to the extent that he spoke about deferred SHU time with plaintiff, it would have been to remind him of the rules concerning the implementation of deferred SHU time. See Martuscello Decl. ¶ 15; Def. Mem. of Law at 17-18. As defendants further note, the record indicates that plaintiff's grievances against Supt. Martuscello post-date this alleged incident, and, therefore, cannot be the basis of plaintiff's retaliation claim. See Williams v. Smith, No. 9:11-CV-0601 (LEK/TWD), 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) ("Adverse actions that predate protected conduct cannot form the basis of a retaliation claim."); Am. Compl. ¶¶ 39, 42 (noting that the meeting between plaintiff and Supt. Martuscello occurred on June 11, 2016 and plaintiff filed a grievance against Supt. Martuscello on June 15, 2016). As such, plaintiff fails to demonstrate a causal connection between his protected conduct and Supt. Martuscello's alleged adverse action.

As plaintiff fails to set forth a prima facie retaliation claim against Supt. Martuscello, it is recommended that defendants' motion on this ground be granted.

### 3. O.R.C. Iarusso

Defendants argue that plaintiff's retaliation claim against O.R.C. Iarusso must fail because plaintiff cannot establish adverse action or causal connection. See Def. Mem. of Law at 18-19. O.R.C. Iarusso declared that on July 12, 2016, plaintiff attended a grievance hearing concerning a complaint about mail in SHU. See Dkt. No. 58-15 ("Iarusso Decl.") ¶ 12. Plaintiff attempted to discuss other grievances with O.R.C. Iarusso, who informed him that he would look into those grievances at a later date as the purpose of the hearing was to discuss the grievance regarding SHU mail. Id. ¶ 13. Plaintiff continued to discuss other grievances, and O.R.C. Iarusso informed him that he, "personally, would not file a grievance against the Superintendent" — meaning it was not his responsibility, as IGP Staff Representative, to file inmate grievances. Id. ¶¶ 11, 14.

To the extent that plaintiff interpreted O.R.C. Iarusso's statement as a threat, "[t]hreats made to an inmate, without more, do not rise to the level of a constitutional violation." Pledger v. Hudson, No. 99 CIV.2167LTS/THK, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005) (citing Dawes, 239 F.3d at 489). Even if plaintiff interpreted O.R.C. Iarusso's comment as a threatening to not file his grievance against Supt. Martuscello, the record indicates that plaintiff's grievance against Supt. Martuscello was filed and combined with grievance CX-19054-16. See Iarusso Decl. ¶ 20; Dkt. No. 58-5 at 35-45. As defendants note, plaintiff testified that

he knew that his grievance against Supt. Martuscello had been filed and consolidated with his grievance concerning loss of programs. Pl. Dep. at 163-64. As such, plaintiff fails to demonstrate that O.R.C. Iarusso took adverse action against him. Moreover, there is no indication in the record that plaintiff's complaints and/or grievances were a substantial or motivating factor in O.R.C. Iarusso's alleged threat. Accordingly, it is recommended that defendants' motion on this ground be granted.

**E. Supervisory Liability**

**\*18** "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) ). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation[;]

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;]

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;]

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (spacing added) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) ). However, where a plaintiff's sole claim of involvement of the supervisory defendant is that a superintendent affirmed a denial of a grievance, such is not sufficient to establish personal involvement. Joyner v. Greiner, 195 F.Supp.2d 500, 506 (S.D.N.Y. 2002). Moreover, a supervisor may delegate the responsibility to others, and personal involvement does not lie where the only allegation was that the defendant referred a complaint to the appropriate department or staff for investigation. See Ortiz-Rodriguez

v. N.Y. State Dep't of Corr. Servs., 491 F.Supp.2d 342, 347 (W.D.N.Y. 2007). Finally, assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. See, e.g., Brown v. Artus, 647 F.Supp.2d 190, 200 (N.D.N.Y. 2009).

Absent an underlying constitutional violation by a subordinate, there can be no supervisory liability. Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability").

Plaintiff alleges that Supt. Martuscello and DSS Shanley failed to protect him from C.O. Meier's alleged retaliation and excessive force. See Am. Compl. ¶ 32. Defendants argue that plaintiff "cannot demonstrate that [DSS] Shanley and [Supt.] Martuscello failed to act on his verbal complaints about [C.O.] Meier because, as an initial matter, an inmate's verbal complaints of threats by a Correction Officer are delegated to a Sergeant for investigation." Def. Mem. of Law at 24. Defendants further argue that Supt. Martuscello and DSS Shanley took steps to address plaintiff's concerns. See id. [9]

[9]     The undersigned addresses supervisory liability under the fifth Colon factor only as previously determined in the October 30, 2017 Report-Recommendation and Order. See Dkt. No. 33 at 35-37.

DSS Shanley declared that

> [w]hen an inmate makes a verbal complaint about alleged threats from a CO, a Sergeant is assigned to assess the credibility of the complaint and determine whether a formal investigation is required. As part of a formal investigation, the Sergeant will interview the inmate and direct the accused CO to provide written response to the allegations. Neither the Superintendent nor DSS are involved in the investigation. When an inmate files a grievance about alleged threats from a CO, the process is similar to the process for verbal complaints; the grievance is delegated

to a Sergeant to investigate the grievance, and that Sergeant will interview the inmate and direct the accused CO to provide a written response to the allegations. Neither the Superintendent nor DSS are involved in the grievance investigation. If an inmate makes a verbal complaint and files a grievance about alleged threats from a Correction Officer, the grievance investigation serves as the formal investigation on the verbal complaint in order to avoid duplicating efforts.

**\*19** Dkt. No. 58-16 ("Shanley Decl.") ¶¶ 13-15. If an inmate's complaint regarding a staff member is found to be credible, the investigation is referred to OSI. Id. ¶ 16. Both Supt. Martuscello and DSS Shanley declared that, as Superintendent and Deputy Superintendent of Security, respectively, they had no involvement in the investigation of plaintiff's complaints. See Martuscello Decl. ¶ 6; Shanley Decl. ¶ 13. Both defendants reference an exhibit attached to plaintiff's amended complaint that they argue demonstrates that plaintiff's complaints regarding C.O. Meier were being handled by other staff. See Martuscello Decl. ¶ 8; Shanley Decl. ¶ 18; Dkt. No. 12-2 at 13. However, as plaintiff notes, the May 19, 2016 letter from plaintiff's social work counselor pre-dates the May 23, 2016 meeting wherein plaintiff contends that he informed Supt. Martuscello and DSS Shanley of his complaints regarding C.O. Meier. Pl. Opp. at 18; Dkt. No. 12-2 at 13. Moreover, although the May 19, 2016 letter does state that "Mr. Martuscello is looking into [it] as he informed me - 'it is being handled,' " there is no indication that Supt. Martuscello was "looking into" plaintiff's complaints against C.O. Meier. See Dkt. No. 12-2 at 13.

The undersigned also notes that although defendants argue that the lack of documentation of plaintiff's verbal complaint and/or a subsequent investigation into that verbal complaint means that the assigned Sergeant found that plaintiff's complaint was not credible, Def. Mem. of Law at 24, plaintiff contends that he was never interviewed by a sergeant or other Coxsackie staff member. Pl. Opp. at 18. While C.O. Meier's alleged threats and verbal harassment do not amount to constitutional violations for which Supt. Martuscello and DSS Shanley can be held liable, they

can serve as "circumstantial evidence of [his] retaliatory intent" in the alleged use of excessive force against plaintiff. See Baskerville, 224 F.Supp.2d at 733 n.6 (finding that, although the defendant's comments "did not violate plaintiff's constitutional rights" as First Amendment harassment, the plaintiff's allegations "support[ed] his retaliation claim" as "circumstantial evidence of retaliatory intent."). [10] Drawing all reasonable inferences in plaintiff's favor, a rational jury could find that Supt. Martuscello was personally involved in the alleged constitutional violations because he was in a position to refer plaintiff's complaints regarding C.O. Meier to a sergeant for investigation, and there is no indication in the record that such referral occurred. As such, it is recommended that defendants' motion, as it pertains to Supt. Martuscello's referring plaintiff's complaints against C.O. Meier for investigation, be denied.

[10]   Notably, defendants do not move for summary judgment on plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims against C.O. Meier. See Def. Mem. of Law at 4 n.1.

As to DSS Shanley, the undersigned notes that Ms. Seguin declared that plaintiff failed to grieve his claim that DSS Shanley failed to protect him from C.O. Meier's alleged excessive force. Seguin Decl. ¶ 25. Although IGP regulations do not require that an inmate's grievance contain the name of the offending officer, Espinal, 558 F.3d at 126, prison officials must be afforded the time and opportunity to address a complaint internally, and "[i]n order to exhaust ... inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004). In grievance CX-19094-16, plaintiff specifically refers to Supt. Martuscello's "failure to take reasonable action to protect [him]," Dkt. No. 58-5 at 50; however, there is nothing in plaintiff's grievance that would alert prison officials to investigate a subsequent failure to intervene claim against DSS Shanley; thus, such claim was not properly grieved. See Luckerson v. Goord, No. 00 Civ. 9508(JSR), 2002 WL 1628550, at \*2 (S.D.N.Y. July 22, 2002) (determining the plaintiff's claim to be unexhausted and stating, "[f]or [the defendants] now to have to litigate a federal lawsuit premised on allegations that ... they had no reason to address [in the IGRC] would make a mockery of the exhaustion requirement."). Indeed, "the mere fact that plaintiff filed some grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." Turner v. Goord,

376 F.Supp.2d 321, 324 (W.D.N.Y. 2005). As such, it is recommended that defendants' motion, as it pertains to DSS Shanley, be granted.

**\*20** To the extent that plaintiff argues that Supt. Martuscello or DSS Shanley should have transferred him to a different facility or re-assign C.O. Meier to a different housing block, neither the Superintendent nor the Deputy Superintendent of Security have the authority to transfer inmates between facilities or assign corrections officers to housing blocks; these tasks are handled by the Office of Classification and Movement and the Chart Sergeants, respectively. Shanley Decl. ¶ 22.

Accordingly, it is recommended that defendants' motion be granted as to plaintiff's supervisory claims against DSS Shanley. It is further recommended that defendants' motion be denied on to plaintiff's supervisory claims against Supt. Martuscello.

### F. Qualified Immunity

Defendants argue that, even if plaintiff's First and Eighth Amendment claims are substantiated, they are entitled to qualified immunity. Def. Mem. of Law at 25-27. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F.Supp.2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test as to a majority of his claims. See subsection II.C.-D. supra, at 24-41. Because there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F.Supp.2d at 230. As to plaintiff's supervisory claims against Supt. Martuscello, the undersigned rejects defendants' argument that Supt. Martuscello was "acting in accordance with established constitutional rights when ... [he] referred [p]laintiff's verbal complaints to a Sergeant for handling" as there is no indication that such referral occurred. See subsection II.E. supra, at 41-46. Accordingly, it is recommended that defendants' motion on this ground be denied in part as to plaintiff's supervisory claim against Supt. Martuscello, and granted in part as to plaintiff's remaining claims.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' Motion for Partial Summary Judgment (Dkt. No. 58) be **GRANTED**, and the following claims be **DISMISSED with prejudice**:

(1) Insofar far as it seeks dismissal for plaintiff's failure to exhaust his First Amendment retaliation claims, Eighth Amendment excessive force claims, and supervisory liability claims,

**\*21** (2) Insofar as it seeks dismissal of plaintiff's Eighth Amendment sexual assault claim against C.O. Dahkle,

In the alternative, should the District Judge reach the merits of plaintiff's First Amendment, Eighth Amendment, and supervisory claims, it is recommended that defendants' Motion for Partial Summary Judgment be **GRANTED** as to plaintiff's (1) First Amendment retaliation claims against C.O. Hoffman, Supt. Martuscello, and O.R.C. Iarusso; (2) Eighth Amendment excessive force claims against C.O. Bence and C.O. Coon; (3) Eighth Amendment sexual assault claim against C.O. Dahkle; and (4) supervisory liability claim against DSS Shanley, and **DENIED** as to plaintiff's supervisory liability claim against Supt. Martuscello; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

**Hayes v. Dahlke, Slip Copy (2018)**

2018 WL 7356343

**IT IS SO ORDERED**.

**All Citations**

Slip Copy, 2018 WL 7356343

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 689234
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Taheen HAYES, Plaintiff,
v.
T. DAHKLE, et al., Defendants.

9:16-CV-1368 (TJM/CFH)
|
Signed 02/19/2019

**Attorneys and Law Firms**

Taheen Hayes, Elmira, NY, pro se.

Helena O. Pederson, New York State Attorney General, Albany, NY, for Defendants.

### DECISION & ORDER

Thomas J. McAvoy, Senior, U.S. District Judge

*1 This *pro se* action, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants violated Plaintiff's First and Eighth Amendment rights while he was incarcerated at Coxsackie (New York) Correctional Facility. The Court referred the action to the Hon. Christian F. Hummel, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation, dated December 11, 2018, recommends that the Court grant the Defendants' motion for summary judgment. See dkt. # 71. Magistrate Judge Hummel finds that the Defendant failed to exhaust his administrative remedies on all claims except an Eighth Amendment sexual assault claim against Defendant C.O. Dahkle, and recommends that the Court dismiss Plaintiff's First Amendment retaliation claims, Eighth Amendment

excessive force claims, and supervisory liability claims. Magistrate Judge Hummel also recommends that the Court dismiss Plaintiff's Eighth Amendment claim against Defendant Dahkle on the merits.

Plaintiff filed timely objections to the Report-Recommendation. See dkt. # 72. When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiffs' objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Hummel for the reasons stated in the Report-Recommendation. The Court finds that Plaintiff failed to exhaust his administrative remedies with respect to all claims except his Eighth Amendment claim against Defendant Dahkle, and that no reasonable juror could find for Plaintiff on that claim.

It is therefore **ORDERED** that Plaintiff's objections to the Report-Recommendation of Magistrate Judge Hummel, dkt. # 72, are hereby OVERRULED. The Report-Recommendation, dkt. # 71 is hereby ACCEPTED and ADOPTED, and the Defendants' Motion for Summary Judgment; dkt. # 58 is hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2019 WL 689234

---

**End of Document**                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 61 of 178

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 8008728

2015 WL 8008728
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric CASEY, Plaintiff,

v.

M. BROCKLEY, Correctional Officer, Great
Meadow Correctional Facility; H. Colvin,
Correctional Officer, Great Meadow Correctional
Facility; A. Mayo, Correctional Officer, Great
Meadow Correctional Facility; C. Goodrich,
Correctional Officer, Great Meadow Correctional
Facility; Wanninger, Correctional Officer, Great
Meadow Correctional Facility; H. Clapper,
Registered Nurse, Great Meadow Correctional
Facility; T. Hermance, Registered Nurse,
Great Meadow Correctional Facility; Boyce,
Registered Nurse, Great Meadow Correctional
Facility; and S. Racette, Superintendent, Great
Meadow Correctional Facility, Defendants.

9:13-CV-01271 (DNH/TWD)
|
Signed 11/09/2015

**Attorneys and Law Firms**

Eric Casey, 1881 Pitkin Avenue, Apt. 1C, Brooklyn, NY
11212, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of
New York, The Capitol, Ryan E. Manley, Esq., of Counsel,
Albany, NY 12224, for Defendants.

*ORDER AND REPORT-RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**I. INTRODUCTION**

*1 This pro se prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to me for
Report and Recommendation on the issue of exhaustion of
administrative remedies by the Honorable David N. Hurd,
United States District Judge, pursuant to 28 U.S.C. § 636(b)
and Local Rule 72.3(c). (Dkt. No. 49.) Plaintiff Eric Casey
asserts the following claims: (1) Eighth Amendment claim

resulting from excessive force used against him in violation
of his right to be free from cruel and unusual punishment; and
(2) Eighth Amendment violation resulting from the failure to
provide adequate medical care. (Dkt. No. 1 at 10–13. [1] )

[1]    Page numbers in citations to the amended complaint refer
to the page numbers assigned by the Court's electronic
filing system rather than to page numbers in the original
document.

Currently pending before the Court is Defendants' motion
to dismiss for failure to exhaust administrative remedies,
pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt.
No. 37.) For the reasons that follow, the Court recommends
that Defendants' motion to dismiss be granted without
prejudice as to all defendants.

**II. BACKGROUND**

At the time this action was commenced Plaintiff was a
prison inmate in Department of Corrections and Community
Supervision ("DOCCS") custody being held at Great
Meadow Correctional Facility ("GMCF"). (Dkt. No. 1 at 5.)
On May 22, 2013, at approximately 5:00 p.m., Plaintiff claims
that he was returning to his cell and was "hit from behind
in the back of [his] head with a hard object" as he entered
the stairwell area. (Dkt. No. 1 at 7.) Plaintiff claims that
he "fell to the floor and was brutally beaten" by Defendant
correctional officers M. Brockley ("Brockley"), H. Colvin
("Colvin"), A. Mayo ("Mayo"), C. Goodrich ("Goodrich"),
and Wanninger. (Dkt. No. 1 at 7.) Plaintiff claims that he
was "kicked, stomped, sexually humiliated, and beat[en] with
sticks all over [his] body...." (Dkt. No. 1 at 7.) Plaintiff claims
that he was referred to as " 'Rodney King' and other racial and
sexual slurs" while the beating took place. (Dkt. No. 1 at 7.)
Specifically, Plaintiff makes the following claims: Colvin and
Goodrich held Plaintiff's legs open so Brockley could kick
him the groin; Wanninger struck Plaintiff multiple times with
her baton; and Mayo beat Plaintiff's knees, shins, and ribs with
a cudgel. (Dkt. No. 1 at 8.) Plaintiff claims that the beating
lasted approximately five minutes. (Dkt. No. 1 at 8.)

Plaintiff was taken to a facility hospital and was treated
by Defendant Registered Nurses Boyce ("Boyce") and
Clapper ("Clapper"). (Dkt. No. 1 at 8.) Clapper prepared
an injury report that indicated Plaintiff had only "superficial
abrasions." (Dkt. No. 1 at 30.) Plaintiff claims that Clapper
and Boyce "intentionally downplayed the severity of [his]
injuries while disregarding the more serious ones ..." since
they were not mentioned in the injury report. (Dkt. No. 1

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 62 of 178

Casey v. Brockley, Not Reported in Fed. Supp. (2015)
2015 WL 8008728

at 8.) Plaintiff claims that Clapper only "questioned [him] from afar" and that Boyce only "electronically check[ed] [his] vital signs." (Dkt. No. 1 at 9.) Plaintiff claims that Defendant Registered Nurse Hermance "utilized her time falsifying business records ..." to indicate that Colvin, Mayo, and Brockley suffered injuries rather than providing medical care. (Dkt. No. 1 at 8.) Photographs of Plaintiff were taken prior to leaving the hospital. (Dkt. No. 1 at 33–39.)

*2 Plaintiff claims that, in addition to what was indicated on the injury report, he suffered the following injuries: (1) swelling above his left eye; (2) three linear-shaped abrasions above left eye swelling; (3) bruise on the left side of his face; (4) swelling to the left side of his face; (5) swelling above his right eye; (6) swelling to his upper right forehead; (7) swelling near the center of his back; (8) linear-shaped laceration on his left shin; (9) left shin bone injury; (10) right knee injury; (11) left pinky bone injury; and (12) left rib injury. (Dkt. No. 1 at 10.)

On June 3, 2013, Plaintiff filed Inmate Grievance Complaint GM–55615–13, alleging "cruel and unusual punishment, excessive force, and inadequate medical care." (Dkt. No. 1 at 18–19.) After receiving no response from then GMCF superintendent Defendant S. Racette ("Racette"), within the allotted twenty-five day time period, Plaintiff appealed to the Central Office Review Committee ("CORC"). (Dkt. No. 1 at 4.) On July 22, 2013, S. Pelo ("Pelo"), the grievance supervisor, asked Plaintiff for an extension to the investigation period "to allow for a proper investigation." (Dkt. No. 1 at 22.) Pelo also informed Plaintiff that "CORC will still have to wait for the investigation [to be completed] before they can render a decision." (Dkt. No. 1 at 22.) Plaintiff denied Pelo's extension request citing his "statutory right to appeal." (Dkt. No. 1 at 4.) On August 7, 2013, Pelo confirmed that the appeal had been submitted to CORC and notified Plaintiff that a decision was forthcoming. (Dkt. No. 1 at 23.) On October 15, 2013, after not receiving a response from CORC within the allotted thirty day time period, Plaintiff commenced this action.[2] (Dkt. No. 1 at 4.)

[2]    The Court is unaware whether CORC has issued a response to Plaintiff's grievance.

## III. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6) motion

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Bush v. Masiello, 55 F.R.D. 72, 74 (S.D.N.Y.1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face." Twombley. 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " does not suffice. Id. (citation omitted).

*3 "In reviewing a complaint for dismissal under Rule 12(b) (6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994) (citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009) (courts remain obligated to construe pro se complaints liberally even after Twombly ).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 8008728

amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

**B. The Prison Litigation Reform Act of 1996**
As succinctly outlined by my colleague, Magistrate Judge David E. Peebles:

> The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action.... Proper exhaustion requires a plaintiff to procedurally exhaust his or her claims by complying with the system's critical procedural rules. Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken.

*Bailey v. Fortier,* 09–CV–0742 (GLS/DEP), 2012 WL 6935254, at *4, 2012 U.S. Dist. LEXIS 185178, at *11–13 (N.D.N.Y. Oct. 4, 2012) (citations and punctuation omitted). [3] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution in which they are confined. *Jones v. Bock,* 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 88 (2006)). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [4] *Woodford,* 548 U.S. at 93.

[3]  The Court will provide Plaintiff with copies of all unpublished decisions cited in this Order in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

[4]  "[A]n inmate would be well advised to take advantage of internal prison procedures for resolving inmate grievances. When those procedures produce results, they will typically do so faster than judicial processes can. And even when they do not ..., the inmate's task in court will obviously be much easier." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994).

**C. Inmate Grievance Program**
**\*4** Exhaustion for a prison inmate in DOCCS custody is normally achieved through the Inmate Grievance Program ("IGP"). 7 N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.1 (2012). The IGP involves a three-step process. *Id.* at § 701.5. First, the prison inmate must submit a grievance to the clerk within twenty-one days of the alleged action. *Id.* at § 701.5(a)(1). The Inmate Grievance Program Committee ("IGPC") must hold a hearing within sixteen days and issue a written decision within two days of the hearing. *Id.* at §§ 701.5(b)(2)(i), (ii). Second, the prison inmate may appeal the IGPC's decision, within seven days of receipt, to the facility superintendent. *Id.* at § 701.5(c)(1). Third and finally, the prison inmate may appeal the facility superintendent's decision to CORC, within seven days of receipt. *Id.* at §§ 701.5(d)(i), (ii). CORC has thirty days to review the appeal and issue a decision. *Id.* at § 701.5(d)(2)(ii).

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 8008728

## D. *Hemphill v. State of New York*

Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer*, No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *4, 2010 U.S. Dist. LEXIS 32014, at *16 (N.D.N.Y. Mar. 31, 2010); *Bailey*, 2012 WL 6935254, at *6 (the party asserting failure to exhaust bears the burden of proving its elements by a preponderance of the evidence); *see also Andrews v. Whitman*, No. 06–2447–LAB (NLS), 2009 WL 857604, at *6, 2009 U.S. Dist. LEXIS 30017, at *16 (S.D.Cal. Mar. 27, 2009) (defendant must prove non-exhaustion of administrative remedies by a preponderance of the evidence).

If a defendant meets that burden, however, a plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir.2004) ]." *Murray*, 2010 WL 1235591, at *4. *Hemphill* sets forth a three-part inquiry for district courts. First, courts must determine if administrative remedies are in fact available to plaintiff. In *Hemphill*, the Second Circuit stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed 'a available." *Hemphill*, 380 F.3d at 688. Courts have found administrative grievance procedures unavailable where an inmate was prevented from filing a grievance. *See, e.g.*, *Sandlin v. Poole*, 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals ... effectively rendered the grievance appeal process unavailable to him.").

Second, courts must determine if the defendants are estopped from presenting non-exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by " 'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.' " *Hemphill*, 380 F.3d at 688 (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir.2004)). Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals.

*Murray*, 2010 WL 1235591, at *5 & n.26 (collecting cases); *McCloud v. Tureglio*, No. 07–CV–0650, 2008 WL 1772305, at *12, 2008 U.S. Dist. LEXIS 124388, at *44 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

**\*5** Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified.[5] *Hemphill*, 380 F.3d at 686. "Special circumstances" have been found to include an incorrect but reasonable interpretation of the applicable grievance process or failing to file a grievance in the precise manner prescribed by the process as a result of threats. *See, e.g., Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir.2004) (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate).

[5]     Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83–84. The Supreme Court resolved the question in the negative, explaining that the PLRA requires "proper exhaustion" – "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id.* at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases. *See, e.g.*, *Amador v. Andrews*, 655 F.3d 89, 102–03 (2d Cir.2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense).

## IV. ANALYSIS

### A. Plaintiff Failed to Properly Exhaust Administrative Remedies

Case 9:18-cv-00336-AMN-TWD Document 20 Filed 08/29/19 Page 65 of 178

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 8008728

If a prison inmate fails to follow each of the applicable steps prior to commencing litigation, he has failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 90 (the PLRA requires "proper exhaustion"—"using all steps that the agency holds out, and doing so properly so that the agency addressed the issues on the merits"). Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir.2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002). Because Plaintiff commenced this action before CORC issued a decision on his appeal, the Court finds that he failed to exhaust his administrative remedies.

### B. *Hemphill* Analysis

As noted above, an exhaustion review does not end when, as in this case, defendants are found to have met the burden of establishing a plaintiff's failure to exhaust because the Court must still undertake an analysis of the *Hemphill* factors. *See Hemphill*, 380 F.3d at 686

Here, there is no dispute that at all relevant times, DOCCS had the IGP available for Plaintiff and other prison inmates. *See* 7 N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.1 (2012); *Taylor v. Chalom*, No. 9:10–CV–1494 (NAM/DEP), 2011 WL 6942891, at *4, 2011 U.S. Dist. LEXIS 150512, at *12 (N.D.N.Y. Dec. 13, 2011) (The IGP is "recognized as an 'available' remedy for purposes of the PLRA."). Plaintiff undoubtedly had administrative remedies available to him since, on June 3, 2013, he filed Inmate Grievance Complaint GM–55615–13 alleging "cruel and unusual punishment, excessive force, and inadequate medical care." (Dkt. No. 1 at 18–19.) Plaintiff does not allege that his failure to properly exhaust available administrative remedies was due to administrative remedies being unavailable to him. (Dkt. No. 39.) Plaintiff also does not allege that the named Defendants prevented him from properly exhausting available administrative remedies and should thus be estopped from asserting the defense. (Dkt. No. 39.)

*6 Finally, there are no special circumstances that would justify Plaintiff's failure to properly exhaust available administrative remedies. (Dkt. No. 39.) Plaintiff argued that his administrative remedies were sufficiently exhausted because his CORC appeal was not decided in a timely manner. Justification "must be determined by looking at the circumstances which might understandably lead ...

uncounseled prisoners to fail to grieve in the normally required way." *Giano*, 380 F.3d at 678. As noted above, generally, the "special circumstances" doctrine is applied where a prisoner has been threatened with physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterprets the statutory requirements of the appeals process. *Id.* at 676. CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust. *See Ford v. Smith*, No. 9:12–CV–1109 (TJM/TWD), 2014 WL 652933, at *3, 2014 U.S. Dist. LEXIS 20581, at *8–9 (N.D.N.Y. Jan. 16, 2014) (citations omitted). *Rodriguez v. Rosner*, No. 9:12–CV–958, 2012 WL 7160117, 2012 U.S. Dist. LEXIS 186228 (N.D.N.Y. Dec. 5, 2012) (dismissing complaint for failure to exhaust where prisoner filed appeal with CORC on May 4, filed federal civil rights complaint on June 10, and received CORC response dated September 26).

## V. CONCLUSION

The Second Circuit "has recognized that failure to exhaust administrative remedies is usually a 'curable procedural flaw' that can be fixed by exhausting those remedies and then reinstituting suit." *Neal*, 267 F.3d at 123 (citing *Snider v. Melindez*, 199 F.3d 108, 11–12 (2d Cir.1999)). The Court finds dismissal without prejudice for failure to exhaust to be proper in this case.

The parties have not provided information to the Court regarding if and when CORC issued a decision on Plaintiff's appeal. If CORC issued a response to Plaintiff's grievance subsequent to the commencement of this action on October 15, 2013, the Court recommends that the complaint be dismissed without prejudice for failure to exhaust and that Plaintiff be granted leave to refile his complaint upon the filing of a Decision and Order by the District Court on this Court's Report and Recommendation. If CORC has not as yet issued a response, the Court recommends that the complaint be dismissed without prejudice, that CORC be directed to render a decision on Plaintiff's pending grievance appeal within thirty days of the filing of the District Court's Decision and Order on this Report–Recommendation, and that upon CORC's failure to do so, Plaintiff's administrative remedies be deemed unavailable to him and he be allowed to refile this suit indicating such.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss Plaintiff's complaint (Dkt. No. 37) in this action be

**GRANTED**, and that the complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**, based upon Plaintiff's failure to fully exhaust his administrative remedies; and it is further

**RECOMMENDED** that: (1) in the event CORC has rendered a decision on Plaintiff's appeal on Inmate Grievance Complaint GM–55615–13, Plaintiff be granted leave to refile this suit upon the filing of a Decision and Order by the District court on this Court's Report–Recommendation; and (2) in the event CORC has not rendered a decision on Plaintiff's appeal, that CORC be directed to render a decision on Plaintiff's pending grievance within thirty days of the filing of the District Court's Decision and Order on this Report–Recommendation; and (3) if Plaintiff does not receive a decision from CORC within that time, administrative remedies may be deemed unavailable to him and he may therefore be excused from exhausting his administrative remedies and may refile this suit indicating such; and it is

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report–Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW***. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 8008728

---

**End of Document** <span style="float:right">© 2019 Thomson Reuters. No claim to original U.S. Government Works.</span>

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 67 of 178

Casey v. Brockley, Not Reported in Fed. Supp. (2015)

2015 WL 7864161

2015 WL 7864161
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eric CASEY, Plaintiff,

v.

M. BROCKLEY, Correctional Officer, Great
Meadow Correctional Facility; H. Colvin,
Correctional Officer, Great Meadow Correctional
Facility; A. Mayo, Correctional Officer, Great
Meadow Correctional Facility; C. Goodrich,
Correctional Officer, Great Meadow Correctional
Facility; Wanninger, Correctional Officer, Great
Meadow Correctional Facility; H. Clapper,
Registered Nurse, Great Meadow Correctional
Facility; T. Hermance, Registered Nurse,
Great Meadow Correctional Facility; Boyce,
Registered Nurse, Great Meadow Correctional
Facility; and S. Racette, Superintendent, Great
Meadow Correctional Facility, Defendants.

9:13-CV-01271 (DNH/TWD)
|
Signed December 2, 2015
|
Filed 12/03/2015

**Attorneys and Law Firms**

Eric Casey, Plaintiff pro se, Brooklyn, NY.

Hon. Eric T. Schneiderman, Attorney General for the State of
New York, Attorneys for Defendants, The Capitol, Ryan E.
Manley, Esq., Ass't Attorney General, Albany, NY.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff Eric Casey brought this action pursuant
to 42 U.S.C. § 1983. On November 9, 2015, the Honorable
Thérèse Wiley Dancks, United States Magistrate Judge,
advised by Report-Recommendation that defendants' motion

pursuant to Federal Rule of Civil Procedure 12(b)(6) be
granted and that plaintiff's complaint be dismissed without
prejudice. The Report-Recommendation was predicated upon
the fact that neither party provided information regarding if
and when Central Office Review Committee ("CORC") had
issued a decision on plaintiff's appeal. No objections to the
Report-Recommendation were filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-
Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore it is

ORDERED that

1. Defendants' motion is GRANTED;

2. Plaintiff's complaint is DISMISSED without prejudice in
its entirety;

3. In the event CORC has rendered a decision on plaintiff's
appeal, plaintiff is granted thirty (30) days from the filing
of this Decision and Order to refile this suit indicating the
outcome of the appeal;

4. However, if within thirty (30) days of the filing of
this Decision and Order CORC has not issued a decision,
plaintiff's administrative remedies will be deemed unavailable
to him and he will be allowed to refile this suit. Plaintiff
will have sixty (60) days from the filing of this Decision and Order
to file an amended complaint indicating such; and

5. The Clerk of the Court is directed to serve a copy of this
Decision and Order on the parties in accordance with the
Local Rules. The Clerk is further directed to enter judgment
accordingly and close the file.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 7864161

2014 WL 652933
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Corey FORD, Plaintiff,
v.
Joseph T. SMITH, Neville Andrews, Defendants.

No. 9:12–CV–1109 (TJM/TWD).
|
Feb. 19, 2014.

**Attorneys and Law Firms**

Corey Ford, Wallkill, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Keith A. Muse, Esq., of Counsel, Albany, NY, for Defendants.

### *DECISION and ORDER*

THOMAS J. McAVOY, Senior District Judge.

### I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S .C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). In her January 16, 2014 Report–Recommendation and Order (Dkt. No. 44), Magistrate Judge Dancks recommends that Defendants' motion for summary judgment (Dkt. No. 39) be granted and Plaintiff's motion for summary judgment (Dkt. No. 33) be denied as moot. No objections to the Report–Recommendation and Order have been filed, and the time to do so has expired.

### II. DISCUSSION

After examining the record, this Court has determined that the ReportRecommendation and Order is not subject to attack for plain error or manifest injustice.

### III. CONCLUSION

Accordingly, the Court **ADOPTS** the Report–Recommendation and Order for the reasons stated therein. Defendants' motion for summary judgment (Dkt. No. 39) is

**GRANTED,** and Plaintiff's motion for summary judgment (Dkt. No. 33) is **DENIED** as moot.

**IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION and ORDER*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Corey Ford claims that Defendants violated his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act by denying him religious meals associated with the observances of Id–Ul–Fitr and Id–Ul–Adha. (Dkt. No. 1.) Currently pending before the Court are Plaintiff's motion for summary judgment (Dkt. No. 33) and Defendants' cross-motion for summary judgment (Dkt. No. 39) pursuant to Federal Rule of Civil Procedure 56. Because Plaintiff admits that he failed to exhaust his administrative remedies before filing this action and there is no evidence that this failure was justified, I recommend that the Court grant Defendants' motion and deny Plaintiff's motion as moot.

### I. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 & n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc. .,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material [1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008).

[1]   A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson, 477 U.S. at 248.*

## II. ANALYSIS

 **\*2**   Defendants argue that this action must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing his complaint. (Dkt. No. 39–4 at 14–17. [2]) Defendants are correct.

[2]   Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock,* 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id* . at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id.* at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* at 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3) (ii).

 **\*3**   If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford,* 548 U.S. at 93. Receiving a decision from CORC *after* filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any such action much be dismissed without prejudice. *Neal v. Goord,* 267 F.3d 116, 122–23 (2d Cir.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

Here, Plaintiff filed his complaint on July 13, 2012. (Dkt. No. 1.) Plaintiff admits that he did not receive a decision from CORC until September 5, 2012. (Dkt. No. 41–2 at 21.) Thus, Plaintiff failed to exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). [3] First, "the court must ask whether [the] administrative remedies [not pursued by the

prisoner] were in fact 'available' to the prisoner." *Id.* at 686 (citation omitted). Second, if those remedies were available:

> [3] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368. *Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011).

> the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of nonexhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, as discussed above, administrative remedies were available to Plaintiff. Indeed, Plaintiff admits that he pursued those remedies. (Dkt. No. 41–2 at 20–21.) Defendants preserved the exhaustion defense by pleading it in their answer. (Dkt. No. 15 ¶ 17; *Jones,* 549 U.S. at 216; *Alster v. Goord,* 745 F.Supp.2d 317, 332 (S.D.N.Y.2010).) There is no evidence in the record that Defendants' own conduct estops them from asserting the exhaustion defense. *Cf. Ziemba v. Wezner,* 366 F.3d 161, 162–64 (2d Cir.2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison).

Read broadly, Plaintiff's opposition papers argue that special circumstances justify his failure to exhaust before filing suit. Specifically, Plaintiff argues that his failure to exhaust was justified because CORC took six months to respond to his appeal rather than the thirty days allowed by the regulations. (Dkt. No. 41–2 at 21.) Justification "must be determined by looking at the circumstances which might understandably lead ... uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004). Generally, the 'special circumstances' doctrine is applied where a prisoner has been threatened with

physical retaliation for exhausting administrative remedies or where the prisoner reasonably misinterprets the statutory requirements of the appeals process. *Id.* at 676. CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust. *See Rodriguez v. Rosner,* No. 9:12–CV–958 (TJM/ATB), 2012 U.S. Dist. LEXIS 186228, 2012 WL 7160117 (N.D.N.Y. Dec.5, 2012) (dismissing complaint for failure to exhaust where prisoner filed appeal with CORC on May 4, filed federal civil rights complaint on June 10, and received CORC response dated September 26). [4] Therefore, I recommend that the Court find that Plaintiff's failure to exhaust is not excused and dismiss this action without prejudice.

> [4] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**\*4  ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 39) be *GRANTED;* and it is further

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 33) be *DENIED AS MOOT;* and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Rodriguez v. Rosner,* No. 9:12–CV–958 (TJM/ATB), 2012 U.S. Dist. LEXIS 186228, 2012 WL 7160117 (N.D.N.Y. Dec.5, 2012).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp.2013); Fed.R.Civ.P. 72, 6(a).

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 652933

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 3955484
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

RIGER MAYANDEUNAS, f/k/
a Mayan Duenas Riger, Plaintiff,

v.

BIGELOW, Corr. Officer, f/k/a Officer Bigelow;
HARRIMAN, Nurse Admin.; FULLER, Corr.
Officer; BURGO, Corr. Officer; MAURER, Corr.
Officer; and DIXON, Corr. Sgt., Defendants.

9:18-CV-1161 (GTS/TWD)
|
Filed 08/22/2019

**Attorneys and Law Firms**

APPEARANCES:

RIGER MAYANDEUNAS, 15-R-1240, Plaintiff, Pro Se,
Attica Correctional Facility, Box 149, Attica, New York
14011

HON. LETITIA A. JAMES, Attorney General for the State
of New York, Counsel for Defendants, The Capitol, Albany,
New York 12224, OF COUNSEL: KONSTANDINOS D.
LERIS, ESQ., Assistant Attorney General

**DECISION and ORDER**

Hon. Glenn T. Suddaby Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* prisoner civil
rights action filed by Riger Mayandeunas ("Plaintiff") against
the six above-captioned employees of the New York State
Department of Corrections and Community Supervision or
"DOCCS" ("Defendants"), are (1) United States Magistrate
Judge Thérèse Wiley Dancks' Report-Recommendation
recommending that the Court deny Defendants' motion for
summary judgment based on Plaintiff's failure to exhaust
his available administrative remedies, and (2) Defendants'
Objections to the Report-Recommendation. (Dkt. Nos.
36, 40.) For the reasons set forth below, Defendants'
Objections are rejected, Report-Recommendation is accepted
and adopted in its entirety, and Defendants' motion for
summary judgment is denied.

## I. RELEVANT BACKGROUND

### A. Magistrate Judge Dancks' Report-Recommendation

Generally, in her Report-Recommendation, Magistrate Judge
Dancks rendered the following three findings of fact and
conclusions of law: (1) although Plaintiff has failed to
comply with Local Rule 7.1(a)(3)'s requirement that he
properly respond to Defendants' Statement of Undisputed
Material Facts, the Court can, and should, excuse that
failure and conduct a *sua sponte* review of the record; (2)
although a district-court split exists in the Second Circuit
regarding whether a failure by DOCCS' Central Office
Review Committee ("CORC") to timely decide a prisoner's
grievance appeal for a period of 134 days [1] renders the
prisoner's administrative remedies unavailable after *Ross
v. Blake*, 136 S. Ct. 1850 (2016), the Court should adopt
the view of the better-reasoned courts, which answer that
question in the affirmative; and (3) although Plaintiff requests
that Defendants be "sanctioned" pursuant to Fed. R. Civ. P.
56(h) for submitting a declaration in bad faith, the Court
should reject that request as meritless. (Dkt. No. 36, at Parts
IV and V.)

[1]     Although Magistrate Judge Dancks characterizes this
period as 136 days (consisting of the period between
when CORC's decision was due on May 13, 2018,
and when Plaintiff's Complaint was received and
docketed by the Clerk's Office on September 26,
2018), the undersigned characterizes this period as 134
days (consisting of the period between when CORC's
decision was due on May 13, 2018, and when Plaintiff's
Complaint was signed and thus deemed "filed" pursuant
to the Prison Mailbox Rule on September 24, 2018).

### B. Defendants' Objections to the Report-Recommendation

Generally, in their Objections, Defendants assert the
following two arguments: (1) Magistrate Judge Dancks erred
by not accepting as uncontroverted the supported facts
asserted in Defendants' Statement of Undisputed Material
Facts; and (2) Magistrate Judge Dancks erred by finding that a
134-day delay by CORC in timely deciding Plaintiff's appeal
renders his administrative remedies unavailable under the
Supreme Court's decision in *Ross*. (Dkt. No. 39.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(C). [2] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [3] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[2] *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[3] *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations

omitted]; *Pan. Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*2** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [5]

[4] *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y.

July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

5    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

The Court begins by finding that both of the arguments asserted by Defendants in their Objections are simply reiterations of arguments asserted in the reply brief that they submitted to Magistrate Judge Dancks before she issued her Report-Recommendation. (*Compare* Dkt. No. 39, at 1-4 [Defs.' Obj.] *with* Dkt. No. 33, at 2-3 [Defs.' Reply Brief].) As a result, the Court need submit those arguments to only a clear-error review. *See, supra*, Part II of this Decision and Order.

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear error in that Report-Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein.

In any event, even if the Court were to subject the two "challenged" portions of the Report-Recommendation to *de novo* review, the Court would find that those portions survive that review for the reasons discussed below.

### A. Defendants' First Objection

With regard to Defendants' first objection, the Court rejects any suggestion that the law does not bestow upon federal judges the discretion to excuse a *pro se* civil rights litigant of the consequences of failing to specifically deny (with adequate evidentiary support) the supported factual assertions of a summary judgment movant, and the discretion to conduct a *sua sponte* review of the record. (Dkt. No. 39, at 1-2 [Defs.'

Obj.].) Clearly, federal judges possess such discretion. *See, e.g., Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000). Morever, while the undersigned generally prefers not to invoke that discretion out of fairness to both sides and respect for the adversarial system, he has done so certain times, even in the case of represented non-movants. *See, e.g., Stephenson Equip. v. ATS Specialized, Inc.*, 10-CV-1517, 2013 WL 4508444, at *4 (N.D.N.Y. Aug. 23, 2013) (Suddaby, J.). As long as such a judge does not find a supported factual assertion to have been controverted by admissible record evidence *in error*, such an exercise of discretion remains permissible (especially where, as here, the record is not particularly lengthy).

**\*3**    Similarly, the Court rejects any suggestion that Magistrate Judge Dancks has not found to be uncontroverted the supported facts in Defendants' Statement of Undisputed Material Facts. (Dkt. No. 39, at 1-2 [Defs.' Obj.].) Magistrate Judge Dancks' recitation of the factual background in her Report-Recommendation tracks the factual assertions in Defendants' Rule 7.1 Statement, except for the last such assertion. (*Compare* Dkt. No. 36, at 2-3 [Report-Recommendation] *with* Dkt. No. 14, Attach. 8 [Defs.' Rule 7.1 Statement].) That last assertion is more akin to a legal conclusion than a factual assertion (given that whether or not Plaintiff has exhausted his available administrative remedies is the ultimate question before the Court). (Dkt. No. 14, Attach. 8, at ¶ 16 [Defs.' Rule 7.1 Statement, asserting, "Plaintiff did not properly exhaust his administrative remedies pursuant to the guidelines set forth in 7 N.Y.C.R.R. § 701.5 *et seq*, relating to the alleged incident of January 14, 2018."].)

### B. Defendants' Second Objection

With regard to Defendants' second objection, the Court rejects any suggestion that Magistrate Judge Dancks may have based her recommendation on the fact that CORC has not even decided Plaintiff's grievance appeal as of the date of the Report-Recommendation. (Dkt. No. 39, at 2 [Defs.' Obj.].) The Court construes the sentence of the Report-Recommendation to which counsel refers as merely eliminating the issue that would arise had CORC issued such a decision between the 239 days that elapsed between when Plaintiff filed this action (on September 24, 2018) and when the Report-Recommendation was issued (on May 21, 2019). (Dkt. No. 36, at 11 [Report-Recommendation, stating, "Moreover, there is no indication that CORC has ever addressed grievance CLA-07875-18, even to the present

day."].) Succinctly stated, CORC's failure to issue a decision has simplified the issue. [6]

> [6]   The Court notes that, had Defendants not wanted that fact mentioned in the Report-Recommendation, they probably should have not have asserted a similar fact in their Statement of Undisputed Material Facts. (Dkt. No. 14, Attach. 8, at ¶ 15 [Defs.' Rule 7.1 Statement, stating, "Plaintiff's grievance appeal is still pending a CORC determination"].)

Turning to the thrust of Defendants' second objection (which focuses on the split in district court cases within the Second Circuit regarding whether a failure by CORC to timely decide an appeal for a period of 134 days renders a prisoner's administrative remedies unavailable for purposes of *Ross v. Blake*, 136 S. Ct. 1850 [2016]), the undersigned has scrutinized the numerous district court decisions cited by Magistrate Judge Dancks in her Report-Recommendation and counsel in Defendants' Objections. (Dkt. No. 36, at 12-15 [Report-Recommendation]; Dkt. No. 39, at 2-4 [Defs.' Obj.].) With regard to those cases, the Court makes six observations.

First, the Court finds to be more persuasive the on-point decisions that expressly apply *Ross*, which relied on the concepts of regulations being a "dead end" and/or too "opaque." *Ross*, 136 S. Ct. at 1859. [7] The Court finds to be less persuasive the decisions that are not on point, [8] that were issued before *Ross* (on June 6, 2016), or that do not expressly apply *Ross*. [9]

> [7]   *See, e.g., Bell v. Napoli*, 17-CV-0850, 2018 WL 6506072 (N.D.N.Y. Dec. 11, 2018) (Baxter, M.J.); *High v. Switz*, 17-CV-1067, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (Kahn, J.), *adopting*, 2018 WL 3736794 (N.D.N.Y. July 9, 2018) (Stewart, M.J.); *Rodriguez v. Reppert*, 14-CV-0671, 2016 WL 6993383 (W.D.N.Y. Nov. 11, 2016), *adopting*, 2016 WL 11483439 (W.D.N.Y. Sept. 28, 2016).

> [8]   *See, e.g., Rodriguez v. Heit*, 16-CV-0706, 2018 WL 3121626, at *3-4 (N.D.N.Y. March 30, 2018) (addressing circumstances in which federal complaint was filed before *timely* appellate administrative decision), *adopted*, 2018 WL 2316687 (N.D.N.Y. May 22, 2018).

> [9]   *See, e.g., Staples v. Patane*, 17-CV-0703, 2018 WL 7361009 (N.D.N.Y. Dec. 7, 2018), *adopted*, 2019 WL 757937 (N.D.N.Y. Feb. 20, 2019); *Berkley v. Ware*, 19-CV-1326, 2018 WL 3736791 (N.D.N.Y. July 6, 2018);

*adopted*, 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018); *Toliver v. Stefinik*, 12-CV-0077, 2016 WL 3349316 (N.D.N.Y. June 15, 2016).

**\*4** Second, too often, the cited cases fail to focus on the delay between the date that a decision by CORC was due (i.e., 30 days after the prisoner's filing of his appeal to CORC) and the date that the prisoner's federal court complaint was signed (which, pursuant to the Prison Mailbox Rule, is the date of the filing of the prisoner's court action). [10] In the undersigned's opinion, that time period is the relevant one for purposes of deciding the issue presented in the second argument of Defendants' Objections. [11]

> [10]   *See, e.g., Rodriguez v. Reppert*, 14-CV-0671, 2016 WL 6993383 (W.D.N.Y. Nov. 11, 2016), *adopting*, 2016 WL 11483439 (W.D.N.Y. Sept. 28, 2016) (indicating that the CORC appeal was filed on May 20, 2014, meaning the decision was due on June 19, 2014, and indicating that the complaint was filed on August 13, 2014, without mentioning that it was dated July 6, 2014, and thus "filed" pursuant to the Prison Mailbox Rule on that date, a mere seventeen days after the due date of the CORC decision).

> [11]   *Cf. Gizewski*, 692 F. App'x at 670, n.3 ("The eventual denial [of the appeal to CORC] does not cure the failure to exhaust [because] [s]ubsequent exhaustion after suit is filed is insufficient.") (internal quotation marks and citations omitted).

Third, even applying the rule as set forth in *Ross*, the undersigned has trouble following any district court cases finding that a prisoner may rush to court immediately after the expiration of the thirty-day deadline for a CORC decision. Setting aside the argument that no "dead end" has yet occurred under *Ross*, the Court notes that 7 N.Y.C.R.R. 701.5 requires an appellant to wait 45 days from the due date of a mere written notice of receipt, making it difficult to believe that the appellate should not also have to wait at least 15 days from the due date of a written decision before filing suit. *See* 7 N.Y.C.R.R. 701.5(d)(3)(i) ("If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.").

Fourth, having said that, the Court also has trouble finding that the Second Circuit would not place a reasonable limit on the time in which CORC must issue a decision (or have the prisoner's appeal be deemed by federal court

to be effectively denied). In *Gizewski*, the Second Circuit "assume[ed] arguendo that the [80-day] delay [between when the plaintiff filed his appeal to CORC on November 12, 2013, and when he dated and thus 'filed' his complaint in the N.D.N.Y.on January 31, 2014] ... constituted [a] constructive denial [of his appeal]," before agreeing with the defendants' failure-to-exhaust argument on another ground. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 692 F. App'x 668, 670 (2d Cir. 2017). The undersigned construes this argumentative assumption as, at the very least, an indication that a limit is within the realm of possibility.

Fifth, counsel places too much reliance on the undersigned's ruling in *Monroe v. Kociensky*, 17-CV-1050, 2019 WL 409412 (N.D.N.Y. Feb. 1, 2019) (Suddaby, J.). In *Monroe*, the reason the undersigned "rejected the proposition that CORC's delay in responding rendered the plaintiff's administrative remedies unavailable ..." (Dkt. No. 39, at 3 [Defs.' Obj.] ) was that the delay was only 37 days. *Monroe*, 2019 WL 409412, at *4 (relying on *Gizewski*). Here, the delay was 134 days. Moreover, in *Monroe*, issued more than six months ago, the undersigned posed a question that remains unanswered by DOCCS' counsel:

> **\*5** The Court wonders what the rule would be were CORC (for whatever reason) to fail to ever render a decision: at what point in time would the inmate obtain the right to sue? DOCCS would do well to amend 7 N.Y.C.R.R. § 701.5 ... so as to specify a date after which the inmate may sue, lest the courts effectively do so for it.

*Monroe*, 2019 WL 409412, at *4.

Sixth, regarding the state court case cited by Defendants for the point of law that the 30-day deadline by which CORC must render a decision "is directory, not mandatory," the Court will, for the sake of brevity, set aside any issue created by *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). More important is the fact that the state court case relied on by Defendants–*Jones v. Fischer*, 110 A.D.3d 1295, 1296 (N.Y. App. Div., 3d Dept. 2013)–relied on a state court case–*Sheppard v LeFevre*, 116 A.D.2d 867, 868 (N.Y. App. Div., 3d Dep't 1986)–which the undersigned has previously found does not help DOCCS' position. *Monroe*, 2019 WL

409412, at *4, n.6. More specifically, *Sheppard* recognized that, although the deadline is "directory," a violation of the deadline (when coupled with a showing of substantial prejudice) still "oust[s]" DOCCS of "jurisdiction." *Sheppard*, 116 A.D.2d at 868.

Moreover, the other two state law cases cited by Defendants for that point of law are clearly inapposite: both of those cases regard the time limit by which DOCCS must complete a *disciplinary* hearing, or issue a determination following a *disciplinary hearing*, significantly different matters than the time limit by which CORC must decide an appeal from the denial of a *grievance*. *See Austin v. Fischer*, 70 A.D.3d 1074, 1074-75 (N.Y. App. Div., 3d Dept., 2010) ("We also reject petitioner's contention that respondent's failure to issue an administrative determination within the statutorily prescribed 60-day period requires annulment, inasmuch as that time limitation is directory, not mandatory ...."); *Dash v. Goord*, 255 A.D.2d 978, 978 (N.Y. App. Div., 4th Dept., 1998) ("In any event, the time period [by which to complete a disciplinary hearing] is directory, not mandatory and, absent a showing of substantial prejudice to petitioner, the failure to complete the hearing in a timely manner does not warrant annulment of the determination."). Among other things, at stake in such cases is the annulment of a disciplinary conviction, not merely the deeming of a grievance procedure exhausted.

Under the circumstances, the Court finds that, whether the permissible period of delay for a CORC decision is 80 days (as assumed for the sake of argument by the Second Circuit in *Gizewski*), 90 days or 120 days, the Second Circuit would consider 134 days to be too long. At some point CORC must face the consequences of its delays.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 36) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 14) is **DENIED**.

**Plaintiff is reminded of his duty to keep the Court informed of his current address, and warns him that his case will be dismissed for failure to prosecute, should he fail to do so.**

2019 WL 3955484

**All Citations**

Slip Copy, 2019 WL 3955484

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3736794
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javon HIGH, Plaintiff,
v.
P.A. SWITZ, Defendant.

Civ. No. 9:17-CV-1067 (LEK/DJS)
|
Signed 07/09/2018

**Attorneys and Law Firms**

JAVON HIGH, 16-R-2525, Queensboro Correctional Facility, 47-04 Van Dam Street, Long Island City, NY 11101, pro se.

HON. BARBARA D. UNDERWOOD, Attorney General of the State of New York, OF COUNSEL: ERIK BOULE PINSONNAULT, ESQ., The Capitol, Albany, NY 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

*1 On September 25, 2017, *pro se* Plaintiff Javon High commenced this action pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at both Wyoming Correctional Facility and Ulster Correctional Facility, while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. In his Complaint, Plaintiff alleges that he suffers from chronic, severe pain, for which he was prescribed certain medications. Compl. at p. 3.[1] Plaintiff alleges that while at Ulster, he was seen by P.A. Switz, who told Plaintiff that he would not be getting the physical therapy or prescribed medications at Ulster, and that he could attempt to when he got to his designated facility, which would not be for a month or two. *Id.* at pp. 4-5. Plaintiff then went thirty-five days with severe pain. *Id.* at p. 6. Plaintiff alleges continuing issues related to his pain and treatment after he was transferred to Wyoming.[2] *Id.* at pp. 6-19. Remaining in this District are Plaintiff's claims arising out of his confinement at Ulster, which are only those against Defendant Genevieve Switz.

[1] When referring to Plaintiff's submissions, the Court will cite to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System because they are often unnumbered or not numbered sequentially.

[2] The claims regarding Plaintiff's treatment at Wyoming were severed and transferred to the Western District of New York upon initial review of the Complaint. Dkt. No. 8.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint on the basis that Plaintiff failed to exhaust his administrative remedies before filing this action. Dkt. No. 13, Def.'s Mot. to Dismiss. Plaintiff has opposed the Motion. Dkt. No. 17, Pl.'s Opp. Defendant has filed a reply. Dkt. No. 18, Def.'s Reply. Plaintiff has filed an additional submission in opposition. Dkt. No. 19, Pl.'s Supp. Opp.[3]

[3] In his opposition filings, Plaintiff has included allegations that were not included in his Complaint. *See* Pl.'s Opp. at pp. 5-6. Federal Rule of Civil Procedure 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56." FED. R.CIV. P. 12(d). The Court agrees with Defendant that Plaintiff's allegations that he was prevented from filing grievances should not be considered on a motion to dismiss as they are outside the pleadings. *See* Def.'s Reply at p. 2. Because a determination as to exhaustion can be made based on the face of the Complaint, the Court declines to convert the Motion to one for summary judgment, and will exclude and not consider the extrinsic evidence submitted by the parties.

The Court finds that Plaintiff failed to exhaust his administrative remedies, but that Plaintiff has demonstrated that the lack of exhaustion should be excused. The Court therefore recommends that Defendant's Motion be **denied**.

**I. LEGAL STANDARD**

*2 On a motion to dismiss, the allegations of the complaint must be accepted as true. *See* Cruz v. Beto, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984) ).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, n.6 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged, or that the defendants have violated ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted) (citation omitted). Nonetheless, a *pro se*

complaint must state a "plausible claim for relief." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c) ).

## II. EXHAUSTION

### A. Exhaustion Procedure

**\*3** The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.*

2018 WL 3736794

at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### B. Plaintiff's Failure to Exhaust Administrative Remedies

In this case, Plaintiff admits that the grievance procedure was not complete when he filed the Complaint because he had not received a response from CORC. Compl. at pp. 20-21. Plaintiff filed his initial grievance on January 20, 2017. Id. at p. 20. He received a response from IGRC on January 24, 2017, and forwarded his appeal to the Superintendent. *Id.* The Superintendent then issued a response on January 31, 2017. *Id.* On February 6, 2017, Plaintiff filed his appeal to CORC. *Id.* Per the regulations, CORC had thirty days to respond to the appeal. *Id.* On August 25, 2017, after not hearing from CORC, Plaintiff sent CORC a letter asserting that CORC had exceeded the timeline and that he had therefore exhausted his administrative remedies, and would be filing a claim in Court. *Id.* at pp. 20-21. When Plaintiff prepared his Complaint, on September 12, 2017, he had still not received any response from CORC. *Id.* Only after filing the Complaint did Plaintiff receive a final response from CORC. Pl.'s Supp. Opp. at p. 3 & Def.'s Reply at pp. 1-2 (indicating response from CORC was received in February 2018).

It is clear from the face of Plaintiff's Complaint that he did not exhaust his administrative remedies. The fact that his CORC appeal was decided after the filing of his Complaint is insufficient to cure Plaintiff's failure to exhaust; filing an Amended Complaint at this time would also not correct this fundamental deficiency. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, at *13 ("It is well established that [r]eceiving a decision

from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice.") (internal quotation marks omitted) (citations omitted).

**\*4** The Court will discuss below whether Plaintiff's contentions may state a valid excuse for his failure to exhaust his administrative remedies.

### C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In his Complaint and opposition papers, Plaintiff's main contention is that administrative remedies were unavailable to him because he did not receive a response from CORC for over seven months, and that there are no instructions on how to proceed with a grievance if no response is received from CORC. Pl.'s Opp. at p. 9 ("DOCCS policy has no re[c]ourse, does not inform nor direct what the next step would be if CORC does not render a decision. Leaving inmates to bel[ie]ve that if they receive no decision after the (30) thirty day period allowed in th[eir] own policy then they have exhausted remedies. Fac[t]ually and evident[i]ally, DOCCS simply does not state what we are to do after the thirty day timeline has expired. Certainly they cannot just leave the door open...."); *see also* Compl. at pp. 20-21; Pl.'s Supp. Opp. Defendant contends that an inmate must receive a response from CORC before filing a suit, and that a delay in receipt of a CORC decision beyond the thirty days proscribed by

statute does not excuse an inmate's failure to exhaust his administrative remedies. Def.'s Reply.

Courts within the Second Circuit are split regarding whether a failure to respond by CORC excuses unavailability excusing a plaintiff's failure to exhaust. *Compare Ford v. Smith*, 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (finding plaintiff's failure to exhaust was not excused where CORC failed to issue a determination for six months) *and Lewis v. Hanson*, 2017 WL 4326084, at *3 (N.D.N.Y. Sept. 28, 2017) *with Rossi v. Fischer*, 2015 WL 769551 (S.D.N.Y. Feb. 24, 2015) (collecting cases deeming administrative remedies unavailable when officials failed to timely respond to a grievance); *Peoples v. Fisher*, 2012 WL 1575302, at *6 (S.D.N.Y. May 3, 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in Federal Court simply because the final administrative decision maker has ... neglected ... to issue a final administrative determination."), *and Rodriguez v. Reppert*, 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016).

**\*5** Here, Plaintiff filed his grievance with the IGRC; upon receiving an unfavorable determination, he appealed it to the Superintendent, and then appealed the Superintendent's determination to CORC. Compl. at pp. 20-21. The final step of the grievance procedure provides that CORC shall review the appeal and render a determination within 30 days from the time the appeal was received. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(d)(2). At the preliminary stages of the procedure, the regulations provide an avenue for a grievant to further pursue a grievance that is not timely decided: "Absent [an] extension [on a time limit], matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g). However, the third and final step in the grievance procedure is "appeal to the central office review committee." *Id.* at § 701.5(d). At this level, there is no instruction on what a grievant is to do if he or she has appealed to the CORC, the final step, and has not received a response. *Id.* at § 701.6(g)(1)(b)(ii). As such, these regulations "do not describe a mechanism" for appealing or advancing a grievance when a grievant does not receive a response from CORC, as there is no next step to which a grievant may appeal. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016).

In the case of *Williams v. Corr. Officer Priatno*, the plaintiff had submitted a grievance but never received a response; he then filed a lawsuit without taking any further formal action regarding his grievance, believing it had never actually been filed by the special housing unit correction officer. 829 F.3d at 120-21. The Second Circuit found the grievance procedure was unavailable under *Ross*, meaning that the "administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 123. The Court found that, even though the plaintiff could have "technically" appealed his grievance, "[t]he regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id.* at 124. As such, the Second Circuit found that, under *Ross*, "the grievance procedures that were technically available to [plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.' " *Id.* at 126 (quoting *Ross v. Blake*, 136 S. Ct. at 1859).

Similarly, here, while the regulations at the preliminary stages contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC. Indeed, "the regulations give no guidance whatsoever" regarding what a grievant should do in this circumstance. *Id.*

Defendant cites to *Gizewski* for the proposition that even if a grievant does not receive a response to a grievance from CORC, the failure to exhaust is not excusable. In *Gizewski*, however, there was an administrative error in filing the grievant's appeal with CORC and Plaintiff never received a receipt from filing with CORC; the regulations explicitly provide a mechanism for confirming that an appeal has been properly filed if a grievant does not receive a receipt. As such, there was specific direction in the procedures for the grievant to follow. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, (N.D.N.Y July 5, 2016). As the Court there summarized:

> Although the Court is sympathetic to the fact that it was the inmate grievance office that failed to transmit Plaintiff's appeal to CORC until five months after he had filed it, Plaintiff is also at fault for not taking any further action during this time period. More specifically, 7 N.Y.C.R.R. § 701.5(d)(3)(i) states that "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."

*Id.* at *13.

The Second Circuit Court of Appeals affirmed Chief Judge Suddaby's dismissal of Gizewski's Complaint. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision,* 692 Fed. Appx. 668 (2d Cir. 2017). In doing so, however, the Circuit noted that, "even if we assume arguendo that the long delay occasioned in part by clerical error constituted constructive denial," there was no genuine issue of material fact because the issues raised on that final administrative appeal to CORC pertained to requests for items that had already been provided to the plaintiff as part of a reasonable accommodation. *Id.* at 670. Therefore, the Second Circuit did not and has not decided the precise issue raised on this Motion—a claim of failure to exhaust where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present Motion to Dismiss had been filed. In the Court's view, and under the hopefully unique facts of this case, Plaintiff's failure to exhaust aligns more with *Williams* than with *Gizewski.* "[A]fter the CORC neglected to decide [the appeal], administrative remedies were no longer available" to Plaintiff. *Rodriguez v. Reppert,* 2016 WL 6993383, at *1.

**\*6** Accordingly, for the foregoing reasons, the Court recommends that Defendant's Motion be **denied** based upon a finding that Plaintiff's failure to exhaust is excused.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 13) be **denied**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989) ); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[4]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R.CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2018 WL 3736794

---

**End of Document**     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3730175
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javon HIGH, Plaintiff,

v.

PA SWITZ, et al., Defendants.

9:17-CV-1067 (LEK/DJS)
|
Signed 08/06/2018

**Attorneys and Law Firms**

Javon High, Long Island City, NY, pro se.

Erik Boule Pinsonnault, Katie E. Valder, New York State Attorney General, Albany, NY, for Defendants.

### ORDER

Lawrence E. kahn, U.S. District Judge

## I. INTRODUCTION

**\*1** This matter comes before the Court following a report-recommendation filed on July 6, 2018, by the Honorable Daniel J. Stewart, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 24 ("Report-Recommendation"). Defendant timely objected to the Report-Recommendation. Dkt. No. 23 ("Objection").

## II. LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must

be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b). Otherwise, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

## III. DISCUSSION

The Report-Recommendation analyzed whether Plaintiff failed to exhaust his administrative remedies as required under the Prisoner Litigation Reform Act ("PLRA"). R. & R. at 6–12. Judge Hummel concluded that, although Plaintiff failed to exhaust his administrative remedies, this failure was excused because the Central Office Review Committee ("CORC") of the New York Department of Corrections and Supervision ("DOCCS") substantially delayed in responding to Plaintiff's appeal of his prison superintendent's denial of his grievance. Id.

Defendant objects to the Report-Recommendation, asserting that CORC's delayed response to Plaintiff's grievance did not excuse his failure to exhaust administrative remedies. Obj. at 1. [1] However, Defendant raised this argument in its memorandum in support of its motion to dismiss, Dkt. No. 13-1 ("Memorandum") at 5, and again its reply brief, Dkt. No. 18 ("Reply") at 1. [2] Defendant's Objection is, therefore, "a mere reiteration of an argument made to the magistrate judge." Barnes, 2013 WL 1121353, at *1. Accordingly, the Court reviews the Report-Recommendation for clear error, and finds none.

[1]    The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

[2]    The cited page numbers for this document refer to those generated by ECF.

## IV. CONCLUSION

**\*2** Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this
Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 3730175

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 6506072
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Amar BELL, Plaintiff,
v.
J. NAPOLI et al., Defendants.

9:17-CV-850 (ATB)
|
Signed 12/11/2018

**Attorneys and Law Firms**

AMAR BELL, Plaintiff, pro se.

AIMEE M. COWAN, Asst. Attorney General, for defendants.

### MEMORANDUM DECISION and ORDER

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** On April 10, 2018, this matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 38, 39). Plaintiff has filed this civil rights complaint alleging that on April 4, 2017, at Marcy Correctional Facility, defendants used excessive force against him in the course of extracting plaintiff from his cell. (Complaint ("Compl.") ¶ 6, Facts). Plaintiff originally named four corrections officers: J. Napoli, A. Farina, R. Rugari, and M. Music. (Compl. at 1). On September 18, 2017, defendant M. Music was dismissed by Order of District Court Judge David N. Hurd. (Dkt. No. 11).

Presently before the court is a motion for summary judgment filed by the remaining defendants, arguing only that plaintiff has failed to exhaust his administrative remedies. (Dkt. No. 48). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 52, 54). Plaintiff filed an additional letter in support of his opposition. (Dkt. No. 55). For the following reasons, this court agrees with plaintiff and will deny the defendants' motion for summary judgment.

### DISCUSSION

**I. Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin*, 467 F.3d at 272.

**II. Exhaustion of Administrative Remedies**

**1. Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*2** The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216,

127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

There is a special section for complaints of "harassment." *Id.* § 701.8. Harassment grievances are defined in another section of the regulations as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an inmate." *Id.* § 701.2(e). Based on this definition, section 701.8 has been found applicable to claims of excessive force by staff. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *7 n.7 (S.D.N.Y. Sept. 28, 2018) (citing *Torres v. Carry*, 691 F.Supp.2d 366, 369-70 (S.D.N.Y. 2009) ).

Complaints of harassment are handled by an *expedited* procedure which provides that such grievances are forwarded directly to the superintendent of the facility, [1] after which the inmate must appeal any negative determination to the CORC by filing a form within seven calendar days of the inmate's receipt of the Superintendent's response. *Id.* §§ 701.8(h) & (i), 701.5. The regulations then provide that "unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of other grievances as set forth in section 701.5 of this Part shall be followed." *Id.* § 701.8(i). Thus, if a procedure is not described in 701.8, the inmate must refer to section 701.5. [2]

[1]    The regulation states that "[a]llegations of employee harassment are ***of particular concern to the administrators of department facilities.***" 7 N.Y.C.R.R. § 701.8 (emphasis added).

[2]    The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*3** However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S.Ct. at 1857. " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at *2, 656 Fed.Appx. 577 (2d Cir. Sept. 1, 2016) (quoting *Ross*, ––– U.S. at ––––, 136 S.Ct. at 1857)). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, ––– U.S. ––––, 136 S.Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 2016 WL 4572321, at *2, 656 Fed.Appx. 577. An administrative procedure is "unavailable" when

(1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross,* —— U.S. ——, 136 S.Ct. at 1859-60).

In *Ross,* the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross,* —— U.S. at ——, 136 S.Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860. Thus, if a plaintiff fails to exhaust his administrative remedies, the court must consider whether those remedies were "available" to him.

In *Williams v. Priatno,* 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross,* after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a Department of Corrections and Community Services ("DOCCS") regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) ).

The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed ... [and] give no guidance whatsoever to an inmate whose grievance was never filed."

*Id.* Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. [3] *See also Medina v. Napoli,* 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

[3]    My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin,* No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted,* 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

**2. Application**

**\*4**  In this case, unlike *Williams,* it is undisputed that plaintiff filed a grievance regarding the alleged incident of excessive force. Defense counsel has filed the Case History and Record of the excessive force grievance. (Cowan Decl. Ex. B) (Case History and Record) (Dkt. No. 48-4). The case history indicates that, on April 18, 2017, plaintiff filed his grievance, claiming that the defendants used excessive force against plaintiff. (*Id.*) The case history further indicates that, on the same day, the grievance was "passed through" to the Superintendent. (*Id.* at 2). On May 16, 2017 the grievance was "passed through" by the Superintendent to the CORC. (*Id.*) Under the heading "Appeal to CORC," the document states that "Grievant states he wishes to appeal as passed through to CORC." (*Id.*) This notation is dated May 18, 2017. (*Id.*)

Thus, plaintiff brought a grievance and expressed his desire to appeal the grievance to both the Superintendent and the CORC, even though it is clear that no investigation was done at either the IGRC or the Superintendent level. [4]  In fact, defendants have attached a letter from plaintiff to the Grievance Clerk of the IGRC, dated May 9, 2017, in which plaintiff observes that twenty days had passed without response by the Superintendent, and without an extension request from the Superintendent. Because of this, plaintiff stated that he wished to appeal his grievance to the CORC. (Cowan Decl. Ex. B at 3). The last line of plaintiff's letter specifically states "I want my appeal sent on to the CORC." The plaintiff's letter is stamped "received" by the IGRC on May 12, 2017, and defendants do not dispute this fact. The letter also contains the initials "JB," with May 18, 2017, written next to the initials. (*Id.*) May 18, 2017 is the date that the other facility documents, and the receipt that plaintiff was sent in June of 2018, indicate that the grievance was "passed through" to the CORC. (Cowan Decl. Ex. B at 2; Seguin Decl.

Ex. B at 1). The CORC received plaintiff's appeal on May 26, 2017. (Seguin Decl. Ex. A at 2).

4    The court understands that the incident took place at Marcy, and at the time of the appeal, plaintiff was at Five Points. Additionally, as stated above, complaints of employee "harassment" are handled by an expedited process whereby the grievance is passed through the IGRC, directly to the Superintendent. However, in this case, the grievance was additionally passed through to the CORC.

It is also undisputed that the CORC had not rendered a decision when plaintiff filled this action on August 4, 2017, nor had the CORC rendered a decision by July 19, 2018, when Rachel Seguin signed her declaration, which has been filed as an exhibit in this case. (Seguin Decl. ¶ 10) (Dkt. No. 48-5). Rachel Seguin is the Assistant Director of the IGP, whose duties include being the custodian of records maintained by the CORC. (Seguin Decl. ¶¶ 1, 2). Although the CORC documents submitted by Rachel Seguin indicate that the "Sched Date" for the grievance was August 8, 2018, there is no indication, and defendants do not argue, that the grievance was ever addressed. (Seguin Decl. Ex. A at 1).

Thus, the CORC has failed to issue a decision or even investigate plaintiff's grievance from May 26, 2017 until at least August 8, 2018, and there is no indication that the CORC has ever addressed the grievance, even to the present day. [5] Although Assistant Director Seguin states that plaintiff was sent a "Receipt of Appeal" on July 6, **2018**, [6] it is clear from that receipt, that plaintiff's appeal was passed through to the CORC on May 18, **2017**, and the CORC received plaintiff's appeal on May 26, **2017**. (Seguin Decl. Ex. B).

5    The court also notes that, though Assistant Director Seguin states that plaintiff's grievance was "denied," the grievance documents state that the grievance was "passed through" to the Superintendent and then "passed through" to the CORC. (Cowan Decl. Ex. B at 2). That notation is not a denial because the grievance was never investigated.

6    (Seguin Decl. ¶ 9).

**\*5** Defendants argue that plaintiff did not exhaust his administrative remedies because he filed this federal action before the CORC issued a decision on his administrative appeal. Plaintiff does not dispute that the CORC has failed to issue a decision. This court has recommended dismissal for failure to exhaust when a plaintiff files his federal lawsuit

before the CORC has decided plaintiff's appeal. *See Scott v. Miller*, No. 9:17-CV-520 (MAD/ATB) (Dkt. No. 54) (Rep't Rec. (6/25/18) ) (adopted, Dkt. No. 56 (8/13/18) ). However, often, in such cases, the federal action was filed before the deadline for the CORC decision. *Id.* (Rep't Rec. at 9-10).

In this case, plaintiff waited from May 26, 2017 until August 4, 2017, with no response from the CORC, to file this action. The CORC has thirty days to decide an inmate's appeal or ask for an extension, which may only be granted with the "written consent of the grievant." 7 N.Y.C.R.R. §§ 701.5(d) (3); 701.6(g)(2). The regulations provide that if there is no timely response, for either the IGRC or the Superintendent's appeal, plaintiff may appeal to the "next step." [7] *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (citing 7 NYCRR §§ 701.6(g)(2), 701.8(g) ). If the CORC received plaintiff's appeal on May 26, 2017, unless there was an extension of time, a decision should have been rendered by June 26, 2017. Although the regulations specifically discuss what the "next step" is in cases of IGRC and Superintendent's review, it is less clear whether the language applies to the CORC, and if so, what the "next step is."

7    Section 701.6(g)(2) specifically provides that, "[a]bsent [an] extension, matters not decided within the time limits may be appealed to the next step."

In *Williams*, the court found that the administrative remedies were "unavailable" because the regulations did not explain how an inmate should appeal a grievance that was never filed, because the time limits provided in the regulations for "appeal to the next step" did not apply when a grievance was never filed. In this case, there is no specific indication what the inmate must do if the CORC (the last step) received the appeal, but failed to render a timely decision, or any decision. The regulations do provide that if the plaintiff does not get a "receipt" from the CORC within 45 days of the date he filed his appeal, he should contact the IGP to make sure that his appeal was "received." 7 N.Y.C.R.R. § 701.5(d)(3)(i). Contacting the IGP could afford the CORC the opportunity to obtain plaintiff's appeal if the appeal had somehow failed to reach the CORC.

In *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:14-CV-124, 2016 WL 3661434, at \*13 (N.D.N. Y July 5, 2016), Chief U.S. District Judge Glenn Suddaby held that plaintiff did not exhaust his administrative remedies because he failed to take further action under section 701.5(d)(3)(i) when he did not receive written notice of

receipt by the CORC within 45 days of filing his appeal.[8] In *Gizewski*, the CORC did not receive the plaintiff's appeal for five months due to a "clerical error." *Id.*

[8]     The court notes that, unlike this case, in *Gizewski*, if plaintiff had contacted the IGP after 45 days, it would have been determined that the CORC had not received the appeal, and the defendants would have had the opportunity to cure the problem.

Although the Second Circuit affirmed Judge Suddaby's dismissal of Gizewski's complaint, the Second Circuit did not specifically decide the issue of inordinate delay by the CORC. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision,* 692 F. App'x 668 (2d Cir. 2017). The Second Circuit stated that "even if we assume arguendo that the long delay occasioned in part by clerical error constituted constructive denial," there was no genuine issue of material fact because the issues raised on that final administrative appeal to CORC pertained to requests for items that had already been provided to the plaintiff as part of a reasonable accommodation. *Id.* at 670.

**\*6** In *High v. Switz*, No. 9:17-CV-1067, 2018 WL 3736794 (N.D.N.Y. July 9, 2018), (Rep't-Rec.), adopted, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018), Magistrate Judge Daniel Stewart distinguished *Gizewski* and cited a split in the Second Circuit regarding whether a failure to respond by the CORC constitutes unavailablity under *Ross v. Blake*. 2018 WL 3736794 at \*4-5 (citing cases). Magistrate Judge Stewart cited *Williams* and found that

[s]imilarly, here, while the regulations at the preliminary stages contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC. Indeed, "the regulations give no guidance whatsoever" regarding what a grievant should do in this circumstance.

*Id.* at \*5 (quoting *Williams,* 829 F.3d at 126). Magistrate Judge Stewart found that High's failure to exhaust aligned more with *Williams* than with *Gizewski*, because High had taken all the steps that he could regarding the status of his appeal, the CORC continued to ignore him, and although the CORC ultimately decided the appeal, it was a year later, "after the motion to dismiss had been filed." *Id.* Judge Stewart made it clear that under "the hopefully unique facts of [that] case," plaintiff's failure to exhaust would be excused.

In *Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 6993383, at \*2 (W.D.N.Y. Nov. 30, 2016), the court found that plaintiff's failure to exhaust should be excused in a situation somewhat similar to that in this case. In *Rodriguez*, plaintiff filed his appeal with the CORC, but the CORC did not decide the appeal within the thirty-day period required by DOCCS regulations. *Id.* at \*1. Plaintiff in *Rodriguez* filed his complaint before the CORC issued a decision, and the CORC ultimately decided the plaintiff's appeal two weeks after the plaintiff filed his federal complaint, but nearly two months after the DOCCS regulations' requirement. *Id.* Magistrate Judge Roemer, recommended denying the motion for summary judgment, finding that the CORC's failure to decide the appeal, together with the absence of any mechanism to ask the CORC to issue a decision after thirty days elapsed, meant that the inmate's remedies were "unavailable." *Id.*

District Judge Richard Arcara adopted the Magistrate Judge Roemer's recommendation in *Rogriguez*, citing *Ross* and *Priatno*, stating that after the CORC neglected to decide Rodriguez's appeals within thirty days, administrative remedies were no longer available to him, and his only option was to file the federal action. *Id.* There was simply no more that the plaintiff could do to force the CORC to follow its own deadline for deciding an appeal. *Id.* The defendants belatedly raised the argument that the plaintiff should have contacted the IGP supervisor if he did not receive written notice of the receipt of the appeal within 45 days. *Id.* at 2. The court did not consider the argument because it was not raised before the Magistrate Judge.[9] *Id.* The court cited *Williams's* holding that administrative remedies are "opaque," and therefore "unavailable - when those remedies do not address the situation in which a prisoner finds himself." *Id.* at 3. The regulations do not address a situation in which the CORC fails to render a decision within the deadline after receiving an appeal.[10]

[9]     The court must point out that defendants in this case argued only that plaintiff failed to exhaust because he did not wait for the CORC's decision. They did not raise the argument that plaintiff should have written to the IGP supervisor if he did not receive a receipt for his appeal.

[10]     Most of the cases cited by defendants predate *Ross*, and defendants' argument is based upon the absence of "special circumstances," which is no longer the appropriate analysis after *Ross*. However, defendants do cite a recent decision in their reply (Dkt. No. 54), written by Magistrate Judge Christian Hummel,

in which he found that delay in the CORC decision does not constitute "unavailability." See *Berkley v. Ware*, No. 9:16-CV-1326, 2018 WL 3736791 (N.D.N.Y. July 6, 2018) (Rep't-Rec.), adopted 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018). The facts in *Berkley* are distinguishable from this case. Plaintiff in *Berkley* filed his federal action six days before the CORC ruled on his grievance, and the delay was five months. *Id.* at *6. Judge Hummel specifically distinguished a case in which the court held that administrative remedies were no longer "available" to a plaintiff who had been awaiting a decision from the CORC "for more than two years." *Id.* (citing *Henderson v. Annucci*, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ). This facts in this case are more similar to *Henderson* than to *Berkley* in that the CORC has still not decided plaintiff Bell's grievance appeal more than 18 months after it received the appeal.

**\*7** In this case, there is no question that plaintiff's appeal was received by the CORC in May of 2017; however, it was neither investigated, nor decided. There is no evidence in the record of plaintiff contacting the IGP after 45 days,[11] although plaintiff testified at his deposition that he wrote to the CORC "multiple times." (Pl.'s Dep. at 133). Contacting the IGP would not have changed the situation in this case because the response to plaintiff's inquiry would simply have been that the CORC did receive the appeal. The 30 days within which the CORC had to answer plaintiff's grievance would already have run without extension. That is essentially what happened in June of 2018 when plaintiff was told that the CORC received his appeal in May of 2017, and nothing further was done. Although according to the documents the grievance was "sched" for August 8, 2018, there is no indication that an extension was requested or consented to by the plaintiff. The regulations contain no instructions on how an inmate should proceed if the CORC continues to ignore him after he has been informed that his appeal was "received."[12]

[11] Contacting the IGP to determine whether an appeal was received is not an "appeal." The IGP would only inform the plaintiff whether the appeal was received. If the appeal was not received, then presumably the plaintiff would resubmit his appeal. If the appeal was received, there is no further action contemplated.

[12] Plaintiff's deposition on this subject was unclear. Plaintiff stated that he appealed to the CORC, but after he filed the lawsuit, he received the printout of his grievance history, indicating that the appeal was sent to the CORC on May 18, 2017. (Pl.'s Dep. at 131-32) (Dkt. No. 48-3).

Plaintiff states that he never got a receipt for the appeal, and he speculated that an IGP employee "falsified it and said she sent it and never sent it." (*Id.* at 132). It is unclear what plaintiff means by that statement, but he then states that "a couple of weeks later ..., she sends me the appeal form from the Superintendent, with the current date on it. (*Id.*) Plaintiff was confused because the CORC was sent his appeal approximately one year earlier. (*Id.* at 133). Plaintiff also claims that he wrote to the CORC "multiple times," although there is no indication of any of these letters in the records. (*Id.* at 133). Defense counsel asked plaintiff if he filled out the appeal form that he was sent "in the last few weeks" before the deposition. (*Id.* at 134). Plaintiff first states that he filled out the appeal, but then hesitated, and wondered why he would fill out the form when the appeal was filed a year before with the CORC. (*Id.* at 135). It appears that DOCCS began sending plaintiff appeal forms, and "scheduling" the grievance after this lawsuit was filed. Although the court does not find that anyone "falsified" documents, it is clear that plaintiff's appeal was ignored for whatever reason.

The "next step" after the CORC may be a federal action. However, if the "next step" language does not apply to the CORC's decision, an inmate who never receives a decision from the CORC, after the appeal is filed, will be unable to exhaust his administrative remedies. In addition by ignoring an inmate's appeal, as it appears to have done in this case, the CORC could delay a plaintiff's exhaustion indefinitely, making the remedy "unavailable" by thwarting plaintiff's attempt to exhaust.[13] *See Ross*, 136 S.Ct. at 1860 (administrative remedies are unavailable when "prison administrators thwart inmates from taking advantage of the grievance process by machination, misrepresentation, or intimidation"). In this case, unlike the plaintiff in *Williams*, plaintiff tried to appeal his grievance to the "next step," after the Superintendent level, but was not able to do so because the CORC appears to have ignored his grievance until after he filed the lawsuit, and it has apparently continued to ignore his grievance to this day. Thus, I find that plaintiff's failure to exhaust may be excused, and defendants' motion for summary judgment is denied.

[13] The court must point out that *Ross* uses the term "prison administrators" in its analysis of unavailability, clarifying that it does not have to be one of the defendants who prevents plaintiff from using or completing the grievance process. 136 S.Ct. at 1860.

**\*8** This court must point out that my finding that the administrative remedy was "unavailable," and that plaintiff's

failure to exhaust should be excused, is based upon a review of the specific facts in this case.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the defendants' motion for summary judgment based on plaintiff's alleged failure to exhaust (Dkt. No. 48) is **DENIED**.

**All Citations**

Slip Copy, 2018 WL 6506072

---

                     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6993383

2016 WL 6993383
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Juan RODRIGUEZ, Plaintiff,
v.
C.O. REPPERT, C.O. Osbourne,
and C.O. Testani, Defendants.

14-CV-671-RJA-MJR
|
Signed 11/30/2016

**Attorneys and Law Firms**

Juan Rodriguez, Dannemora, NY, pro se.

Kathleen M. Kaczor, Attorney General's Office, Buffalo, NY, for Defendants.

## DECISION AND ORDER

HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT JUDGE

 **\*1** Magistrate Judge Roemer, to whom the Court referred this case for all pre-trial proceedings, filed a Report and Recommendation (Docket No. 19) recommending that the Court deny the Defendants' motion for summary judgment. See Docket No. 10. The Defendants have filed objections to that recommendation. Docket No. 20. Pursuant to 28 U.S.C. § 636(b)(1), the Court must review the Report and Recommendation de novo. Upon de novo review, and for the reasons stated below, the Court overrules the Defendants' objections and adopts the Report and Recommendation in its entirety.

## BACKGROUND

The Defendants argue that they are entitled to summary judgment because, they claim, the Plaintiff failed to exhaust his administrative remedies before bringing this case. It is undisputed that the New York State Department of Corrections and Community Supervision's (DOCCS) Central Office Review Committee (CORC)—the final level of review in DOCCS' internal grievance program—did not decide the Plaintiff's appeals of his administrative grievances within

the thirty-day period required by DOCCS' regulations. See 7 N.Y.C.R.R. § 701.5(d)(2)(ii). It is also undisputed that the Plaintiff filed his complaint in this case *before* the CORC decided his appeals. The CORC ultimately decided the Plaintiff's appeals two weeks after the Plaintiff filed his complaint in this case, but nearly two *months* after DOCCS' own regulations required the CORC to do so.

Relying primarily on the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016), as well as the Second Circuit's decision in *Williams v. Priatno*, 829 F.3d 118, Judge Roemer concluded that the CORC's failure to timely decide the Plaintiff's appeals, combined with the absence of any "mechanism to request the CORC to issue a decision after thirty days have elapsed," Docket No. 19 at 7, meant that the Plaintiff's administrative remedies were not "available" within the meaning of the Prison Litigation Reform Act (PLRA). See 42 U.S.C. § 1997e(a). Thus, Judge Roemer concluded, the Plaintiff did exhaust his administrative remedies.

## DISCUSSION

The PLRA's exhaustion "edict contains one significant qualifier: the [administrative] remedies" a prisoner is required to exhaust "must ... be 'available' to the prisoner." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The Supreme Court has identified several scenarios in which an administrative remedy might be "[un]available" within the meaning of the PLRA. See *id.* at 1859-60. Judge Roemer concluded that one of those scenarios applies in this case: the Plaintiff here encountered "an administrative scheme" that is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859.

The Second Circuit recently explained that this "opaqueness" exception to the PLRA's exhaustion requirement applies when "[t]he regulations simply do not contemplate the situation in which [the prisoner] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016). That is the case here: As Judge Roemer noted, "after the CORC neglected to decide Rodriguez's appeals within thirty days, administrative remedies were no longer available to him, and his only option was to file this action." Docket No. 19 at 7. In other words, there was simply nothing the Plaintiff could do to force the

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 92 of 178

Rodriguez v. Reppert, Not Reported in Fed. Supp. (2016)

2016 WL 6993383

CORC to follow its own deadline for deciding the Plaintiff's appeals.

**\*2** The Defendants now argue that the Plaintiff "could not have contacted the IGP Supervisor in writing if he did not receive a written notice of receipt from CORC within 45 days of his appeal." Docket No. 27 at 2. Specifically, the Defendants point to DOCCS Directive 4040(d)(3)(i) (codified at 7 N.Y.C.R.R. § 701.5(d)(2)(i)), which provides that, "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to the CORC." *Id.* (citations omitted).

This argument, however, was made for the first time in the Defendants' reply brief before this Court; the Defendants did not raise the argument before Judge Roemer, nor did they raise it in their objections.[1] The Defendants have therefore waived the argument that § 701.5(d)(2)(i) provides a mechanism by which the Plaintiff could have prompted the CORC to decide his appeals. "The Court does not and will not make a practice of addressing the merits of issues first raised in a reply, as the opposing party is not afforded any opportunity to respond to new issues raised in a reply, which is ordinarily the last document submitted prior to the Court's ruling on a motion. Such sapience appears all the more prudent" where, as here, "the opposing party is proceeding *pro se*." *Peca v. Delta Air Lines, Inc.*, No. 97-CV-0882E(M), 2000 WL 914112, at \*2 (W.D.N.Y. July 7, 2000) (citations and quotation marks omitted). The Court will therefore not consider the Defendants' argument that § 701.5(d)(2)(i) makes Plaintiff's administrative remedies "available" within the meaning of the PLRA.

[1]     The Defendants state that they made this argument for the first time in their reply brief because "[i]n response to defendants' objections to the R&R, plaintiff—for the first time—argues that the grievance process was 'opaque' and 'incapable of use.' " Docket No. 27 at 2. The Defendants overlook that *Judge Roemer* concluded that the grievance process was opaque and incapable of use. Thus, the Defendants could—and should—have made this argument in their objections to Judge Roemer's Report and Recommendation.

The Defendants also identify several other reasons why they believe Judge Roemer's Report and Recommendation was incorrect. The Court addresses each argument each in turn.

First, the Defendants argue that the Plaintiff's conduct in a case in the New York Court of Claims shows that he "could not ... argue that the grievance process was unavailable to him, unknowable, incapable of use, inaccessible, or practically impossible to navigate." Docket No. 20 at 5. But this argument misinterprets the PLRA's opaqueness exception as interpreted by the Second Circuit in *Williams*: the question, according to the Second Circuit, is whether "[t]he regulations ... contemplate the situation in which [the prisoner] f[inds] himself." *Williams*, 829 F.3d at 124. This is an objective question: the regulations either provide an inmate with a procedural route to obtain administrative relief, or they do not. To be sure, an inmate's subjective understanding of the grievance procedure is one aspect of the opaqueness question; a procedural scheme that *does* provide a route to administrative relief is little better than *no* route if the administrative path the prisoner must follow is "so confusing that no reasonable prisoner can use them." *Ross*, 136 S. Ct. at 1869 (quotations and ellipsis omitted). *See also Williams*, 829 F.3d at 126 ("[T]he purported options for relief provided by defendants, to the extent they are even available to an inmate in [the plaintiff's] situation, only increase confusion regarding the avenues available to pursue an appeal.") Nothing in *Williams*, however, suggests that the opaqueness exception is categorically unavailable simply because, as here, the prisoner was familiar with his prison's grievance process.

**\*3** Second, the Defendants point to the Supreme Court's statement in *Ross* that, "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 139 S. Ct. at 1859. Again, however, after *Williams*, the question in this case is whether an administrative option was even available to the Plaintiff in the first place—not whether the Plaintiff misunderstood a DOCCS regulation.

Third, the Defendants argue that Judge Roemer "chose ... to apply the minority [ ]view" on the question whether an untimely administrative decision renders the administrative process unavailable. But as Judge Roemer noted, the Defendants do not identify "any cases from the Second Circuit or the Western District of New York" supporting their position. Docket No. 19 at 8. To the contrary, the most recent Second Circuit case on point—*Williams*—states that administrative remedies are opaque—and, therefore, unavailable—when those remedies do not address the situation in which a prisoner finds himself. That is the case here.

Rodriguez v. Reppert, Not Reported in Fed. Supp. (2016)

2016 WL 6993383

Fourth, the Defendants rely heavily on the Supreme Court's statement in *Ross* that the unavailability of administrative remedies "will not often arise." But in context, the Supreme Court's statement says something less forceful than the Defendants suggest: *Ross* states that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." *Ross, 136 S. Ct. at 1859.* This suggests that remedies will typically not be unavailable under the PLRA because prisons have an obvious interest in resolving administrative grievances internally. This interest is best served by maintaining a grievance scheme that actually provides a route to administrative relief. *Ross,* in other words, assumes that administrative remedies will "not often" be unavailable because *Ross* also assumes that prisons will maintain remedial processes that provide prisoners with a path for obtaining administrative relief.

Finally, the Defendants argue that, "if Magistrate Judge Roemer's decision is adopted, inmates can file suit anytime the IGP, a Superintendent, or the CORC is late in rendering a decision. In fact, if adopted, inmates could wait until one day after the time periods stated in the NYCRR and file suit." Docket No. 20 at 15. This overstates Judge Roemer's conclusion. Nothing in Judge Roemer's Report and Recommendation suggests that a failure to timely decide an inmate grievance at a *lower level* of the grievance review process would permit a prisoner to immediately file a federal lawsuit. This is because DOCCS' regulations expressly contemplate such a situation: they provide that, absent an extension of time, "matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). In other words, a failure to render a timely decision at a lower level in the grievance process gives a prisoner the option of appealing that inaction to the next level. A prisoner who does not avail himself of that option will almost certainly find his lawsuit dismissed for failure to exhaust. *See, e.g., Morrison v. Stroman,* 12-CV-542(A)(M), 2014 WL 6685510, at *4 (W.D.N.Y. Nov. 26, 2014).* But the CORC's failure to timely decide an appeal is fundamentally different than, for instance, a superintendent's failure to timely decide an appeal, because the CORC is the final step in DOCCS' internal grievance program. A prisoner whose CORC appeal was not timely decided has no other administrative body to which he can appeal. Thus, the "regulations simply do not contemplate"

what the prisoner should do to ensure his appeal is timely decided, "making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Williams, 829 F.3d at 124.* [2]

[2] Because the Defendants have waived the argument, the Court does not address whether § 701.5(d)(2)(i) provides a mechanism for a prisoner to continue pursuing his grievance, thereby making his administrative remedies "available" under the PLRA. The Court notes, however, that this provision does not appear to address the situation in which the Plaintiff found himself. The Plaintiff does not suggest that he failed to exhaust because he was unsure whether the CORC received his appeal. Rather, he failed to exhaust because the CORC did not timely decide the Plaintiffs' appeals. Nothing in the record suggests that the CORC failed to comply with the receipt-and-notice provisions of § 701.5(d)(2)(i).

**\*4** Thus, upon *de novo* review, the Court overrules the Defendants' objections to Judge Roemer's Report and Recommendation.

Lastly, the Plaintiff objects to Judge Roemer's decision to "stay defendants' time to answer the complaint until the District Judge renders a decision" on the Defendants' motion for summary judgment. Docket No. 19 at 9. This non-dispositive order is neither clearly erroneous nor contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). The Court therefore overrules the Plaintiff's objections.

## CONCLUSION

For the reasons stated above, the Court overrules both the Plaintiff's and the Defendants' objections to Judge Roemer's Report and Recommendation. As directed by Judge Roemer, the Defendants shall answer the complaint within 21 days of this Decision and Order. This case is remanded to Judge Roemer for further proceedings.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6993383

---

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3121626
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Angel RODRIGUEZ, Plaintiff,

v.

HEIT, et al., Defendants.

9:16-CV-706 (GTS/ATB)
|
Signed 03/30/2018

**Attorneys and Law Firms**

ANGEL RODRIGUEZ, pro se.

GREGG T. JOHNSON, ESQ., Attorney for Defendants.

APRIL J. LAWS, ESQ., Attorney for Defendants.

### ORDER and REPORT and RECOMMENDATION

Hon. Andrew T. Baxter, U.S. Magistrate Judge

#### I. Background and Procedural History

 *1  In this civil rights complaint, plaintiff alleges that defendant Heit, a nurse at Clinton County Jail ("CCJ") violated plaintiff's right to privacy when she discussed his medical impairment in front of a corrections officer, while he was incarcerated at CCJ as a pre-trial detainee. (Complaint ("Compl.") ¶ 6 at p.1-3) (Dkt. No. 1).[1] Plaintiff also alleges that Clinton County has discriminated against him because of his "disability," in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (*Id.*)

[1]    Plaintiff has attached numbered pages to the factual statement of his form-complaint. The first page is the type-written form, numbered "1," and the next two inserted pages are numbered "2," and "3."

Plaintiff's complaint contained three causes of action. (Compl. ¶ 7). Plaintiff's first cause of action alleged violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") against Nurse Heit. (First Cause of Action). Plaintiff's second and third causes of action alleged ADA violations, including discrimination and retaliation. (*Id.*)

On July 20, 2016, Chief Judge Suddaby reviewed the complaint and found that "[c]onstruing the allegations in

plaintiff's complaint with the utmost leniency," the complaint contained four claims (1) defendant Heit violated plaintiff's Fourteenth Amendment right to privacy and HIPAA when she revealed private and sensitive private personal information to non-medical staff members and openly discussed plaintiff's medical status with non-essential and non-authorized personnel; (2) First Amendment retaliation claims; (3) defendants violated Title II of the ADA when they excluded plaintiff from work programs due to his disability; and (4) defendants retaliated against plaintiff in violation of Title V of the ADA. (Dkt. No. 4 at 5).

In his analysis of plaintiff's claims, Chief Judge Suddaby found that plaintiff's Fourteenth Amendment privacy claim against defendant Heit survived initial review. (Dkt. No. 4 at 8). However, the court dismissed any claims based on HIPAA. (*Id.*) The court dismissed any First Amendment retaliation claims. (Dkt. No. 4 at 9-10). The court found that plaintiff's discrimination claim under Title II of the ADA against Clinton County survived initial review. Finally, the court dismissed plaintiff's Title V retaliation claim against CCJ for failure to state a claim. (Dkt. No. 4 at 12-13).

Plaintiff's surviving claims are his (1) Fourteenth Amendment claims against Nurse Heit related to the First/ Fourteenth Amendment right of privacy; and (2) Title II ADA claims against Clinton County based upon exclusion from the work program. (Dkt. No. 4 at 14). Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 74). Plaintiff has responded in opposition to the motion.[2] (Dkt. No. 83). Plaintiff has also requested a two month extension "to respond" to defendants' motion. (Dkt. No. 86). Defendant have opposed this motion. (Dkt. No. 89). Plaintiff has also filed a copy of a letter that he wrote to defense counsel regarding his deposition transcript and further discovery. (Dkt. No. 87). For the following reasons, this court agrees with defendants, will deny plaintiff's request for a further extension, and will recommend dismissal of the complaint.

[2]    Plaintiff's response is labeled a cross-motion, but has been docketed as plaintiff's "response" in opposition to defendants' motion. To the extent that the document can be interpreted as a cross-motion for summary judgment, this court will recommend its denial based on the findings herein.

#### II. Summary Judgment

Case 9:18-cv-00336-AMN-TWD Document 20 Filed 08/29/19 Page 95 of 178
Rodriguez v. Heit, Not Reported in Fed. Supp. (2018)
2018 WL 3121626

**\*2** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin*, 467 F.3d at 272.

### III. Exhaustion of Administrative Remedies

#### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g.*, *Key v. Toussaint*, 660 F.Supp.2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378. Constitutional as well as claims under the ADA must be exhausted before filing suit in federal court. *See Crichlow v. Crowley*, No. 13-CV-6624, 2015 WL 1808626, at \*5 (W.D.N.Y. Apr. 21, 2015) (citing *Arce v. O'Connell*, 427 F.Supp.2d 435, 440 (S.D.N.Y. 2006); *Alster v. Goord*, 745 F.Supp.2d 317, 332 (S.D.N.Y. 2010) ).

**\*3** Grievance programs and procedures in **county** facilities are contained in the regulations governing the New York State Commission of Correction, appearing in the chapter entitled "Minimum Standards and Regulations for Management of County Jails and Penitentiaries," in the part specifically entitled "Grievance Program." N.Y. CODE RULES & REGS. tit.9, §§ 7032.1-7032.11. These regulations specifically provide that the chief administrative officer of the correctional facility shall establish and maintain a formal inmate grievance procedure. *Id.* § 7032.1. The regulations provide that the facility shall maintain grievance forms for the inmates to use and shall make those forms readily available to inmates. *Id.* §§ 7032.4(d), 7032.6. The regulations also provide that instructions for filing a grievance shall be included in the facility rules and regulations as required by section 7002.9(a)(15), and that "[e]ach inmate at any facility shall be advised in writing as to the availability of grievance forms upon admission." *Id.* § 7032.4(b), (c).

An inmate must file his grievance within five days of the date of the conduct giving rise to the complaint. *Id.* § 7032.4(d). The chief administrative officer of the facility designates a staff member to act as a grievance coordinator, and the regulations provide that each grievance shall be

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 96 of 178

Rodriguez v. Heit, Not Reported in Fed. Supp. (2018)

2018 WL 3121626

fully investigated by an individual who was not personally involved in the circumstances giving rise to the grievance. *Id.* § 7032.4(e), (f). The regulations specify minimum requirements for the type of information that must be gathered during the investigation of the inmate's grievance. *Id.* § 7032.4 (g)(1)-(g)(4).

The grievance coordinator must issue a written decision within five business days, containing the "facts and reasons underlying the coordinator's determination," and a copy of the determination must be provided to the inmate. *Id.* at 7032.4(i). The plaintiff may appeal an adverse determination to the chief administrative officer or his designee within two business days of receiving the adverse determination. *Id.* § 7032.4 (j). The chief administrative officer renders a decision within five business days, and if the inmate is still not satisfied, he may appeal the adverse decision directly to the Commission of Correction within three business days. *Id.* §§ 7032.4(k), 7032.5.

Within three business days after receiving the appeal from the inmate, the chief administrative officer of the facility must mail the appeal to the Commission's Citizens Policy and Complaint Review Council (CPCRC), and the grievance coordinator must provide the inmate with a receipt of mailing. *Id.* § 7032.5(c). The CPCRC has forty-five days within which to issue a written decision. *Id.* § 7032.5(d). In certain circumstances, inmates will be provided assistance at any stage of the proceedings. *Id.* § 7032.9. The chief administrative officer of the facility must keep a centralized record of all grievances, and facility employees are given an orientation on the grievance procedures.[3] *Id.* §§ 7032.10, 7032.11.

[3]     The regulations also provide that if an inmate is released or transferred to another facility prior to the resolution of a grievance, the chief administrative officer "shall cause a determination to be made on such grievance ...", and if the grievance is denied, the chief administrative officer "shall submit the grievance to the [CPCRC] as set forth in section 7032.5 of this Part." 9 NYCRR § 7032.7.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*4** The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake,* —— U.S. ——, 136 S.Ct. 1850, 1857, 195 L.Ed.2d 117 (June 6, 2016). " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan,* 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross,* —— U.S. ——, 136 S.Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill*—availability and estoppel—are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross,* —— U.S. ——, 136 S.Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles,* 656 F. App'x at 580. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno,* 829 F.3d 118, 122 (2d Cir. 2016).

**B. Application**

In this case, defendants concede that plaintiff brought a grievance regarding the issue of defendant Heit's alleged disclosure of private health information in violation of HIPAA. However, defendants argue that plaintiff did not wait for the CPCRC's decision before filed this federal civil rights complaint. This complaint was filed on June 16, 2016, but plaintiff's CPCRC denial was not dated until July 14, 2016. (Pl.'s Ex. A; Dkt. No. 83-1 at CM/ECF p.11). It is less clear that he included his ADA claim[4] in the grievance, but the court will assume for purposes of this motion that plaintiff brought his discrimination claim in his grievance.

[4]     While plaintiff's privacy claim dealt with Nurse Heit revealing plaintiff's medical information to Officer Duprey, plaintiff's ADA claim against the County involved which individuals were allowed to work in certain areas of the facility. The claims are related, but not the same.

To the extent a civil rights claims must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by highest level of decision-maker, must be completed ***before*** an action asserting that claim may be initially filed. *See, e.g., Grant*

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 97 of 178

Rodriguez v. Heit, Not Reported in Fed. Supp. (2018)

2018 WL 3121626

*v. Condon*, No. 14-CV-6514, 2018 WL 1256224, at *2 (W.D.N.Y. Mar. 12, 2018) (exhaustion must be completed before suit is filed); *Casey v. Brockley*, No. 9:13-CV-1271 (DNH/TWD), 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (Rep't-Rec.), *adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) ("receiving a decision from CORC after commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ); *Guillory v. Haywood*, No. 9:13-CV-1564 (MAD/TWD), 2015 WL 268933, at *12 (N.D.N.Y. Jan. 21, 2015); *Rodriguez v. Rosner*, No. 12-CV-958 (TJM/ATB), 2012 WL 7160117, at *5 (N.D.N.Y. Dec. 5, 2012) (Rep't-Rec.), *adopted*, 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, at *11 (N.D.N.Y. Jan. 21, 2015) (citing, *inter alia*, *Neal v. Goord*, 267 F.3d at 122) ).

In this case, it is clear that although plaintiff ultimately exhausted his administrative remedies with respect to his complaint against defendant Heit as well as his complaint against the County for discrimination, he did not complete the exhaustion process until **after** he filed this action.[5] Thus, plaintiff has failed to exhaust his administrative remedies as to both of his claims, and this court must recommend dismissal of the entire complaint for failure to exhaust. Because a dismissal for failure to exhaust is generally without prejudice, the court has also considered the merits of plaintiff's claims. The court finds that, even if plaintiff had exhausted his claims, they would still be subject to dismissal as discussed below.

[5]    In support of their motion for summary judgment, defendants have submitted the affidavit of Lieutenant Kevin Laurin, whose duties include overseeing the grievance program at CCJ. (Laurin Aff. ¶ 3) (Dkt. No. 74-8). Lt. Lauren states that plaintiff filed one grievance on May 25, 2016, regarding "his request to be in the inmate worker program and an issue with Nurse Heit regarding his medical condition." (Lauren Aff. ¶ 5). Lt. Lauren states that, upon his review of the grievance, he determined that the only available positions at the time were in the kitchen, and plaintiff was not medically cleared to work in the kitchen. (*Id.* ¶ 6). Plaintiff appealed the denial of his grievance "all the way up to the CPCRC, which upheld the actions of the facility in their **July 14, 2016** decision." (*Id.* ¶ 7) (emphasis added). Lt. Lauren also states that, "while plaintiff submitted other grievances during his incarceration at the CCJ, at no point did he submit any other grievances directed at Nurse Heit or regarding his ability to work in the inmate worker program." (*Id.* ¶ 9).

## IV. Privacy

### A. Legal Standards

**\*5** The Second Circuit has recognized a constitutional right, protected by the First Amendment, to " 'maintain the confidentiality of previously undisclosed medical information.' " *Mendez v. Quiros*, No. 3:16-CV-2097, 2017 WL 374462, at *3 (D. Conn. Jan. 25, 2017) (quoting *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) ). Prison officials may only "disclose medical information to the extent that disclosure relates to a 'legitimate penological interest.' " *Id.* " 'The gratuitous disclosure of an inmate's confidential medical information as humor or gossip ... is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy.' " *Id.*

The degree of protection afforded to an inmate's medical condition varies with the "sensitive" nature of the condition. *Id.* (citing *Powell*, 175 F.3d at 111). In order to state a claim for violation of the right to keep medical information confidential, the plaintiff must show that he suffers from an "unusual or sensitive medical condition that, if disclosed, would expose him to ridicule, discrimination or even violence, particularly when the word of the condition is likely to spread through 'humor or gossip[.]' " *Id.* (quoting *Powell*, 175 F.3d at 112; citing *Rodriguez v. Ames*, 287 F.Supp.2d 213, 220 (W.D.N.Y. 2003) (dismissing case because plaintiff did not have an "unusual medical problem which, if disclosed unnecessarily to other inmates, would likely expose plaintiff to discrimination, intolerance, or potential violence"); *Webb v. Goldstein*, 117 F.Supp.2d 289, 298-99 (E.D.N.Y. 2000) (dismissing a Fourteenth Amendment claim because the prisoner did not claim that he had the requisite medical condition) ).

### B. Application

Plaintiff claims that defendant Heit mentioned plaintiff's medical condition in front of the Corrections Officer ("C.O.") who escorted plaintiff to the infirmary on May 19, 2016, where plaintiff was scheduled to be evaluated for clearance as an inmate worker. The court will assume that plaintiff's HIV positive status rises to the level of a sufficiently "sensitive"

2018 WL 3121626

condition. As stated by defendants, it is undisputed that inmates are escorted throughout the facility by C.O.s who remain with the inmates so that they may be transported back to their housing units. (Duprey Aff. ¶ 4). There are obvious security reasons for this procedure. (*Id.* ¶¶ 4-5). Plaintiff does not question that Officer Duprey was authorized and required to escort plaintiff to his medical appointment and required to stay in plaintiff's presence throughout the appointment.

Plaintiff alleges that defendant Heit told plaintiff, in the presence of Officer Duprey, that plaintiff could not work in the kitchen because of his HIV status. Both defendant Heit and Officer Duprey state in their affidavits that the conversation did not occur as plaintiff claims. (*See generally* Duprey Aff., Heit Aff.). (Dkt. Nos. 74-5, 74-6). CO Duprey states that, on May 19, 2016, plaintiff was assessed by defendant Heit regarding plaintiff's ability to work in the "inmate worker program." (Duprey Aff. ¶ 7). CO Duprey states that he was the only other person in the room with plaintiff and Nurse Heit. (*Id.*) Nurse Heit told plaintiff that "people with his condition" typically did not get cleared to work in the kitchen, but he could be cleared to work "the floors and laundry." (*Id.*)

Officer Duprey states that plaintiff became agitated and informed Nurse Heit that he had sued another County Jail for discrimination and won. (Duprey Aff. ¶ 8). Defendant Heit told plaintiff that she would consult with her supervisor regarding any existing policies which would explain why plaintiff could not work in the kitchen "due to his condition." (*Id.* ¶ 9). However, Nurse Heit never stated what that "condition" was, other than referring to it as " 'your condition.' " (*Id.*)

**\*6** Defendant Heit states that she is a Registered Nurse ("RN"), who works for CCJ, and whose responsibilities include distributing medications to inmates, completing the "medical intake" for inmates at CCJ, addressing inmate health issues, responding to emergencies, responding to inmate "sick calls," distributing vaccinations, conducting inmate medical examinations, and "clearing inmates who seek to work in the inmate worker program." (Heit Aff. ¶ 4). Defendant Heit states that, for security purposes, when inmates seek medical attention and when they are being evaluated, it is CCJ policy to have a CO accompany the inmate. (*Id.* ¶ 5). The CO who accompanies the inmate to the examination will "take a position near the open doorway of the exam room." (*Id.* ¶ 6). The CO does not necessarily stand next to the inmate during the medical interaction, but keeps the inmate in the CO's field

of vision so that the officer may "immediately respond to any behavioral or verbal incident." (*Id.*)

After reviewing the relevant records, defendant Heit states that she remembers seeing plaintiff on May 19, 2016, regarding his request to be cleared as an inmate worker. CO Duprey accompanied plaintiff to the examination. (Heit Aff. ¶ 7). Defendant Heit states that during the examination she told plaintiff that he could not work in the kitchen due to his "condition," but did not disclose the condition itself. (*Id.* ¶ 8). Defendant Heit states that plaintiff became angry and wanted to see something in writing as to why he could not work in the kitchen area. (*Id.* ¶ 9). Defendant Heit states that she informed plaintiff that she would ask her supervisor—Nurse Kinter, who issued a memorandum stating that plaintiff could work in any area of the facility "except for the kitchen pursuant to minimum standards section 7009.5(b)." (*Id.*)

Defendant Heit also states that when she evaluates inmates to determine whether they can work in the inmate worker program, she can only give her recommendation. She has no control or authority over which inmates get placed in any particular job. (*Id.* ¶ 10). Defendant Heit states that she has never spoken to any other medical officials or Corrections Officers about plaintiff's condition "outside of the requirements of my job as RN." (*Id.* ¶ 11). Defendant Heit also does not speak to other inmates about her patients' medical conditions. (*Id.* ¶ 12).

Defendants have also filed excerpts from the plaintiff's deposition in this case. (Def.s' Ex. C) (Pl.'s Dep.) (Dkt. No. 74-4). Plaintiff testified that prior to the encounter with defendant Heit, he had spoken with other inmates at CCJ about his HIV status. (Pl.'s Dep. at 43-44). [6] Plaintiff also discussed his HIV status with officers at the facility. (Pl.'s Dep. at 44, 45). Plaintiff stated that no one else except defendant Heit and CO Duprey was in the room when plaintiff went for his inmate worker evaluation. (*Id.* at 65). Plaintiff conceded that he was also aware that CO Duprey already knew about plaintiff's condition prior to the evaluation. (*Id.* at 65-66). Plaintiff stated that he spoke to CO Duprey "years ago" about his "health issues." (*Id.* at 65). Plaintiff stated that CO Duprey had also done plaintiff's "intake" at the jail, so he would have to know about his health information. (*Id.* at 66).

[6]    Defendants have only filed excerpts of the plaintiff's deposition. The pages are not sequentially numbered, so the court will cite to the page of the deposition that

appears at the top right corner of the page, not to the CM/ECF numbered page.

Thus, it is clear from plaintiff's own statements that his medical condition was not "previously undisclosed" to CO Duprey. Officer Duprey's presence and defendant Heit's statements [7] were not in violation of plaintiff's First Amendment privacy rights. In addition, CO Duprey's presence in the examination room was reasonably related to the valid security concern of protecting the Nurses' safety during an inmate's examination. [8] Thus, Nurse Heit did not violate plaintiff's First Amendment right to privacy during the May 19, 2016 examination.

[7]  This is true even if defendant Heit did mention HIV, which she claims, and CO Duprey confirms is not the case.

[8]  A regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citing Turner v. Safely, 482 U.S. 78, 89 (1987) ).

## V. ADA Claim

### A. Legal Standards

 **\*7**  The ADA is applicable to inmates in state correctional facilities. *See Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005) (both the ADA and the Rehabilitation Act are applicable to inmates). Under the ADA, the inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005).

In order to establish a claim under the ADA, the plaintiff must first show that he has a disability. *Farid v. Bouey*, 554 F.Supp.2d 301, 326 (N.D.N.Y. 2008). Under the Title II of the ADA, a disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities. *Id.* (citing inter alia *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002); *Doe v. Goord*, No. 04-CV-570, 2004 WL 2829876 at *17, 2004 U.S. Dist. LEXIS 24808 (S.D.N.Y. Dec. 10, 2004); 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B) ). Plaintiff must identify the activity that he claims is impaired and establish

that it constitutes a "major life activity." *Weixel*, 287 F.3d at 147.

Major life activities include, among others, caring for oneself; performing manual tasks; seeing, hearing; speaking; breathing; learning; reading; communicating; and working. 42 U.S.C. § 12101(2)(A). Major life activities also include the operation of a major bodily function such as the immune system; digestive system; neurological system; respiratory; bladder; brain; endocrine; reproductive and circulatory systems. *Id.* § 12101(2)(B). A substantial limitation is one that prevents or severely restricts the individual from doing activities that are of "central importance most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

### B. Application

It has been held that HIV infection qualifies as a disability under the ADA. *Doe v. Deer Mountain Day Camp*, 682 F.Supp.2d 324, 341 (S.D.N.Y. 2010) (citing inter alia *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) ). There is also no dispute the CCJ is a public entity. However, plaintiff cannot meet the third requirement for establishing an ADA violation. Plaintiff was not excluded from participation in, nor was he denied the benefits of some service, program or activity by reason of his or her disability. The "program" of which plaintiff complains is the "inmate worker program." Plaintiff was eligible to participate in the program and work in many other jobs throughout the facility. On May 20, 2016, he was cleared to "work in any other part of the correctional facility at this time." (Def.s' Ex. A at 11) (Dkt. No. 74-2). Kitchen workers are required to be free of "communicable diseases." (*Id.* & Pl.'s Ex. A at 15 (Dkt. No. 83-1 at 15). [9] HIV was only one of the conditions listed that would have prevented plaintiff from being assigned to work in the kitchen. [10] During his deposition, plaintiff testified that he worked in the inmate worker program at CCJ "a lot of times ... 11, 12 times." (Def.'s Ex. C at 33). In fact, plaintiff testified that he was aware of the kitchen restriction and did not even "apply for that job." [11]  (*Id.* at 26, 35, 62). Thus, plaintiff was not denied any benefit of the inmate worker program "due to his disability," and his complaint may be dismissed in its entirety.

[9]  9 N.Y.C.R.R. § 7417.6(b) (regulations regarding food service personnel).

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 100 of 178

Rodriguez v. Heit, Not Reported in Fed. Supp. (2018)
2018 WL 3121626

10   Other communicable diseases listed include chickenpox, Lyme Disease, Shingles, HIV/AIDS, Hepatitis, Meningitis, Strep, Syphilis, Influenza, Staph, Tuberculosis, and "All Other STD's." (Pls.' Ex. B at CM/ECF p.25).

11   Oddly, in plaintiff's response to the defendants' motion, he now states that he was told by a sergeant that he was "wanted" as a kitchen worker, and that he got his "hopes up," but that he was "stopped right in [his] tracks" during the medical clearance. (Dkt. No. 83 at 4). This statement is completely contradicted by plaintiff's deposition testimony, during which he says he knew he was not allowed to work in the kitchen, and he was not even applying for a kitchen job. (Pl.'s Dep. at 26, 35, 62). At one point plaintiff stated "never once I said I would like to work in a kitchen because I know my health status." (Pl.'s Dep. at 26).

## VI. Request for Extension of Time and Discovery Request

### A. Extension Request

**8** Plaintiff has filed a letter-motion requesting an two-month extension of time to "respond" to the defendants' motion. Defense counsel has opposed the motion. Plaintiff has already responded in opposition to the motion. (Dkt. No. 83). In the present letter-request, plaintiff asks for a two-month extension because he states that "new evidence" from the World Health Organization ("WHO") was delivered to him "about a month ago," which is "important to [his] motion." (Dkt. No. 86).

Plaintiff does not explain what this new information is or why it is important to his "motion," and this court finds that an extension of time to allow plaintiff to make further submissions at this time is not appropriate. The primary basis for this recommendation of dismissal is plaintiff's failure to exhaust his administrative remedies before this action was filed. Plaintiff's information from the WHO would not have any impact on his failure to exhaust.

Even with respect to the merits of plaintiff's claim, the information from the WHO would likely not be pertinent. Although it is unclear what plaintiff intends to argue, this court has assumed that HIV is a disability for purposes of the ADA. Thus, support for such a claim is unnecessary. In addition, plaintiff has already submitted information from the Centers for Disease Control ("CDC") indicating that one cannot contract HIV from consuming food handled by an HIV-infected person. (Dkt. No. 83-1 at 19). Presumably,

plaintiff would argue that there should be no prohibition based on HIV from plaintiff working in the kitchen. Once again, even assuming that this statement is true, at his deposition, plaintiff stated that he was not applying for a kitchen job. [12]

12   The court assumes that plaintiff made this statement to support his claim that defendant Heit spontaneously and maliciously stated that plaintiff could not work in the kitchen due to his HIV status—even though he had not applied for the position. Plaintiff cannot have it both ways.

In addition, plaintiff was not prevented from participating in the inmate work program "due to his disability." At worst, he was ineligible to work in the kitchen according to state regulations which prevent anyone with *any* communicable disease from working in the kitchen. As he admitted during his deposition, he participated in many other jobs in the inmate worker program. Thus, whether plaintiff could or could not work safely in the kitchen is not at issue in this case. In any event, if plaintiff believes that his new evidence should change the outcome of the court's decision, he may include the evidence in his objections to this recommendation.

### B. Discovery

The court will strike plaintiff's letter as it relates to discovery, first because the deadline for completion of discovery has passed, [13] and second, even if the deadline had not passed, requests for discovery are not filed with the court in the first instance. [14]

13   As defendants point out in their opposition letter, the deadline for discovery expired on October 29, 2017, and plaintiff has never asked the court for an extension of time for further discovery. Defendants also claim that, contrary to plaintiff's allegation in his letter, defense counsel did send plaintiff a complete transcript of his deposition, The court does note that counsel only filed excerpts of plaintiff's deposition in support of the summary judgment motion. A party is not required to file a complete transcript of the deposition in support of a motion if the rest of the testimony is not relevant to the arguments in the motion. *See* Fed. R. Civ. P. 56(c)(1)(A) (party may cite to particular "parts" of materials in the record, including depositions). If plaintiff believed that other portions of the deposition were relevant, he was free to file them in support of his response in opposition. Finally, the court notes that plaintiff continues to claim that his English is not good. However, as I stated in my order denying counsel, plaintiff's intake form indicates

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 101 of 178

Rodriguez v. Hett, Not Reported in Fed. Supp. (2018)

2018 WL 3121626

that he was born in the United States and is a high school graduate. In addition, a review of the excerpts of the deposition transcript filed by defendant does not indicate that plaintiff had difficulty understanding or speaking English.

14    The letter is not addressed to the court.

**\*9  WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's request for an extension of time to respond to the defendants' motion for summary judgment (Dkt. No. 86) is **DENIED**, and it is

**ORDERED**, that plaintiff's letter to defense counsel regarding discovery (Dkt. No. 87) is **STRICKEN FROM THE RECORD**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 74) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**, and it is

**RECOMMENDED**, that to the extent that plaintiff's response to the defendants' motion (Dkt. No. 83) can be considered a cross-motion, it be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2018 WL 3121626

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2316687

KeyCite Blue Flag – Appeal Notification

Appeal Filed by RODRIGUEZ v. HEIT, 2nd Cir., September 24, 2018

2018 WL 2316687
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Angel RODRIGUEZ, Plaintiff,

v.

Laura HEIT, Registered Nurse; and
Clinton County Jail, Defendants.

9:16-CV-0706 (GTS/ATB)
|
Signed 05/22/2018

**Attorneys and Law Firms**

ANGEL RODRIGUEZ, 24314052, Metropolitan Detention Center—Brooklyn, Inmate Mail/Parcels, P.O. Box 329002, Brooklyn, New York 11132, OF COUNSEL, Pro Se.

LEMIRE, JOHNSON & HIGGINS, LLC, P.O. Box 2485, 2534 Route 9, Malta, New York 12020, GREGG T. JOHNSON, ESQ., APRIL J. LAWS, ESQ., Counsel for Defendants.

## DECISION and ORDER

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* prisoner civil rights action filed by Angel Rodriguez ("Plaintiff") against Clinton County Jail and one of its employees ("Defendants"), are (1) Defendants' motion for summary judgment seeking dismissal of the Complaint due to Plaintiff's failure to exhaust his available administrative remedies before filing suit pursuant to the Prison Litigation Reform Act ("PLRA"), and (2) United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Defendants' motion for summary judgment be granted, that Plaintiff's Complaint be dismissed, and that (to the extent that Plaintiff's response to Defendants' motion for summary judgment can be construed a cross-motion for summary judgment) Plaintiff's cross-motion for summary judgment be denied. (Dkt. Nos. 74, 83, 90.) None of the parties have filed Objections to the Report-Recommendation and the deadline in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no clear error [1] in the Report-Recommendation: Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 90.) As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. (*Id.*) To those reasons, the Court adds only four points.

[1]    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

First, while a cursory review of the docket sheet suggests that Plaintiff's notice of change of address (from Rensselaer County Jail to Metropolitan Detention Center) was not received and processed until April 5, 2018 (six days after the issuance of Magistrate Judge Baxter's Report-Recommendation on March 30, 2018), a closer examination of the electronic service receipt for the Report-Recommendation reveals that the Report-Recommendation was indeed mailed to Plaintiff at his new address (at Metropolitan Detention Center on March 30, 2018), because his change of address had been noted March 29, 2018. (Dkt. Nos. 85, 86, 90, 91.)

Second, while Plaintiff submitted a document bearing a postage date stamp of April 2, 2018 (and thus deemed "filed" on that date pursuant to the Prison Mailbox Rule), the document was not an Objection to the Report-Recommendation but an attempt to supplement his opposition to Defendants' motion for summary judgment with "Exhibit D." (Dkt. No. 83.) The Court rejects that attempt. The deadline for Plaintiff's opposition to Defendants' motion expired on March 28, 2018, and Plaintiff has not provided good cause for an extension of that deadline (especially a retroactive one). (*Compare* Dkt. No. 77 [extending deadline for opposition by more than six weeks] *with* Dkt. No. 93 [attempting to supplement opposition].) Nor will

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 103 of 178

Rodriguez v. Hett, Not Reported in Fed. Supp. (2018)

2018 WL 2316687

the Court consider the exhibit in reviewing the Report-Recommendation: a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[2] Finally, the exhibit (which contains World Health Organization guidelines on HIV infection and AIDS in prisons) would not alter the Court's Decision and Order, even if the Court were to consider it. Setting aside the fact that Plaintiff's claim arises under the Eighth Amendment (not international guidelines), Defendants' motion was based on a failure to exhaust administrative remedies, which has nothing to do with World Health Organization guidelines.

[2] *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); *Fed. R. Civ. P. 72(b)*, Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*2** Third, in his opposition, Plaintiff fails to submit a Rule 7.1 Response to Defendants' properly supported Rule 7.1 Statement. (*Compare* Dkt. No. 74, Attach. 10 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 83 [Plf.'s Response].) Before submitting his opposition, Plaintiff had repeatedly been specifically advised of the requirement that he file a Rule 7.1 Response, and the consequences of not doing so. (*See, e.g.,* Dkt. No. 74, at 4; Dkt. No. 75, at 2.) As a result, the facts asserted in Defendants' Rule 7.1 Statement may be, and are, deemed admitted by Plaintiff. N.D.N.Y. L.R. 7.1(a)(3).

Fourth, in the Report-Recommendation, Magistrate Judge Baxter notes a contradiction between Plaintiff's deposition testimony of May 24, 2017, and Plaintiff's affidavit testimony of March 6, 2018. (Dkt. No. 90, at 17, n.11.) To the extent

that Magistrate Judge Baxter rejected that affidavit testimony, he was correct in doing so. Setting aside the fact that an errata sheet to a deposition transcript (and not a subsequent affidavit) is generally the proper means by which to correct deposition testimony,[3] the point of law exists that a court may resolve an issue of credibility on a motion for summary judgment in the narrow circumstances present here (i.e., a piece of testimony is unsubstantiated by any other direct evidence and contradicts the witness's other testimony).[4]

[3] *See, e.g., Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony."); *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A]n affidavit ... that, by omission or addition, contradicts the affiant's previous deposition testimony is insufficient to create a genuine issue of fact."); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.") (collecting cases).

[4] *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether ... there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account.... In the circumstances presented in the instant case-where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, ... we hold that the District Court did not err by awarding summary judgment. Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, ... conclude that summary judgment was appropriate.") [internal quotation marks and citations omitted].

For all of these reasons, Defendants' motion for summary judgment is granted, Plaintiff's Complaint is dismissed in its entirety, and Plaintiff's cross-motion for summary judgment is denied.

**ACCORDINGLY**, it is

2018 WL 2316687

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 90) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**\*3  ORDERED** that Defendant's motion for summary judgment (Dkt. No. 74) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 83) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety.

The Court certifies that an appeal from this Decision and Order would not be taken in good faith.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2316687

---

    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 105 of 178

2016 WL 3349316

2016 WL 3349316
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michel TOLIVER, Plaintiff,
v.
J. STEFINIK, Correction Officer, Shawangunk
Correctional Facility; J. Gardner, Lieutenant
Hearing Officer, Shawangunk Correctional
Facility; Stone, Corrections Officer, Shawangunk
Correctional Facility; Aube, Sgt. in House Unit,
Shawangunk Correctional Facility; Gaye (John
Doe), Corrections Officer, Shawangunk Correctional
Facility; Keys, Corrections Officer, Shawangunk
Correctional Facility; L. Pingott, Captain (Security),
Shawangunk Correctional Facility; D. Degraff,
Corrections Officer, Shawangunk Correctional
Facility; Sergeant Preston, Sergeant Corrections,
Shawangunk Correctional Facility; R. Cutler,
Corrections Officer, Shawangunk Correctional
Facility; Budziszewski, Corrections Officer,
Shawangunk Correctional Facility; R. Kane,
Corrections Officer, Shawangunk Correctional
Facility; C.O. North; J. Peterson, Defendants.

9:12-CV-00077
|
Signed 06/15/2016

### Attorneys and Law Firms

MICHEL TOLIVER, 464 Hudson Street, #222, New York, New York 10014, Plaintiff Pro Se.

OFFICE OF THE NEW YORK, STATE ATTORNEY GENERAL, The Capitol, OF COUNSEL: CATHY Y. SHEEHAN, AAG, Albany, New York 12224, Attorneys for Defendants.

### MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge

**\*1** On January 17, 2012, Plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that twenty employees of the New York State Department of Corrections and Community Supervision ("DOCCS")

violated his constitutional rights during his confinement at the Shawangunk Correctional Facility ("Shawangunk"). See Dkt. No. 1. By Decision and Order dated May 3, 2012, this Court dismissed, sua sponte, Defendants Schneiderman, Bellamy, and Prack from the action because the complaint did not state facts suggesting their personal involvement in the alleged violations of Plaintiff's constitutional rights. See Dkt. No. 9 at 8-10.

On June 28, 2012, Plaintiff filed an amended complaint (Dkt. No. 27), which, by Decision and Order dated December 6, 2012 (Dkt. No. 85), this Court accepted for filing against seventeen of the original Defendants, as well as Correction Officer ("C.O.") North, who was not named in the original complaint. Liberally construed, the surviving claims in Plaintiff's amended complaint include (1) a First Amendment claim, based on Defendants' alleged filing of false misbehavior reports against Plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; (2) an equal protection claim based on alleged discrimination against Plaintiff because of his race, disability, and/or sexual orientation; (3) a conspiracy claim related to the retaliation and discrimination claims; (4) a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and (5) an Eighth Amendment claim for failure to provide adequate medical care. Dkt. No. 27 at 8-9; Dkt. No. 35. Plaintiff seeks both monetary and injunctive relief. Dkt. No. 27 at 14.

Defendants filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Plaintiff's amended complaint in its entirety, on behalf of all but one of the remaining Defendants. [1] See Dkt. No. 134. Plaintiff responded to the motion to dismiss, and defense counsel chose not to file a reply. Dkt. No. 150. On November 17, 2014, Magistrate Judge Baxter issued a Report-Recommendation recommending that the Court grant-in-part and deny-in-part Defendants' motion to dismiss. Dkt. No. 155. This Court adopted Magistrate Judge Baxter's November 17, 2014 Report-Recommendation, dismissing Plaintiff's conspiracy claim and all claims against Defendants Fischer, Maly, and LeClaire.

---

[1]    C.O. North, who, by then, was no longer an active DOCCS employee, had not been served with the amended complaint and was not then represented in this action. See Dkt. No. 91. C.O. North has since accepted service, and is currently represented by the Attorney General's Office, as are the other remaining thirteen Defendants.

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 106 of 178

2016 WL 3349316

This Court has previously found that, in litigating this case, Plaintiff has made numerous

> abusive and frivolous filings, which have included more than twenty motions, for preliminary injunctive relief, eight motions to amend the amended complaint, several requests for sanctions, repeated motions to compel discover seeking evidence which is clearly irrelevant to the matter at hand, numerous motions for reconsideration of the Court's denials of Plaintiff's frivolous motions, and countless appeals to this Court of Magistrate Judge Baxter's denials of his frivolous requests.

**\*2** *See* Dkt. No. 233. Since Defendants filed their summary judgment motion, Plaintiff has filed several additional motions to amend or supplement his amended complaint, which this Court denied as frivolous, vexatious, and in clear contravention of repeated notices to Plaintiff "that the Court will not permit [him] to amend the amended complaint in this now four-year old case." *See* Dkt. Nos. 244, 246. Plaintiff filed two Interlocutory Appeals both of which were dismissed by the Second Circuit. *See* Dkt. Nos. 252, 256.

On March 22, 2016, Magistrate Judge Andrew T. Baxter issued a Report-Recommendation recommending that Defendants' summary judgment motion be granted in full. [2] *See* Dkt. No. 249. Specifically, Magistrate Judge Baxter found that Plaintiff's retaliation, equal protection, and Eight Amendment medical indifference claims should be dismissed without prejudice for failure to exhaust all available administrative remedies. *See id.* Further, Magistrate Judge Baxter recommended dismissing Plaintiff's procedural due process claims with prejudice because Plaintiff's factual allegations failed to implicate a liberty interest that would warrant due process protection.

[2]     Although Magistrate Judge Baxter's March 22, 2016, Report-Recommendation indicates that the Defendants' summary judgment motion should be granted in part, it is clear upon review that all remaining claims in Plaintiff's amended complaint must be dismissed on the grounds stated. Magistrate Judge Baxter found it unnecessary, as does this Court, to address multiple grounds on which to dismiss the same claims. Therefore, the Report-Recommendation actually recommends granting Defendants' summary judgment motion in full, terminating the instant action in its entirety.

Currently before this Court is Magistrate Judge Baxter's Report-Recommendation, to which neither party has objected.

# I. DISCUSSION

## A. Standard

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point") (citation omitted). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a pro se party's failure to object to a report-recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 107 of 178

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

2016 WL 3349316

**\*3** In the present matter, Magistrate Judge Baxter provided Plaintiff adequate notice that he was required to file any objections to the Report-Recommendation, and specifically informed him that failure to object to any portion of the report would preclude his right to appellate review. *See* Dkt. No. 249 at 26. Specifically, Magistrate Judge Baxter informed Plaintiff that "**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72." Dkt. No. 249 at 26.

Magistrate Judge Baxter clearly provided Plaintiff with sufficient notice of the consequences of failing to object to the Report-Recommendation. Although Plaintiff requested and was granted two extensions of time to file objections, no objections have been filed.

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and, based on the undisputed facts, judgment for the movant is warranted as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 92823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## B. Exhaustion

**\*4** The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1983; 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *see, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

2016 WL 3349316

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 108 of 178

accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to § 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing ... (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015

WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

**\*5**  When the Second Circuit decided *Giano*, it also decided four other related cases, further clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and carved out particular instances in which the requirement could be waived or excused. *See Hemphill*, 380 F.3d at 686; *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ortiz v. McBride*, 380 F. 3d 649 (2d Cir. 2004). Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement: (1) whether the administrative remedies were available to the inmate; (2) whether the defendants' own actions inhibited exhaustion, estopping them from raising the defense of exhaustion; (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry to recent cases. *See, e.g., Heyliger v. Gebler*, 624 Fed. Appx. 780, 782-83 (2d Cir. 2015); *Davis v. State of New York*, 311 Fed. Appx. 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 Fed. Appx. 89, 91 (2d Cir. 2011).

In their answer to the amended complaint, Defendants properly asserted the affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to bringing this federal civil rights action. *See* Dkt. No. 171 at 4. Plaintiff's argument that Defendants waived their right to assert an exhaustion defense by not raising it in their pre-answer motion to dismiss is without merit. *See* Dkt. No. 242-1 at 12; *Villante v. VanDyke*, 93 Fed. Appx. 307, 309 (2d Cir. 2004) (explaining that "[f]ederal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading, such as an answer, not that it be the subject of a pretrial motion" and finding that the defendants, "having raised the exhaustion defense in their answer, did not waive the defense by failing to include it in their first motion for summary judgment"); *see also Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (permitting a defendant to amend its answer to state an exhaustion defense). As Magistrate Judge Baxter correctly found, Defendants did not waive the exhaustion defense by not asserting it in their initial motion to dismiss. *See* Dkt. Nos. 104, 171.

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 109 of 178

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

2016 WL 3349316

Defendants have submitted an affidavit from Michael Cunningham, the supervisor of the Inmate Grievance Program ("IGP") at Shawangunk listing all of the grievances filed by Plaintiff between February 2011 (the date of Plaintiff's transfer to Shawangunk) and July 2012. *See* Dkt. No. 236-3 at 2. Additionally, Defendants submitted a certified copy of a CORC report showing Plaintiff's appeals to CORC of grievances filed between 2011 and 2015. [3] *See* Dkt. No. 236-8 at 3-5. This data indicates that Plaintiff filed five grievances at Shawangunk before he filed his initial complaint on January 17, 2012, and that although he fully exhausted two of those claims, they were not exhausted until February and March of 2011, after Plaintiff filed his initial complaint. *See* Dkt. No. 236-10 at 21.

[3]    The information from these two sources was collated in a spreadsheet summarizing Plaintiff's grievance filings and appeals, attached as Appendix A to Defendants' Memorandum of Law. *See* Dkt. No. 236-10 at 20-21.

In his response in opposition to Defendants' motion for summary judgment, Plaintiff claims, in conclusory terms, that he submitted many more grievances than Defendants acknowledged in their motion, which the IGRC refused to file, and that he filed additional appeals to CORC, which CORC refused to accept. *See* Dkt. No. 242-1 at 2-3. Plaintiff's amended complaint, although often vague and confusing, appears to allege that he "circulated" or filed "complaints" or grievances on the following dates: March 9, 22, 25, and 30. *See* Dkt. No. 27 at 11-12. Plaintiff attached a letter to his amended complaint sent by DOCCS Deputy Commissioner LeClaire dated April 26, 2011, in response to a complaint from Plaintiff, which reminds Plaintiff that "[a]llegations of misconduct by facility staff should be directed to facility officials through the established grievance mechanism or by writing to the Superintendent." *See* Dkt. No. 27 at 63. Thus, it appears as though Plaintiff may be referring to informal complaints that he failed to properly direct to the established grievance mechanism.

**\*6**  Plaintiff has submitted a copy of one formal grievance, dated March 9, 2011, that does not appear to be reflected on Defendants' spreadsheet. In the amended complaint, however, Plaintiff merely alleges that he "circulated" this grievance to "the above named defendants," so it is unclear whether he properly submitted this grievance to IGRC. *See* Dkt. No. 27 at 11, 63; Dkt. No. 236 at 21; Dkt. No. 243-4 at 31. Further, Plaintiff has not submitted any documentation to suggest that he appealed a denial of the March 9, 2011 grievance. *See* Dkt. No. 27 at 11. Finally, whether Plaintiff properly submitted

the March 9, 2011, grievance is unimportant as the substance of that grievance was covered, in much greater detail, in Plaintiff's March 10, 2011 grievance, which was properly submitted to IGRC and appealed. *See* Dkt. No. 236 at 21.

As Magistrate Judge Baxter correctly found, Plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted by the IGRC at Shawangunk do not, in light of the documentation that Defendants have provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies before he filed his initial complaint. *See Jeffreys v. City of new York*, 426 F.3d 549, 554 (2d Cir. 2005) (explaining that where a plaintiff, in response to a motion for summary judgment, provides only their "own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account") (quotation and internal citation omitted); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case") (citations omitted).

Similarly, as Magistrate Judge Baxter correctly found, Plaintiff's claim that CORC sometimes refused to accept his appeals does not create a material issue of fact with respect to the exhaustion issue. Plaintiff has submitted two letters, received by him from CORC, dated July 20, 2011, [4] and June 12, 2012, returning papers to him and advising Plaintiff that appeals of grievances must be submitted through the IGRC at his facility, and not sent directly to CORC for review. *See* Dkt. No. 4-2 at 8-9; Dkt. No. 27 at 70. Only the July 20, 2011 letter is relevant to the exhaustion issue in this case because it pre-dates the filing of Plaintiff's initial complaint, whereas the June 12, 2012, letter was sent and received after the commencement of this action. *See* Dkt. No. 4-2 at 9. It is clear that the July 20, 2011 letter refers to Grievance No. 26770-11, which Plaintiff did ultimately appeal to exhaustion. *See* Dkt. No. 236-10 at 21. While CORC's return of Plaintiff's initial inquiry relating to Grievance No. 26770-11 may have delayed CORC's decision, it was Plaintiff's own mistake that would have caused that delay and would not estop Defendants from using the affirmative defense of exhaustion, nor is it a "special circumstance" under the *Hemphill* factors.

[4]    Magistrate Judge Baxter's March 22, 2016, Report-Recommendation refers to this as the July 11, 2011

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 110 of 178

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

2016 WL 3349316

letter, which was the date on which Plaintiff received an adverse decision to his SHG-26770-11 Grievance; however, the actual letter from Karen Bellamy, Director of IGP, is dated July 20, 2011.

Plaintiff's primary argument as to why his failure to exhaust administrative remedies before filing this action should be excused, is that CORC far exceeded the time limits set by DOCCS regulations in denying his final appeal of Grievance No. 26770-11. *See* Dkt. No. 242-1 at 4-8. However, it is well-established law in the Second Circuit that a plaintiff must wait for a final decision from CORC before filing an action, even if CORC's decision is untimely under DOCCS internal rules and regulations. *See Casey*, 2015 WL 8008728, at *6 ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory*, 2015 WL 268933, at *12 ("although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense" (citation omitted)). The numerous grievances pursued by Plaintiff in 2011 and 2012, as well as the two appealed grievance decisions, clearly indicate that Plaintiff had access to, and took advantage of, the grievance process and was thus not inhibited from fully utilizing the grievance process. *See* Dkt. No. 236-10 at 21. Therefore, Plaintiff has failed to establish a material issue of fact with respect to the availability of the administrative grievance remedies that might justify Plaintiff's failure to exhaust the administrative grievance process before filing this action.

**\*7** As Magistrate Judge Baxter correctly found, Plaintiff's retaliation, equal protection, and Eighth Amendment medical claims must be dismissed without prejudice for failure to exhaust the administrative grievance process prior to filing this action. While requiring Plaintiff to initiate a new lawsuit now that at least two of his claims have been fully exhausted may seem judicially inefficient, if the resulting decision is favorable to the plaintiff "the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Neal*, 267 F.3d at 123. Moreover, "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Id.*

## C. Due process claims

Defendant's have not argued that Plaintiff failed to fully appeal the disciplinary hearings challenged in the Amended Complaint. *See* Dkt. Nos. 27, 236. Accordingly, as Magistrate Judge Baxter correctly found, the due process claims cannot be dismissed based on failure to exhaust, and must be addressed on the merits. *See* Dkt. No. 249.

The Fourteenth Amendment to the Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted). These procedural protections include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making its determination. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)) (other citation omitted). Additionally, the hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (other citation omitted).

To successfully state a claim under section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)); *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In *Sandin*, the Supreme Court held that although states may create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 483-84 (internal citations omitted).

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

2016 WL 3349316

The Second Circuit has refused to set a bright line rule on when confinement becomes atypical. "In order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement ... and to identify with specificity the facts upon which [their] conclusions [are] based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citations omitted). While under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that confinement in a Special Housing Unit ("SHU"), without unusual conditions, for a period of up to 101 days will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *see Colon v. Howard*, 215 F.3d 227, 231, 232 n.5 (2d Cir. 2000). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

**\*8** "Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky*, 292 Fed. Appx. 120, 122 (2d Cir. 2008) (citation omitted). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement [that may be aggregated] when (1) they are contiguous *and* (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 9:05-CV-271, 2007 WL 4555932, \*8 (N.D.N.Y. Dec. 19, 2007) (collecting cases) (emphasis in original).

Although all relevant disciplinary proceedings involved Tier II hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock and would not, therefore, trigger due process protection individually, it is appropriate to aggregate two discrete periods in 2011 for due process analysis purposes. During these two discrete periods, Plaintiff served consecutive terms of confinement exceeding 30 days, and all of Plaintiff's disciplinary hearings at Shawangunk were conducted by the same individual, Defendant Gardner. [5] *See* Dkt. No. 236-10 at 17 (citing N.Y. Comp. Codes R. & Regs. Tit. 7 § 253.7(a)(1)(iii)). [6] When aggregated, these two distinct periods constitute a 59 day consecutive period of keeplock served between March 14 and May 11, 2011, and a 64 day consecutive period of keeplock served between October 14 and December 16,

2011. *See* Dkt. No. 236-9 at 7-8. However, as Magistrate Judge Baxter correctly found, Plaintiff's liberty interests were not implicated by the disciplinary proceedings challenged in the amended complain, even after aggregating the two consecutive periods of keeplock, given the absence of any allegations from Plaintiff about unusually harsh conditions of his keeplock.

[5]     Plaintiff began serving more severe disciplinary sentences following disciplinary proceedings in July 2012, but that, and subsequent disciplinary hearings occurred after Plaintiff filed his amended complaint, and are not part of this action. *See* Dkt. No. 236-9 at 6-7.

[6]     The federal district courts in New York, applying *Sandin*, have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the due process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore*, No. 9:08-CV-085, 2010 WL 980233, \*5 (N.D.N.Y. Mar. 15, 2010) (collecting cases).

Plaintiff's inmate history does not list two misbehavior reports filed by Defendant Budziszewski, which Defendants included with their motion. *See* Dkt. No. 236-6 at 69, 82-84. Plaintiff contends in his amended complaint that there were additional misbehavior reports filed against him in 2011 which are not reflected on the disciplinary history submitted by Defendants. *See* Dkt. No. 27 at 11, 24, 34-35, 48. Plaintiff, however, does not provide any specific allegations to suggest that he served punishment on disciplinary charges brought against him prior to the filing of his amended complaint on June 26, 2012 beyond that reflected in his disciplinary history or in the other disciplinary records submitted by Defendants.

Plaintiff has not submitted any evidence establishing, or even made any allegations, that the conditions he experienced while serving keeplock sentences at Shawangunk were more harsh than typical keeplock conditions. Therefore, as Magistrate Judge Baxter correctly found, none of the periods of keeplock confinement he served would implicate a liberty interest warranting due process protection. *See, e.g., Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, \*7 (W.D.N.Y. July 13, 2006) (finding 77 days in keeplock during which the plaintiff was deprived of TV, phone, packages, and commissary, and was unable to attend Muslim services and classes, did not constitute a liberty interest); *Pilgrim v. Bruce*, No. 9:05-CV-198, 2008 WL 2003792, \*15 (N.D.N.Y. May 7, 2008) (finding that a plaintiff's conclusory allegations, which

Toliver v. Stefinik, Not Reported in Fed. Supp. (2016)

2016 WL 3349316

notably failed to include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subject to more severe conditions than in normal restrictive confinement); *Holmes v. Grant*, No. 03-CIV-3426, 2005 WL 2839123, *5 (S.D.N.Y. Oct. 25, 2005) (finding that sixty days in the SHU at Shawangunk is "insufficient to constitute a deprivation of a liberty interest").

**\*9**  Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's due process claims.

## II. CONCLUSION

After carefully considering Magistrate Judge Baxter's Report-Recommendation, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's March 22, 2016 Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' summary judgment motion is **GRANTED in full**; and the Court further

**ORDERS** that Plaintiff's retaliation, equal protection, and Eighth Amendment medical indifference claims are **DISMISSED** without prejudice; and the Court further

**ORDERS** that Plaintiff's procedural due process claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3349316

---

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2019 Thomson Reuters. No claim to original U.S. Government Works.  8

2018 WL 3736791
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher BERKLEY, Plaintiff,

v.

H. WARE, Defendant.

No. 9:16-CV-1326 (LEK/CFH)
|
Signed 07/06/2018

**Attorneys and Law Firms**

Christopher Berkley, 15-R-1631, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, pro se.

Attorney General for the State of New York, OF COUNSEL: HELENA O. PEDERSON, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224, Attorney for Defendant.

## REPORT-RECOMMENDATION AND ORDER [1]

[1]    This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

*1 Plaintiff pro se Christopher Berkley ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS") brings this action pursuant to 42 U.S.C. § 1983, alleging that corrections officer ("C.O.") Helen Ware—who, at all relevant times, was employed at Franklin Correctional Facility ("Franklin")—violated his constitutional rights under the Eighth Amendment. See Dkt. No. 1 ("Compl."). Presently pending before the Court is defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 21. Plaintiff did not oppose the motion. For the following reasons, it is recommended that defendant's motion be granted.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II.B. infra. Plaintiff contends that on May 20, 2016, he injured his right hand playing basketball. Compl. at 5. The infirmary nurses issued him a hand brace to prevent further injury. Id. On May 25, 2016, plaintiff's vocational teacher informed him that he could not attend the class because he had a hand brace on, and that he could not participate in any activities. Id. The teacher sent plaintiff into the hallway to return to his dorm. Id. On entering the hallway, C.O. Ware questioned plaintiff as to why he was not in class. Id. at 5-6. Plaintiff informed C.O. Ware that he could not participate in class due to his sprained wrist, and C.O. Ware instructed him to return to class. Id. at 6. Plaintiff complied, and the vocational teacher again "kicked [plaintiff] out of the classroom." Id. Once in the hallway, C.O. Ware instructed plaintiff to return to class. Id. Plaintiff informed his teacher that C.O. Ware ordered his return, and that he "didn't want any problems[.]" Id. Plaintiff asked his teacher if he could speak with C.O. Ware, but the teacher told him to leave the classroom. Id.

After plaintiff entered the hallway for the third time, C.O. Ware "threw [him] against the wall" and "bumped [his right] hand against the wall[.]" Compl. at 6. Plaintiff informed C.O. Ware that his hand hurt, and she "grabbed [his] hand and slammed it against the wall," stating, "I said to keep your fucking hands on the wall" and "shut the fuck up." Id. She further stated, "as a matter of fact [sic] give me this fucking brace [sic] there's nothing wrong with your fucking hand." Id. C.O. Ware removed plaintiff's brace and handcuffed him, further injuring his hand. Id. at 7. On June 9, 2016, plaintiff received a hard cast for his right hand. Id. at 7.

### B. Defendant's Recitation of the Facts

In support of this motion, defendant filed a Statement of Material Facts. [2] On May 20, 2016, plaintiff injured his right hand and wrist while playing basketball. Dkt. No. 21-3 ¶ 4. Plaintiff informed the Franklin medical staff that he heard a "popping sound" after he ran into the wall and "rolled" his wrist. Id. ¶ 7. The medical staff noted that plaintiff had limited range of motion and could not make a complete fist. Id. Plaintiff was referred to the Emergency Room at Alice Hyde Memorial Center ("AHMC") for further evaluation. Id. ¶ 8. X-ray results indicated that plaintiff did not sustain a fracture

or dislocation to his hand or wrist, and that he only suffered a sprain. Id. ¶ 10. Plaintiff received a splint, a soft sleeve with a hard insert at the underside of the wrist—also known as a brace—as well as ibuprofen, and was discharged. Id. ¶¶ 11, 12. Plaintiff also received a work release form, which indicated that he would be able to return to programming on May 24, 2016. Id. ¶ 12. A follow-up appointment was recommended with an orthopedist to rule out any hidden fractures or ligamentous injuries to plaintiff's hand and/or wrist. Id. ¶ 13.

2    Local Rule 7.1(a)(3) states:

    Summary Judgment Motions

    Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

    The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

    N.D.N.Y. L.R. 7.1(a)(3).

**\*2**  On his return to Franklin, the medical staff prescribed plaintiff a medical pass excusing him from work. Dkt. No. 21-3 ¶ 14. The pass expired on May 25, 2016. Id. On May 25, 2016, plaintiff went to the commissary before reporting to the Vocational School, which caused him to be late for his Building Maintenance class. Id. ¶ 23. Plaintiff had previously been late for class, and had been given direct orders to be on time in the future. Id. ¶ 24. When he reported to class plaintiff was wearing a brace on his right hand/wrist, but did not have a valid medical excuse pass. Id. ¶ 25. Because he did not have a valid medical excuse pass, C.O. Ware instructed plaintiff that he had to attend class even if he could not participate. Id. ¶ 26. Plaintiff refused to remain in the classroom; instead, he asked to go to the infirmary to renew his medical excuse pass. Id.

¶¶ 27, 28. C.O. Ware called the infirmary regarding plaintiff's medical excuse pass, and the nurse on duty informed her that plaintiff could attend class even though he could not participate. Id. ¶¶ 29, 30. The nurse also stated that because plaintiff only had a sprain, the situation was not an emergency and plaintiff did not need to visit the infirmary. Id. ¶ 30. C.O. Ware relayed this information to plaintiff. Id. ¶ 31.

Later that day, plaintiff's vocational class instructor informed C.O. Ware that plaintiff wanted to go to emergency sick call. Dkt. No. 21-3 ¶ 32. As nothing had changed since the first time plaintiff attempted to leave the classroom, C.O. Ware did not believe that this was an emergency situation. Id. C.O. Ware called the infirmary to explain that plaintiff felt it was an emergency. Id. The nurse stated that because this was not an emergency and did not require urgent care, plaintiff would be written up for abusing emergency sick call if he went just to get a new medical excuse pass. Id. ¶ 33. C.O. Ware reiterated this information to plaintiff, but he insisted on going to the infirmary. Id. ¶¶ 34, 35. Pursuant to DOCCS Directive 4910, C.O. Ware pat-frisked plaintiff before allowing him to leave the Vocational School. Id. ¶ 36. C.O. Ware pat-frisked plaintiff in the hallway outside of the Building Maintenance classroom. Id. ¶ 37. C.O. Ware directed plaintiff to put his hands against the wall and spread his feet apart. Id. ¶ 38. She patted down his neck, chest, back, arms, and legs on the outside of his clothing. Id. C.O. Ware did not remove plaintiff's brace, nor did she throw plaintiff against the wall or attempt to choke him. Id. ¶¶ 39, 40. C.O. Ware did not "slam" plaintiff's right hand and/or wrist against the wall during the pat-frisk. Id. ¶ 41. C.O. Ware did not yell at plaintiff, threaten him, use racial slurs, or handcuff plaintiff during the pat-frisk. Id. ¶¶ 42, 43. During the pat-frisk, C.O. Ware informed plaintiff that if he went to emergency sick call to ask for a new permit, he would be written up as that did not qualify as an emergency. Id. ¶ 44. C.O. Ware sent plaintiff to the infirmary after the pat-frisk. Id. ¶ 45.

At the infirmary, the medical staff observed that plaintiff only had minimal swelling, and that his splint was still in place. Dkt. No. 21-3 ¶ 46. The medical staff informed plaintiff that there was "nothing wrong" with his hand and/or wrist, and that he could attend class. Id. ¶ 47. As such, the medical staff did not treat plaintiff at that time. Id. ¶ 48. On May 31, 2016, Franklin medical staff examined plaintiff in conjunction with a grievance he filed concerning the alleged May 25, 2016 incident. Id. ¶ 50. Plaintiff reported pain in his right thumb, but the medical staff did not observe swelling or bruising. Id. ¶ 51. Plaintiff did not request pain medication. Id. ¶ 52.

On June 9, 2016, plaintiff attended a follow-up appointment with nonparty orthopedist Dr. Macelaru, who confirmed that plaintiff suffered a sprain, and that there were no hidden fractures or torn ligaments. Id. ¶¶ 15, 16. Dr. Cahill, Facility Health Services Director at Franklin, determined that the sprain diagnosed on June 9, 2016 was the same injury as the sprain diagnosed on May 20, 2016 because there were no new injuries to plaintiff's right hand and/or wrist. Id. ¶ 17. As a result of plaintiff's appointment with Dr. Macelaru, plaintiff's right hand and wrist were placed in a hard cast to prevent further injury and allow for quicker healing. Id. ¶¶ 18, 19. Plaintiff's cast was removed on or around July 15, 2016.

## II. Discussion [3]

[3]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

### A. Failure to Respond

**\*3** Plaintiff failed to oppose defendant's Motion for Summary Judgment. Plaintiff was notified of the consequences of failing to respond to a summary judgment motion. Dkt. No. 23. Given this notice, plaintiff was adequately apprised of the pendency of defendant's motion and the consequences of failing to respond. "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that movant is proceeding *pro se.*" Jackson v. Onondaga Cty., 549 F.Supp.2d 204, 209 (N.D.N.Y. 2008) (footnotes omitted). However, if "the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit." Id. at 210. "[T]o be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must, among other things, not be conclusory." Id. Even if a verified complaint is deemed nonconclusory, "it may be insufficient to create a factual issue where it is (1) largely unsubstantiated by any other direct evidence and (2) so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." Id. Plaintiff's complaint states, "I declare under penalty of perjury that the foregoing is true and correct." Compl. at 9. Therefore, as plaintiff's complaint is

verified, [4] the undersigned will accept plaintiff's complaint as an affidavit to the extent that the statements are based on plaintiff's personal knowledge or are supported by the record. See Berry v. Marchinkowski, 137 F.Supp.3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider an unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude).

[4]    The fact that plaintiff's complaint is not notarized is immaterial under 28 U.S.C. § 1746. See Hameed v. Pundt, 964 F.Supp. 836, 840-41 (S.D.N.Y. 1997) (deeming an unnotarized document admissible in support of a summary judgment motion so long as that document contains the statement "I declare under penalty of perjury that the foregoing is true and correct.").

### B. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of

summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law"....

*4 Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## C. Exhaustion

As a threshold matter, defendant argues that plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit. See Dkt. No. 21-1 ("Def. Mem. of Law") at 9-11. On May 27, 2016, plaintiff filed a grievance (FKN-12752-16) alleging that C.O. Ware assaulted him during the May 25, 2016 pat-frisk and injured his right hand. Dkt. No. 21-3 ¶¶ 49, 64; Dkt. No. 21-5 at 20-21. On June 3, 2016, the Superintendent denied plaintiff's grievance. Id. ¶ 65; Dkt. No. 21-5 at 17. Plaintiff appealed the Superintendent's determination on or about June 8, 2016. Id. ¶ 66; Dkt. No. 21-5 at 7. The Central Office Review Committee ("CORC") mailed the determination of plaintiff's grievance to Franklin on November 2, 2016. Id. ¶ 67. Plaintiff filed the complaint in the underlying action on October 27, 2016. Id. ¶ 68.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ––– U.S. ––––, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[5]

[5]    In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id.

Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

**1. Did Plaintiff Exhaust his Administrative Remedies?** [6]

[6]    First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

**\*5** It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F.Supp.2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); Couvertier v. Jackson, No. 9:12-CV-1282 (DNH/DEP), 2014 WL 2781011, at *3 (N.D.N.Y. June 19, 2014) ("In the event the defendant establishes that the inmate plaintiff failed to fully complete [ ] the administrative review process prior to commencing the action, the plaintiff's complaint is subject to dismissal.") (internal citation and quotation marks omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

Here, the record is clear that plaintiff filed this action on October 27, 2016, and at that time CORC had yet to issue a decision on plaintiff's appeal. [7] DOCCS IGP Assistant Director Rachael Seguin declared that based on her review of DOCCS records, CORC mailed their determination on plaintiff's grievance to the Franklin Inmate Grievance Review Committee ("IGRC"), for transmittal to plaintiff, on November 2, 2016—six days after plaintiff commenced this action. Dkt. No. 21-11 ("Seguin Decl.") ¶¶ 15, 16. Moreover, plaintiff's complaint makes clear on two occasions that he was aware he had not fully exhausted his administrative remedies prior to commencing suit: (1) "my grievance was denied by Superintendent D. LaClair and now my appeal to the CORC is pending"; and (2) "[t]hus I am still waiting for a result from the C.O.R.C. in this matter[.]" Compl. at 8. Thus, plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit because CORC's decision was outstanding. See Peoples, 212 F.Supp.2d at 142; McMillian, 2017 WL 8894737, at *2; Couvertier, 2014 WL 2781011, at *3; White, 2011 WL 4478988, at *3.

[7]    Plaintiff's complaint is considered filed as of the date it was given to the prison official for forwarding. See Johnson v. Coombe, 156 F.Supp.2d 273, 277 (S.D.N.Y. 2001). "Although it is not clear when the plaintiff gave his complaint to prison officials, [a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." Id. (internal quotation marks and citation omitted). Because plaintiff signed his complaint on October 27, 2016, the undersigned deems that the date of filing. See Compl.

**2. Availability of Administrative Remedies**

Read broadly, plaintiff seems to suggest that the grievance process was unavailable to him because of CORC's "absurd" delay in rendering their final determination. See Dkt. No. 1-1 at 27 (setting forth a memorandum from IGP Director Karen Bellamy regarding receipt of plaintiff's appeal). First, although plaintiff claims that CORC did not receive his appeal until September 14, 2016, the plain text of the memorandum seems to suggest that CORC received the

appeal on June 14, 2016; rather, the memorandum sent to plaintiff was dated September 14, 2016. See id. ("Your grievance FNK-12752-16 entitled Assaulted by C.O. was rec'd by CORC on 6/14/2016.").

Second, courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. Compare Casey v. Brockley, No. 9:13-CV-01271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-recommendation and order adopted by 2015 WL 7864161 (N.D.N.Y., Dec. 03, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust.") and Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable) with Rossi v. Fischer, No. 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate.") and Peoples v. Fischer, No. 11 Civ. 2694(SAS), 2012 WL 1575302, *6 (S.D.N.Y. 2012) on reconsideration in part, 898 F.Supp.2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination").

**\*6** Here, there is no dispute that plaintiff filed a grievance with the Franklin IGRC on May 27, 2016; received the Superintendent's determination on June 3, 2016; and appealed that determination to CORC on or about June 8, 2016. See Dkt. No. 21-5 at 2-7. CORC received plaintiff's appeal on June 14, 2016; sent him a receipt of that appeal on September 14, 2016; and ultimately issued their determination on November 2, 2016. See id. at. 1; Dkt. No. 1-1 at 27. Plaintiff has not proffered evidence that he wrote to the Franklin IGRC or CORC inquiring as to the status of his appeal. The letters plaintiff does provide predate plaintiff's appeal to CORC and do not reference any unavailability in the grievance process. See Dkt. No. 1-1 at 18-26; see also 7 N.Y.C.R.R § 701.5(d)(3)(i) ("If a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to

confirm that the appeal was filed and transmitted to CORC."). Thus, the undersigned finds that CORC's approximately five month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement. Cf. Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance relating to the October 22, 2013 incident, such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA.").

Thus, as plaintiff failed to exhaust his administrative remedies prior to commencing this action, it is recommended that defendant's motion be granted. [8]

[8] "Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." Brown v. Napoli, 687 F.Supp.2d 295, 298 (W.D.N.Y. 2009); see also Morales v. Mackalm, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion). However, because the undersigned recommends that plaintiff's Eighth Amendment claim against defendant be dismissed on the merits, the dismissal is with prejudice. See Ferrer v. Racette, No. 9:14-CV-1370 (GTS/DJS), 2017 WL 6459525, at *13 n.18 (N.D.N.Y. Dec. 18, 2017) ("Because there is an alternative basis for dismissing the claims against these Defendants that cannot be overcome by allowing Plaintiff a chance to exhaust his administrative remedies, the dismissal is with prejudice.").

## D. Eighth Amendment

Alternatively, C.O. Ware argues that plaintiff's Eighth Amendment claim must be dismissed "because there is no evidence in the record to suggest that [she] used excessive force against [p]laintiff." Def. Mem. of Law at 11. C.O. Ware also argues that to the extent that any force was used, it was de minimis. See id. "The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (quoting Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ). To state a prima facie claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element of the excessive force analysis is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm [ ] constitute[s an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9, 112 S.Ct. 995). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10, 112 S.Ct. 995 (internal quotation marks and citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted).

**\*7** The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Id. (quoting Hudson, 503 U.S. at 7, 112 S.Ct. 995). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "[1] the extent of the injury and the mental state of the defendant[;] [2] ... the need for the application of force; [3] the correlation between that need and the amount of force used; [4] the threat reasonably perceived by the defendants; and [5] any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

As to the objective element, plaintiff has failed to demonstrate that the his injury was "sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9, 112 S.Ct. 995 (1992) (internal citations omitted). Plaintiff fails to establish, and there is no indication in the record, that the injury to his right wrist/hand changed or worsened as a result of May 25, 2016 pat-frisk; nor is there any support for his claim that he broke and/or fractured his right hand and/or wrist as a result of the alleged assault. See Compl. at 9; Dkt. No. 1-1 at 10.

The record is clear that on May 20, 2016 plaintiff sustained a sprain to his right wrist/hand while playing basketball. See Compl. at 5; Dkt. No. 21-3 ¶ 4. Plaintiff's medical records from May 20, 2016 indicate that there were "[n]o signs of fracture or dislocation," and state that plaintiff suffered a right wrist sprain. Dkt. No. 22 ("Pl. Medical Rec.") at 68-69, 97. [9] Plaintiff contends that on May 25, 2016, C.O. Ware "threw [him] against the wall" and "grabbed [his] hand and slammed it against the wall." Compl. at 6. Affording plaintiff special solicitude, even if the undersigned were to credit plaintiff's allegations, [10] his medical records show that immediately after the pat-frisk, plaintiff exhibited only "minimal swelling" and that his splint was still in place. Pl. Medical Rec. at 63. Non-party Dr. Cahill declared that on May 25, 2016, plaintiff reported "[n]o new injuries" to the medical staff after the alleged assault, and, therefore, it was unnecessary for the medical staff to provide treatment. Dkt. No. 21-10 ("Cahill Decl.") ¶ 18. Medical staff examined plaintiff again on May 31, 2016 following the filing of his grievance. See Pl. Medical Rec. at 60. Although plaintiff reported pain in his right thumb, the medical records note that there was no swelling or bruising. Id. On June 9, 2016, non-party orthopedist Dr. Macelaru confirmed that plaintiff had sustained a sprain, and that there were no other fractures or torn ligaments. Id. at 59. [11] Dr. Cahill declared that in his professional medical opinion, "the sprain diagnosed on June 9, 2016 was from the same injury as the sprain diagnosed on May 20, 2016 because there were no new injuries to [plaintiff's] right hand and/ or wrist between May 20, 2016 and June 9, 2016." Cahill Decl. ¶ 22. Further, Dr. Cahill stated that plaintiff's hand and wrist were placed in a hard cast "to fully immobilize and protect the wrist. Because it is hard and cannot be removed by the wearer, a cast is better than a splint to prevent further injury and allow for quicker healing." Id. ¶ 25. Moreover, plaintiff's medical records reference the May 20, 2016 basketball injury as the source of plaintiff's hand/wrist injury. See Pl. Medical Rec. at 60 (detailing May 31, 2016 appointment: "Inmate has a splint for rt wrist that he received for a wrist sprain on 5/[20] from AHMC."); 95 (detailing June 9, 2016 orthopedic appointment: "Inmate injured [rt] wrist when he fell while playing basketball."). Thus, as defendant has proffered evidence that any injury plaintiff sustained to his right hand/wrist occurred as a result of the May 20, 2016 basketball injury, and plaintiff has not provided evidence to the contrary, the undersigned finds that plaintiff has failed to demonstrate a sufficiently serious injury attributable to C.O. Ware's pat-frisk for the purposes of an Eighth Amendment analysis. See Henry v. Brown, No.14-CV-2828 (LDH)(LB), 2016 WL 3079798, at *2 (E.D.N.Y. May 27, 2016) ("[W]here

undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries attributed to an alleged use of excessive force, no reasonable jury could credit plaintiff's account of the happening.") (internal citation and quotation marks omitted).

9    AHMC documents incorrectly note that plaintiff sprained his left wrist. See Pl. Medical Rec. at 97.

10   C.O. Ware maintains that she did not use excessive force during the pat-frisk, nor did she use force maliciously or sadistically to cause plaintiff harm. See Dkt. No. 21-8 ("Ware Decl.") ¶¶ 32, 38.

11   Dr. Cahill declared that, in his professional opinion, it was reasonable to schedule plaintiff's follow-up appointment with the orthopedist for two to three weeks of from the date of the injury, instead of the two to three days recommended on his discharge papers, as "the [AHMC] radiology department indicated that [plaintiff] did not sustain any fractures or tears." Cahill Decl. ¶ 21 n.5.

**\*8** To the extent that plaintiff's discomfort or swelling can be attributed to the May 25, 2016 pat-frisk, it has been held that a plaintiff's minor injuries or discomfort are de minimis and do not constitute a sufficiently serious injury under the objective element of the analysis. See White v. Williams, No. 9:12-CV-1775 NAM/DJS, 2016 WL 4006461, at \*9 (N.D.N.Y. June 22, 2016) ("Reviewing the record as a whole, and drawing all inferences in favor of Plaintiff, the Court finds that the de minimis use of force alleged by Plaintiff, and the resultant minor injuries or discomfort, are insufficient as a matter of law to satisfy the objective prong of an excessive force claim."); James v. Phillips, No. 05 Civ. 1539(PKC) (KNF), 2008 WL 1700125, at \*4 (S.D.N.Y. Apr. 9, 2008) ("True, plaintiff need not show a significant injury but he must come forward with more than a de minimis use of force. In this case, there was nothing more than a shove of an inmate who was not then handcuffed. The swelling to the chin did not amount to much.").

As to the subjective element, there is no indication in the record that C.O. Ware acted "maliciously and sadistically to cause harm." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). Absent his conclusory allegations, plaintiff has failed to proffer evidence as to C.O. Ware's mental state sufficient to demonstrate that she maliciously or sadistically caused him harm. See id. C.O. Ware declared that she pat-frisked plaintiff pursuant to DOCCS Directive 4910, which allows for an inmate to be pat-frisked when going

to and from program areas like the Vocational School. Ware Decl. ¶ 23. C.O. Ware further declared that because plaintiff had repeatedly refused to return to class, she performed the pat-frisk before allowing him to leave for the infirmary in an effort to "maintain order and control." Id. ¶ 25.

Thus, in viewing the record in a light most favorable to plaintiff, the lack of evidence with respect to C.O. Ware's conduct, coupled with the absence of any injury attributable to the May 25, 2016 pat-frisk, fails to present a triable issue of fact for a jury to resolve. Accordingly, the undersigned recommends that defendant's Motion for Summary Judgment on this ground be granted. See Applegate v. Annucci, No. 9:02-CV-0276 (LEK/DEP), 2008 WL 2725087, at \*18 (N.D.N.Y. July 10, 2008) (awarding summary judgment on excessive force claim where the plaintiff failed to file any response to the defendant's motion and the record lacked any evidence from which a reasonable juror could conclude that the defendant used excessive force).

### E. Qualified Immunity

Defendants argue that, even if plaintiff's Eighth Amendment claim is substantiated, they are entitled to qualified immunity. Def. Mem. of Law at 17-19. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F.Supp.2d 211, 230 (N.D.N.Y. 2002).

**\*9** Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection II.D supra, at 16-21. Because there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F.Supp.2d at 230. Accordingly, it is recommended that defendants' motion on this ground be granted.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[12]

[12]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Slip Copy, 2018 WL 3736791

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3730173

2018 WL 3730173
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher BERKLEY, Plaintiff,
v.
H. WARE, Defendant.

9:16-CV-1326 (LEK/CFH)
|
Signed 08/06/2018

**Attorneys and Law Firms**

Christopher Berkley, Marcy, NY, pro se.

Helena O. Pederson, New York State Attorney General, Albany, NY, for Defendant.

## ORDER

Lawrence E. Kahn, U.S. District Judge

### I. INTRODUCTION

**\*1** This matter comes before the Court following a report-recommendation filed on July 6, 2018, by the Honorable Christian F. Hummel, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3 Dkt. No. 24 ("Report-Recommendation").

### II. LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2

(N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b). Otherwise, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

### III. DISCUSSION

No objections were filed in the allotted time period. Docket. Thus, the Court has reviewed the Report-Recommendation for clear error and has found none.

### IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 24) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Defendant's summary judgment motion (Dkt. No. 21) is **GRANTED** and the case is dismissed; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 3730173

Case 9:18-cv-00336-AMN-TWD Document 20 Filed 08/29/19 Page 123 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

2016 WL 3661434
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark GIZEWSKI, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; Michael Sheahan, Superintendent
at Five Points Correctional Facility, in his
official and individual capacity; John Doe 1,
Plaintiff's Treating Physician at Five Points
Correctional Facility, in his official and individual
capacity; and John Doe 2, Corrections Officer
at Five Points Correctional Facility, Defendants.

9:14-CV-0124(GTS/DJS)
|
Signed 07/05/2016

**Attorneys and Law Firms**

LEVINE & BLIT, PLLC, 350 Fifth Avenue, Suite 6902, OF
COUNSEL: LEWIS G. SPICER, ESQ., MATTHEW J. BLIT,
ESQ., JUSTIN S. CLARK, ESQ., New York, New York
10118, Counsel for Plaintiff.

ERIC T. SCHNEIDERMAN, Attorney General for the State
of New York, The Capitol, CHRISTOPHER W. HALL,
ESQ., Assistant Attorney General, Albany, New York 12224,
Counsel for Defendants.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this prisoner civil rights
action filed by Mark Gizewski ("Plaintiff") against the
New York State Department of Corrections and Community
Supervision ("DOCCS"), and three of its employees
(collectively "Defendants"), is Defendants' motion for
summary judgment (Dkt. No. 37) and Plaintiff's cross-motion
to join Kristin Salotti as a defendant (Dkt. No. 42). For the
reasons set forth below, Defendants' motion is granted and
Plaintiff's cross-motion is denied.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**

Plaintiff's Complaint asserts the following four claims: (1) a
claim that DOCCS discriminated against Plaintiff based upon
his disabilities in violation of Title II of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12132; (2) a claim
that DOCCS failed to reasonably accommodate Plaintiff's
disabilities in violation of Title II of the ADA; (3) a claim that
Defendants Sheahan, John Doe 1, and John Doe 2 violated
the Eighth Amendment and 42 U.S.C. § 1983 by acting with
deliberate indifference to Plaintiff's serious medical needs;
and (4) a claim that DOCCS unlawfully retaliated against
Plaintiff for engaging in protected activity in violation of
Title II of the ADA. (Dkt. No. 1, ¶¶ 86-109 [Pl.'s Compl.].)
Familiarity with the factual allegations supporting these
claims in Plaintiff's Complaint is assumed in this Decision
and Order, which is intended primarily for the review of the
parties.

**B. Statement of Undisputed Material Facts**

The undisputed material facts are as follows. Plaintiff was
incarcerated at Five Points Correctional Facility ("C.F."),
located in Romulus, New York, from May 25, 2012, until
January 14, 2014. (Dkt. No. 37, Attach. 1, ¶ 2 [Defs.' Rule 7.1
Statement].) [1]

[1]   Unless otherwise indicated, the cited factual assertions of
      Defendants were either expressly admitted by Plaintiff or
      denied without a supporting record citation by Plaintiff.

Requests for Accommodation

On February 7, 2013, Plaintiff made a formal request for a
cassette tape player so he could listen to books on tape, which
was approved the next day. (Id., ¶ 49.) The bottom of the
"request for reasonable accommodation" form advised the
inmate that he could file a grievance regarding the request.
(Id., ¶ 50.) On March 4, 2013, Plaintiff requested that a
stool in his cell be moved and to be provided with a new
shower hose and handle. (Id., ¶ 51.) This request was partially
granted in that the stool in Plaintiff's cell was moved, and
the shower hose was repaired (rather than replaced), but
Plaintiff was not given a new handle. (Id., ¶ 52.) On April
3, 2013, Plaintiff requested a Roho cushion. (Id., ¶ 53.) The
following day, Matthew Thoms, Deputy Superintendent for
Administration at Five Points C.F., referred Plaintiff's request
to Nurse Administrator Bannister, which was subsequently
approved. (Id., ¶¶ 53-54.) On May 15, 2013, Plaintiff wrote

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 124 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

to Nurse Administrator Bannister to inquire about the status of the delivery of his Roho cushion, which he received on July 2, 2013. (*Compare* Dkt. No. 37, Attach. 1, ¶ 55 [Defs.' Rule 7.1 Statement, asserting that Plaintiff mistakenly stated in his letter that he had made the request for the cushion three months prior but it was only one month before] *with* Dkt. No. 41, Attach. 1, ¶ 55 [Pl.'s Rule 7.1 Response, citing a DOCCS' Ambulatory Health Record Progress Note, dated January 23, 2013, in which Plaintiff requested a "w/c cushion please"].) On September 11, 2013, Plaintiff requested a second Roho cushion and received it on October 16, 2013. (*Id.*, ¶ 57.)

**\*2** On August 30, 2013, Mr. Thoms received the letter from Plaintiff's attorney, dated August 23, 2013, which was attached to his grievance, FPT 27997-13, that made a number of requests for accommodation described previously. (*Id.*, ¶ 58.) In response, Nurse Administrator Bannister investigated whether these requests should be granted and wrote a memo dated September 9, 2013, with her findings. (*Id.*, ¶ 60.) Mr. Thoms incorporated Nurse Administrator Bannister's findings into his letter response, dated September 12, 2013, to Plaintiff's attorney. (*Id.*, ¶ 65.) On September 18, 2013, Plaintiff submitted another formal request for reasonable accommodations asking for a grabber tool, grab bars, soft bristle shower brushes, a wheelchair pusher and a cell assistant. (*Id.*, ¶ 66.) All of these requests were granted. (*Compare* Dkt. No. 37, Attach. 1, ¶ 67 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence that establishes fact] *with* Dkt. No. 41, Attach. 1, ¶ 67 [Pl.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated fact].) On November 1, 2013, Mr. Thoms sent a letter to Plaintiff's attorney to advise him that Plaintiff had received a new Roho cushion on October 16, 2013, as well as two soft bristle brushes and a grabber tool on October 18, 2013. (*Id.*, ¶¶ 70-71.) Mr. Thoms further advised Plaintiff's attorney that Plaintiff was housed in a handicap cell with grab bars. (*Id.*, ¶ 71.)

On November 22, 2013, Plaintiff submitted another formal request for accommodation, asking for vertical shower bars to be installed in his cell. (*Id.*, ¶ 72.) This request was received on November 29, 2013, by the Deputy Superintendent for Programs, Laurine Jones. (*Id.*, ¶ 73.) Plaintiff's request was reviewed by DOCCS' medical personnel and subsequently approved on December 6, 2013. (*Id.*, ¶ 74.) On December 22, 2013, Plaintiff submitted his last formal request for formal accommodation at Five Points C.F., asking for a cell assistant to help make his bed and put on his socks. (*Id.*, ¶ 75.) Plaintiff's request was received by Mr. Thoms on December

30, 2013. (*Id.*, ¶ 76.) In resolving this request, Mr. Thoms decided that, because of Plaintiff's "current disciplinary [and] physical status, he is being housed in [the] infirmary in lieu of SHU, to accommodate [his] needs." (*Id.*, ¶ 77.) Plaintiff checked the box at the bottom of the request for reasonable accommodation form indicating he agreed with this decision. (*Id.*)

## Plaintiff's Grievances

While incarcerated at Five Points C.F., Plaintiff filed two grievances that were formally processed. (*Compare* Dkt. No. 37, Attach. 1, ¶ 3 [Defs.' Rule 7.1 Statement, asserting that Plaintiff filed only two grievances while incarcerated] *with* Dkt. No. 41, Attach. 1, ¶ 3 [Pl.'s Rule 7.1 Response, asserting that Plaintiff made numerous grievance but only two were processed].) One of these grievances was assigned file number FPT-27869 and was received on August 27, 2013. (Dkt. No. 37, Attach. 1, ¶ 4 [Defs.' Rule 7.1 Statement].) In that grievance, Plaintiff complained about his COMPAS risk assessment, which apparently affected his parole eligibility but has nothing to do with the causes of action asserted in his Complaint. (*Id.*, ¶¶ 5-6.)

The other grievance was assigned file number FPT-27997-13 and was received on October 1, 2013. (*Id.*, ¶ 7.) In that grievance, Plaintiff complained generally that "reasonable accommodations are not being provided. Adequate medical care is not being provided." (*Id.*, ¶ 8.) In addition, Plaintiff attached a letter, dated August 23, 2013, from his attorney, who raised the following specific complaints on Plaintiff's behalf: (1) objecting to the requirement that Plaintiff be placed in the infirmary before he could receive pain medication; (2) requesting a transfer to Fishkill C.F. where Plaintiff could receive better care; (3) requesting an access ramp be built in compliance with the ADA so Plaintiff could access the yard area in order to join other participants in the horticulture program; (4) requesting a motorized wheelchair because Plaintiff has deformed hands and had difficulty using his current chair; (5) requesting a shower brush for hygienic purposes; (6) requesting a four-inch Roho air cushion for Plaintiff's wheelchair; (7) requesting a grabber tool to allow Plaintiff easier access to the food items in his locker; (8) requesting an appointment with a pain specialist; (9) requesting a cell assistant; and (10) requesting that grab-bars be installed on the outside of Plaintiff's shower. (*Id.*, ¶ 9.)

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

<u>IGRC's Decision and Plaintiff's Appeal</u>

**\*3** In response, the Inmate Grievance Resolution Committee ("IGRC") granted Plaintiff's request for a Roho cushion, two shower brushes, and a grabber tool, and submitted a work order to have bars installed on the inside and outside of Plaintiff's shower. (*Id.*, ¶¶ 11-12.) The IGRC also found Plaintiff's request for a cell assistant to be an "appropriate request." (*Id.*, ¶ 14.) The IGRC denied Plaintiff's request for a new wheelchair, however, because Plaintiff "navigate[d] very well with his legs and has a pusher available at all times." (*Id.*, ¶¶ 13, 61.) On November 1, 2013, Plaintiff appealed the IGRC determination to Defendant Sheahan, who denied Plaintiff's appeal, noting that he had received a Roho cushion on October 16, 2013, and a grabber tool as well as soft bristle shower brushes on October 18, 2013. (*Id.*, ¶ 15.) Defendant Sheahan also noted that Plaintiff was "housed in a handicap cell that has grab bars installed for his needs." (*Id.*, ¶ 16.) On November 14, 2013, Plaintiff appealed Defendant Sheahan's decision to the Central Office Review Committee ("CORC"). (*Id.*, ¶ 17.) Due to a clerical error, however, the Five Points C.F.'s grievance office failed to forward Plaintiff's appeal to CORC until five months later on April 30, 2014. (*Id.*, ¶ 18.)

<u>Plaintiff's Transfer to Walsh</u>

On January 14, 2014, Plaintiff was transferred from Five Points C.F. to Walsh Regional Medical Unit ("Walsh"). (*Id.*, ¶ 25.) Walsh is a DOCCS' regional medical facility that adjoins, and is part of, Mohawk C.F. in Rome, New York. (*Id.*, ¶ 26.) Inmates at Walsh file their grievances with the Mohawk C.F.'s grievance office. (*Id.*, ¶ 27.) Joseph Cieslak, the Inmate Grievance Program Supervisor at Mohawk C.F., was unable to locate any grievances filed by Plaintiff related to a use of force at Five Points C.F. in January 2014, improper medical treatment at Five Points C.F. and Walsh, or denial of pain medication by Walsh medical staff from January 2014 through February 2014. (*Id.*, ¶ 28.) However, on May 28, 2014, Plaintiff filed a grievance regarding the denial of pain medication for the first 10 days that he was at Walsh but did not name a defendant with respect to this claim. (*Id.*, ¶¶ 29-31, 40, 47-48.) Jeffrey Hale, the Assistant Director of the DOCCS' Inmate Grievance Program and records custodian for CORC, conducted a search for grievance appeals filed by Plaintiff with CORC in 2013 and 2014 when he resided at Five Points C.F. and Walsh. (*Id.*, ¶¶ 32-33.) Mr. Hale found that Plaintiff had appealed one grievance from Five

Points C.F. (FPT-27997-13) and one grievance from Walsh (MHK-12578-14). (*Id.*, ¶ 34.)

**C. Parties' Briefing on Their Respective Motions**

**1. Defendants' Motion for Summary Judgment**

**a. Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert five arguments with regard to Plaintiff's claims against them. (Dkt. No. 37, Attach. 6 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff failed to exhaust his administrative remedies before commencing the present action and note that Plaintiff filed only two grievances (FPT 27869-13 and FPT 27997-13) while incarcerated at Five Points C.F., the first of which (FPT 27869-13) is not relevant to the claims in this action. (*Id.* at 2-9.) With respect to the second grievance, Defendants argue that, although the grievance office failed (due to a clerical error) to forward the appeal to CORC until five months after Plaintiff filed it, he was obligated to either file a direct appeal to CORC or file a new grievance regarding the delay. (*Id.* at 5.) Alternatively, Defendants argue that, in his appeal, Plaintiff raised only four of the eleven issues he previously grieved. (*Id.* at 6-7.)[2] Therefore, Defendants argue that the other seven issues were not administratively exhausted because they had been abandoned by Plaintiff. (*Id.* at 7.)[3]

[2]     According to Defendants, these four issues consist of the following: (1) Plaintiff's request for a grabber tool; (2) his request for a Roho cushion; (3) his request for shower brushes; and (4) his complaint that the shower bars that had been installed were inadequate because "they're not where I need them to be and therefore are dangerous." (Dkt. No. 37, Attach. 6, at 6 [Defs.' Mem. of Law].)

[3]     These seven issues consist of the following: (1) Plaintiff being able to receive pain medication only when he is in the infirmary; (2) Plaintiff's request to be transferred to Fishkill C.F.; (3) the installation of an access ramp to the yard area; (4) a new wheelchair; (5) an appointment with a pain specialist; (6) a cell assistant; and (7) better medical care. (*Id.* at 7.)

**\*4** With respect to the other grievances that Plaintiff alleges he filed, but that were never formally processed, Defendants

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 126 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

argue that Plaintiff did file one grievance (MHK-12578-14) while at Walsh on May 28, 2014, seeking certain reasonable accommodations. (*Id.*) However, Defendants argue that this claim for such reasonable accommodations is unrelated to Plaintiff's legal claim against Walsh in the present action, which alleges that Plaintiff was denied pain medication. (*Id.*) In any event, Defendants argue that Plaintiff failed to administratively exhaust any claims he had while at Walsh. (*Id.* at 7-8.) Finally, Defendants argue that Plaintiff failed to grieve the substance of his three ADA claims (the first, second, and fourth causes of action in his Complaint) and his § 1983 claims (the third cause of action in his Complaint) at either Five Points C.F. or Walsh. (*Id.* at 8-9.)

Second, Defendants argue that Plaintiff's ADA retaliation claim in his fourth cause of action is barred by the Eleventh Amendment because, although Plaintiff asserted a retaliation claim in violation of Title II of the ADA in his fourth cause of action, retaliation claims are brought pursuant to Title V and New York State has not abrogated its sovereign immunity with respect to Title V retaliation claims. (*Id.* at 9-10.)

Third, Defendants argue that Plaintiff's § 1983 claims in his third cause of action fail to state a claim because he has failed to allege facts plausibly suggesting that Defendant Sheahan had any personal involvement in the allegations serving as the basis for Plaintiff's medical indifference and excessive force claims at Five Points C.F. (*Id.* at 10-11.) More specifically, Defendants argue that Plaintiff fails to allege Defendant Sheahan's personal involvement for the following three reasons: (a) with respect to Plaintiff's medical indifference claim, the Complaint alleges that an unknown "Treating Physician" (i.e., John Doe 1) was the one who failed to properly address Plaintiff's medical concerns and, although it is alleged that Defendant Sheahan knew that Plaintiff endured severe and chronic pain for six months, it was appropriate for Defendant Sheahan to defer to prison medical staff regarding Plaintiff's treatment; (b) with respect to Plaintiff's excessive force claim, the Complaint alleges that a corrections officer (i.e., John Doe 2) injured Plaintiff after using excessive force but fails to allege that Defendant Sheahan had any involvement in the incident; and (c) with respect to Plaintiff's claim that he was improperly denied pain medication while at Walsh, the Complaint fails to identify either a named or unnamed defendant as being responsible for or having any personal involvement in Plaintiff's medical care at Walsh. (*Id.* at 11-13.)

Fourth, Defendants argue that Plaintiff's ADA claims in his first and second causes of action fail to state a claim because, of the many requests Plaintiff made for reasonable accommodations, only his request for a new wheelchair was denied on the ground that his needs were already being met. (*Id.* at 13-17.)

Fifth, and finally, Defendants argue that Plaintiff's ADA retaliation claim in his fourth cause of action fails to state a claim for the following two reasons: (a) of the numerous requests Plaintiff made for reasonable accommodations, only his request for a new wheelchair was denied because his needs were already being met and, therefore, there is no evidence of retaliatory intent; and (b) to the extent that Plaintiff argues this denial was retaliatory, Defendants would have made the same decision regardless of retaliatory motive because there were legitimate, nonretaliatory reasons for denying the request. (*Id.* at 17.)

### b. Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff asserts six arguments in opposition to Defendants' motion. (Dkt. No. 42 [Pl.'s Opp'n Mem. of Law].)

**\*5** First, Plaintiff argues that he administratively exhausted his remedies with respect to his grievances that the grabber tool, shower brushes, and the positioning of his shower bars were inadequate for the following four reasons: (a) Plaintiff filed formal grievances and timely appealed those grievances to each successive level; (b) it was the grievance office's fault for not timely transmitting his appeal to CORC; (c) Defendants cannot side-step this failure by claiming that it would have taken four months to decide his appeal even if it were timely transmitted because 7 N.Y.C.R.R. § 701.5(d)(3)(ii) requires the CORC to render a decision within 30 days from the time the appeal was received; and (d) although 7 N.Y.C.R.R. § 701.6(g) states that "matters not decided within the time limits may be appealed to the next step," Plaintiff argues that there was no next step after CORC. (*Id.* at 9.)

With respect to Plaintiff's remaining grievances that were not formally processed, he relies on the Second Circuit's three-part inquiry appropriate for cases involving a failure-to-exhaust defense. (*Id.* at 10.) More specifically, Plaintiff argues that he fully exhausted his administrative remedies through informal channels when he informally grieved for Ultram to treat his pain, to have grab bars installed on the outside of his shower, and to be provided with a new wheelchair and

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 127 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

two long handled brushes, all of which were resolved in his favor. (*Id.* at 10-11.) Under this special circumstance, Plaintiff argues that he fully exhausted his remedies under an exception recognized by this Court in *Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *9 n.20 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.). (*Id.* at 10-11.)

In the alternative, Plaintiff argues that the formal grievance procedure was unavailable to him because he made reasonable attempts to exhaust his administrative remedies by submitting grievances, writing letters to Defendant Sheahan and other officials at Five Points C.F., making verbal requests to Ms. Salotti, and retaining an attorney to contact Five Points C.F. and DOCCS concerning his ongoing issues. (*Id.* at 11-12.) Plaintiff further argues that his attorney submitted a Notice of Intention to File a Claim to the Office of the Attorney General of the State of New York concerning the denial of reasonable accommodations, pain medication, and medical devices. (*Id.* 12.) Therefore, Plaintiff argues that, at a minimum, there is a genuine dispute of material fact regarding whether the formal grievance procedures were available to him at Five Points C.F. (*Id.*)

With respect to another special-circumstances exception to the exhaustion rule, Plaintiff argues that his attempts to exhaust his available administrative remedies comported with the applicable procedural rules and reflected a reasonable interpretation of those regulations for the following three reasons: (a) there was no policy at Five Points C.F. that mandated or informed inmates that a document must be marked as a "grievance" for it to be treated as such; (b) there was no way for Plaintiff to know that, if he submitted a letter grieving his conditions to the administration, it would not be considered a grievance; and (c) Directive #2614 instructs inmates to make requests for medical treatment and items for daily living through the facility's medical unit (which Plaintiff complied with by making verbal complaints to Ms. Salotti), but there is no indication from the Directive that grieving was an alternative. (*Id.* at 13.)

Second, Plaintiff argues that a genuine dispute of material fact exists regarding the personal involvement of Defendant Sheahan in the allegations serving as the basis for his § 1983 claims for the following three reasons: (a) Defendant Sheahan acted with deliberate indifference to Plaintiff's medical condition because he received numerous letters from both Plaintiff and his attorney regarding Plaintiff's condition but never confirmed with anyone that Plaintiff's needs were being met; (b) Defendant Sheahan failed to take immediate

and/or complete corrective action after visiting Plaintiff in the infirmary on two occasions in which Plaintiff complained to him that he had not received the medical devices he needed to maintain his cleanliness; and (c) in the alternative, Defendant Sheahan was grossly negligent in supervising the subordinates who were deliberately indifferent to Plaintiff's medical needs. (*Id.* at 15-16.)

**\*6** In addition, Plaintiff argues that Ms. Salotti was personally involved and deliberately indifferent to his medical needs for the following three reasons: (a) Ms. Salotti was aware that Plaintiff was being denied medically necessary shower brushes in the SHU but did not provide him with any shower brushes; (b) Ms. Salotti was aware that Plaintiff was in chronic pain and had opined that he should be treated with Ultram but gave Plaintiff over-the-counter pain relievers instead; (c) Ms. Salotti had opined that, if Plaintiff's use of Ultram was ever discontinued, he should be weaned off of it, rather than discontinued without weaning, but on two occasions, Ultram was discontinued without weaning, causing Plaintiff to suffer from withdrawal; and (d) Ms. Salotti was the only medical provider at Five Points C.F. who treated him and, therefore, was directly and personally involved in the constitutional deprivations he suffered. (*Id.* at 16-17.)

Third, Plaintiff argues that his ADA retaliation claim (which he concedes should have been brought under Title V and not Title II) is not barred by the Eleventh Amendment because his underlying claim is predicated on an alleged violation of Title II of the ADA and the Title II abrogation of sovereign immunity should be extended to his Title V retaliation claim. (*Id.* at 17-18.)

Fourth, Plaintiff argues that he has alleged facts plausibly suggesting a cause of action for discrimination and failure to provide reasonable accommodations in violation of Title II of the ADA for the following two reasons: (a) the Complaint alleges that Plaintiff's requests for a new wheelchair, two long-handled shower brushes, and shower handles were denied and/or the items provided to him were inadequate; and (b) Plaintiff was denied these accommodations because of his disabilities. (*Id.* at 19.)

Fifth, Plaintiff argues that he has alleged facts plausibly suggesting a claim for retaliation in violation of Title II of the ADA because he has alleged that, after making his requests for reasonable accommodations, he was retaliated against by being placed in solitary confinement without his tools and

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 128 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

medical devices that were necessary for him to maintain his cleanliness. (*Id.* at 19-20.)

Sixth, and finally, in the alternative, Plaintiff argues that, should the Court dismiss one or all of his ADA claims for failure to state a claim, he should be granted leave to amend his Complaint pursuant to Fed. R. Civ. P. 15(a)(2). (*Id.* at 20.)

### c. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants assert three arguments. (Dkt. No. 43 [Defs.' Reply Mem. of Law].)

First, Defendants argue that Plaintiff has failed to exhaust his administrative remedies. As an initial matter, Defendants argue that, in opposing their motion, Plaintiff acknowledged that he failed to file any formal grievances at Five Points C.F. or Walsh regarding deliberate indifference to his medical care, an alleged excessive force incident at Five Points C.F. in January 2014, unsanitary conditions and lack of reasonable accommodations during his confinement in the SHU in December 2013 at Five Points C.F., and retaliation under the ADA. (*Id.* at 1.)

Furthermore, with respect to Plaintiff's remaining claims, Defendants argue that, under *Woodford v. NGO*, 548 U.S. 81 (2006), and *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), Plaintiff cannot procedurally exhaust his administrative remedies through informal channels. (*Id.* at 1-4.) In any event, Defendants argue that Plaintiff did not receive a favorable result regarding his request for Ultram at Five Points C.F. because he did not receive this medication until *after* he was transferred to Walsh. (*Id.* at 4.)

With respect to Plaintiff's argument that the grievance procedure was unavailable to him because only two of his grievances were processed, Defendants argue that Plaintiff failed to file proper grievances. (*Id.* at 4-5.) More specifically, Defendants argue that Plaintiff's letters and complaints to various DOCCS' officials were not submitted to the inmate grievance office as required by 7 N.Y.C.R.R. § 701, *et seq.*, and, therefore, they do not meet the definition of a grievance under 7 N.Y.C.R.R. § 701.2(a) (stating that "[a] letter addressed to facility or central office staff is not a grievance"). (*Id.*) In addition, Defendants argue that it was Plaintiff's choice to write letters, rather than file a formal grievance, and that he knew how to file a proper grievance

from past experience because he filed two grievances in 2011 while incarcerated at Orleans C.F. as well as two grievances in 2013 at Five Points C.F. (FPT 27869-13 and 27997-13). (*Id.* at 5-6.)

**\*7** With respect to Plaintiff's argument that special circumstances excuse his failure to exhaust his administrative remedies, Defendants argue that this should be disregarded for the following four reasons: (a) Plaintiff retained counsel four months before being transferred to Walsh and two months before filing his second grievance at Five Points C.F. and, therefore, should have known how to file a proper grievance; (b) Plaintiff's prior experience filing proper grievances belies his assertion that he did not know that sending a letter grieving his conditions would not be considered a grievance; (c) contrary to Plaintiff's assertion, page three of Directive 2614 states, in bold capital letters, "**GRIEVANCE PROCEDURE**," which specifically instructs inmates that they can file a grievance, and page four states "**HOW TO MAKE COMPLAINTS**" with sample forms inmates can fill out to make requests for reasonable accommodations; and (d) Plaintiff filled out and signed a draft request for reasonable accommodations that contains the language "I understand my right to file a grievance in accordance with Directive #4040" above the inmate signature line. (*Id.* at 6-8.)

Second, Defendants argue that, because they never received certain deposition transcripts from Plaintiff, the Court should not consider excerpts from deposition testimony by Defendant Sheahan, Ms. Salotti, and Patrick O'Neill, which were submitted by Plaintiff in support of his opposition to Defendants' motion. (*Id.* at 10.)

Third, Defendants argue that, because Plaintiff was placed in solitary confinement after he received a second misbehavior report for using marijuana and not in retaliation for making requests for reasonable accommodation, Plaintiff's ADA retaliation claim in his fourth cause of action should be dismissed. (*Id.* at 10-11.)

### 2. Plaintiff's Cross-Motion to Join
### Kristin Salotti as a Defendant

#### a. Plaintiff's Memorandum of Law

In support of his cross-motion, Plaintiff argues that, under Fed. R. Civ. P. 16(b)(4), good cause exists to join Kristin

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 129 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

Salotti, a nurse practitioner at Five Points C.F., as a defendant in this action. (Dkt. No. 42, at 6-8 [Pl.'s Opp'n Mem. of Law].) More specifically, Plaintiff acknowledges that this Court's Pretrial Scheduling Order required that any application to join additional parties was to be made on or before September 5, 2014. (*Id.* at 7; Dkt. No. 14, ¶ 4 [Uniform Pretrial Scheduling Order].) However, Plaintiff argues that he was unable to file an application to join Ms. Salotti as a defendant before this deadline expired for the following four reasons: (1) due to his incarceration, Plaintiff's counsel lacked access to Plaintiff and the ability to determine all of the relevant information; (2) it was not until September of 2014 that Plaintiff's counsel was able to ascertain any information regarding Plaintiff's treating providers and, even then, Plaintiff's counsel believed that the treating provider was a medical doctor and not a nurse practitioner; (3) despite their diligence throughout this action, it was not until March of 2015 when Plaintiff's counsel was able to irrefutably determine that Ms. Salotti was Plaintiff's only treating provider; and (4) Plaintiff did not receive Defendants' discovery responses until more than ten days after September 5, 2014. (Dkt. No. 42, at 7 [Pl.'s Opp'n Mem. of Law].)

Finally, Plaintiff argues that Ms. Salotti would not be prejudiced by being joined to this action because she has already been deposed with her counsel present and was well aware that she was Plaintiff's only treating provider with respect to the issues relevant in this matter. (*Id.* at 7-8.)

### b. Defendants' Opposition to Plaintiff's Cross-Motion

Generally, Defendants assert two arguments in opposition to Plaintiff's cross-motion. (Dkt. No. 43, at 9-10 [Defs.' Reply Mem. of Law].) First, Defendants argue that Plaintiff's reliance on Fed. R. Civ. P. 16 is misplaced because that rule concerns only the scheduling and conduct of pretrial conferences and has nothing to do with joining a party to a lawsuit. (*Id.*) Second, Defendants argue that, apart from proceeding under the wrong rule, Plaintiff failed to address the correct legal standards and comply with the Local Rules of Practice for this Court for joining a party to a pending action. (*Id.* at 10.)

### II. RELEVANT LEGAL STANDARDS

#### A. Standard Governing a Motion for Summary Judgment

**\*8** Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). [4] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law .... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

| 4 | As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). |
|---|---|

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute. [5] Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 130 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

5    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[6]

6    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[7] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein ...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

7    *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31, 1999 WL 325378 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**B. Standard Governing Exhaustion of Administrative Remedies**

**\*9** The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, DOCCS has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[8] First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[9] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 131 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. Third, a grievant may appeal to CORC within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

8    See also Murray v. Palmer, 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

9    The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied. [10] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process. [11]

10    See Murray v. Palmer, 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing Groves v. Knight, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, see Groves v. Knight, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

11    7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); see also Murray, 2010 WL 1235591, at *2 & n.4 [collecting cases].

*10    Despite the plain language of 7 N.Y.C.R.R. § 701.6(g), there appears to be some confusion regarding

whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number. [12] After carefully reviewing the case law, the Court finds that the weight of authority (and the better-reasoned authority) answers this question in the affirmative. This point of law has implicitly been recognized by the Second Circuit, [13] and has explicitly been recognized by district courts in the Northern District, [14] Southern District, [15] and Western District. [16] The Court notes that, if the plaintiff attaches to his appeal a copy of his grievance (or even if he adequately describes, in his appeal to the superintendent, the substance of that grievance), there is something for the superintendent to review. [17]

12    Murray, 2010 WL 1235591, at *2 & n.5 [citing cases].

13    See Collins v. Doe, 597 Fed.Appx. 34, 34 (2d Cir. 2015) ("[T]he district court properly dismissed the complaint for failure to exhaust administrative remedies."), aff'g, Collins v. Caron, 10-CV-1527, 2014 WL 296859, at *2-3, 6-8 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.) (finding lack of special circumstances where inmate failed to properly appeal from the "non-processing" of a grievance through lack of assignment of number); cf. Hernandez v. Coffey, 582 F.3d 303, 305, 309, n.3 (2d Cir. 2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

14    See, e.g., Kelly v. Smith, 985 F. Supp.2d 275, 291 (N.D.N.Y. 2013) (Suddaby, J.) ("Plaintiff did not complete the exhaustion process with regard to either of those documents. The (alleged) non-processing of the first document was never appealed (in a timely fashion or otherwise) to the Superintendent and then CORC."); Sidney v. Caron, 09-CV-1326, 2012 WL 4380392, at *5 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J) ("[E]ven if Plaintiff did submit a second grievance that was subsequently not filed, he had the ability–and the duty– to file an appeal regarding the non-processing of that grievance."); Murray v. Palmer, 03-CV-1010, 2008 WL 2522324, at *15, 18 & n.46 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("[E]ven if Great Meadow C.F. did not ... have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 132 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

to the next level."); *Midalgo v. Bass*, 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept. 26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number).

15   *See, e.g., Hernandez v. Coffey*, 99-CV-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) (rejecting plaintiff's argument that he could not have exhausted because he never received a grievance number, finding he could nonetheless have appealed any such non-response to the next level).

16   *See, e.g., Collins v. Cunningham*, 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available where his grievance of March 20, 2004, was not assigned a grievance number).

17   *See Collins v. Caron*, 10-CV-1527, 2014 WL 296859, at *3 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.) ("The Court notes that, if the plaintiff attaches to his appeal a copy of his grievance (or even if he adequately describes, in his appeal to the superintendent, the substance of that grievance), there is something for the superintendent to review."), *aff'd, Collins v. Doe*, 597 Fed.Appx. 34, 34 (2d Cir. 2015) ("[T]he district court properly dismissed the complaint for failure to exhaust administrative remedies.").

*11   Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate when a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 691 (2d Cir. 2004), *accord, Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from

raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

## III. ANALYSIS

### A. Whether Plaintiff Failed to Exhaust His Administrative Remedies

For the reasons stated in Defendants' memorandum of law and reply memorandum of law, the Court answers this question in the affirmative. (Dkt. No. 37, Attach. 6, at 2-9 [Defs.' Mem. of Law]; Dkt. No. 43, at 1-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

#### 1. Availability of the Formal Grievance Procedure

After carefully considering the matter, the Court finds that the formal grievance procedure was available to Plaintiff. Examples of when courts have found unavailability include " 'where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies.' " *Murray*, 2010 WL 1235591, at *5 (quoting *Hargrove v. Riley*, 04-CV-4587, 2007 WL 389003, at *8 [E.D.N.Y. Jan. 31, 2007]). Here, the Court finds that the grievance procedure was available to Plaintiff because (a) before and/or after the time in question Plaintiff filed and appealed grievances at Orleans C.F. and Five Points C.F., (b) he had retained counsel who could have advised him regarding the grievance procedure, and (c) he knew how to file a proper grievance from his prior experience as an inmate at Orleans C.F. in 2011 as well as when he was at Five Points C.F.

In addition to these reasons, the Court finds that there is a lack of admissible record evidence demonstrating that Plaintiff unsuccessfully filed other grievances during the time in question. As discussed in Part I.C.1.b. of this Decision and Order, Plaintiff argues that the grievance procedure at Five Points C.F. was unavailable to him because he filed numerous grievances but only two were processed. (Dkt. No. 42, at 12 [Pl.'s Opp'n Mem. of Law].) As an initial matter, the admissible record evidence demonstrates that many of Plaintiff's complaints were made in the form of letters and

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 133 of 178
Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

verbal complaints to prison officials but were not properly filed as formal grievances. For example, Plaintiff's counsel has attached numerous letters written by either Plaintiff or Plaintiff's former attorney to various prison officials at Five Points C.F. regarding his complaints. (Dkt. No. 41, ¶¶ 3-7, 9-10, 12-15, 17-19.) However, for the reasons discussed below in Part III.A.3. of this Decision and Order, informal complaints and letters written to prison officials are not considered formal grievances under 7 N.Y.C.R.R. § 701.2(a) and/or for purposes of the Inmate Grievance Program.

Similarly, Plaintiff's deposition testimony is inconsistent with respect to how many grievances he filed while an inmate at Five Points C.F. For example, Plaintiff testified as follows:

> Q: Did you ever file a request for reasonable accommodation about the problem you were having getting around in the horticulture program?
>
> **\*12**  A: Yes.
>
> Q: Do you know how many you filed?
>
> A: *A couple.*
>
> ....
>
> Q: Did you ever get back a form that said your request for help in getting around horticulture was denied?
>
> A: No.
>
> Q: Did you file a grievance about it?
>
> A: Yes.
>
> Q: Did you file more than one grievance?
>
> A: I – I must have filed *thousands* of grievances since I've been incarcerated.
>
> Q: But I'm just referring to Five Points.
>
> A: At least *hundreds* of them in there.
>
> Q: And – okay. So you filed hundreds of grievances at Five Points?
>
> A: *Many of them.*

(Dkt. No. 41, at 118, 54:5-55:16 [Gizewski Dep.] ) (emphasis added). Plaintiff's internally inconsistent testimony, coupled with the lack of external record evidence supporting his argument that he filed numerous grievances while an inmate

at Five Points C.F., is insufficient to create a genuine dispute of material fact regarding the availability of the formal grievance procedure. See *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (explaining that district court could resolve issues of credibility on motion for summary judgment in narrow circumstances where [1] the testimony of non-movant is largely unsubstantiated by any other direct evidence, and [2] that testimony is so incomplete and/or replete with inconsistencies and improbabilities that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant).

## 2. Estoppel [18]

[18]  The Court notes that Plaintiff did not argue in his opposition memorandum of law that estoppel applies as a ground for holding that exhaustion does not apply. Nonetheless, the Court will consider the issue for the sake of thoroughness.

After carefully considering the matter, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies. Defendants' Answer timely asserted this affirmative defense. (Dkt. No. 10, ¶ 16 [Defs.' Answer].) Moreover, Plaintiff has failed to adduce any admissible record evidence that it was Defendants who in any way interfered with Plaintiff's ability to file grievances during the time in question. Therefore, estoppel does not excuse Plaintiff's failure to exhaust his administrative remedies.

It is important to note that a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of *other* individuals. This point of law is clear from Second Circuit cases. [19]  Furthermore, this point of law has been relied on by district courts in the Northern District, [20] Southern District, [21] Eastern District, [22] and Western District. [23]

[19]  See *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("The second part considers whether defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether defendants' *own* actions inhibiting the inmate's exhaustion of remedies estops one or more of the defendants from raising the

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 134 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

exhaustion defense.") (emphasis added); *Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir. 2006) ("In our prior cases recognizing that *defendants' actions* may estop them from raising non-exhaustion as a defense .... Ruggiero does not allege beatings or threats of retaliation for filing a grievance or that he made any attempt to file a grievance and was denied that opportunity *by Defendants-Appellants.*") (emphasis added); *Hemphill v. New York,* 380 F.3d 680, 689 (2d Cir. 2004) (explaining that, where several defendants played different roles in the acts giving rise to estoppel, "it is possible that some individual defendants may be estopped, *while other may not be*") (emphasis added).

20    *See, e.g., Belile v. Griffin,* 11-CV-0092, 2013 WL 1776086, at *9 (N.D.N.Y. Feb. 12, 2013) (Peebles, M.J., adopted by 2013 WL 1291720 (N.D.N.Y. March 27, 2013) (McAvoy, J.); *Bailey v. Fortier,* 09-CV-0742, 2013 WL 310306, at *2 (N.D.N.Y. Jan. 25, 2013) (Sharpe, C.J.); *Thompson v. Bellevue Hosp.,* 09-CV-1038, 2011 WL 4369132, at *12 (N.D.N.Y. Aug. 29, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4369132 (N.D.N.Y. Aug. 29, 2011) (Mordue, C.J.); *Calloway v. Grimshaw,* 09-CV-1354, 2011 WL 4345299, at *4 (N.D.N.Y. Aug. 10, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4345296 (N.D.N.Y. Sep. 15, 2011) (McAvoy, J.); *Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *5 & n.26 (N.D.N.Y. March 31, 2010) (Suddaby, J.); *Snyder v. Whittier,* 05-CV-1284, 2009 WL 691940, at *9 (N.D.N.Y. March 12, 2009) (Report-Recommendation of Peebles, M.J., adopted by McAvoy, J.); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.); *McCloud v. Tureglio,* 07-CV-0650, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) (Report-Recommendation of Lowe, M.J., adopted by Mordue, C.J.); *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov. 5, 2007) (Report-Recommendation of Lowe, M.J., adopted by McAvoy, J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742378, at *12 (N.D.N.Y. June 22, 2006) (Report-Recommendation of Lowe, M.J., adopted by McAvoy, J.); *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr. 24, 2006) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.).

21    *See, e.g., Collins v. Goord,* 438 F. Supp.2d 399, 415, n.16 (S.D.N.Y. 2006).

22    *See, e.g., McCullough v. Burroughs,* 04-CV-3216, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005).

23    *See, e.g., Barad v. Comstock,* 03-CV-0736, 2005 WL 1579794, at *6 (W.D.N.Y. June 30, 2005).

**\*13** The Court notes that a contrary interpretation of the second part of the Second Circuit's three-part exhaustion inquiry would turn the ancient doctrine of estoppel on its head, transforming it–in Orwellian fashion–into one of "vicarious estoppel." *See Black's Law Dictionary* at 629 (9th ed) (defining "estoppel" as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before ...."). Moreover, such an invention would be wholly unnecessary: the vicarious conduct sought to be protected against is already protected against by the "special circumstances" inquiry established by the Second Circuit.

Finally, while it may be argued that such an interpretation of the doctrine of estoppel would nonetheless be appropriate because the purpose of the PLRA is to enable the institution to resolve disputes efficiently rather than protect the individual, prisoner civil rights suits are suits against prison officials in their individual capacities rather than suits against them in their official capacities (which would effectively be suits against the State and thus be barred by the Eleventh Amendment). As a result, the crux of the second part of the Second Circuit's three-part exhaustion inquiry is whether the officials may avail themselves of that defense, not whether the institution may avail itself of the defense.

For all of these reasons, to the extent that Plaintiff alleges that the conduct of a non-defendant correctional employee (such as employees working in the inmate grievance office who failed to forward his appeal to CORC) inhibited him from exhausting his administrative remedies, those allegations cannot estop Defendants from asserting failure-to-exhaust as a defense.

### 3. Special Circumstances Justifying Plaintiff's Failure to Exhaust

After carefully considering the matter, the Court finds that special circumstances did not exist to justify a failure to exhaust. [24] The Court notes that, contrary to Plaintiff's assertion, Directive No. 2614 makes clear that inmates may file a formal grievance. (Dkt. No. 41, at 94 [Ex. X to Blit Decl.].) Indeed, as discussed above in Part I.C.1.c. of this Decision and Order, the Directive states in conspicuous lettering "**GRIEVANCE PROCEDURE**," "**HOW TO MAKE COMPLAINTS**," and even provides a sample form for inmates to make requests for reasonable accommodation. (*Id.* at 94-96.)

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 135 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

24    Because the Court finds that evidence of special circumstances does not exist on the current record, it need not, and does not, reach the issue of the impact of the U.S. Supreme Court's recent decision in *Ross v. Blake*, No. 15-339, 2016 WL 3128839 (S. Ct. June 6, 2016), on the Second Circuit's special circumstances exception.

Furthermore, with respect to Grievance No. FPT-27997-13, it is apparent that Plaintiff received a determination from CORC on October 1, 2014, which is approximately eight months after Plaintiff commenced this action on February 4, 2014. (Dkt. No. 37, Attach. 3, ¶ 12 [Hale Decl.] [stating that, due to an administrative error, Plaintiff's appeal was mailed to CORC on April 30, 2013, and was then decided by CORC on October 1, 2014].) [25] It is well established that "[r]eceiving a decision from CORC *after* filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice." *Fofana v. Moss*, 15-CV-0188, 2016 WL 1237796, at *3 (N.D.N.Y. Mar. 4, 2016) (Dancks, M.J.); *accord, Burgos v. Craig*, 307 Fed.Appx. 469, 470 (2d Cir. 2008); *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Although the Court is sympathetic to the fact that it was the inmate grievance office that failed to transmit Plaintiff's appeal to CORC until five months after he had filed it, Plaintiff is also at fault for not taking any further action during this time period. More specifically, 7 N.Y.C.R.R § 701.5(d)(3)(i) states that "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, *the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC*." (Emphasis added.) Nor is the delay in rendering a decision on Plaintiff's appeal a defense to the exhaustion requirement. *See Casey v. Brockley*, 13-CV-1271, 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015) (Dancks, M.J.) (stating that "CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory v. Haywood*, 13-CV-1564, 2015 WL 268933, at *12 (N.D.N.Y. Jan. 21, 2015) (D'Agostino, J.) (stating that, "although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense").

25    With respect to the other grievance formally processed at Five Points C.F. (Grievance No. FPT-27869-13), because the parties agree that it is not relevant to the present matter, the Court will not address it in this

Decision and Order. (Dkt. No. 37, Attach. 1, ¶¶ 5-6 [Defs.' Rule 7.1 Statement].)

**\*14** Finally, the Court finds that Plaintiff has failed to administratively exhaust the complaints he made through informal channels. "Contrary to [plaintiff's] suggestion, *Marvin [v. Goord*, 255 F.3d 40 (2d Cir. 2001)] does not imply that a prisoner has exhausted his administrative remedies every time he receives his desired relief through informal channels." *Ruggiero*, 467 F.3d at 177-78. Furthermore, "[m]erely [a]lert[ing] ... prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (internal citations and quotation marks omitted); *see also Perez v. City of New York*, 14-CV-7502, 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015) (explaining that the "[p]laintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process specified in the IGRP"). "Regardless of whether ... informal complaints put the prison officials on notice of his grievance 'in a substantive sense,' ... to satisfy the PLRA, a prisoner must also procedurally exhaust his available remedies." *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 [2d Cir. 2004]). Substantive notice alone is insufficient because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford*, 548 U.S. at 95.

Accordingly, "[c]ourts have repeatedly held that complaint letters to the ... facility [s]uperintendent do not satisfy the PLRA's exhaustion requirement." *Nelson v. Rodas*, 01-CV-7887, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) (collecting cases); *see also Lopez*, 2015 5732076, at *8 (holding that letter sent to superintendent from plaintiff's attorney did not excuse exhaustion); *accord, Dabney v. Pegano*, 604 Fed.Appx. 1, 5 (2d Cir. 2015). Moreover, writing to the superintendent does not "preclude submission of a formal grievance," *Amador*, 655 F.3d at 97, nor does it preclude the requirement that an inmate must go through the appeal process if the superintendent fails to act. *See McNair v. Sgt. Jones*, 01-CV-3253, 2002 WL 31082948, at *8 (S.D.N.Y. Sept. 18, 2002) (noting that the failure to follow the appeal process alone "means that [a plaintiff] has not exhausted his administrative remedies"); *accord*, 7 N.Y.C.R.R. §§ 701.5(a), 701.8(g).

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 136 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

Here, it is apparent that Plaintiff made various complaints to both Ms. Salotti and Defendant Sheahan, both verbally and in writing, through informal channels. However, these informal complaints do not constitute grievances for purposes of the Inmate Grievance Program, nor are they a substitute for filing a proper grievance. [26]

[26]    7 N.Y.C.R.R. § 701.2(a) states that a grievance is a complaint, filed with an IGP clerk, about the substance of application of any written or unwritten policy, regulation, procedure or rule of the [DOCCS] or any of its program units, or the lack of a policy, regulation, procedure or rule. *A letter addressed to facility or central office staff is not a grievance.* 7 N.Y.C.R.R. § 701.2(a) (emphasis added).

For all of these reasons, Plaintiff has failed to create a genuine dispute of material fact regarding a special circumstance justifying his failure to exhaust his administrative remedies.

### 4. Dismissal With or Without Prejudice

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." *Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *see also Morales v. Mackalm*, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion). "This is so even when the issue is decided on a motion for summary judgment." *Mateo v. Corebine*, 09-CV-4811, 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases). Where a plaintiff has fully exhausted his administrative remedies after filing suit, the complaint should still be dismissed without prejudice. *See Mendez v. Artuz*, 01-CV-4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) (stating that "the greater goal forbids allowing a case to proceed where administrative remedies have been exhausted while the complaint is pending, and requires in such a case dismissal of the complaint, to be re-filed, if the plaintiff wishes, with the addition of paragraphs explaining how administrative remedies have been exhausted"). Accordingly, the Court finds that, at the very least, the entirety of Plaintiff's Complaint should be dismissed without prejudice. [27] However, for the reasons discussed below, the Court finds that Plaintiff's first, second, and fourth causes of action against DOCCS third cause

of action against Defendant Sheahan and John Doe 1 should also be dismissed with prejudice.

[27]    The Court is not at liberty to stay Plaintiff's action. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 254 (S.D.N.Y. 2003) ("In the context of § 1983 and the PLRA ... courts have squarely held that the district court may not stay the action pending exhaustion, as Congress eliminated the authority to do so by enacting the PLRA .... Pre-suit exhaustion is thus required."). Therefore, if Plaintiff's claims are at risk of becoming time-barred, the parties will have to address that issue at the appropriate time.

### B. Whether Plaintiff's ADA Retaliation Claim Is Barred by the Eleventh Amendment

**\*15**   After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 42, at 17-18 [Pl.'s Opp'n Mem. of Law].) *See also Maioriello v. N.Y.S. Office for People with Dev. Disabilities*, 14-CV-0214, 2015 WL 5749879, at *12 (N.D.N.Y. Sept. 30, 2015) (Suddaby, J.) (holding that the Eleventh Amendment did not bar plaintiff's ADA Title V retaliation claim where it was predicated on Title II) (citing cases); *accord, Bylsma v. Hawaii Pub. Hous. Auth.*, 951 F. Supp. 2d 1116, 1121 (D. Haw. 2013) (citing cases).

### C. Whether Plaintiff's § 1983 Claims Should Be Dismissed for Lack of Personal Involvement

#### 1. Superintendent Sheahan

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 37, Attach. 6, at 11-13 [Defs.' Mem. of Law].) To those reasons, the Court adds only that the fact that Plaintiff wrote letters to Defendant Sheahan and spoke with him directly regarding his complaints on one or two occasions (Dkt. No. 42, at 15-16 [Pl.'s Opp'n Mem. of Law] ) are not, in and of themselves, sufficient to raise a genuine dispute of material fact regarding his personal involvement. *See Funderburke v. Canfield*, 13-CV-6128, 2016 WL 831974, at *9 (W.D.N.Y. Feb. 29, 2016) (holding that plaintiff failed to create a genuine dispute of material fact regarding superintendent's personal involvement where plaintiff wrote to the superintendent on several occasions but received no response and where plaintiff spoke directly to superintendent regarding his complaints but superintendent did nothing); *Jones v. Tompkins*, 12-CV-0057, 2014 WL

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 137 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

860334, at *5 (W.D.N.Y. Mar. 5, 2014) ("The fact that the plaintiff spoke directly with the supervisory officials, may not be sufficient personal involvement for the maintenance of a § 1983 claim"); *accord, Rosales v. Kikendall*, 677 F. Supp. 2d 643, 650-51 (W.D.N.Y. 2010). Accordingly, Plaintiff's third cause of action against Defendant Sheahan is dismissed with prejudice.

### 2. Kristen Salotti

Because the Court is denying Plaintiff's cross-motion to join Ms. Salotti as a defendant for the reasons discussed below in Part III.E. of this Decision and Order, the Court need not, and does not, consider Plaintiff's § 1983 claim against Ms. Salotti.

### D. Whether Plaintiff's ADA Claims Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 37, Attach. 6, at 8-9, 13-17 [Defs.' Mem. of Law].) To those reasons, the Court adds the following three points.

First, Plaintiff incorrectly analyzes Defendants' arguments regarding his ADA claims under the standard governing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) based upon Defendants having entitled their arguments "The ADA Claims Fail to State a Cause of Action." (*Id.*) Although Defendants used this heading, Defendants filed a motion for summary judgment and relied on admissible record evidence outside of the pleadings in support of their arguments. (Dkt. No. 37, Attach. 6, at 13-17 [Defs.' Mem. of Law].) Therefore, the Court may not consider Defendants' arguments merely under the legal standard appropriate for a motion to dismiss. [28] Simply stated, Plaintiff's strategic choice to proceed without analyzing Defendants' arguments in the alterative under the summary judgment standard was at his own risk.

[28]    Of course, in a motion for summary judgment under Fed. R. Civ. P. 56, a defendant may assert an argument that the plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6). *See Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."). In such a circumstance, the Court need

not give prior notice to the party whose pleading is being analyzed. *See Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

**\*16** Second, Plaintiff has failed to adduce admissible record evidence sufficient to create a genuine dispute of material fact regarding whether he fully exhausted his administrative remedies with respect to these claims. Although Defendants argue that Plaintiff failed to grieve the substance of these three claims (Dkt. No. 37, Attach. 6, at 8-9 [Defs.' Mem. of Law] ), Plaintiff fails to respond to this argument in his opposition memorandum of law. As discussed above, in Part II.A. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. The Court finds that Defendants have met this modest burden, in part, for the reasons stated in their memorandum of law. (*Id.*) In addition, the Court has carefully reviewed the admissible record evidence submitted by Plaintiff in opposition to Defendants' motion and finds that, during his incarceration, Plaintiff's attorney sent letters to Superintendent Sheahan regarding the substance of Plaintiff's ADA claims. (Dkt. No. 41, at 51-56 [Exs. "P" & "Q" to Blit Decl.].) However, as discussed above in Part III.A.3. of this Decision and Order, letters sent to a facility's superintendent do not satisfy the PLRA's exhaustion requirement. Furthermore, an inmate must go through the appeal process if the superintendent fails to act. Here, although one of the letters requests that it be attached to a grievance form and filed as an official grievance, [29] Plaintiff has failed to submit admissible record evidence demonstrating whether he received a response and/or whether he appealed the grievance to the next level. (Dkt. No. 41, at 55 [Ex. "Q" to Blit Decl.].)

[29]    For the sake of brevity, the Court will not linger on the fact that this unusual attempt to submit a grievance failed to specifically identify the individual(s) alleged to have committed wrongdoing and the date(s) on which that alleged wrongdoing was committed.

Third, with respect to Plaintiff's retaliation claim, it is apparent that Defendants' basis for dismissal of this claim is raised for the first time in Point IV of their reply memorandum of law. More specifically, Defendants argue in their memorandum of law that they have a legitimate, nonretaliatory reason for denying Plaintiff's request for a

Case 9:18-cv-00336-AMN-TWD    Document 20    Filed 08/29/19    Page 138 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

new wheelchair and that this denial was not in retaliation for Plaintiff having made a request for a reasonable accommodation. (Dkt. No. 37, Attach. 6, at 17 [Defs.' Mem. of Law].) After reviewing Plaintiff's opposition memorandum of law, however, Defendants argue in their reply memorandum of law that they had "interpreted the claim to mean that plaintiff had one reasonable accommodation request for a new wheelchair denied because of retaliation.... Instead, plaintiff contends that [he] was transferred to the [SHU] 'in retaliation for his reasonable accommodation requests.' " (Dkt. No. 43, at 10-11 [Defs.' Reply Mem. of Law].) Defendants then argue that Plaintiff's retaliation claim should still be dismissed because they had a legitimate, nonretaliatory reason for placing Plaintiff in the SHU. (*Id.* at 11.) Specifically, Defendants argue that Plaintiff testified at his deposition that, on December 16, 2013, he received a second misbehavior report at Five Points C.F. for using marijuana. (*Id.*) As a result, Plaintiff went to a tier hearing and pled guilty to the charge and was sentenced to a year in SHU by a hearing officer. (*Id.*)

Because this argument was raised for the first time in Defendants' reply memorandum of law, it would not ordinarily be considered. *See Knipe v. Skinner*, 999 F.2d 708, 710-11 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Playboy Enter., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court."). However, in a Text Order dated May 31, 2016, the Court *sua sponte* granted Plaintiff seven days to file a sur-reply to address the arguments raised in Part IV of Defendants' reply memorandum of law. (Dkt. No. 46 [Text Order dated May 31, 2016].) Plaintiff declined the Court's invitation to respond to this issue, neglecting to file a sur-reply. Accordingly, the Court finds that Defendants' arguments regarding this issue are unopposed and that they have met their modest burden demonstrating that they had a legitimate, nonretaliatory reason for placing Plaintiff in the SHU for the reasons stated in their reply memorandum of law. (Dkt. No. 43, at 10-11 [Defs.' Reply Mem. of Law].) Even if the Court were to subject this legal argument to the more heightened scrutiny appropriate for a contested legal argument, it would find that legal argument to have merit, for the reasons stated by Defendants.

**\*17** Accordingly, for all of the foregoing reasons, Plaintiff's first and second causes of action are dismissed for failure to exhaust his administrative remedies. As discussed above in Part III.A.4. of this Decision and Order, these claims would

ordinarily be dismissed without prejudice to give Plaintiff an opportunity to exhaust his administrative remedies. However, because administrative remedies have become unavailable (due to Plaintiff's release from incarceration), he had ample opportunity to use them while he was incarcerated, and no special circumstances justified his failure to exhaust, these claims are dismissed with prejudice. *See Prescott v. Annetts*, 09-CV-4435, 2010 WL 3020023, at *8 (S.D.N.Y. July 22, 2010) (dismissing plaintiff's claims with prejudice because he had ample opportunity to exhaust his administrative remedies while incarcerated, they are no longer available to him because he has been released, and no special circumstances justified his failure to exhaust); *accord*, *Fowler v. Fischer*, 13-CV-6262, 2014 WL 4058218, at *1 (S.D.N.Y. Aug. 14, 2014); *Finger v. Superintendent McFinnis*, 99-CV-9870, 2004 WL 1367506, at *5 (S.D.N.Y. June 16, 2004). Plaintiff's fourth cause of action is likewise dismissed with prejudice for the additional reason that Defendants' had a legitimate, nonretaliatory reason for placing Plaintiff in the SHU.

### E. Whether Kristin Salotti Should Be Joined as a Defendant

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

Generally, a motion such as this one is brought under Fed. R. Civ. P. 15(a). [30] However, courts also apply Fed. R. Civ. P. 16(b)(4) when a party has moved to join or add a party after the expiration of a scheduling order deadline. *See, e.g.*, *Gullo v. City of New York*, 540 Fed.Appx. 45, 47 (2d Cir. 2013); *Charles v. City of New York*, 11-CV-2783, 2015 WL 756886, at *2 (S.D.N.Y. Feb. 20, 2015); *Gallo v. Wonderly Co., Inc.*, 12-CV-1868, 2014 WL 36628, at *2-5 (N.D.N.Y. Jan. 6, 2014) (Treece, M.J.); *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 10-CV-0781, 2012 WL 3204040, at *2-3 (W.D.N.Y. Aug. 3, 2012). [31] "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *accord*, *Kassner v. 2 nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Furthermore, "[g]ood cause should not be subject to either the subjective needs or caprice of the litigants but, rather, should be based upon an objective standard." *Gallo*, 2014 WL 36628, at *2. "The burden of demonstrating good cause rests with the movant.... The burden of demonstrating prejudice rests with the non-movant." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014).

Case 9:18-cv-00336-AMN-TWD   Document 20   Filed 08/29/19   Page 139 of 178

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

30    Despite the fact that Plaintiff has requested leave to "join" a female nurse as a defendant in place of male doctor Defendant John Doe 1, the Court finds that the request is appropriately analyzed as a motion to amend under Fed. R. Civ. P. 15 rather than a motion to join a defendant under Fed. R. Civ. P. 20(a)(2) due to the explanation for that request (e.g., that Plaintiff had named "John Doe 1, Plaintiff's Treating Physician" based on his presumption that he had been treated by a male doctor and that he had later learned that his only treatment provider was a female nurse). Cf. Llody v. Yankey, 12-CV-5913, 2013 WL 6086074, at *1-2 (W.D. Wash. Nov. 19, 2013) ("After Defendants filed their motion for summary judgment, Plaintiff was granted leave to amend his complaint to correctly name 'John Doe' as Nurse Practitioner P. McClan ... who failed to splint his finger or to refer him for x-rays or follow-up to a doctor, even though his finger was twisted and bent when *she* examined his hand.") (emphasis added); Washington v. Reed, 07-CV-4231, 2008 WL 2230704, at *3 (W.D. Mo. May 29, 2008) ("[P]laintiff filed a motion to amend his complaint to provide the name of the defendant nurse [Annette R. Bruemmer] previously identified only as a John Doe.... Plaintiff will be granted leave to substitute the name of Bruemmer for the John Doe defendant....").

31    Similarly, this Court's Local Rules state the following: Deadlines that the Court institutes in any case management order shall be strictly enforced and shall not be modified by the Court, even upon stipulation of the parties, except upon a showing of good cause. N.D.N.Y. L.R. 16.1(f).

**\*18**  As discussed above in Part I.C.2.b. of this Decision and Order, Defendants argue only that Fed. R. Civ. P. 16 is inapplicable to Plaintiff's cross-motion to join Ms. Salotti. Notwithstanding Defendants failure to identify the correct standard (or even apply the incorrect standard), the Court finds that Plaintiff has failed to demonstrate good cause to join or add Ms. Salotti as a defendant at this stage in the litigation. More specifically, the Uniform Pretrial Scheduling Order required that any application to join or add parties to be made on or before September 5, 2014. (Dkt. No. 14, at 1 [Uniform Pretrial Scheduling Order].) On December 2, 2014, the parties attempted to extend this deadline by stipulating that Plaintiff would have until December 8, 2014, to join or add parties. (Dkt. No. 33.) However, Magistrate Judge Treece denied the parties' request to extend the deadline, noting that the initial deadline had already expired, resulting in Plaintiff having to show good cause before the deadline would be extended. (Dkt. No. 34 [Text Order dated December 4, 2014].) Plaintiff attempts to make that showing now, arguing,

in part, that "it was not until the middle of March, 2015, [that] plaintiff's counsel was able to irrefutably determine that Ms. Salotti was plaintiff's only treating provider." (Dkt. No. 42, at 7 [Pl.'s Opp'n Mem. of Law].) Conspicuously absent from Plaintiff's papers, however, is an explanation as to why he waited until August 14, 2015, to move to join Ms. Salotti when he was able to "irrefutably determine" her identity in March 2015. Accordingly, Plaintiff has failed to demonstrate the due diligence necessary to establish good cause by failing to take any action during the five months that elapsed between mid-March and mid-August 2015. *See Gullo*, 540 Fed.Appx. at 47 ("The district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning the officers' names failed to demonstrate the diligence necessary to satisfy Rule 16."). Moreover, such a delay, especially in a relatively old case such as a this one, prejudice Defendants by affecting witnesses' memories, the ability to locate witnesses (who might retire from, or be transferred within, DOCCS), and the preservation of evidence. *See Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here [which was four months in length] can only make matters worse.").

In any event, even if Plaintiff had shown good cause for the five-month delay, he has failed to meet the underlying standard for a motion to amend under Fed. R. Civ. P. 15(a). *See Foman v. Davis*, 371 U.S. 178, 1782 (1962) (explaining that permissible grounds upon which to base the denial of a motion for leave to file an amended complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance the amendment, futility of amendment, etc."). Finally, even if the underlying standard were one under Fed. R. Civ. P. 20(a)(2), Plaintiff has failed to meet that standard, which is similar to the standard under Fed. R. Civ. P. 15(a). *See Midlantic Commercial. Co. v. Prime Sportswear Corp.*, 95-CV-10192, 1996 WL 361539, at *5 (S.D.N.Y. June 27, 1996) ("In deciding whether permissive joined is warranted, a court should determine whether the requirements of Rule 20 are satisfied, and then weigh any considerations relevant to efficient adjudication such as the potential for delay and unfair prejudice.").

For all of the foregoing reasons, Plaintiff's cross-motion is denied. Moreover, because Plaintiff has made clear that

Gizewski v. New York State Department of Corrections..., Not Reported in Fed....

2016 WL 3661434

Ms. Salotti is actually the John Doe 1 Defendant against whom he intended to assert an Eighth Amendment claim (*see*, *supra*, Part I.C.2.a of this Decision and Order), Plaintiff's third cause of action is dismissed against Defendant John Doe 1. The Court notes that it would reach this conclusion even if it were to analyze this issue under the standard governing dismissals for failure to prosecute under Fed. R. Civ. P. 41(b). More specifically, the Court finds that (1) the duration of the Plaintiff's failure to name Defendant John Doe 1 is some twenty-one months (having begun on the deadline for motions to amend on September 5, 2014), (2) Plaintiff received adequate notice that a delay would result in the dismissal of this claim (given that he is represented by counsel who is familiar with both the Federal Rules of Civil Procedure and Local Rules of Practice for this Court), (3) Defendants are likely to be prejudiced by a further delay (for the reasons discussed above in *Geordiadis*, 167 F.R.D. at 25), (4) Plaintiff's right to due process and a fair chance to be heard on this claim is outweighed by the need to alleviate congestion on the Court's docket, and (5) lesser sanctions would not be effective under the circumstances. *See Hevner v. Vill. E. Towers, Inc.*, No. 07-5608, 2008 WL 4280070, at *1-2 (2d Cir. Sept. 18, 2008).

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 37) is **GRANTED**; and it is further

**ORDERED** that the following portions of Plaintiff's Complaint (Dkt. No. 1) are **DISMISSED**:

> (1) Plaintiff's First, Second, and Fourth Causes of Action against DOCCS, which are **DISMISSED with prejudice**; and

> **\*19** (2) Plaintiff's Third Cause of Action against Defendant Sheahan and "John Doe 1," which is **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's cross-motion to join Kristin Salotti as a defendant (Dkt. No. 42) is **DENIED**; and it is further

**ORDERED** that the sole remaining claim in this action–i.e., Plaintiff's Third Cause of Action against Defendant "John Doe 2"–shall be **DISMISSED with prejudice** for failure to prosecute under Fed. R. Civ. P. 41(b) **UNLESS**, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files a motion for leave to file an Amended Complaint identifying that Defendant.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3661434

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 3351643
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ederick FABRIZIO also known
as Ederick Fabricio, Plaintiff,

v.

Commissioner Anthony J.

ANNUCCI, et al.,[1] Defendants.

[1]     According to acknowledgements of service that
have been filed with the court, the proper spellings
and full names of certain of the defendants
identified in plaintiff's amended complaint are as
follows: "Lt. Sullivan" is "Brian Sullivan," Dkt. No.
26; "T. Mauro" is "Thomas Mauro," Dkt. No. 27;
"C.O. Rielly" is "James Rielly," Dkt. No. 29; and
"Sgt. Galioto" is "Daniel Galioto," Dkt. No. 30. The
clerk of the court will respectfully be directed to
modify the court's records to reflect these changes.

Civil Action No. 9:18-CV-0339 (GTS/DEP)
|
Signed 06/27/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: EDERICK FABRIZIO a/k/a EDERICK
FABRICIO, Pro Se, 97-A-2265, Otisville Correctional
Facility, Box 8, Otisville, NY 10963.

FOR DEFENDANTS: HON. LETITIA A. JAMES, New
York State Attorney General, OF COUNSEL: NICHOLAS
LUKE ZAPP, ESQ., Assistant Attorney General, The Capitol,
Albany, NY 12224.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action commenced by *pro se*
plaintiff Ederick Fabrizio, a New York State prison inmate,
pursuant to 42 U.S.C. § 1983 against several individuals
employed by the New York State Department of Corrections
and Community Supervision ("DOCCS"). In his complaint,
as amended, plaintiff alleges that defendants violated his
rights under the First and Eighth Amendments to the United
States Constitution.

In response to plaintiff's amended complaint, defendants
have moved for the entry of summary judgment dismissing
his claims. In their motion, defendants raise a single
procedural issue, arguing that plaintiff is precluded from
pursuing his claims as a result of his failure to exhaust
available administrative remedies prior to filing suit. Because
I agree that the record clearly establishes plaintiff's failure
to properly exhaust available administrative remedies before
commencing suit, and there is no basis presented for excusing
the exhaustion requirement, I recommend that defendants'
motion be granted.

**I. BACKGROUND** [2]

[2]     In light of the procedural posture of the case, the
following recitation is derived from the record now
before the court, with all inferences drawn and
ambiguities resolved in the non-movant's favor. *Terry v.
Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff is currently confined in the custody of the DOCCS.
Dkt. No. 9 at 1. While he is now incarcerated elsewhere,
at all times relevant to the events in this action, plaintiff
was confined in the Greene Correctional Facility ("Greene"),
located in Coxsackie, New York. *Id.* At various other
times, plaintiff was also held in the Elmira Correction
Facility ("Elmira") and the Green Haven Correctional Facility
("Green Haven"). *Id.* at 4.

On November 9, 2016, plaintiff commenced an action in
the Southern District of New York alleging violations of his
constitutional rights while confined at Green Haven. Dkt. No.
9 at 4; *see Fabricio v. Lee et al.*, No. 16-CV-8731 (S.D.N.Y.
filed 11/9/16). In addition, on June 23, 2017, plaintiff filed
a lawsuit in the Western District of New York alleging
violations of his constitutional rights while he was confined
at Elmira. Dkt. No. 9 at 4; *Fabricio v. Annucci et al.*, No.
17-CV-6410 (W.D.N.Y. filed 6/23/17). Generally, plaintiff
alleges that as a result of these two actions, defendants
retaliated against him in violation of his First Amendment
rights. *See generally* Dkt. No. 9 at 4.

Plaintiff's amended complaint details various alleged
incidents occurring during his confinement at Greene,
claiming that they were constitutionally-significant adverse
actions taken in retaliation for his having engaged in protected
activity.[3] *See generally* Dkt. No. 9.

3    Although plaintiff describes additional events in his
     amended complaint that are not detailed in this section, I
     have limited my discussion to the circumstances forming
     the basis for those claims that survived the court's initial
     review pursuant to 28 U.S.C. §§ 1915(e), 1915A. *See
     generally* Dkt. No. 14.

A. December 9, 2017 Incident and Grievance
GNE-9664-17

**\*2** On December 9, 2017, while plaintiff was walking back
from the mess hall towards his dorm with another inmate, he
was stopped by defendant James Rielly, a corrections officer
at Greene. Dkt. No. 9 at 7. Defendant Rielly allegedly then
"grab[bed] the [p]laintiff by his coat ... and force[d] him to put
his hands on the fence, while maliciously and sadistically ...
kicking the [p]laintiff['s] legs to pull them apart, just for the
very purpose of causing unnecessary harm ... and made the
[p]laintiff f[a]ll to his knees." *Id.* Defendant Oliver, who is
also a corrections officer at Greene, then approached plaintiff,
and the two defendants "started to smack the [p]laintiff from
the bottom of his face[ ] while they ... rubb[ed] [his] face
against the fence," resulting in a laceration to his face, and
they took bread out of his pocket. *Id.* Plaintiff claims that
"at no time during this incident did [p]laintiff use any force
against the defendant[ ] officers or do anything that would
have provided the officers with a legal basis to use force
against him." *Id.* at 7-8.

On December 12, 2017, plaintiff filed grievance number
GNE-9664-17 regarding the December 9, 2017 incident
involving defendants Rielly and Oliver. [4] Dkt. No. 50-2 at 2;
Dkt. No. 55-3 at 2; *see also* Dkt. No. 55-1 at 5-7. Plaintiff's
grievance was forwarded directly to the superintendent of
the facility, and a determination was issued on January 8,
2018, concluding that plaintiff's allegations could not be
substantiated. Dkt. No. 50-2 at 2; Dkt. No. 55-3 at 1; *see
also* Dkt. No. 50-3 at 9. The following day, plaintiff signed
an appeal statement, and the DOCCS Central Office Review
Committee ("CORC") acknowledged receipt of plaintiff's
appeal on March 12, 2018. *Id.*; Dkt. No. 50-3 at 9-10; Dkt.
No. 55-1 at 6.

4    Plaintiff also filed a second grievance against defendant
     Oliver on December 30, 2017 alleging retaliation,
     intimidation, and harassment. Dkt. No. 55-1. That
     grievance was consolidated with GNE-9664-17. *Id.*

B. February 16, 2018 Incident and Grievance
GNE-9766-18

On February 16, 2018, while plaintiff was working on his
legal claims, defendant Laster, another corrections officer
at Greene, searched plaintiff's cube and began reading
plaintiff's notepad where he kept legal notes related to each of
his grievances. Dkt. No. 9 at 11. Defendant Laster thereafter
left plaintiff's cube and returned with a contraband slip. *Id.*
While Laster subsequently confiscated plaintiff's notebook,
he did not provide him with a corresponding contraband slip.
*Id.*

As a result of that incident, on February 22, 2018, plaintiff
filed grievance number GNE-9766-18. Dkt. No. 50-2 at 2;
Dkt. No. 55-3 at 2; *see* Dkt. No. 50-3 at 12. That grievance was
once again forwarded directly to the facility superintendent,
and a determination was issued on March 16, 2018, advising
plaintiff that the matter was under investigation by the
DOCCS Office of Special Investigations ("OSI") and that
action on the grievance was being deferred pending the
completion of that investigation. *Id.*; *see* Dkt. No. 50-3 at 14.
Plaintiff appealed the superintendent's determination to the
CORC on March 21, 2018, and the CORC received plaintiff's
appeal on April 26, 2018. *Id.*; Dkt. No. 55-1 at 5; *see* Dkt. No.
50-3 at 14.

C. April 5, 2018 Incident and Grievance GNE-9848-18

On April 5, 2018, defendant Oliver pat frisked plaintiff,
ordering Fabrizio to take his shoes off and stand on a freezing
cold floor. Dkt. No. 9 at 12. The following day, on April
6, 2018, plaintiff was stopped while walking to his dorm,
placed in handcuffs, and directed to get into a van with
defendant Rielly. *Id.* Plaintiff was then placed inside a room
and ordered to face the wall while Rielly conducted a strip
search of plaintiff. *Id.* at 13. Upon completion of the search,
plaintiff's clothes were returned to him, with the exception of
his gloves and scarf, which were not returned and for which
he was not provided a contraband slip. *Id.* Plaintiff alleges
that with respect to these events, the officers involved never
gave plaintiff an explanation as to why he was subjected to
a strip search, nor was he ever issued a misbehavior report,
evidencing the "administration['s] intent [to] conspire against
[plaintiff] to make him go through unnecessary suffering." *Id.*

**\*3** On or about April 9, 2018, plaintiff filed grievance
number GNE-9848-18 regarding the April 5 and 6, 2018
incidents. Dkt. No. 50-2 at 3; Dkt. No. 55-3 at 2; *see* Dkt.
No. 50-3 at 16-17. The grievance was forwarded directly to
the superintendent at Greene, who issued a determination on
August 31, 2018, concluding that the plaintiff's allegations
could not be substantiated. *Id.*; *see* Dkt. No. 50-3 at 19.

2019 WL 3351643

Plaintiff filed an appeal of the superintendent's determination on September 12, 2018; that appeal was received by the CORC on October 15, 2018. *Id.*; Dkt. No. 55-1 at 9.

### D. May 20, 2018 Incident and Grievance GNE-9848-18

On the evening of May 20, 2018, as plaintiff was leaving the facility's law library, defendant Daniel Galioto, another corrections officer at Greene, and Sergeant Cruz, an officer who, plaintiff claims, was previously affiliated with Green Haven and acquainted with defendants in plaintiff's prior lawsuit involving events at that facility, directed two officers to search plaintiff and his legal papers. Dkt. No. 9 at 15. Plaintiff was not provided a reason as to why the officers searched his papers. *Id.* On or about June 4, 2018, plaintiff filed grievance number GNE-9922-18 regarding the May 20, 2018 incident. Dkt. No. 50-2 at 3; Dkt. No. 55-3 at 2; *see* Dkt. No. 50-3 at 21-22. That grievance was similarly forwarded directly to the Greene superintendent, who issued a determination on August 10, 2018, again finding plaintiff's allegations to be unsubstantiated. *Id.*; *see* Dkt. No. 50-3 at 24. On August 10, 2018, plaintiff filed an appeal of the superintendent's determination; that appeal was received by the CORC on October 15, 2018. *Id.*; Dkt. No. 55-1 at 10.

### E. Remaining Claims

Finally, in his complaint, as amended, plaintiff alleges that defendants Anthony J. Annucci, the DOCCS Acting Commissioner; Brandon Smith, the Superintendent of Greene; Thomas Mauro, the IGP Supervisor at Greene; and Brian Sullivan, a corrections officer at Greene, were personally involved in the alleged constitutional violations. Specifically, plaintiff contends that defendants Mauro and Sullivan investigated and denied his grievances, suggesting that they "participat[ed] in an unwritten practice of retaliation." Dkt. No. 9 at 19. With respect to defendants Smith and Annucci, plaintiff alleges they "intentionally conspire[d] to persecute [and] retaliate against plaintiff" and "fail[ed] to act on knowledge of substantial risk of serious harm to plaintiff." *Id.* at 17, 18.

### II. PROCEDURAL HISTORY

Plaintiff commenced this action on or about March 19, 2018, by the filing of a complaint dated February 20, 2018, accompanied by an application for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos 1, 2. Following an initial review of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A, Chief Judge Glenn T. Suddaby issued a decision

and order denying as moot plaintiff's IFP application and dismissing all of the claims set forth in plaintiff's complaint, with the exception of his Eighth Amendment excessive force claim asserted against defendants John Doe #2 and Oliver, and granted plaintiff leave to amend his complaint. Dkt. No. 5.

Plaintiff availed himself of the opportunity to replead on or about July 16, 2018, by filing an amended complaint and second IFP application. Dkt. No. 9. Upon review of that amended pleading pursuant to 28 U.S.C. §§ 1915(e), 1915A, the court granted plaintiff's IFP application and accepted for filing plaintiff's Eighth Amendment excessive force claims against defendant Oliver and Rielly and the following First Amendment retaliation causes of action: (1) a claim against defendant Laster, related to incidents that occurred in February and March 2018; (2) claims against defendants Rielly and Oliver for aggressive pat-frisks and the confiscation of plaintiff's personal items in April 2018; (3) a claim against defendant Galioto, related to the May 2018 search of plaintiff's legal work; and (4) retaliation claims against defendants Annucci, Smith, Mauro, and Sullivan. Dkt. No. 14.

**\*4** On April 1, 2018, prior to answering plaintiff's amended complaint, defendants filed the currently pending motion for summary judgment, arguing that plaintiff's claims are barred based on his failure to exhaust available administrative remedies prior to filing this action.[5] Dkt. No. 50. Plaintiff filed a response in opposition to the motion, and defendants have since replied in further support of their motion. Dkt. Nos. 55, 56. Additionally, and with the court's permission, plaintiff has filed a sur-reply in opposition to defendants' motion. Dkt. No. 59. Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 73.2(c). *See also* Fed. R. Civ. P. 72(b).

[5]     Unlike its Rule 12(b) dismissal motion counterpart, a summary judgment motion does not by rule have the effect of automatically staying the requirement of answering a plaintiff's complaint. *Compare* Fed. R. Civ. P. 12(b)(6) with Fed. R. Civ. P. 56. Despite the lack of a specific rule recognizing such a stay, some courts have deemed the interposition of a pre-answer summary judgment motion as an act of defending in the case, negating a finding of a default, while others have not. *Compare* Rashidi v. Albright, 818 F. Supp. 1354, 1355-56 (D. Nev. 1993) *with* Poe v. Cristina Copper Mines, Inc., 15 F.R.D. 85, 87 (D. Del. 1953). In this instance,

2019 WL 3351643

exercising my discretion, I will *sua sponte* order a stay of defendants' time to answer plaintiff's complaint until twenty days after a final determination is issued with respect to defendants' motion, in the event that the action survives. *See Snyder v. Goord*, 9:05-CV-01284, 2007 U.S. Dist. LEXIS 23066, 2007 WL 957530, at * 5 (N.D.N.Y. Mar. 29, 2007) (McAvoy, S.J. and Peebles, M.J.).

## III. DISCUSSION

### A. Legal Standard Governing Summary Judgment Motions

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S.Ct. 2505; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002);

*see also Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Exhaustion of Available Administrative Remedies

**\*5** In support of their motion, defendants argue that plaintiff commenced this action on February 20, 2018, the date upon which plaintiff signed his original complaint. Dkt. No. 1 at 17; Dkt. No. 50-1 at 10. Defendants argue that based upon the dates that plaintiff filed each of his grievances and appeals with the CORC, plaintiff's federal causes of action are subject to dismissal due to his failure to satisfy the applicable exhaustion requirement. Dkt. No. 50-1 at 8-9. In opposition to defendants' motion, plaintiff asserts that there were delays in processing his appeals and that the CORC failed to render decisions, in violation of DOCCS Directive No. 4040. *See generally* Dkt. No. 55-1.

### 1. Legal Standard

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, — U.S. ——, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93, 126 S.Ct. 2378 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules."

*Woodford*, 548 U.S. at 95, 126 S.Ct. 2378; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). [6]

[6]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[7] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

[7]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

**\*6** A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[8] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

[8]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [9] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or

guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

9    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

**\*7** Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17, 127 S.Ct. 910, 166 L.Ed.2d 798

(2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies before commencing suit, his complaint may be dismissed for failure to state a cognizable claim. *Jones*, 549 U.S. at 215-16, 127 S.Ct. 910; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure). 10

10    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions have been deleted for online purposes.]

### 2. Analysis

The record reflects that while confined at Greene, plaintiff filed the following grievances relating to the claims raised in this action:

### Grievances Filed

| Grievance No. | Date Filed | Subject |
| --- | --- | --- |
| GNE-9664-17 | December 12, 2017 | Excessive force on December 9, 2017 |
| GNE-9766-18 | February 22, 2018 | February 16, 2018 search of plaintiff's legal notepad |
| GNE-9848-18 | April 9, 2018 | April 5, 2018 pat frisk and April 6, 2018 search |
| GNE-9922-18 | June 4, 2018 | May 20, 2018 search of plaintiff and his legal papers |

Ordinarily, under the prison mailbox rule, a complaint is deemed to have been filed on the date that is conveyed to prison officials. *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *see also Taylor v. Racette*, 709 F. App'x 105, 106 n.1 (2018). Although plaintiff's complaint was signed on February 20, 2018, there is no evidence from which the court can ascertain whether, and on what date, plaintiff provided his pleading to prison officials for mailing. *See generally* Dkt. No. 1. It appears, although this is not entirely clear, that plaintiff instead sent his complaint to a family member, who then mailed the complaint to the court on March 14, 2018. Dkt. No. 1-10 at 1. The court ultimately received and filed the complaint on March 19, 2018. Dkt. No.

1. Based on these circumstances, I decline to conclude that the complaint was "filed" by plaintiff on February 20, 2018, and find instead that the complaint was filed on March 19, 2018. 11

11    As will be seen, whether the court considers the date plaintiff signed the complaint (February 20, 2018) or the date the complaint was filed (March 19, 2018) as the date of "commencement," this distinction is without consequence. Considering either date, it is unlikely if not impossible, given the timeline of plaintiff's grievances, that he would have completed the entire appeals process prior to commencing the present action.

Turning to plaintiff's first grievance, GNE-9664-17, there is no dispute of material fact that the superintendent of Greene issued a determination on January 8, 2018, and plaintiff thereafter signed an appeal statement on January 9, 2018. Dkt. Nos. 50-2 at 2, 55-3 at 1. The CORC did not acknowledge receipt of plaintiff's appeal, however, until March 12, 2018. *Id.* Accordingly, plaintiff's complaint was mailed to the court a mere two days after the CORC processed and acknowledged plaintiff's grievance appeal, and was filed only seven days after that point.

Because less than thirty days elapsed between the CORC's receipt of plaintiff's appeal—the time period allotted by the regulatory scheme for the CORC to act—and commencement of this action, *see* 7 N.Y.C.R.R. § 701.5(d) (2)(i), (ii), I conclude that plaintiff failed to fully exhaust his administrative remedies regarding plaintiff's claim stemming from the December 9, 2017 incident. *See, e.g., Burgos v. Craig*, 307 F. App'x 469, 471 (2d Cir. 2008) (observing that subsequent exhaustion "is not enough to save his suit, because [the inmate] is required to have properly exhausted before he sues."); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (Dec. 5, 2012) (Baxter, M.J.), *report and recommendation adopted by* 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013) (McAvoy, J.). From the face of plaintiff's complaint and the undisputed facts before the court, it is clear that plaintiff's grievance number GNE-9664-17 was pending, and therefore unexhausted, at the time of commencement of this action. *See, e.g., Shepherd v. Lempke*, No. 10-CV-1524, 2017 WL 1187859, at *3 (N.D.N.Y. Mar. 30, 2017) (McAvoy, J.) (collecting cases).

**\*8** Likewise, plaintiff failed to fully exhaust his administrative remedies with regard to his other three remaining grievances, GNE-9677-18, GNE9848-18, and GNE-9922-18. It is undisputed that with respect to GNE-9677-18, plaintiff signed his appeal to the CORC on March 21, 2018, after this action was commenced. Plaintiff did not even initiate the grievance process with respect to GNE9848-18 and GNE-9922-18 until after commencement. This chronology is fatal to plaintiff's claims. *See, e.g., Scott v. Miller*, 17-CV-520, 2018 WL 4635710, at *5 (N.D.N.Y. June 25, 2018) (Baxter, M.J.) ("The entire appeals process must be completed prior to filing.") (citing *Casey v. Brockley*, No. 13-CV-1271, 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (Dancks, M.J.)).

In opposition to defendant's motion, plaintiff argues that his submission of an amended complaint, which was filed with the court on July 16, 2018, cures this defect. Dkt. No. 9. Plaintiff's argument is unavailing. Where a plaintiff files an amended complaint, the operative date for an exhaustion analysis is the date of plaintiff's original complaint. *See, e.g., Guillory v. Haywood*, No. 13-CV-01564, 2015 WL 268933, at *11 (N.D.N.Y. Jan. 21, 2015) (D'Agostino, J.) ("[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced."); *see also Shepherd v. Lempke*, No. 10-CV-1524, 2017 WL 1187859, at *3 (N.D.N.Y. Mar. 30, 2017) (discussing post-commencement exhaustion). In other words, because the entire appeals process must be completed prior to filing, plaintiff must have exhausted his available administrative remedies prior to commencing this suit on March 19, 2018. Notably, the conduct complained of in grievance numbers GNE-9848-18 and GNE-9922-18 had not even occurred yet at the time plaintiff commenced this action. *See* Dkt. No. 50-3 at 16-17, 21-22.

The only remaining question to be resolved is whether the IGP was unavailable to plaintiff such that he may be excused from his failure to fully exhaust the administrative remedies. [12] *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1858). Plaintiff invites the court to deem his administrative remedies unavailable—a finding that would excuse his failure to fully exhaust the administrative remedies—by virtue of the failure of defendant Mauro, Greene's IGP supervisor, to forward his appeals to the CORC in a timely manner [13] and subsequent failure by the CORC to issue a final determination with regard to each of his four grievances. *See generally* Dkt. Nos. 55-1, 59. However, considering the timing of plaintiff's grievances, three of which were filed subsequent to plaintiff initiating this lawsuit, a finding of "unavailability" is inconsequential.

[12]    I note that for each of plaintiff's four grievances at issue, the CORC has yet to issue a decision on plaintiff's appeals. While defendants do not argue that plaintiff has failed to exhaust his administrative remedies on this basis, I am not convinced that such a position would pass muster in the aftermath of *Williams. See also* 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

[13]    To the extent plaintiff claims that grievance number GNE-9664-17 would have been exhausted in a timely manner but for Mauro's failure to forward plaintiff's appeal to the CORC within seven days, *see* Dkt. No. 55-1 at 6, I disagree. There is no evidence in this case that plaintiff ever wrote to defendant Mauro or the CORC regarding the timeliness of the CORC's response. *See* 7 N.Y.C.R.R. § 701.5(d)(3)(i) ("If a grievant does not

receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."); *see also Fox v. Lee*, No. 9:15-CV-0390, 2018 WL 8576600, at \*21 (N.D.N.Y. Dec. 18, 2018) (Hummel, M.J.). Moreover, even assuming—as plaintiff argues—that the appeal should have been sent to the CORC within one week, or by January 17, 2018, I have found no case deeming the IGP unavailable under *Ross* because the CORC did not issue a decision within 61 days, the time from January 17, 2018 until the filing of plaintiff's complaint.

**\*9** Moreover, there is simply no evidence before the court that would suggest that the IGP operated a "simple dead end," was "incapable of use," or that plaintiff's efforts were thwarted by "machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1858). To the contrary, the IGP remained fully available to plaintiff and he was able to successfully and timely navigate each step. After plaintiff received a denial from the superintendent for each of his four grievances, he appealed to the CORC.

In sum, even when all inferences are drawn in plaintiff's favor, based upon the uncontested facts presently before the court, I am unable to conclude that plaintiff's failure to exhaust his administrative remedies should be excused due to unavailability. Accordingly, I agree with defendants that plaintiff prematurely filed this action, and consequently recommend that his federal civil rights claims be dismissed.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff was under no obligation to plead facts demonstrating that he complied with the PLRA's exhaustion requirement prior to filing this action. Nonetheless, given the chronology of events, the face of plaintiff's complaint reveals that he failed to exhaust his administrative remedies prior to commencement and there is no reason that he should be excused from this requirement. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's claims based on the failure to exhaust the available administrative remedies (Dkt. No. 50) be GRANTED, and that plaintiff's federal civil rights claims be DISMISSED WITHOUT PREJUDICE.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [14] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[14]    If you are proceeding *pro se* and are served with this order, report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court is respectfully directed to modify the court's records to change defendants' names, as reflected in footnote one, above; and it is further respectfully

**\*10** ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Slip Copy, 2019 WL 3351643

---

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Loccenitt v. LaBrake, Not Reported in Fed. Supp. (2018)

2018 WL 826850

2018 WL 826850
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kiaza LOCCENITT, Plaintiff,

v.

LABRAKE, et al., Defendants.

14-CV-6703-FPG
|
Signed 02/12/2018

**Attorneys and Law Firms**

Kiaza fLoccenitt, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

DECISION AND ORDER

HON. FRANK P. GERACI, JR., Chief Judge

## INTRODUCTION

**\*1** *Pro se* Plaintiff Kiaza Loccenitt brought this 42 U.S.C.
§ 1983 action against Defendants Corrections Officers
LaBrake, Vankelburg, Sagriff, Maloy, Cook, Ferguson,
Sergeant Brinkerhoff, and Nurse Jones, alleging that
they violated his Eighth Amendment rights. ECF No. 1.
Defendants moved for summary judgment and to preclude
Plaintiff from calling inmate Henry Benitez as a trial witness.
ECF Nos. 37, 39. For the reasons that follow, Defendants'
Motion for Summary Judgment is GRANTED and this case
is dismissed without prejudice because Plaintiff did not exhaust
his administrative remedies. Plaintiff is directed to re-file his
complaint as a new action. Defendants' Motion to Preclude is
DENIED AS MOOT.

## BACKGROUND

Plaintiff alleges that Defendants Corrections Officers
LaBrake, Vankelburg, Maloy, Ferguson, Sagriff, and Cook
assaulted him in his SHU cell. Plaintiff claims that he lost
consciousness during the attack and was choked, kicked,
punched, jumped on, slammed into the ground, and had his
eyes gouged. Plaintiff also alleges that he was denied medical

attention for his various injuries, including vision impairment,
impaired ambulation, acute chronic back pain, bruises, and
swelling.

At issue, for purposes of this motion, is what date the
alleged incident occurred and whether Plaintiff followed
the grievance procedure before commencing this action.
Plaintiff's Complaint contains conflicting dates for the
incident—July 27, 2014 and August 27, 2014. ECF No. 1
at 2, 3. Plaintiff claims that he filed a grievance with the
Inmate Grievance Resolution Committee ("IGRC"), which
was denied, and that he appealed that decision to the
Central Office Review Committee ("CORC"). *Id.* at p. 6.
Plaintiff provided the same conflicting dates in his deposition
testimony. Defense counsel repeatedly asked Plaintiff to
confirm that the incident occurred on August 27, but
counsel never pointed out that Plaintiff's Complaint contained
conflicting dates.

Defendants argue that regardless of which date the
alleged incident occurred, Plaintiff failed to exhaust his
administrative remedies—either by failing to file an initial
grievance or by prematurely filing this action before CORC
issued a final decision—and that the Complaint should be
dismissed. In opposition, Plaintiff asserts that the incident
occurred on July 27, and that any inconsistency regarding the
date of the incident is a harmless error and should be excused.
*See* ECF No. 41-1 at 1-2, 5; ECF No. 41-2 at 1-2, 5-6, 16.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that
there is "no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,
322 (1986). Disputes concerning material facts are genuine
where the evidence is such that a reasonable jury could return
a verdict for the non-moving party. *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine
issues of material fact exist, the court construes all facts in a
light most favorable to the non-moving party and draws all
reasonable inferences in the non-moving party's favor. *See id.*
at 255. The moving party "bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of [the record] which it believes
demonstrate the absence of a genuine issue of material fact."
*Celotex*, 477 U.S. at 323. When the moving party has met
this initial responsibility, the non-moving party must come

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 826850

forward with "specific facts showing a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

**\*2** Defendants argue that, regardless of whether the incident occurred on July 27 or August 27, Plaintiff failed to exhaust his administrative remedies and therefore the Complaint must be dismissed. They claim that if the incident occurred on August 27, Plaintiff cannot show that he filed a grievance or appealed it. Alternatively, if the incident occurred on July 27 and Plaintiff filed a grievance and appealed it, Plaintiff commenced this action prematurely—*i.e.* before receiving a final determination from CORC—and therefore did not exhaust his administrative remedies.

As an initial matter, the Court finds it more plausible that the incident occurred on July 27, and that Plaintiff filed a grievance and appealed its denial to CORC. While there are inconsistent dates throughout Plaintiff's filings, Plaintiff asserts that the incident occurred on July 27 in his Complaint and that he filed a grievance that was denied and appealed to CORC. ECF No. 1 at 2, 6; ECF No. 41-1 at 18-19, 31. Indeed, Defendant LaBrake filed an inmate misbehavior report for an incident that occurred in Plaintiff's SHU cell on July 27 and this report corroborates certain allegations contained in Plaintiff's Complaint, including the time and date of the incident and that force was used against Plaintiff. ECF No. 41-1 at 27-30. While Defendants dispute that Plaintiff followed the grievance procedure, even their submissions show that Plaintiff filed a grievance for "assault in retaliation" on August 11, 2014 that he appealed to CORC, which issued a final determination on December 17, 2014. *See* ECF No. 39-1 at 2; ECF No. 39-3 at 2, 6.

Plaintiff testified that the incident occurred on August 27, but only after counsel for Defendants "repeatedly asked him to confirm whether the date of the incident was in fact August 27, 2014." ECF No. 39-5 at 1; ECF No. 39-4 at 7, 10, 13. Plaintiff also testified that his Complaint "stems from [Plaintiff], basically, making complaints, grievances of incidents on CO LaBrake" and that when he filled out his grievance he referred to LaBrake's misbehavior report, which is dated July 27. ECF No. 39-4 at 12. Plaintiff's grievance states that the incident occurred on August 27, however, IGRC stamped the grievance as received on August 11, 2014. ECF No. 41-1 at 18. Plaintiff recognized the inconsistent dates

and asserts that the incident occurred July 27. *See* ECF No. 41-1.

A reading of Plaintiff's Complaint, the inmate misbehavior report, Plaintiff's grievance, and CORC's final determination all suggest that the incident likely occurred on July 27, that Plaintiff filed a grievance, and that he appealed the denial to CORC. The parties' submissions make clear, however, that Plaintiff filed his Complaint on December 11, 2014 before CORC issued its final determination on December 17, 2014. Accordingly, Plaintiff's Complaint must be dismissed without prejudice because he did not exhaust his administrative remedies. [1]

[1]  The Court notes that even if the incident occurred on August 27, summary judgment would still be appropriate because Plaintiff did not grieve a use of force or retaliatory incident occurring in August. *See* ECF No. 39-3 at 6.

In New York, prison inmates must follow a three-tiered grievance procedure. An inmate must first file a grievance with the IGRC. *See* N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the CORC. *Id.* § 701.5(d). Here, Plaintiff filed a grievance and appealed it to CORC.

**\*3** "The Prison Litigation Reform Act of 1995 ("PLRA") mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). The Supreme Court has interpreted the PLRA to require exhaustion of administrative remedies in all circumstances as long as those remedies were actually available to the inmate. *Id.* at 1856-58. Thus, pursuant to the PLRA, the prisoner must exhaust his administrative remedies before he files a lawsuit, and it is insufficient if he completes the exhaustion process after he files the lawsuit. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). "Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies." *Casey v. Brockley*, No. 13-CV-01271 DNH/TWD, 2015 WL 8008728, at \*4 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015).

2018 WL 826850

Plaintiff instituted this action six days before CORC issued a final determination. It is well settled that "[r]eceiving a decision from CORC *after* filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice." *Neal*, 267 F.3d at 116; *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-0124 GTS/ DJS, 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016), *aff'd*, 692 Fed.Appx. 668 (2d Cir. 2017) (dismissing complaint filed eight months before CORC decision for failure to exhaust, even where delay in rendering decision was due to clerical error in transmitting appeal to CORC); *Burgos v. Craig*, 307 Fed.Appx. 469, 470-71 (2d Cir. 2008) (noting that "completing the exhaustion requirements only after filing suit is insufficient"); *Casey*, 2015 WL 8008728, at *5 (same); *see also Fofana v. Moss*, No. 15-CV-0188, 2016 WL 1237796, at *3 (N.D.N.Y. Mar. 4, 2016) (holding that claims in complaint received by the Clerk's office one day after CORC issued its decision were properly exhausted).

Plaintiff argues that his Complaint was properly filed after he exhausted his administrative remedies because CORC did not render a decision within 30 days in accordance with the regulations. ECF No. 41-2 at 6. However, a delay in CORC's rendering a decision on Plaintiff's appeal is not a defense to the exhaustion requirement. *Gizewski*, 2016 WL 3661434, at *13 (citing *Casey*, 2015 WL 8008728, at *6). Nor would a post-exhaustion amendment of Plaintiff's Complaint cure the exhaustion defect, which existed when the action was commenced. *Guillory v. Haywood*, No. 13-CV-01564 MAD, 2015 WL 268933, at *10 (N.D.N.Y. Jan. 21, 2015). Accordingly, Plaintiff's Complaint must be dismissed without prejudice because he did not exhaust his administrative remedies.

The Second Circuit "has recognized that failure to exhaust administrative remedies is usually a 'curable procedural flaw' that can be fixed by exhausting those remedies and then reinstituting suit." *Casey*, 2015 WL 8008728, at *6 (quoting *Neal*, 267 F.3d at 123). Indeed, Plaintiff's failure to exhaust "is merely a temporary procedural flaw." *Allah v. Annucci*, No. 16-CV-1841 KMK, 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (quoting *Wagnoon v. Johnson*, No. 02-CV-10282 RCC/GWG, 2004 WL 583764, at *2 (S.D.N.Y. Mar. 23, 2004) (dismissing plaintiff's case without prejudice so that he could reinstitute suit)). **Thus, Plaintiff is instructed to immediately re-file his complaint as a**

**new action. He must also submit an *in forma pauperis* motion and prison authorization, or pay the filing and administrative fees ($400).** The Court notes that, while the statute of limitations for Section 1983 claims is three years, federal courts borrow and apply the state's tolling rules. *Bd. Of Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478, 487-491 (1980). Indeed, New York Civil Practice Law and Rules § 205(a) "tolls the statute of limitations during the pendency of an action that has been terminated for what is usually a curable defect." *Allway v. McGinnis*, 362 F. Supp. 2d 390, 393 (W.D.N.Y. 2005) (citing *Cecere v. County of Westchester*, 814 F. Supp. 378, 381 (S.D.N.Y. 1993)); *see also Gashi v. County of Westchester*, No. 02 Civ 6934, 205 WL 195517, *9 (S.D.N.Y. Jan 27, 2005) (finding that dismissal without prejudice for failure to exhaust administrative remedies pursuant to the PLRA "is a manner of termination not listed as excluded from the protection of § 205(a)").

### CONCLUSION

**\*4**  For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 39) is GRANTED and their Motion to Preclude (ECF No. 37) is DENIED AS MOOT. The Complaint is dismissed without prejudice, and the Clerk of Court is directed to close this case. Plaintiff is instructed to immediately re-file his complaint as a new action. He must also submit an *in forma pauperis* motion and prison authorization, or pay the filing and administrative fees ($400). These items should be mailed to The United States District Court WDNY, Clerk's Office, US Courthouse, 100 State Street, NY 14614.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 826850

**Loccenitt v. LaBrake, Not Reported in Fed. Supp. (2018)**

2018 WL 826850

---

**End of Document**                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

2012 WL 7160117
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,

v.

David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958 (TJM/ATB).
|
Dec. 5, 2012.

**Attorneys and Law Firms**

Jesus Rodriguez, pro se.

Christopher W. Hall, AAG, for the Defendants.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N .Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this civil rights complaint, plaintiff alleges that defendant Rosner denied plaintiff constitutionally adequate medical care when he refused to prescribe orthopedic boots for plaintiff. (Compl. ¶ 6; Dkt. No. 1). Plaintiff subsequently filed a substantial number of documents in support of his complaint. (Dkt. No. 13). Plaintiff seeks injunctive as well as substantial monetary relief. (Compl.¶ 8).

Presently before the court is defendant's motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16). Plaintiff has responded in opposition to the motion to dismiss and has filed a separate motion for appointment of counsel. (Dkt.Nos.19, 20). For the following reasons this court will recommend granting defendant's motion and dismissing this action without prejudice to plaintiff re-filing the action. The court will also order the denial of plaintiff's motion for appointment of counsel without prejudice.

## DISCUSSION

### I. *Facts*

In his complaint, plaintiff alleges that he is a Type II diabetic, who has had skin grafts taken from the soles of his feet, leaving him with abnormally thin skin on the bottom of his feet. (Compl. Facts ¶¶ 2–3). Plaintiff states that he is in constant discomfort due to his condition, and in May of 2011, while he was incarcerated at Oneida Correctional Facility, he was referred to Dr. Baldauf, a podiatrist, who determined that plaintiff suffered from plantar fascitis. (*Id.* ¶¶ 8–9). Plaintiff states that Dr. Baldauf recommended that plaintiff be fitted for orthopedic boots. (*Id.* ¶ 11). Impressions of plaintiff's feet were taken while he was still at Oneida, and the boots were ordered in July of 2011. (*Id.* ¶ 12).

Prior to receiving his boots, plaintiff was transferred to Watertown Correctional Facility, where he was examined by defendant Dr. Rosner. (*Id.* ¶¶ 13–15). Plaintiff states that he made several requests, but was never given the boots. (*Id.* ¶ 14). Dr. Rosner, who is not a podiatrist, conducted his own examination of plaintiff's feet and determined that plaintiff did not require orthopedic boots. (*Id.* ¶ 16). Plaintiff claims that the medical records supporting Dr. Baldauf's diagnosis and prescription of orthopedic boots was missing from plaintiff's file. (*Id.* ¶ 20). Plaintiff believes that defendant Rosner has intentionally destroyed or hidden these records. (*Id.* ¶ 21).

Plaintiff states that defendant Rosner refused to locate these records, even though plaintiff filed a grievance. (*Id.* ¶ 22). Plaintiff also claims that defendant Rosner "deflects" all investigations by stating that plaintiff refused new state-issued boots, but never mentions that these "new" boots were not the orthopedic boots that plaintiff had been prescribed at Oneida. (*Id* .¶ 23).

### II. *Motion to Dismiss*

#### A. Legal Standards

**\*2** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must

also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion

to dismiss, without converting the proceeding to one for summary judgment).

### B. Application

**\*3** Subsequent to the filing of his complaint, plaintiff submitted documents in support of the complaint, including a substantial number of medical records, many of which address the issue of his request for special boots. (Dkt. No. 13). Among the records submitted by plaintiff are his grievance documents. (Dkt. No. 13 at 34–43). Plaintiff also included a complaint that he made to the New York State Department of Health, Office of Professional Misconduct, [1] regarding defendant's denial of orthopedic boots and a complaint to the New York State Office of the Inspector General. (Dkt. No. 13 at 44–47, 48). On October 25, 2012, plaintiff filed a letter, attaching a copy of the final response to his grievance by the Central Office Review Committee. (Dkt. No. 15). This court may consider all of the documents attached to the complaint, or submitted in conjunction with the complaint in its decision, although it need not consider all of them in order to decide this motion.

[1]    This set of documents includes plaintiff's complaint, the Department's response, plaintiff's letter objecting to the Department's conclusion, and the Department's review of its action. (Dkt. No. 13 at 44–47).

### III. *Exhaustion of Administrative Remedies*

#### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (exhaustion requirement applies, *inter alia,* to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense,

it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must *complete* the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Id.* at 90–103. In *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Second Circuit specifically held that completion of the administrative review process includes receiving the decision on the final appeal of a grievance prior to filing the federal action.

**\*4** The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp.Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[2] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense;

and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

[2]   *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Although the Second Circuit has not explicitly held that *Hemphill* remains good law after *Woodford,* it has applied the three-part inquiry in recent cases. *See, e.g., Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009); *Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011).[3]

[3]   This court also notes that, based upon the concurring opinion in *Woodford,* it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford,* Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford* ] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 548 U.S. at 104 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates.*" *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

### 2. Application

Defendant argues that plaintiff has admittedly failed to exhaust his administrative remedies. In his complaint, signed on June 10, 2012, and filed on June 13, 2012, plaintiff states that he filed his grievance on April 2, 2012, received an adverse decision and appealed to the Superintendent on April 26, 2012. (Compl.

¶ 4(b)(i)). Plaintiff states that he appealed the Superintendent's decision to the CORC on May 4, 2012, but that "[n]o decision [was] rendered to date." (*Id.* ¶ 4(b)(ii)). Plaintiff specifically states that the "appeal [is] still pending at CORC in Albany." (*Id.*) Thus, at the time plaintiff filed his complaint, he had not exhausted his administrative remedies.

In the complaint, plaintiff cited no reason for failing to wait for the CORC's decision. The first two *Brownell* factors do not apply to this case. Plaintiff does not claim that the grievance procedure was not "available," nor does he claim that defendant's actions prevented him from utilizing the available procedures. Thus, the court must consider whether there are "special circumstances" justifying plaintiff's failure to exhaust. Based on the facts in this case, the inquiry will be whether there are special circumstances justifying plaintiff's failure to await the CORC decision.

 **\*5** Plaintiff ultimately received a decision by the CORC, dated September 26, 2012, accepting his grievance to the extent that "a referral was submitted for a consult for special boots for the grievant on 9/18/12." (Dkt. No. 15). Plaintiff filed the CORC decision with the court on October 25, 2012. (*Id.*) While it is true that this decision means that plaintiff has now exhausted his administrative remedies, the Second Circuit has held that a plaintiff must exhaust his remedies *before* filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. 267 F.3d at 122–23.

In plaintiff's response to the motion to dismiss, he argues that he did everything he could to exhaust his remedies, and that he should be excused from obtaining the final decision of the CORC because he had already filed the appeal to the CORC when he filed his federal action, and there were "extenuating medical circumstances." (Dkt. No. 19 at 1–2). The court understands that plaintiff claims he was in pain, however, he received the CORC decision before the court even had an opportunity to rule on any of the merits of his claims. Thus, plaintiff's premature filing of this federal action did not benefit plaintiff or solve his medical problem. The CORC noted that plaintiff was referred for his medical boots in September of 2012. In fact, if plaintiff had waited, he would not have had to request injunctive relief because it appears that he will be afforded his special boots if medically appropriate.

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action for damages because he has now exhausted his remedies. As in *Neal,* plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." 267 F.3d at 123. However, the Second Circuit specifically rejected such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Id.* The scenario envisioned by the court in *Neal* occurred in this case, even before the CORC accepted the grievance because plaintiff received the referral to the specialist in September of 2012. This is true, notwithstanding that plaintiff may still file a complaint for damages alone if he chooses to do so.

### IV. *Appointment of Counsel*
Because this court is recommending dismissal without prejudice at this time, plaintiff's motion for appointment of counsel (Dkt. No. 20) is denied as moot. If plaintiff re-files his action, he may request appointment of counsel at the appropriate time.

**WHEREFORE,** based on the findings above, it is

 **\*6** **RECOMMENDED,** that defendant's motion to dismiss (Dkt. No. 16) be **GRANTED,** and the complaint **DISMISSED WITHOUT PREJUDICE TO REFILING,** and it is further

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 20) is **DENIED AS MOOT AT THIS TIME.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 7160117

**Rodriguez v. Rosner, Not Reported in F.Supp.2d (2012)**

2012 WL 7160117

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

2013 WL 614360
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,
v.
David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958.
|
Feb. 19, 2013.

**Attorneys and Law Firms**

Jesus Rodriguez, Wallkill, NY, pro se.

Christopher W. Hall, Office of Attorney General, Albany, NY,
for Defendant.

***DECISION & ORDER***

THOMAS J. McAVOY, District Judge.

**\*1** This matter brought pursuant to 42 U.S.C. § 1983
was referred to the Hon. Andrew T. Baxter, United States
Magistrate Judge, for a Report–Recommendation pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c).

No objections to the December 5, 2012 Report–
Recommendation were raised by the parties. After
examining the record, the Court determined that the
ReportRecommendation is not subject to attack for plain
error or manifest injustice. Accordingly, the Court adopts the
Report–Recommendation for the reasons stated therein.

Thus, it is ordered that: (1) Defendant's motion to dismiss
be **GRANTED;** (2) Plaintiff's complaint be **DISMISSED
WITHOUT PREJUDICE**; and (3) Plaintiff's motion for
appointment of counsel be **DENIED** as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 614360

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 931729
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony M. GARRAWAY, Plaintiff,

v.

BROOME COUNTY, NEW YORK; Ronald J.
Bill, Chief Civil Deputy; Broome County Sheriff's
Department; Dennis Rowlands, Deputy # 260;
and Chris Smith, Deputy # 223, Defendants.

No. 5:03-CV-0681.
|
April 7, 2006.

**Attorneys and Law Firms**

Anthony M. Garraway, Moravia, NY, pro se.

Aaron J. Marcus, Binghamton, NY, for Defendants.

### *DECISION and ORDER*

THOMAS J. McAVOY, Senior United States District Judge.

## I. INTRODUCTION

**\*1** Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his Fourth Amendment right against unreasonable search and seizures and his Fourteenth Amendment right to equal protection and due process. Defendants move for summary judgement pursuant to Fed.R.Civ.P. 56 based on the untimeliness of Plaintiff's claim and his failure to state a cause of action. Plaintiff opposes arguing his claim is timely under the "prison mailbox rule" and that there are genuine issues of fact warranting a trial.

## II. BACKGROUND

Plaintiff claims that on or about May 15, 2000 he entered into an oral agreement with Esther Gardner for a "month-to-month lease" of a mobile home. Plaintiff contends that he made a rent payment for the remainder of the month and was given "the only key to the property so he could move in." (Pl.'s Statement of Undisputed Facts at ¶ 1). Gardner, however, states she never met or talked with Plaintiff prior to May 31, 2000 and that she did not lease any property to him. (Gardner Aff. ¶

9.) Gardner's daughter, Margaret Dunn, claims that Denise Houck, Plaintiff's then girlfriend, contacted her a few weeks prior to May 31, 2000 about renting the property. (Dunn Aff. ¶ 2.) Dunn claims she and Houck had an oral agreement that Houck would not move in until she had paid Dunn the first month's rent and a security deposit. Dunn gave Houck permission to fix the property up prior to moving in and gave Houck a key. Dunn states she never intended to rent the property to Plaintiff, but rather to Houck and her children. (Dunn Aff. ¶ 8.) No formal lease documents were drawn up. There remains a factual dispute as to what rental agreements, if any, were made between Plaintiff, Houck, Gardner, and Dunn.

Dunn became aware that Houck had moved in without making any rent or security deposit payments. (Dunn Aff. ¶ 5.) Dunn claims Houck told her she would have the rent money within the next few days and, upon that belief, Dunn allowed Houck to stay in the mobile home. *Id.*

On May 31, 2000, Gardner went to the mobile home and saw that Houck and Plaintiff had moved in and had pit bulls living on the property. Gardner claims she no longer wanted Houck to lease the property and called the Broome County Humane Society and the Broome County Sheriff's Office to see what actions could be taken. (Gardner Aff. ¶ 5.)

When the Humane Society arrived, Plaintiff came outside from within the mobile home and an argument ensued between him and Gardner as to her request for the Humane Society to remove Plaintiff's dogs. Shortly thereafter, Defendant Sheriff's Deputy Rowlands arrived on the scene and claims he was advised by Gardner that Plaintiff did not belong on the property. (Rowlands Aff. ¶ 3.)

Defendant Sheriff's Chief Civil Deputy Bill claims he responded to the scene after hearing a discussion of it on his radio. Upon arrival, Bill claims he spoke with Gardner who advised him that, while Plaintiff and Houck were going to lease the property and had been given permission to do some work inside the home, they had not been given permission to move into the residence. Bill claims Houck told him what Gardner said was true and that no money had exchanged hands and there was no formal lease agreement. (Bill Aff. ¶ 4.) Bill claims that he then advised Houck that in his opinion she and Plaintiff were "not in the residence legally" and that they would ultimately have to leave. Bill states that he advised Houck of the legal processes by which she could contest the landlord's representations. (Bill Aff. ¶ 4.)

**\*2** Defendant Sheriff's Deputy Smith claims that upon his arrival, Rowlands was interviewing Plaintiff who stated his name was Hubert A. Garraway and was refusing to offer any form of identification. Hubert Garraway is Plaintiff's brother. (Smith Aff. ¶ 3.) Smith claims he was advised by the Humane Society employees that Plaintiff's name was Anthony Garraway and that they had a number of prior dealings with him. (Smith Aff. ¶ 4). Smith claims Plaintiff continued to give conflicting information as to his name, social security number and other identification information. Smith states that just prior to placing Plaintiff into custody on suspicion of committing criminal impersonation, he was advised of an active arrest warrant outstanding for Plaintiff from the Binghamton Police Department regarding a Criminal Mischief in the Fourth Degree charge. (Smith Aff. ¶ 6.) Smith claims he never entered or searched the mobile home.

Because Defendants suspected Plaintiff was lying about his identity, Rowlands entered the mobile home to find a form of personal identification for Plaintiff. Rowlands claims he entered the mobile home upon the belief that Plaintiff did not belong there and that Gardner had the authority to consent to the search. (Rowlands Aff. ¶ 8.) Rowlands claims the search entailed "nothing more than glancing over any papers or documents that might have been lying around the residence." (Rowlands Aff. ¶ 7.) Rowlands claims he did not remove any items from the property. *Id* .

Plaintiff offers a conflicting version of the events. Plaintiff claims that Houck was not present and that she was at work during the entire incident. Plaintiff admits he would not offer any form of identification to Defendants and that he stated he was Hubert. Plaintiff claims Defendant Smith unlawfully entered the mobile home and returned with letters written and sent to Anthony Garraway. Plaintiff claims Rowlands also unlawfully entered the mobile home, found Plaintiff's wallet within a pair of Plaintiff's pants and removed Plaintiff's license and social security card. Plaintiff claims these identification cards were obtained from an illegal search and were illegally seized. Plaintiff claims the identification cards were taken from the property to the station where Plaintiff was processed.

It is undisputed that Plaintiff was arrested and charged with Criminal Impersonation in the Second Degree (New York Penal Law § 190.25) and Criminal Mischief in the Fourth Degree (New York Penal Law § 145.00). Following the incident, Gardner began a formal eviction proceeding and posted a 3-day notice on the door of the mobile home. Following the posting, Gardner believed no one remained in the mobile home. (Gardner Aff. ¶ 7.)

Plaintiff filed the instant claim pursuant to 42 U.S.C.1983 claiming a violation of his Constitutional Fourth Amendment right against unreasonable search and seizures and a violation of his due process right for being evicted from the property.

### III. STANDARD OF REVIEW

**\*3** It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v.. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). With this standard in mind, the Court will address Defendants' motion

### IV. DISCUSSION

Plaintiff's Complaint alleges violations of his Constitutional right against illegal search and seizures by Defendants, and a violation of his Constitutional right to equal protection and due process by denying Plaintiff a legal eviction. (See Pl. Compl.). Plaintiff claims there was an oral rental agreement between he and Gardner and, therefore, Gardner did not have the authority to consent to a search of the mobile home.

Plaintiff further claims Defendants threatened his family that if they were to return to the property they would be arrested for trespassing, thus resulting in an illegal eviction by Defendants. Defendants argue the Complaint should be dismissed because it is untimely under 42 U.S.C.S. § 1983. In addition, Defendants argue that the motion for summary judgment should be granted because no Fourth Amendment or due process rights have been violated and, assuming there was a violation, that they are entitled to qualified immunity.

### A. Timeliness of Plaintiff's Claim

There is a three year statute of limitations for actions arising under 42 U.S.C.1983. Plaintiff's claim arose from the incidents occurring on May 31, 2000. Defendants claim the filing date of June 4, 2003 renders the Complaint untimely. However, Plaintiff, in his position of being both *pro se* and incarcerated, is afforded protection by the "prison mailbox rule". This rule is justified under the rationale that in being *pro se* and incarcerated the plaintiff has no choice but to hand his notices to prison authorities to forward to the Court Clerk. Because the plaintiff loses control over the documents and must therefore rely on prison authorities to forward them on to the clerk, Courts have recognized the date plaintiffs hand over their documents to prison authorities as the effective "filing date", and not the date when the Court Clerk actually is in receipt of them. *See Houston v. Lack,* 487 U.S. 266 (1988).

**\*4** In the instant case, while the filing date as entered by the clerk is June 4, 2003, Plaintiff appears to have handed the Complaint over to prison officials prior to May 31, 2003, and by virtue of the "prison mailbox rule", filed the Complaint within the three year statute of limitations. [1]

[1] Respondents may, however, inquire as to the date Plaintiff actually handed over the papers and later raise this issue if it should appear that Plaintiff handed over the papers *after* May 31, 2003.

### B. Fourth Amendment right against unreasonable search and seizures

Plaintiff claims his Fourth Amendment right against unreasonable search and seizures was violated when Defendants Rowlands and Smith, without permission from Plaintiff, unlawfully entered into the mobile home and unlawfully seized Plaintiff's property.

To claim a violation of a Fourth Amendment right against unreasonable search and seizures, Plaintiff has to show a

legitimate expectation of privacy in the property. *California v. Ciraolo,* 476 U.S. 207 (1986). A legitimate expectation may be shown by establishing an actual subjective expectation of privacy and that the expectation is one that society is prepared to recognize as legitimate. *Id.* Thus, "a tenant's expectation of privacy in his apartment ceases to be 'objectively justifiable' when his occupancy ceases to be lawful, as determined by the terms of his lease...." *U.S. v. Ross,* 43 Fed. Appx. 751, 757 (6th Cir.2002). In *U.S. v. Allen,* 106 F.3d 695 (6th Cir.1997), for example, the court held a defendant lacked a legitimate expectation of privacy when he failed to remain current on his rental payments.

A search conducted without a warrant is considered per se unreasonable and, therefore, a violation of the Fourth Amendment unless the search falls within a specifically established exception. *See Katz v. United States,* 389 U.S. 347 (1967). One such exception is a warrantless search conducted with consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph,* ---S.Ct. ----, ----, 2006 WL 707380, at \*3 (Mar. 22, 2006). Valid consent is established when one with actual authority over the property voluntarily gives consent to a search. *Schneckloth,* 412 U.S. 218. "[T]he exception for consent extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." *Randolph,* --- S.Ct. at ----, 2006 WL 707380 at \*5. Generally, a lessor of real property has no authority to consent to a warrantless search of rental property which is subject to an existing lease. *See Chapman v. U.S.,* 365 U.S. 610 (1961); *U.S. v. Elliott,* 50 F.3d 180, 186 (2d Cir.1995). "A landlord does, however, have authority to consent to a search by police of dwelling units in his building that are not leased. Further, if the landlord has joint access or control over certain areas of his apartment building for most purposes, he may validly consent to a search of those areas." *Id.*

#### 1. Actual Authority to Consent

**\*5** The first issue is whether Plaintiff had actual authority over the mobile home as a result of a rental agreement. Plaintiff claims there was an oral lease agreement with Gardner and that he paid rent for the month of May. Gardner claims she never made such an agreement and never received

any payments from Plaintiff. Dunn claims she and Houck had an oral lease agreement but that she was not authorized to live there yet and had made no rental payments. Based on the foregoing, there is a material dispute as to whether there was a lease agreement in effect at the time of the search and whether rental payments had been made. As a result, it remains unclear as to whether Plaintiff or Gardner had actual authority over the mobile home and was, therefore, authorized to give or refuse consent to the warrantless search.

*2. Apparent Authority to Consent*

Viewing the evidence in the light most favorable to Plaintiff, the Court will assume there was a valid lease agreement. Nevertheless, the Court finds that the search of the mobile home was still valid under *Illinois v. Rodriguez,* 497 U.S. 177 (1990) and the Supreme Court's more recent decision in *Randolph.* In *Rodriguez,* the Supreme Court held that law enforcement was permitted to conduct a search upon the apparent authority of a third party's consent, even if it turns out the third party did not in fact have actual authority. *Rodriguez,* 497 U.S. 177. Law enforcement may rely on the third party's consent so long as facts available to the officer at the time of the search would warrant a "person of reasonable caution in belief that consenting party had authority over premises." *See U.S. v. Perez,* 948 F.Supp. 1191 (S.D.N.Y.1996); *see also Anderson v. Decristofalo,* 494 F.2d 321 (2d Cir.1974); *Issa v. City of Glencoe,* 118 Fed. Appx. 103 (8th Cir.2004).

Here, the issue is whether Officer Rowlands had a reasonable good faith belief that Plaintiff was not on the property legally and was not there pursuant to a lease agreement and, therefore, Gardner had the authority to consent to a warrantless search of the mobile home. Plaintiff claims that because the Officers were allegedly called to the scene because of the pit bulls, and not for a landlord/tenant dispute, their belief that Plaintiff had no legal right to be in the mobile home was unreasonable. Plaintiff claims Houck was not at the scene and Defendants could not therefore rely on her statements in determining if Plaintiff was in the mobile home legally. Defendants Smith, Rowlands and Bill claim that once each had arrived on the scene they were advised by Gardner that Plaintiff and Houck had moved into the mobile home without having permission to do so. (Smith Aff. ¶ 12, Rowlands Aff. ¶ 3, Bill Aff. ¶ 3.) Defendant Bill claims Houck was at the scene and advised him that what Gardner had said was true and that no formal lease agreement had been made and no money had exchanged hands. (Bill Aff. ¶ 4.) Irrespective of why Defendants arrived at the scene,

according to their affidavits, it was clear that once they arrived they were dealing with a potential trespassing issue.

**\*6** Looking at the evidence in the light most favorable to Plaintiff, the Court will assume that Houck was not present. Similar to *Elliott* and *Decristofalo,* Gardner's statements to Defendant Bill could cause a reasonable officer to conclude that Plaintiff was not legally living in the property and that he was, as Defendant Bill concluded, either squatting or trespassing on the property. (Bill Aff. ¶ 5.) While Plaintiff claims he was objecting to the search and that he had a legal right to be there, Plaintiff also admitted to lying to Defendants about his true identity, for which he was charged with Criminal Impersonation in the Second Degree (N.Y.S PL § 145.00). (Smith Aff. ¶ 7, Garraway Aff. ¶ 12.) Plaintiff's continued conflicting answers to Defendants concerning his true identity gave them reasonable doubt as to his credibility in general. Therefore, this Court finds Defendant Rowlands' reliance on Gardner's representations that Plaintiff did not belong in the home, that there was not an oral lease agreement between she and Plaintiff, and that she was the true owner of the residence with authority to consent to a search thereon, was reasonable against Plaintiff's assertions. Based on the circumstances, Defendant Rowlands believed Gardner had authority to consent to the search and he searched the mobile home for information concerning Plaintiff's identity. While Plaintiff claims Smith took personal letters written by Plaintiff from the home as evidence of Plaintiff's true identity, Defendant Smith claims he never entered the mobile home. Looking at the evidence in the light most favorable to Plaintiff, and assuming that Defendant Smith searched the home as Plaintiff claims, Defendant Smith was privy to the same information that Defendant Rowlands relied on in searching the home. *See Morgan v. Superintendent,* 88 F.Supp.2d 312, 318 (S.D.N.Y.2000) ("[W]here law enforcement authorities are cooperating, the knowledge of one is presumed shared by all ..." and "[t]he determination of whether probable cause to [act] exists can be based on the collective knowledge of all the officers involved ...".). Therefore, even if Defendant Smith did search the home it was based on the reasonable belief that Gardner had authority to consent to the search.

Because entry into the mobile home by Defendants was valid upon either the actual or apparent authority to consent by Gardner, the Court finds a "good faith defense" is available to Defendants who may or may not have been deceived as to who held the true legal interest in the home. If Plaintiff never had a lease agreement with Gardner (oral or written)

or if Houck had an oral agreement with Dunn [2] but was not yet authorized to live there, then Gardner provided actual authority to consent to the search. Assuming there was an oral agreement between Houck and Dunn or between Plaintiff and Gardner, Defendants had reasonable grounds upon which to believe there was not a valid lease agreement and, therefore, that Gardner retained authority to consent to a search of the premises. Therefore, Plaintiff's claims of violations of his Fourth Amendment rights are dismissed.

[2]     There is no indication in the record that any agreement between Houck and Dunn contemplated Plaintiff living in the mobile home. Similarly, there is no evidence in the record that, assuming Houck was legally residing in the mobile home, she permitted Plaintiff to reside there.

### C. Due Process Rights

**\*7** Plaintiff next claims his Constitutional rights to equal protection and due process were violated when Defendants denied him the right to a legal eviction and the right to a fair trial and hearing before a judge to determine a civil dispute. (Pl. Complaint ¶ 5.) Plaintiff alleges Defendant Bill told him "he was kicking me and my family out of the residence at the request of the landlord and that if I ever returned he would personally arrest me." (Garraway Aff. ¶ 24.) Plaintiff claims Bill's threat of arrest was an act of illegal eviction, thereby denying him the right to a legal eviction by Gardner. Defendant Bill claims he never spoke with Plaintiff that day and that at no time did he threaten Plaintiff or Houck that they would be arrested if they did not leave. (Bill Aff. ¶ 6.) Bill claims that he believed Plaintiff and Houck were squatting or trespassing and, therefore, he advised Houck that she and Plaintiff were not there legally. Bill claims he advised Houck of the process by which she could contest Gardner's representations and told her how she could get an order by the town court to allow her to stay.

A wrongful eviction action can be brought against law enforcement officals who are accused of evicting tenants for the landlord. *See Collum v. Incorp. Village of Freeport,* 691 F.Supp. 637, 641 (E.D.N.Y.1998). The court held in *Collum* that "where an officer, without an eviction warrant, gives a tenant a choice between absenting himself from the premises and being arrested and the tenant chooses the former, a wrongful eviction has taken place. [However] ... a finding [that the officer] threatened arrest alone would be insufficient ... the jury would have to find that the threat forced plaintiff to choose between vacating the premises and being arrested." *Id.*

Here, the issue is whether Defendant Bill evicted Plaintiff. The answer is that he did not. Plaintiff was removed from the premises based on an arrest unrelated to his presence in the mobile home (i.e ., the warrant and criminal impersonation). [3] Taking the evidence in the light most favorable to Plaintiff, even if Defendant Bill did threaten to arrest Plaintiff if he was to return to the property, as discussed above, Defendants had a reasonable good faith belief that Plaintiff and Houck were not there legally and, therefore, were trespassing. Any remarks Defendant Bill may have made to Plaintiff or Houck in regards to arrest were warranted as he had a good faith belief that Plaintiff was engaged in the unlawful act of squatting or trespassing. In addition, in accordance with *Collum,* mere threats of arrest are insufficient to claim wrongful eviction. *Collum,* 691 F.Supp. 637. Bill had independent grounds upon which to arrest Plaintiff and remove him from the property. Therefore, Plaintiff's claim of a violation of his due process rights by an unlawful eviction of his family by Defendants is supported by insufficient evidence.

[3]     According to Plaintiff's version of the facts, Houck was not at the mobile home during the incident and she, therefore, would not have been subjected to removal or arrest. Even if Houck was present, as Defendants claim, Houck was not required to leave the home while the Defendants were there and was left at the home upon their departure. (Bill Aff. ¶ 7, Smith Aff. ¶ 13, Rowlands Aff. ¶ 3). In addition, there is insufficient evidence that Houck's ultimately left the mobile home as a direct result of any alleged threats of arrest made by Defendants.

### D. Qualified Immunity

**\*8** As a general rule, police officers are entitled to qualified immunity if their conduct "does not violate clearly established constitutional rights, or it was objectively reasonable for them to believe their acts did not violate those rights." *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994). Stated another way, officers are entitled to qualified immunity from liability for violating a plaintiff's civil rights unless it was "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groh v. Ramirez,* 540 U.S. 551, 563 (2004).

As discussed above, this Court finds it was objectively reasonable for Defendants to believe their actions were not in violation of Plaintiff's constitutional rights. The Court therefore finds Defendants are entitled to qualified immunity.

### G. *Municipality Liability*

Lastly, Plaintiff claims Broome County is liable for the alleged Constitutional violations by Defendants through its failure to properly train Defendants. Defendants argue Plaintiff has not shown a custom or policy adopted by the municipality which caused the alleged violations.

In § 1983 claims, municipalities may not be held responsible under a theory of *respondeat superior. Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397 (1997). To impose liability onto a municipality the plaintiff must identify a municipal "policy" or "custom" that caused plaintiff's injury. *Id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694 (1978)). An act performed pursuant to a "custom" may subject a municipality to liability on the theory that the practice is so widespread so as to have force of law. Brown, 520 U.S. at 404. One way to show a custom or policy has been adopted by the municipality is to prove the municipality failed to properly train defendants. In order to show failure to train by a municipality, the plaintiff must "identify a specific deficiency in the city's training program and establish that the deficiency caused a deprivation of his constitutional rights." *City of Canton, Ohio v. Harris,* 489 U.S. 378,

391 (1989). Here, Plaintiff claims, "Broome County Sheriff Department failed to train [Defendants]." (Pl. Mem. in Opp'n. to Def. Mot. Summ. J., 9). Plaintiff further claims "[a]nytime Defendant Bill is called to a similar civil dispute ... he will always threaten and illegally evict the tenant." *Id.* Plaintiff's conclusory allegations are insufficient to show specific deficiencies in the municipalities training program that resulted in the alleged violations of his rights. As a result, Plaintiff has failed to provide sufficient evidence to show an ongoing, widespread policy or custom of the municipality to violate citizens' Fourth and Fourteenth rights. Therefore, Plaintiff's claim against Broome County is dismissed.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's action is DISMISSED.

**\*9** IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2006 WL 931729

---

End of Document       © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 5795508
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael RESTO-OTERO, Plaintiff,

v.

Imam MOHAMMAD, Defendant.

Civil Action No. 9:17-CV-1115 (GLS/DEP)

|

Signed 10/03/2018

**Attorneys and Law Firms**

FOR PLAINTIFF: MICHAEL RESTO-OTERO, Pro Se, 10-B-1849, Auburn Correctional Facility, P.O. Box 618, Auburn, NY 13021.

FOR DEFENDANTS: HON. BARBARA D. UNDERWOOD, New York State Attorney General, OF COUNSEL: DAVID A. ROSENBERG, ESQ., Assistant Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** *Pro se* plaintiff Michael Resto-Otero, a New York State prison inmate, has commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against defendant Imam Mohammad, an individual purportedly responsible for ensuring the distribution of religiously-appropriate meals at the prison facility in which plaintiff was confined at the relevant times. Plaintiff alleges that his First Amendment right to freely exercise his chosen religion was violated by defendant's failure to arrange for him to receive appropriate meals during Ramadan.

Currently pending before the court is a motion brought by defendant in which he seeks dismissal of plaintiff's complaint, based both on lack of personal involvement and plaintiff's apparent failure to truly exhaust his available administrative remedies before filing suit. For the reasons set forth below, I recommend that defendant's motion be denied.

I. BACKGROUND [1]

[1] In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). Portions of the background have also been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); *accord, Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Plaintiff is currently an inmate being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1; *see also* Dkt. No. 1-1 at 1. Although he is now incarcerated at another DOCCS prison facility, at the times relevant to his claim he was confined to the Clinton Correctional Facility ("Clinton C.F."), located in Dannemora, New York. Dkt. No. 1 at 4. Plaintiff is a Muslim, having converted from the Protestant faith in 2015, and as such observes the holy month of Ramadan. [2] *See generally id.*

[2] During Ramadan, "observant Muslims fast from sun up to sun down." *See Ford v. McGinnis*, 352 F.3d 582, 585 (2d Cir. 2003) (discussing the general aspects of Ramadan and some of the accommodations made by DOCCS for Muslim inmates).

Plaintiff was transferred into the Clinton C.F. on June 1, 2017, Dkt. No. 1 at 4. Upon arriving there, he inquired of an unidentified corrections officer concerning the status of his Ramadan meals. *Id.* In response, the officer stated that he had no knowledge regarding the meals. *Id.*

According to plaintiff, he then wrote to defendant Mohammad, an Imam, inquiring whether Ramadan meals could be delivered to his cell. Dkt. No. 1 at 4. In response to that inquiry, defendant indicated that only inmates assigned to keeplock status [3] are entitled to receive "feedup"—that is, eligible to have meals delivered directly to their cells. *Id.* at 4-5.

3     " 'Keeplock' is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. Lefevre*, 891 F.2d 38, 39 (2d Cir. 1989); *see also* 7 N.Y.C.R.R. § 301.6

**\*2** Approximately one week later, plaintiff was moved into keeplock status. Dkt. No. 1 at 5. When plaintiff inquired of another unidentified corrections officer about that status of his Ramadan meals, "nobody did nothing" and he did not receive his religious meals. *Id.* In total, plaintiff missed twenty-five religious meals during Ramadan. *See generally* Dkt. Nos 1, 1-1.

Plaintiff alleges that on June 5, June 12, and June 17, 2017, he authored grievances regarding the failure of prison officials to honor his request for Ramadan meals, but received no response to those complaints. Dkt. No. 1 at 5; *see also* Dkt. No. 1-1 at 2-4. In addition, plaintiff alleges that he wrote to the facility's Inmate Grievance Resolution Committee ("IGRC") and to the facility's superintendent regarding the issue and, as of the date of his complaint, was "still w[aiting] for [a] respon[se]." Dkt. No. 1; *see also* Dkt. No. 1-1 at 5. Although this allegation is absent from plaintiff's complaint, in opposition to defendant's motion to dismiss plaintiff alleges that he could not have exhausted his administrative remedies because corrections officers obstructed his ability to mail his grievances. 4 Dkt. No. 24.

4      Plaintiff's opposition papers are properly considered in connection with defendant's motion to dismiss only to the extent that they are consistent with the allegations in his complaint. *See, e.g. Planck v. Schenectady Cnty.*, No. 12-CV-0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.) (citing cases).

As a result of defendant's actions, plaintiff was left mentally and emotionally devastated. Dkt. No. 1 at 5. As relief, plaintiff seeks an award of damages in the amount of $150,000. *Id.* at 6.

## II. PROCEDURAL HISTORY
Plaintiff commenced this action on October 6, 2017, by the filing of a complaint accompanied by an application for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Upon initial review, by decision and order dated December 21, 2017, Senior District Court Judge Gary L. Sharpe granted plaintiff IFP status and limited his claims to a free exercise cause of action under the First Amendment against defendant, dismissing various other claims set forth in plaintiff's complaint. 5 Dkt. No.12.

5      Plaintiff's complaint in this action originally named "Imam Elma" as defendant. Dkt. No. 1. Defendant's name has since been corrected on the docket to "Imam Mohammad." Dkt. No. 15. The court notes that the term "imam" refers to "a Muslim spiritual leader, analogous to a priest or rabbi." *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 133 (S.D.N.Y. 2002).

On March 29, 2018, in lieu of answering, defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff failed to plausibly allege Imam Mohammad's personal involvement in the constitutional violation asserted. Dkt. Nos. 21, 25. As an alternative basis for dismissal, defendant argues that plaintiff failed to exhaust his administrative remedies prior to bringing suit. *Id.* Plaintiff has opposed the motion. Dkt. No. 24. Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard Governing Motions to Dismiss
**\*3** A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 555). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a) (2) ). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300

(2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted) ); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted) ); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

**B. Personal Involvement**

Plaintiff's surviving claim is against defendant Imam Mohammad, whose position with the DOCCS is not made entirely clear from either plaintiff's complaint or the parties' motion papers. In his motion, defendant argues that plaintiff has failed to allege facts plausibly suggesting his personal involvement in the conduct giving rise to his First Amendment claim. Dkt. Nos. 21, 25. In opposition, plaintiff contends that to the best of his knowledge, defendant was "a general supervisor of [plaintiff's] religious [beliefs]" and because defendant was not "supervising the right way," it caused him to miss his religious meals during Ramadan while he was housed at the Clinton C.F. Dkt. No. 24.

1. Personal Involvement Generally

**\*4** "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) ). As the Supreme Court has noted, a defendant may only be held accountable for his own actions under section 1983. *See Ashcroft* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at \*3 (S.D.N.Y. Jan. 24, 1994).[6]

6    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

In opposition to defendant's motion, plaintiff intimates that defendant should be held accountable because of his role as "a general supervisor" in connection with plaintiff's chosen religion. Dkt. No. 24. It is well-established that a defendant cannot be liable under section 1983 solely by virtue of being a supervisor, " 'and [liability] cannot rest on respondeat superior.' " *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.[7]

7    Subsequent to issuance of the Second Circuit's decision in *Colon*, the Supreme Court addressed the question of supervisory liability in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although the issue has been discussed, the Second Circuit has declined to squarely address the impact of *Iqbal* upon the categories of supervisory liability addressed in *Colon*. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation omitted) ); *see also Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit without the continuing vitality of the supervisory liability test set forth in [*Colon*,] ... but the fate of *Colon* is not properly before us[.]").

## 2. Analysis

In this case, plaintiff alleges that during Ramadan, a holy month in the Islam religion when observant Muslims fast between sunrise and sunset, he was not provided with twenty-five, religiously-appropriate meals. Dkt. No. 1; *see generally Ford*, 352 F.3d at 585. According to plaintiff, defendant was "indifferent" and failed to "do [his] job[,]" which consisted of "call[ing] and communicat[ing] to check how many are in the list and the[ir] location so they can provide [the inmates] with [our] religious meals[.]" Dkt. No. 1 at 6 (all errors in original); *see also* Dkt. No. 24 at 2. In addition, defendant "failed to [direct] his time to [reassure] that [plaintiff] was fest [sic] and have [his] [religious] meals." Dkt. No. 1 at 6. As a result, plaintiff was deprived of his ability to learn about and practice his religion. *See generally* Dkt. Nos. 1, 1-1.

**\*5** After plaintiff inquired about his meals with an unidentified corrections officer, plaintiff wrote to defendant to see if defendant could "send [him] the [Ramadan] meal" and "explain the situation[.]" Dkt. No. 1 at 4. Defendant responded that only inmates that are housed in keeplock were eligible to have Ramadan meals delivered directly to their cells. *Id.* at 4-5; *but see* Dkt No. 1-1 at 2 (noting that plaintiff was keeplock). Although plaintiff was apparently moved to keeplock the following week—and would have been eligible for "feedup" pursuant to defendant's prior correspondence—he was still not provided with the appropriate meals. Dkt. No. 1 at 5.

When I construe plaintiff's complaint liberally, as I must, I conclude, that his allegations support a plausible inference that defendant was personally involved in the failure to provide plaintiff with religiously-appropriate meals. *See generally* Dkt No. 1. Plaintiff does not merely allege that defendant rejected his complaint regarding the meals; rather, he alleges that defendant had direct oversight of the distribution of religious meals at the Clinton C.F. *See, e.g.*, *McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004) ("Although it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of, ... [the defendant] was properly retained in the lawsuit at this stage, not simply because he rejected the grievance, but because he is alleged [to oversee the prison program].")

In his initial decision and order, dated December 21, 2017, Senior District Judge Sharpe considered, *inter alia*, whether pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), plaintiff failed to state a claim upon which relief may be granted. *See generally id.* Although Judge Sharpe dismissed many of plaintiff's claims, he concluded the following with respect to defendant's personal involvement:

> Here, plaintiff has alleged that he wrote to Imam [Mohammad] after arriving at Clinton C.F. to ask if [Mohammad] could "send [plaintiff] the meal" and was told by [Mohammad] 'that keep block [sic] are the only ones that get feed up.' [Dkt No. 1 at 4-5]. Plaintiff further alleges that he was transferred to keeplock one week after receiving a response from [Mohammad], and thereafter continued to not receive his religious meals. *Id.* at 5. In addition, plaintiff alleges that it was [Mohammad's] job to 'reasure [sic] that [plaintiff] was fest [sic] and have [his] religins [sic] meals.' *Id.* at 6. Liberally construed, these alleged facts plausibly suggest that [Mohammad] was personally involved in depriving plaintiff access to religious meals.

Dkt. No. 12 (footnote omitted). Accordingly, Senior District Judge Sharpe previously declined to dismiss plaintiff's free exercise claim under the First Amendment for the failure to state a claim upon which relief may be granted. *See generally id.* As several courts have recognized, a court effectively evaluates whether a complaint "fails to state a claim upon which relief may be granted" on initial review under the same standard that governs in the case of a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See e.g.*, *Manon v. Hall*, No. 3:14-CV-1510, 2015 WL 8081945, at \*3 (D. Ct. Dec. 7, 2015); *Preston*

*v. New York*, 223 F. Supp. 2d 452, 462 (S.D.N.Y. 2002); *Olmos v. Ryan*, No. 10-CV-2564, 2013 WL 394879, at *4 (D. Ariz. Jan. 31, 2013) ("The First Amended Complaint has already been screened pursuant to 28 U.S.C. § 1915, which uses the same standard as Federal Rule of Civil procedure 12(b)(6) .... Defendants do not cite sufficient grounds to reconsider." (internal citation omitted) ). I perceive no basis at this early juncture to recommend disturbing the court's prior decision regarding this issue. The question of whether defendant was personally involved in the constitutional violation alleged by plaintiff is better suited for resolution on a motion for summary judgment, or at trial, based upon a fully developed record. Accordingly, I recommend that defendant's motion to dismiss on this ground be denied.

### C. Exhaustion of Remedies

**\*6** As an alternative basis for dismissal of plaintiff's complaint, defendant argues that plaintiff's free exercise claim is barred by virtue of his failure to exhaust available administrative remedies. Dkt. No. 21-1 at 8-12. In opposition to defendant's motion, plaintiff contends that administrative remedies are unavailable to him. Dkt. No. 24 at 1.

### 1. Exhaustion Generally

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires

a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). [8]

> [8]
>
> While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir 2004) (emphasis omitted) ).

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[9] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

> [9]
>
> The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

**\*7** A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[10] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

> [10]
>
> Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted) ).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted) ). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[11] *Ross,*

136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

11    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

**\*8** Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies, the complaint may be dismissed for failure to state a cognizable claim. *Id.* at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at \*3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure).

### 2. Analysis

In this case, plaintiff has plausibly alleged that the grievance procedure was effectively unavailable to him. Specifically, plaintiff contends that he filed four "different grievance[s] and [he did not] receive a response." Dkt. No. 24 at 1. Plaintiff alleges that he was in keeplock "and arguing with the officers," who were refusing to process his outgoing mail, including the grievances regarding his religious meals. *Id.* at 1. As a result, plaintiff claims that he "could not exhaust his administrative remedies." *Id.*

Notably, the Second Circuit recently observed that the regulations outlining the IGP process "only contemplate appeals of grievances that were actually filed[,]" *Williams*, 829 F. 3d at 124 (citing 7 N.Y.C.R.R. § 701.8(f), (g) ), and

"give no guidance whatsoever to an inmate whose grievance was never filed." *Williams*, 829 F. 3d at 124; *see also id.* at 126 ("In sum, the regulations plainly do not describe a mechanism for appealing a grievance that was never filed"). As a result, in *Williams* the Second Circuit concluded that "the grievance procedures that were technically available to [the plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.' " *Id.* at 126 (quoting *Ross*, 136 S. Ct. at 1859); *see also Woodward v. Lytle*, No. 9:16-CV-1174, 2018 WL 4643036, at *2 (N.D.N.Y. Sept. 27, 2018).

Given the circumstances of this case and the fact that the case is in its formative stage, I conclude that the issue of exhaustion is also more appropriately resolved based upon a more robust record. Accordingly, I recommend that defendant's motion to dismiss be denied.

## IV. SUMMARY AND RECOMMENDATION

When plaintiff's complaint is construed liberally, it states a cognizable First Amendment free exercise claim and sufficiently implicates defendant's involvement in the violation. Turning to the issue of exhaustion, I find that the court is not currently positioned to determine whether the IGP was available to plaintiff at the relevant times, or whether instead, by their actions corrections officers effectively precluded plaintiff from availing himself of the grievance procedure, in which case the PLRA's exhaustion

requirement would be excused. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss (Dkt. No. 21) be DENIED.

**\*9** NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[12] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[12]   If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2018 WL 5795508

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1977972
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason S. PLANCK, Plaintiff,

v.

SCHENECTADY COUNTY, et al., Defendants.

No. 1:12–CV–0336(GTS/DRH).
|
June 1, 2012.

**Attorneys and Law Firms**

Jason S. Planck, of Counsel, Schenectady, NY, pro se.

Goldberg Segalla LLP, Jonathan M. Bernstein, Esq., William J. Greagan, Esq., of Counsel, Albany, NY, for Defendants.

*MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently pending before the Court, in this *pro se* civil rights action filed by Jason S. Planck ("Plaintiff") against Schenectady County and fifteen of its legislators ("Defendants"), are the following four motions: (1) Plaintiff's motion for reconsideration of the Court's Decision and Order of February 29, 2012, denying his motion for a temporary restraining order (Dkt. No. 10); (2) Plaintiff's motion for a report from the Court regarding the status of his motion for reconsideration (Dkt. No. 30); (3) Plaintiff's motion for a preliminary injunction (Dkt. No. 4); and (4) Defendants' cross-motion to dismiss Plaintiffs' Complaint (Dkt. No. 17). For the reasons set forth below, Plaintiffs' three motions are denied; and Defendants' cross-motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Claims**

Generally, when construed with the utmost of special liberality, Plaintiff's Complaint asserts three civil rights claims against Defendants-one claim asserting a violation of Rehabilitation Act of 1973, and two claims asserting violations of the Americans with Disabilities Act-arising from Schenectady County's ("the County") approval of a project labor agreement (to construct a new nursing home) that permits the hiring of only unionized construction workers, thus discriminating against qualified nonunionized construction workers with disabilities. (*See generally* Dkt. No. 1.) Because this Decision and Order is intended primarily for the review of the parties, and because Defendants (in their memorandum of law) accurately describe the claims and factual allegations asserted in Plaintiff's Complaint, the Court will not describe those claims and factual allegations in detail in this Decision and Order. Rather, the Court will refer the reader to pages 1 through 3 of Defendants' memorandum of law, and paragraphs 2 through 4, and 7 through 44, of Plaintiff's Complaint. (Dkt. No. 17, Attach. 11, at 6–8 [attaching pages "1" through "3" of Defs.' Memo. of Law]; Dkt. No. 1, at ¶¶ 2–4, 7–44.)

**B. Briefing on the Parties' Motions**

Because the parties have demonstrated in their memoranda of law an adequate understanding of the legal arguments asserted in each other's motions, the Court need not, and does not, describe in detail those arguments in this Decision and Order. Rather, the Court will simply make two points.

First, generally, in their cross-motion to dismiss, Defendants assert the following three arguments: (1) Plaintiff's Complaint should be dismissed under Fed.R.Civ.P. 12(b)(1), because (a) the Court lacks subject-matter jurisdiction over Plaintiff's challenge to the County's project labor agreement (which must be presented by Plaintiff in an Article 78 proceeding in state court), and (b) Plaintiff, who is not a qualified construction worker but merely a taxpayer, lacks standing to challenge the County's approval of the project labor agreement; (2) in the alternative, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), because Plaintiff has failed to allege facts plausibly suggesting the elements of a claim under either Rehabilitation Act of 1973 or the Americans with Disabilities Act (particularly the element requiring that he be a *qualified* individual with a disability); and (3) in the alternative, Plaintiff's claims against the legislative Defendants should be dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), because, based on Plaintiff's own factual allegations, those claims are either duplicative of Plaintiff's claims against the County or barred as a matter of law by the doctrine of legislative immunity. (Dkt. No. 17, Attach. 11, at 8–22 [attaching pages "3" through "17" of Defs.' Memo. of Law].)

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 1

**\*2** Second, in this District, when a party files a dispositive motion (such as a motion for a preliminary injunction), [1] that party is not entitled to file a surreply. N.D.N.Y. L.R. 7.1(b)(1). Furthermore, when a party files a nondispositive motion (such as a motion for reconsideration), that party is not even entitled to file a reply, without prior leave of the Court. N.D.N.Y. L.R. 7.1(b)(2). Finally, when a party files a cross-motion (such as a cross-motion to dismiss), that party is not entitled to file a reply on its cross-motion without prior leave of the Court. N.D.N.Y. L.R. 7.1(c). Even if it were permitted to file a reply, that reply may address only the party's own cross-motion, and not the opponent's original motion; otherwise, the "reply" would, in part, constitute a surreply. [2] Here, the parties have violated each of these rules, in addition to violating several filing deadlines. (Dkt. Nos. 23, 25, 31, 32; *see also* Text Notices filed March 9, 2012, and Apr. 2, 2012.) [3] As a result, the submissions contained in Docket Numbers 23, 25, 31 and 32 will not be considered by the Court. The Court would add only that, even if it were to consider the submissions, that consideration would not change the outcome of this Decision and Order.

[1]   See *Odom v. Senkowski,* 96–CV–0554, 1997 WL 458450, at *1 (N . D.N.Y. Aug. 7, 1997) (Pooler, D.J.) ("Because Odom's request for a preliminary injunction is a dispositive motion, the magistrate judge's recommendations require de novo review.").

[2]   See *Carlwood Dev. Inc. v. U.S.,* 10–CV–1773, 2011 WL 69374, at *1 (D.Nev. Jan. 10, 2011) (denying petitioner's motion to strike government's improper "cross-motion"—which did not "address[ ] any matters even remotely indicative of a motion for summary judgment" but rather merely responded to the matters raised by the petitioners in their opening brief-because "rather than striking any portion of the ['cross-motion'] itself, the Court will merely construe [it] as only a response to the [petitioner's] opening brief, and not a cross-motion," and strike the government's unauthorized reply on its improper cross-motion as "nothing more than a disingenuous attempt to get the last word").

[3]   The Court notes that, on February 28, 2012, Plaintiff receive a courtesy copy of the Local Rules of Practice for this Court. (*See* Docket Entry dated Feb. 28, 2012; Dkt. No. 9.)

## II. ANALYSIS

### A. Motion for Reconsideration

Generally, there are only three grounds upon which a district court may justifiably reconsider its previous ruling: (1) an intervening change in controlling law, (2) new evidence, or (3) a demonstrated need to correct a clear error of law or to prevent manifest injustice. *U.S. v. Sanchez,* 35 F.3d 673, 677 (2d Cir.1994), *cert. denied,* 514, U.S. 1038 (1995).

Here, after carefully considering the matter, Plaintiff's motion for reconsideration is denied for each of the numerous reasons offered by Defendants in their memorandum of law: Plaintiff has not satisfied the above-described standard. (Dkt. No. 17, Attach. 11, at 15–18 [attaching pages "10" through "13" of Defs.' Memo. of Law].)

The Court would add two alternative grounds for the denial of Plaintiff's motion. First, Plaintiff's motion is unsupported by a memorandum of law that is separate and apart from an affidavit, in violation of Local Rule 7.1. The Court notes that an affidavit may not contain legal argument. N.D.N.Y. L.R. 7.1(a)(2). Second, Plaintiff's motion is moot in that it seeks an order restraining Defendants from acting between a discrete time period (i.e., the time of the Court's decision on Plaintiff's motion a temporary restraining order and the time of the Court's decision on Plaintiff's motion for a preliminary injunction), which has, as of the date of this Decision and Order, already expired.

Finally, the Court notes that Plaintiff's motion for reconsideration also requested oral argument, and/or an expedited decision, on Plaintiff's motion for reconsideration. That request is denied as unsupported by a showing of cause and/or moot.

### B. Motion for a Status Report from the Court

**\*3** After carefully considering the matter, Plaintiff's motion for a status report from the Court is denied as unsupported by a showing of cause and/or moot.

### C. Motion for a Preliminary Injunction

Generally, the issuance of a preliminary injunction pursuant to Fed.R.Civ.P. 65 depends on the movant's demonstration of (1) irreparable harm and (2) either a likelihood of success on the merits, or a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33 (2d Cir.1995).

Here, after carefully considering the matter, Plaintiff's motion for a preliminary injunction is denied for each of the numerous reasons offered by Defendants in their memorandum of law: Plaintiff has not satisfied the above-described standard: on the current record, Plaintiff has not established either irreparable harm or a likelihood of success on the merits. (Dkt. No. 17, Attach. 11, at 18–22 [attaching pages "13" through "17" of Defs.' Memo. of Law] .) Of particular concern to the Court is this latter deficiency (i.e., Plaintiff's failure to show a likelihood of success on the merits), which is exacerbated by the various substantive pleading defects in his Complaint. The Court would add only that, even setting aside these pleading defects, following the Court's denial of Plaintiff's motion for a temporary restraining order, Plaintiff did not supplement the record with the sufficient evidence to warrant a contrary finding. (*Compare* Dkt. No. 1 *and* Dkt. No. 4 *with* Dkt. No. 10 *and* Dkt. No. 22.)

**D. Defendants' Cross–Motion to Dismiss**

**1. Legal Standard Governing Dismissal for Lack of Subject–Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1)**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova,* 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 [2d Cir.1996] ). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005) (citing *Makarova,* 201 F .3d at 113).

The Court notes that challenges to a litigant's standing are properly raised on a motion for lack of subject-matter jurisdiction. *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88–89 & n. 6 (2d Cir.2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), ... the proper procedural route is a motion under

Rule 12(b)(1)."); *A.C. v. Mattingly,* 05–CV–2986, 2007 WL 894268, at *3 (S.D.N.Y. March 20, 2007) ("The argument of lack of standing is properly raised under Rule 12(b)(1).").

**2. Legal Standard Governing Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted, Pursuant to Fed.R.Civ.P. 12(b)(6)**

**\*4** It has long been understood that a dismissal for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted]. [4]

> [4] *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213,

n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949–52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id* . at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted]. [5]

[5]    *See also* *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ).

**\*5** As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [6] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]"

in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. [7]

[6]    *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215–16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

[7]    For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatitis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199–2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatitis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01–CV–0648, 2004 WL 2026481, at \*6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02–CV–1182, 2004 WL 526740, at \*10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01–CV–6571, 2002 WL 338375, at \*6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99–CV–3208, 2000 WL 760751, at \*9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

2012 WL 1977972

In reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), [8] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [9] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [10] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].

[8]    *Sealed Plaintif v. Sealed Defendant # 1,* No. 06–1590, 2008 WL 3294864, at \*5 (2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

[9]    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

[10]    *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord, Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983); *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing

to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [11] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint-to the extent those papers are consistent with the allegations in the complaint. [12]

[11]    *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L–7 Designs, Inc. v. Old Navy, LLC,* No. 10–573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.R.Civ.P. 12[d] if the "matters outside the pleadings" consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of

2012 WL 1977972

fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

12     *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n. 1 (2d Cir.1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) ( "In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where *a pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004) (Hurd, J.).

### 3. Analysis

**\*6** After carefully considering the matter, and applying the above-described legal standard, Plaintiff's motion for a preliminary injunction is denied for each of the three alternative reasons offered by Defendants in their memorandum of law. *See, supra,* Part I.B. of this Decision and Order (summarizing those reasons).

The Court would add only two points. First, although Plaintiff attaches 97 pages of exhibits in his opposition to Defendants' motion to dismiss for failure to state a claim, and a 23–page memorandum of law, the Court either (1) does not

construe the allegations in those documents as consistent with the allegations in Plaintiff's Complaint or (2) finds the allegations in those documents to be insufficient to rescue the pleading defects contained in Plaintiff's claims. Second, although Plaintiff appears to now largely hinge his claims on *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999), and/or Fed.R.Civ.P. 23, the Court finds that reliance to be misplaced. (Dkt. No. 22, Attach. 1, at 4–8 .)

### 4. Whether Dismissal Should Be With or Without Prejudice

Generally, when a district court dismisses a *pro se* action *sua sponte,* the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. 13

13     *Shuler v. Brown,* 07–CV–0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report–Recommendation by Lowe, M.J.) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer,* 07–CV–1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report–Recommendation by Lowe, M.J.); *Abascal v. Hilton,* 04–CV–1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 130 2008) (Kahn, J., adopting, on de novo review, Report–Recommendation by Lowe, M.J.); *see also Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted). 14 This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355 at * 1.

**14**    *Accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ( "[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

Here, the Court finds that the pleading deficiency in Plaintiff's claims are substantive and not merely formal. As an initial matter, lack of subject-matter jurisdiction is generally viewed as a substantive defect. [15] Even if the Court did possess subject-matter jurisdiction over Plaintiff's claims, the pleading defects in those detailed claims still appear substantive. For example, it does not appear to the Court that granting Plaintiff leave to amend his claims would likely be productive. Setting aside the fact that he has failed to correct those defects despite having had months in which to do so, the fact remains that he appears to insist on asserting nonactionable claims, rendering any amendment futile. (*See generally* Dkt. No. 22, Attach. 1.) As a result, the Court declines to afford Plaintiff an opportunity to amend his Complaint prior to dismissal.

**15**    *See U.S. ex rel. Phipps v. Comprehensive Comty. Dev. Corp.,* 152 F.Supp.2d 443, 455 (S.D.N.Y.2001) ("[I]t is not appropriate to grant Phipps's request [for leave to amend the Complaint] because the Court has determined that it does not have subject matter jurisdiction over this action."); *Chan v. Reno,* 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. As will be discussed herein, [the proposed amended complaint] ... presents a non-justiciable claim and fails to present this Court with subject matter

jurisdiction. Therefore, because [the proposed amended complaint] would be subject to a successful motion to dismiss ..., amendment would be futile.").

However, because Defendants argued persuasively that Plaintiff should have presented his challenge to the County's project labor agreement in an Article 78 proceeding in state court, the Court dismisses Plaintiff's claims against the County without prejudice to refiling in state court within thirty (30) days of this Decision and Order. [16]

**16**    The Court notes that, in addition, it expresses no opinion as to the merits of any claim, arising in the future, that Plaintiff may or may not bring pursuant to *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999).

**\*7**    **ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for reconsideration of the Court's Decision and Order of February 29, 2012, denying his motion for a temporary restraining order (Dkt. No. 10) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for a report from the Court regarding the status of his motion for reconsideration (Dkt. No. 30) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 4) is **DENIED;** and it is further

**ORDERED** that Defendants' cross-motion to dismiss Plaintiffs' Complaint (Dkt. No. 17) is **GRANTED;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** **with prejudice EXCEPT** for his claims against Schenectady County, which are **DISMISSED** **without prejudice** to refiling in state court within **THIRTY (30) DAYS** of this Decision and Order.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from this Decision and Order would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1977972

---

    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.