UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEREK A. HEYLIGER,

                              Plaintiff,

v.                                                    9:18-CV-336
                                                      (TJM/TWD)

KARIN WEST, TOM FORBES,

                              Defendants.
_____

APPEARANCES:                          OF COUNSEL:

DEREK A. HEYLIGER
Plaintiff, *pro se*
12-B-0269
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

HON. LETITIA JAMES                    KASEY K. HILDONEN
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

Derek A. Heyliger ("Plaintiff"), an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se*

action pursuant to 42 U.S.C. § 1983, asserting his constitutional rights were violated at Great

Meadow Correctional Facility ("Great Meadow C.F.").  (Dkt. No. 7.)  The Honorable Thomas J.

McAvoy, Senior United States District Judge, reviewed the original and amended complaint in

accordance with 28 U.S.C. § 1915, and found the following claims against Karin West and Tom Forbes (collectively "Defendants") required a response: "(1) [P]laintiff's denial of access to the courts claim; (2) [P]laintiff's claim for interference with the free flow of legal mail; and (3) [P]laintiff's gross negligence claim based on the alleged interference with his legal mail." (Dkt. No. 8 at 4.)

Thereafter, Defendants moved to dismiss Plaintiff's claims. In their motion, Defendants argued Plaintiff failed to exhaust his administrative remedies and his claims were meritless in any event. (Dkt. No. 15.) Judge McAvoy granted Defendants' motion with respect to Plaintiff's gross negligence claim but denied it in all other respects. (Dkt. No. 23.)

Now, at the close of discovery, Defendants move for summary judgment. (Dkt. No. 56.) In so doing, they largely reiterate their arguments with respect to exhaustion. Specifically, Defendants argue the operative grievance in this case did not put DOCCS on notice of the relevant claims. (Dkt. No. 56-5 at 12-13.) Defendants also argue Plaintiff failed to exhaust his administrative remedies because he filed this action before receiving a response from the Central Office Review Committee ("CORC"). *Id.* at 13-18. Inexplicably, Defendants did not file an accompanying Statement of Material Facts and instead rely upon a declaration attaching certain exhibits. (Dkt. No. 56.) Plaintiff responded, pointing out the recent Second Circuit case *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020), forecloses most of Defendants arguments. (Dkt. No. 60.) For the reasons that follow, the Court recommends denying Defendants' motion.

## II.    FAILURE TO COMPLY WITH THE LOCAL RULES

Local Rule 56.1(a) requires a party moving for summary judgment to file and serve a Statement of Material Facts. *See* L.R. 56.1(a) ("[a]ny motion for summary judgment *shall* contain a separate Statement of Material Facts." (emphasis added)). "The Statement of Material

Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." *Id*. "Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." *Id*. (emphasis in the original).

The Local Rules are not "empty formalities," and courts within this District have routinely denied a party's motion for summary judgment based on their failure to file a Statement of Material Facts. *See Jackson v. Broome Cty. Corr. Facility*, 194 F.R.D. 436, 437 (N.D.N.Y. 2000) (denying the defendant's motion for summary judgment for failure to comply with the Local Rules); *Monroe v. Critelli*, No. 9:05-CV-1590 (FJS/GHL), 2008 WL 508748, at *2-3 (N.D.N.Y. Feb. 21, 2008) (same); *Kele v. Middaugh*, No. 9:04-CV-0377 (TJM/GHL), 2006 WL 1313348, at *2 (N.D.N.Y. May 12, 2006) (same); *see also Lore v. City of Syracuse*, No. 5:00-CV-1833, 2007 WL 655628, at *1 (N.D.N.Y. Feb. 26, 2007) (internal quotation marks and citation omitted) (noting that the Statement of Material Facts "inform[s] the court of the evidence and arguments in an organized way—thus facilitating its judgment of the necessity for a trial."); *Riley v. Town of Bethlehem*, 5 F. Supp. 2d 92, 93 (N.D.N.Y. 1998) ("[t]he failure of a moving party to file a properly supported Local Rule 7.1 Statement of Material Facts is fatal to a summary judgment motion).

Here, Defendants failed to support their motion for summary judgment with an accompanying Statement of Material Facts.  (Dkt. No. 56.)  Though, in some circumstances, Courts have overlooked such a glaring mistake, those cases have all involved a *pro se* litigant's motion.  *See, e.g.*, *Fox v. Lee*, No. 915CV0390TJMCFH, 2018 WL 1211111, at *8 (N.D.N.Y. Feb. 5, 2018), *report and recommendation adopted*, No. 915CV390TJMCFH, 2018 WL 1185237 (N.D.N.Y. Mar. 6, 2018); *Bulter v. Hyde*, No. 9:08-CV-0299 (LEK/GHL), 2009 WL

3164753, at *3 (N.D.N.Y. Sept. 29, 2009) (declining to recommend dismissal of the pro se

plaintiff's Motion for Summary Judgment due to the plaintiff's failure to file an "accurate and

complete" Statement of Material Facts).  The New York State Attorney General's Office

represents Defendants in this matter and there is no reason—given that office's significant

experience in federal litigation—to disregard such an error without consequences.  Accordingly,

the Court recommends denying Defendants' motion.[1]

## III.    CONCLUSION

For the reasons stated above, the Court recommends denying Defendants' motion for

summary judgment.

**ACCORDINGLY**, it is hereby

---

[1] The Court further finds that Defendants' motion is meritless.  First, Defendants' argument
regarding the content of the grievance is specious as that grievance specifically mentions
Plaintiff's difficulties with the facilitiy's mail.  (Dkt. No. 56-3 at 24.)  Indeed, the investigatory
documents related to that grievance show DOCCS' personnel treated the grievance as Plaintiff
complaining about "staff destroy[ing] his mail . . . ."  *Id*. at 30; *id*. at 31 (D. Beebe's memo
addressing Grievance GM# 61637-17 and stating he did not "tamper with [Plaintiff's] mail").
CORC's final review, on June 20, 2018, labeled the grievance "Mail Tampering" and
specifically considered that "Sgt. B" denied "tampering with or confiscating the grievant's mail."
*Id*. at 32.  Accordingly, the Court finds Plaintiff's grievance put DOCCS on notice of the
relevant issues.

With respect to Defendants' second argument, much of the case law relied upon has been
squarely overruled.  To that end, as Plaintiff pointed out, the Second Circuit recently held that
"an inmate exhausts administrative remedies when he follows the procedure in its entirety but the
CORC fails to respond within the 30 days it is allocated under the regulations."  *Hayes*, 976 F.3d
at 270.  Defendants did not attempt to distinguish this case or even mention it in their
memorandum of law.  Given the state of the law, Defendants' argument that Plaintiff failed to
exhaust his administrative remedies because he sued before receiving a decision from CORC is
without merit.

In sum, had the Court considered the merits of Defendants' motion for summary
judgment, it would still recommend that it be denied.

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 56), be **DENIED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[2]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: November 1, 2021
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[2]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2008 WL 508748
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jamel MONROE, Plaintiff,

v.

Steven CRITELLI, Correctional Officer, Mid-
State C.F.; Brian Lockwood, Correctional
Officer, Mid-State, C.F.; Theresa Virkler, IGP
Supervisor, Mid-State C.F.; and Jane Doe,
Mail Room Clerk, Mid-State C.F., Defendants.

No. 9:05-CV-1590 (FJS/GHL).
|
Feb. 21, 2008.

**Attorneys and Law Firms**

Jamel Monroe, c/o Derrick James, Far Rockaway, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Senta B. Siuda, Assistant Attorney General, of Counsel, Syracuse, NY.

**DECISION AND ORDER**

FREDERICK J. SCULLIN, JR., Senior District Judge.

 **\*1** Presently before the Court is Magistrate Judge George H. Lowe's January 28, 2008 Report-Recommendation in which he recommends that the Court deny Plaintiff's motion for summary judgment; grant Defendants Critelli, Lockwood and Virkler's cross-motion for summary judgement and dismiss Plaintiff's complaint in its entirety. The Court having reviewed the Report-Recommendation and the entire file in this matter and Plaintiff having filed no objections to said Report-Recommendation, the Court hereby

**ORDERS** that the Report-Recommendation filed by Magistrate Judge George H. Lowe on January 28, 2008, is, for the reasons stated therein, **ACCEPTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment is **DENIED;** and the Court further

**ORDERS** that Defendants Critelli, Lockwood and Virkler's cross-motion for summary judgement is **GRANTED;** and the Court further

**ORDERS** that any of Plaintiff's claims against the three Defendants that are not the subject of their motion for summary judgment are **DISMISSED** pursuant to 28 U.S.C. § 1915A(e)(2)(ii) and/or 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and the Court further

**ORDERS** that Plaintiff's claims against Jane Doe are **DISMISSED** with prejudice due to Plaintiff's failure to name or serve her or, in the alternative, due to his failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A(b); and the Court further

**ORDERS** that, in light of the foregoing, Plaintiff's complaint is **DISMISSED** in its entirety with prejudice; and the Court further

**CERTIFIES** that for purposes of 28 U.S.C. § 1915A(a)(3), any appeal taken from the Court's final judgment in this action would not be taken in good faith; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This prisoner civil rights action, commenced *pro se* by Jamel Monroe ("Plaintiff") pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Plaintiff alleges that four employees of the New York State Department of Correctional Services ("DOCS") at Mid-State Correctional Facility ("Mid-State C.F.")-namely, Correctional Officer ("C.O.") Steven Critelli, C.O. Brian Lockwood, Inmate Grievance Program ("IGP") Supervisor Theresa Virkler, and Mail Room Clerk Jane Doe ("Defendants")-violated Plaintiff's rights under unidentified constitutional amendments (presumably, the First, Fourth,

Eighth and/or Fourteenth Amendments) when they harassed him, stole his mail, and/or retaliated against him for his having filed grievances against correctional officers. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Currently before the Court is Plaintiff's motion for summary judgment (Dkt. No. 27), and Defendants' cross-motion for summary judgment (Dkt. No. 32). For the reasons set forth below, I recommend that the Court deny Plaintiff's motion, and grant Defendants' motion.

## I. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

 **\*2** I recommend that Plaintiff's motion be denied on three alternative grounds.

First, as argued by Defendants, Plaintiff's Statement of Material Facts does not contain specific citations to the record where the facts asserted are established. (*See generally* Dkt. No. 27, Part 1, at 17-19, ¶¶ 1-11 [Plf.'s Rule 7.1 Statement].) Such record citations are required by Local Rule 7.1(a)(3) of the Local Rules of Practice. [1] Local Rule 7.1(a)(3) further provides that *"[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."* N.D.N.Y. L.R. 7.1(a)(3) [emphasis in original]. [2] A district court has no duty, on a motion for summary judgment, to perform an independent review of the record to find proof of either a factual dispute or the lack of a factual dispute, [3] even if that non-movant is proceeding *pro se.* [4] Given the congested nature of the Court's docket, and the often-conclusory nature of Plaintiff's Complaint and motion papers, I decline to perform such an independent review, and I recommend that the Court decline to do so as well.

Second, the legal argument asserted in Plaintiff's memorandum of law is without merit. Specifically, in his memorandum of law, Plaintiff takes Defendants' responses to 14 of his 15 Requests for Admission (i.e., except their response to Request for Admission Number 5), and argues that those responses are so clearly false (in light of the so-called "Declaration" and "evidence" provided by Plaintiff) that the Court should deem those responses "admitted." (*See generally* Dkt. No. 27, Part 1, at 1-9 [Plf.'s Memo. of Law].) As an initial matter, the proper mechanism for challenging a party's response to one's Requests for Admissions under Fed.R.Civ.P. 36 is a motion to determine the sufficiency of Defendants' answers or objections, not a motion for summary judgment. [5] Even if I were to liberally construe

Plaintiff's instant motion as such a motion, I would not find that Plaintiff has shown cause for an Order finding that Defendants' responses are so improper as to convert them into "admissions." [6] In any event, Plaintiff has skipped the rather crucial step of persuading the Court that any such admissions warrant the issuance of a judgment by the Court that Plaintiff has established, as a matter of law, the elements of one or more of his constitutional claims against Defendants.

Third, based on a general review of the record, I am confident that, even if I were to perform an independent review of the record, I would not find evidence establishing a set of undisputed facts warranting the award of judgment as a matter of law to Plaintiff. Plaintiff's so-called "Declaration" in support of his motion for summary judgment presents six paragraphs of assertions that are argumentative in nature, lacking in sufficient specificity, and/or not clearly based on personal knowledge. (*See generally* Dkt. No. 27, Part 1, ¶¶ 1-6 [Plf.'s Decl.].) Of course, a declaration or affidavit may not contain legal arguments. N.D.N.Y. L.R. 7.1(a)(2). Nor may a declaration or affidavit contain general, vague or conclusory assertions. [7] Nor may a declaration or affidavit contain assertions that are not made on personal knowledge. [8] Furthermore, the 17 exhibits to Plaintiff's memorandum of law consist of Plaintiff's grievance complaints, administrative decisions denying his grievance complaints, an index of his grievance complaints, an Inmate Misbehavior Report, a returned piece of mail, a letter to the Unites States Postal Service, a Mid-State C .F. Memorandum regarding Plaintiff's complaint of lost mail, a log of certain packages sent to Plaintiff, Defendants' responses to five of Plaintiff's interrogatories, a copy of two DOCS Directives, a copy of a United States statute, and a letter from Plaintiff to an attorney seeking representation. (*See generally* Dkt. No. 27, Part 2, Exs. 1-17 [Exhibits to Plf.'s Mem. of Law].) Simply stated, I am extremely doubtful that any amount of special solicitude could transform these exhibits into evidence establishing a set of undisputed facts warranting the award of judgment as a matter of law to Plaintiff. [9]

 **\*3** For each of these three alternative reasons, I recommend that the Court deny Plaintiff's motion for summary judgment, and proceed to the merits of Defendants' cross-motion for summary judgment.

## II. DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

### I. First Ground for Dismissal of Plaintiff's Complaint: Facial Merit of Defendants' Unopposed Cross-Motion for Summary Judgment

Defendants filed their cross-motion for summary judgment on May 21, 2007. (Dkt. No. 32.) Despite having been granted a 30-day extension of time by which to respond to Defendants' cross-motion (until July 2, 2007), Plaintiff has failed to do so.

When a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically." [10] Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants. [11] However, the plaintiff's failure to respond to the defendant's motion for summary judgment lightens the defendant's burden on the motion.

More specifically, where a plaintiff has failed to respond to a defendant's statement of material fact contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true [12] to the extent that (1) those facts are supported by the evidence in the record, [13] and (2) the non-moving party, if he is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. [14]

Here, in support of their cross-motion, Defendants provide a Statement of Material Facts containing 16 assertions of fact, each of which is supported by an accurate record citation. (*See generally* Dkt. No. 32, Part 11 [Defs.' Rule 7.1 Statement].) Furthermore, in their cross-motion, Defendants specifically notified Plaintiff of the potential consequences of failing to respond to their cross-motion. (*See generally* Dkt. No. 32, Part 1 [Defs.' Notice to Plf.].) Clearly, Plaintiff read and understood this notice since he subsequently requested (and received) a 30-day extension of time in which to respond to Defendants' cross-motion, until July 2, 2007. (Dkt. No. 33.) [15] Despite this extension, Plaintiff has failed to respond to Defendants' cross-motion. Therefore, Plaintiff has effectively *admitted* each of the factual assertions contained in Defendants' Rule 7.1 Statement.

Furthermore, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court. [16] Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are *facially meritorious.* [17] A defendant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest." [18]

**\*4** Here, in their cross-motion for summary judgment, Defendants argue that Plaintiff's Complaint should be dismissed for the following reasons: (1) Plaintiff has failed to either name or serve the "Jane Doe" Defendant named in his Complaint; (2) Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, a claim for retaliation, harassment or theft against Defendant Critelli; (3) Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, a claim for retaliation, harassment or theft against Defendant Lockwood; and (4) Plaintiff has failed to allege facts plausibly suggesting a claim against Defendant Virkler for mishandling his grievances. (*See generally* Dkt. No. 32, Part 12, at 1-7 [Defs.' Mem. of Law].) After reviewing these legal arguments, and the undisputed facts upon which they rely, I find that each of these legal arguments is, at the very least, facially meritorious.

Numerous cases exist granting summary judgment against a *pro se* litigant based on a similar facial analysis of Defendants' unopposed motion papers. *See, e.g., Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-1110 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b] [3], and recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y.

Aug. 27, 1996) (Hurd, M.J.), adopted by 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

For these reasons, I recommend that the Court grant Defendants' cross-motion for summary judgment.

### B. Alternative Ground for Dismissal of Plaintiff's Complaint

Because I have already found that an adequate ground exists upon which to base a recommendation that Plaintiff's Complaint be dismissed, I do not believe there is a need to proceed to a more in-depth analysis of Defendants' arguments in favor of dismissal. Furthermore, as stated above in Part I of this Report-Recommendation, I recommend that the Court decline to *sua sponte* conduct such a detailed analysis given the backlog of prisoner civil rights cases on its docket, [19] and the often-conclusory nature of Plaintiff's Complaint and motion papers. However, in the interest of aiding the Court should it decide to conduct such an analysis, I have subjected Defendants' legal arguments to the more rigorous scrutiny that would be appropriate on a contested motion, and I find that I am persuaded by those legal arguments.

### 1. Claims Against Jane Doe

**\*5** Liberally construed, Plaintiff's Complaint alleges that Jane Doe improperly handled or processed Plaintiff's mail at Mid-State C.F. by (1) permitting a letter to Plaintiff containing two photographs to lie open in a facility mail room between April 4, 2005, and April 15, 2005, where it was able to be scrutinized by anyone, (2) opening a package to Plaintiff (containing 126 pages of women's fashion designs that Plaintiff had been working on with his wife) on August 17, 2005, without authorization, and without notifying him of its arrival, and forwarding that package to the mail room located in Plaintiff's dormitory, and (3) failing to properly stamp or process a letter of complaint from Plaintiff to the Postmaster General between September 19, 2005, and November 19, 2005. (Dkt. No. 1, ¶¶ 6, 7 & Ex. A [Plf.'s Compl.].) The Complaint further alleges that Jane Doe took this adverse action against Plaintiff in retaliation for Plaintiff's filing grievances against an unspecified mail room clerk about his mail on April 26, 2005, September 19, 2005, and November 23, 2005. (*Id.* at ¶¶ 6, 7 & Exs. A, B, D .)

As an initial matter, Defendants are correct that Plaintiff's Complaint does not identify "Jane Doe." (Dkt. No. 1, ¶ 3.a. [Plf .'s Compl.].) Granted, Plaintiff attempted to

file an Amended Complaint that, in part, attempted to identify "Jane Doe" as one "T. Kupiec." (Dkt. No. 6, ¶ 5.) However, Plaintiff's attempt to file that amended pleading was unsuccessful. (Dkt. No. 16 [Order of Judge Scullin, filed 5/17/06].) Furthermore, Plaintiff did not again attempt to file an amended pleading identifying "Jane Doe." (*See generally* Docket Sheet.) Nor did Plaintiff ever serve his Complaint on Ms. Kupiec. (*Id.*)

Plaintiff had a duty to diligently litigate this action, including a specific duty to name and serve "Jane Doe." [20] He failed to fulfill that duty, and has not shown good cause excusing that failure. Furthermore, using the balancing test appropriate for a failure-to-prosecute analysis, I find that this failure to name and serve has persisted for more than two years; Plaintiff has certainly had notice of the failure and the consequences of the failure; Ms. Kupiec has been prejudiced by the failure; and no sanction less drastic than dismissal would be appropriate. Under the circumstances, Plaintiff's claims against "Jane Doe" should be dismissed under a variety of authorities. [21]

However, even if the Court were to overlook Plaintiff's failure to name and serve, and to review the pleading sufficiency of Plaintiff's claims against Jane Doe, the Court would find that Plaintiff's factual allegations against Jane Doe do not state a claim upon which relief may be granted. [22] Plaintiff's retaliation claims against Jane Doe are often anachronistic in that the adverse conduct he allegedly experienced often pre-dated his exercise of a constitutionally protected right, namely, the filing of grievances. For example, he alleges that Jane Doe improperly handled his mail in early April of 2005 as a result of a grievance he filed *after* that time period, which is an obvious impossibility. As to his non-anachronistic retaliation claims, he alleges no facts plausibly suggesting that the filing of his referenced grievances *caused* Jane Doe to take the adverse action alleged (or that Jane Doe even *knew* of those referenced grievances). A causal link between one's protected speech or activity and the adverse action one experiences is essential to stating a First Amendment retaliation claim under the circumstances. [23]

**\*6** Similarly, Plaintiff's other claims against Jane Doe-namely, his quasi invasion-of-privacy claim, wrongful-seizure claim, loss-of-property claim, and failure-to-stamp or failure-to-send claim, each occurring under the Fourth, Eighth and/or Fourteenth Amendments-fail in that, at best, the facts he has alleged merely support a claim for *negligence*

against Jane Doe, which is not actionable under 🔖 42 U.S.C. § 1983. [24]

For these reasons, I recommend that, should the Court decide to conduct a detailed analysis of Plaintiff's claims against Jane Doe, the Court dismiss those claims for (1) failure to name or serve, (2) failure to state a claim upon which relief may be granted, and/or (3) failure to adduce evidence sufficient to create a genuine issue of material fact for trial.

### 2. Claims Against Defendant Critelli

Liberally construed, Plaintiff's Complaint alleges that Defendant Critelli harassed Plaintiff by (1) searching, and disorganizing the contents of, Plaintiff's "cube" on October 25, 2005, or October 26, 2005, without either "a cube search slip" or "a contraband slip," as required by DOCS policy, and then rejecting Plaintiff's oral complaint about the search, (2) searching, and disorganizing the contents of, Plaintiff's "cube" on November 2, 2005, without either "a cube search slip" or "a contraband slip," as required by DOCS policy, and then rejecting Plaintiff's oral complaint about the search, (3) soliciting another inmate (Ben Crout) to assist him in having Plaintiff transferred to the Mid-State C.F. Special Housing Unit on November 2, 2005, (4) threatening Inmate Crout, on November 7, 2005, not to testify for Plaintiff with regard to Plaintiff's grievance against Defendant Critelli, (5) causing Plaintiff to be transferred to a new dormitory unnecessarily on November 5, 2005, and (6) refusing to let Plaintiff use a "property cart" to transport his property to a new dormitory on November 5, 2005, requiring him to make a trip of more than a mile, up and down stairs, several times. (Dkt. No. 1, ¶¶ 6, 7 & Exs. C and F [Plf .'s Compl.].) The Complaint further alleges that Defendant Critelli took this adverse action against Plaintiff in retaliation for his filing grievances against Defendant Critelli on November 6, 2005, and November 9, 2005. (*Id.*)

The vast majority of Plaintiff's retaliation claims against Defendant Critelli are anachronistic in that the adverse conduct he allegedly experienced almost always pre-dated his exercise of a constitutionally protected right, namely, the filing of grievances. For example, he alleges that Defendant Critelli (1) improperly searched his cell on or about October 25, 2005, and November 2, 2005, (2) conspired with Inmate Crout on November 2, 2005, and (3) wrongfully transferred Plaintiff on November 5, 2005-as a result of grievances that Plaintiff filed against Defendant Critelli on November

6, 2005, and November 9, 2005, which is an obvious impossibility.

**\*7** As to his sole non-anachronistic retaliation claim against Defendant Critelli (namely, that Defendant Critelli threatened Inmate Crout, on November 7, 2005, not to testify for Plaintiff with regard to Plaintiff's grievance against Defendant Critelli on November 6, 2005), I find that Plaintiff has alleged no facts plausibly suggesting, and has adduced no evidence establishing, that Defendant Critelli actually threatened Inmate Crout on November 7, 2005. For example, conspicuously missing is a factual allegation plausibly suggesting, or a piece of evidence establishing, that Inmate Crout ever stated to Plaintiff (or anyone) that Defendant Critelli engaged in such threatening conduct. Plaintiff has alleged no facts plausibly suggesting that he had personal knowledge of such conduct on November 7, 2005. Nor has Plaintiff adduced a sworn statement by Inmate Crout evidencing such conduct on November 7, 2005. Adverse action is an essential element of a First Amendment retaliation claim. [25]

Similarly, Plaintiff's other claims against Defendant Critelli-namely, Plaintiff's wrongful-search claim, wrongful transfer claim, and failure-to-provide-a-property-cart claim, each occurring under the Fourth, Eighth and/or Fourteenth Amendments-fail in that the facts he has alleged, and evidence contained in the record, merely support, at best, a claim for *negligence* against Defendant Critelli, which, again, is not actionable under 🔖 42 U.S.C. § 1983. [26] Moreover, I note that the Fourth Amendment's proscription against unreasonable searches does not apply within the confines of a prison cell. [27] Nor does Plaintiff have an Eighth Amendment right to be housed in the dormitory of his choice in prison. [28]

For these reasons, I recommend that, should the Court decide to conduct a detailed analysis of Plaintiff's claims against Defendant Critelli, the Court dismiss those claims for (1) failure to state a claim upon which relief may be granted, and/or (2) failure to adduce evidence sufficient to create a genuine issue of material fact for trial.

### 3. Claims Against Defendant Lockwood

Liberally construed, Plaintiff's Complaint alleges that Defendant Lockwood harassed Plaintiff by (1) issuing a false misbehavior report against Plaintiff on July 20, 2005, which was dismissed on July 25, 2005, (2) telling Plaintiff,

before July 25, 2005, that he did not want Plaintiff in his dormitory, and (3) either stealing or deliberately destroying, on August 17, 2005, the package that had been sent to Plaintiff containing the 126 pages of women's fashion designs mentioned above. (Dkt. No. 1, ¶¶ 6, 7 & Exs. C, E, G [Plf.'s Compl.].) The Complaint further alleges that Defendant Lockwood took this adverse action against Plaintiff in retaliation for his filing grievances against Defendant Lockwood on July 25, 2005, and September 19, 2005. (*Id.*)

Again, many of Plaintiff's retaliation claims against Defendant Lockwood are anachronistic in that the adverse conduct he allegedly experienced often pre-dated his exercise of a constitutionally protected right, namely, the filing of grievances. For example, he alleges that Defendant Lockwood filed a false misbehavior report against Plaintiff on July 20, 2005, in retaliation for his filing grievances against Defendant Lockwood on July 25, 2005, and September 19, 2005, which is an obvious impossibility. Similarly, he alleges that Defendant Lockwood destroyed Plaintiff's package on August 17, 2005, in partial retaliation for his filing a grievance against Defendant Lockwood on September 19, 2005, which is another obvious impossibility. Moreover, he alleges that Defendant Lockwood told him *before* July 25, 2005, that he did not want Plaintiff in his dormitory, as a result of Plaintiff filing a grievance against Defendant Lockwood on July 25, 2005, which is another obvious impossibility. (In addition, I note that Defendant Lockwood's alleged statement to Plaintiff is hardly "adverse action," for purposes of the First Amendment.)

**\*8** As to his sole non-anachronistic retaliation claim against Defendant Lockwood (namely, that Defendant Lockwood destroyed Plaintiff's package on August 17, 2005, in partial retaliation for Plaintiff's filing a misbehavior report against Defendant Lockwood, and Plaintiff's success in having a misbehavior report dismissed, on July 25, 2005), I find that Plaintiff has alleged no facts plausibly suggesting, and has adduced no evidence establishing, that Defendant Lockwood, though having worked in the mailroom of Plaintiff's dormitory on August 17, 2005, *caused* the loss or destruction of Plaintiff's package on that date (or any other date). Even if Plaintiff had alleged such facts, and adduced such evidence, he has alleged no facts plausibly suggesting, and has adduced no evidence establishing, that the loss or destruction was intentional or criminally reckless, as opposed to merely negligent. Again, negligence is not actionable under 42 U.S.C. § 1983.[29]

For these reasons, I recommend that, should the Court decide to conduct a detailed analysis of Plaintiff's claims against Defendant Lockwood, the Court dismiss those claims for (1) failure to state a claim upon which relief may be granted, and/or (2) failure to adduce evidence sufficient to create a genuine issue of material fact for trial.

### 4. Claims Against Defendant Virkler

Liberally construed, Plaintiff's Complaint alleges that Defendant Virkler improperly handled numerous grievances that Plaintiff filed at some point in March of 2005, and on July 25, 2005, September 5, 2005, and November 6, 2005. (Dkt. No. 1, ¶¶ 6, 7 & Exs. D, E, F, G, H [Plf.'s Compl.].) More specifically, the Complaint alleges that Defendant Virkler (1) subjected Plaintiff to retaliation by correctional officers by notifying those officers of Plaintiff's grievances against them at unidentified times, (2) tried to "coerce" Plaintiff to withdraw his grievances, and/or falsely stated that Plaintiff had withdrawn his grievances at unidentified times, (3) tried to "coerce" Inmate Crout, on November 7, 2005, not to testify for Plaintiff with regard to Plaintiff's grievance against Defendant Critelli, and (4) improperly found for the defendant on each of Plaintiff's grievances. (*Id.*) The Complaint further alleges that Defendant Virkler took this adverse action against Plaintiff in retaliation against him for filing grievances against Defendant Virkler on September 19, 2005, October 5, 2005, and November 9, 2005. (*Id.*)

Plaintiff's claims against Defendant Virkler are wholly conclusory and, in any event, not actionable under 42 U.S.C. § 1983.[30] Plaintiff's claims of retaliation, coercion, wrongful notification, and bias are wholly conclusory. Many of his retaliation claims against Defendant Virkler are plagued by the same anachronistic defect that plagues his retaliation claims against the other Defendants. Moreover, except for his allegations about the grievance proceeding on November 7, 2005, Plaintiff does not specify any dates on which Defendant Virkler committed any "coercion," nor does Plaintiff identify any correctional officers who were "notified" by Defendant Virkler of Plaintiff's grievances. With regard to the proceeding on November 7, 2005, Plaintiff does not allege any facts plausibly suggesting how he knew that Inmate Crout had been so "coerced." Finally, Plaintiff has not alleged facts plausibly suggesting that, on one or more particular dates, Defendant Virkler violated any of the rules or regulations governing the DOCS inmate grievance process.

**\*9** In any event, even if Plaintiff's above-referenced claims of wrongful-notification were sufficiently specific to give Defendant Virkler fair notice of them for purposes of Fed.R.Civ.P. 8, I am extremely doubtful that those claims would be actionable under 42 U.S.C. § 1983. (The very idea that a prisoner could proceed on a grievance against a correctional officer without that officer being notified of the charge and the identity of the accuser so that the officer could defend himself would appear to be repugnant to the principle of due process.) Certainly, Plaintiff's claims that Defendant Virkler improperly processed Plaintiff's grievances, or improperly conducted the grievance procedure, are not actionable under 42 U.S.C. § 1983. [31]

For these reasons, I recommend that, should the Court decide to conduct a detailed analysis of Plaintiff's claims against Virkler, the Court dismiss those claims for failure to state a claim upon which relief may be granted.

**ACCORDINGLY,** it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 27) be *DENIED;* and it is further

**RECOMMENDED** that Defendants Critelli, Lockwood and Virkler's cross-motion for summary judgment (Dkt. No. 32) be *GRANTED,* and that any of Plaintiff's claims against those three Defendants that are not the subject of their motion for summary judgment be *DISMISSED* for failure to state a claim upon which relief might be granted, pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A(b); and it is further

**RECOMMENDED** that Plaintiff's claims against Jane Doe be *DISMISSED* with prejudice due to Plaintiff's failure to name or serve her, or, in the alternative, due to his failure to state a claim upon which relief might be granted, pursuant to the Court's authority to do so under 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A(b); and it is further

**RECOMMENDED** that, in light of the foregoing, Plaintiff's Complaint (Dkt. No. 1) be *DISMISSED* in its entirety with prejudice; and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 508748

---

## Footnotes

1    *See* N.D.N.Y. L.R.7.1(a)(3) ("Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established.").

2    I note that the Clerk of Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's *Pro Se* Manual and Local Rules of Practice.

3    *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

4   *See* Lee v. Alfonso, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13, 2004 WL 5477530 (N.D.N.Y.
    Feb. 10, 2004) (Scullin, C.J.) (granting motion for summary judgment against *pro se* plaintiff after refusing
    to conduct independent review of record to find proof of factual dispute), *aff'd,* No. 04-1921, 2004 U.S.App.
    LEXIS 21432 (2d Cir. Oct. 14, 2004) (unpublished decision); *accord,* Fox v. Amtrak, 04-CV-1144, 2006 U.S.
    Dist. LEXIS 9147, at *1-4, 2006 WL 395269 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.), *aff'd,* No. 06-1157, 2007
    U.S.App. LEXIS 22813 (2d Cir. Sept. 19, 2007); Govan v. Campbell, 289 F.Supp.2d 289, 295 (N.D.N.Y.
    Oct.29, 2003) (Sharpe, M.J.).

5   *See* Fed.R.Civ.P. 36(a) ("The party who has requested the admissions may move to determine the sufficiency
    of the answers or objections. Unless the court determines that the objection is justified, it shall order that an
    answer be served. If the court determines that an answer does not comply with the requirements of this rule,
    it may order either that the matter is admitted or that an amended answer be served.").

6   By and large, Plaintiff's challenge to Defendants' responses is argumentative in nature. For example, he
    complains that Defendants did not admit the legal conclusions asserted by Plaintiff, he is incredulous at a
    defendant's lack of memory on a subject, or he disagrees with the way that Defendants interpret various
    documents. (*See generally* Dkt. No. 27, Part 2 [Defs.' Responses to Plf.'s Requests for Admission].) The sole
    exception is with regard to Defendants' Response to Plaintiff's Requests for Admission Numbers 3 and 11,
    which Defendants apparently did not answer. However, I find that these two requests either partially request
    a legal conclusion or are of minimal probative value.

7   *See* Applegate v. Top Assoc., 425 F.2d 92, 97 (2d Cir.1970) (stating that the purpose of Rule 56[e] is
    to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere
    elaboration of conclusory pleadings," and finding that "[the plaintiff] has provided the court [through his
    affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which
    would entitle him to a trial."); Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she
    "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places....
    It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ), *cert. denied,*
    474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *cf.* Bickerstaff v. Vassar Oil, 196 F.3d 435, 452
    (2d Cir.1998) (McAvoy, J., sitting by designation) ("Statements [for example, those made in affidavits,
    deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
    insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; West-Fair Elec.
    Contractors v. Aetna Cas. & Sur., 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements
    that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the
    plaintiff under a contract); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely
    by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted].

8   Fed.R.Civ.P. 56(c) ("Supporting ... affidavits shall be made on personal knowledge, shall set forth such facts
    as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to
    the matters stated therein.").

9   I note, incidentally, that Plaintiff's entitlement to the full measure of special solicitude ordinarily afforded
    to *pro se* civil rights litigants is extremely questionable. Plaintiff is no stranger to the courts, having filed
    six other prisoner civil rights actions in this Court alone. *See* Monroe v. Drown, 97-CV-0314 (N .D.N.Y.)
    (prisoner civil rights); *Monroe v. Spitzer,* 06-CV-1028 (N.D.N.Y.) (prisoner civil rights); *Monroe v. Mullen,* 06-
    CV-0144 (N.D.N.Y.) (prisoner civil rights); *Monroe v. Janes,* 06-CV-0859 (N.D.N.Y.) (prisoner civil rights);
    *Monroe v. Walrath,* 06-CV-0976 (N.D.N.Y.) (prisoner civil rights); *Monroe v. Perlman,* 06-CV-1133 (N.D.N.Y.)
    (prisoner civil rights). In addition, Plaintiff has filed at least one state court action regarding the conditions
    of his imprisonment. *See Monroe v. New York,* UID 2006-009-072, Claim No. 108836 (N.Y.Ct.Cl.) (Hon.
    Nicholas V. Midey, Jr.).

10  Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996).

11    *See* *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that ... the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.,* 140 F.Supp.2d 229, 232 (N.D.N.Y.2001) (Scullin, C.J .) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims"). This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve ... [opposition] papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."* N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

12    *See* N.D.N.Y. L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* ) [emphasis in original].

13    *See* *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243 (2d Cir.2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.... If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.... [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.,* 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3, 2002 WL 449757 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant. To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed.R.Civ.P. 83(a)(1) ("A local rule shall be consistent with ... Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] ...."); Fed.R.Civ.P. 56(e) (requiring that, "if the non-movant does not ... respond [to a summary judgment motion], summary judgment, *if appropriate,* shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

14    *See* *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

15    In addition, I note that, before Defendants gave this notice to Plaintiff on May 21, 2007, Plaintiff received a similar notice from the defendants in another of his several prisoner civil rights actions. *See Monroe v. Janes,* 06-CV-0859 (N.D.N.Y.) (cross-motion for summary judgment filed by defendants on 4/4/07).

16    N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown ."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia,* a memorandum of law); *cf.* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

party's *response* ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so *respond,* summary judgment, if appropriate, shall be entered against the adverse party.")

[emphasis added]; *see, e.g.,* Beers v. GMC, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31, 1999 WL 325378 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.,* 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov.29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

17    *Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*" ) [emphasis added; citations omitted];

*accord, Topliff v. Wal-Mart Stores East LP,* 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n. 43, 2007 WL 911891 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick,* 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n. 2, 2007 WL 894375 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n. 40, 2007 WL 951447 (N .D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey,* 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n. 2, 2006 WL 3940592 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

18    *See Ciaprazi v. Goord,* 02-CV-0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec.22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord, Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), Smith v. Woods, 03-CV-0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).

19    I note that the Second Circuit had, between 2000 and 2005, the longest median time to disposition for prisoner civil rights cases, among the twelve circuits (including the D.C. Circuit)-specifically, 9.8 months, as compared to a national average of 5.7 months.

20    *See, e.g.,* Fed.R.Civ.P. 41(b); N.D.N.Y. L.R. 41.2(a); Fed.R.Civ.P. 4(m); Fed.R.Civ.P. 16(e),(f). (*See also* Dkt. No. 5, at 3 [Order of Magistrate Judge Lowe, filed 2/16/06, directing Plf. to "take reasonable steps to ascertain the identity of any other individual that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a motion to amend his complaint and add such individual, by name, as a Defendant to this lawsuit"].)

21    I note that the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte. See* Fed. R. Civ. 4(m) ( "[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just ...."). Furthermore, with regard to Fed.R.Civ.P. 41(b), which speaks only of a *motion* to dismiss on the referenced grounds, courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." Link v. Wabash R.R. Co., 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also* Saylor v. Bastedo, 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) recognizes this authority. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

22    I note that the Court is authorized to conduct such an analysis of the pleading sufficiency of Plaintiff's claims pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A(b).

23    To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff-namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d. Cir.2001] ).

24    *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Daniels v. Williams,* 474 U.S. 327, 331-33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (stating that "injuries inflicted by governmental negligence are not addressed by the United States Constitution" and rejecting § 1983 claim based on alleged due process violation under Fourteenth Amendment); *Hudson v. Palmer,* 486 U.S. 517, 531, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1984) ("[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property ...."); *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("Allegations of negligence or innocent mistake are insufficient [to state a claim under the Fourth Amendment]."); *Riddick v. Modeny,* No. 07-1645, 2007 WL 2980186, at *2 (3d Cir. Oct.9, 2007) ("The protections afforded prisoners by the Due Process Clause of the Fourteenth Amendment are not triggered by the mere negligence of prison officials."); *Billington v. Smith,* 292 F.3d 1177, 1190 (9th Cir.2002); ("The Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law, and negligent acts do not incur constitutional liability."); *Myers v. Okla. County Bd. of County Com'rs,* 151 F.3d 1313, 1320 (6th Cir.1998) ("[A]ctions leading to a confrontation, such as the decision to enter the apartment, must be more than merely negligent to be "unreasonable" for purposes of the Fourth Amendment inquiry."); *Madiwale v. Savaiko,* 117 F.3d 1321, 1326 (11th Cir.1997) ("Negligent or innocent mistakes do not violate the Fourth Amendment."); *Sevier v. City of Lawrence, Kan.,* 60 F.3d 695, 699, n. 7 (10th Cir.1995) ("Mere negligent actions precipitating a confrontation [that was the subject of plaintiff's Fourth Amendment claim] would not, of course, be actionable under § 1983.").

25    *See, supra,* note 23 of this Report-Recommendation.

26    *See, supra,* note 24 of this Report-Recommendation.

27    *Hudson v. Palmer* 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see also Tinsley v. Greene,* 95-CV-1765, 1997 WL 160124, at *7 (N.D.N.Y. March 31, 1997) (Pooler, J., adopting Report-Recommendation of Homer, M.J.) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights."); *Demaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.) (Kaplan, J., sitting by designation) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights."), *aff'd,* 122 F.3d 1055 (2d Cir.1995).

28    *See Gatson v. Coughlin,* 679 F.Supp. 270, 273 (W.D.N.Y.1988) (granting motion to dismiss inmate's Eighth Amendment claim based on prison transfer that caused him to lose his commissary job because "such transfers, even if proven to be for 'punitive' reasons, are neither unusual nor 'cruel in the constitutional sense' "); *Maguire v. Coughlin,* 901 F.Supp. 101, 104-106 (N.D.N.Y.1995) (McAvoy, C.J.) (not treating inmate's

claim of repeated prison transfers as actionable under the Eighth Amendment); *Arroyo v. Coughlin,* 92-CV-0426, 1993 WL 117529, at *1 (W.D.N.Y. Apr.13, 1993) (granting motion to dismiss inmate's Eighth Amendment claim based on defendants' refusal to transfer inmate to prison of his choice, because "plaintiff has no constitutional right not to be transferred from one facility to another"); *Persico v. Gunnell,* 560 F.Supp. 1128, 1137 (S.D.N.Y.1983) (granting motion to dismiss inmate's Eighth Amendment claim based on repeated "punitive" prison transfers because transfers are part of an inmate's sentence and do not constitute "punishment").

29    *See, supra,* note 24 of this Report-Recommendation.

30    I will set aside the issue of whether Plaintiff appealed any of Defendant Virkler's decisions sufficient to exhaust his administrative remedies with regard to his claims against Defendant Virkler, because Defendants do not raise this argument, and because, in order to state a claim, a plaintiff has no duty to plead facts plausibly suggesting that he has exhausted his administrative remedies. *Jones v. Block,* 549 U.S. 199, ---- - ----, ---- - 127, 127 S.Ct. 910, 914-915, 918-923, 166 L.Ed.2d 798 (2007); *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999).

31    *See Banks v. Ackles,* 93-CV-0727, 1997 WL 116787, at *6 (N.D.N.Y. March 13, 1997) (Pooler, J.) ("[M]ere defects in an inmate grievance system do not violate the Constitution.") [citations omitted]; *Justice v. Coughlin,* 941 F.Supp. 1312, 1316 (N.D.N.Y.1996) (Pooler, J.) (adopting magistrate judge's report-recommendation finding, in pertinent part, that "mere violations of an inmate grievance system do not violate the Constitution") [citation omitted]; *Ragland v. Abate,* 94-CV-4692, 1995 WL 362411, at *1 (E.D.N.Y. May 31, 1995) ("An inmate grievance procedure is not constitutionally required.... Even if the state chooses to provide a grievance mechanism, a violation of its procedures is not a deprivation of a federal constitutional right.") [citations omitted], *aff'd in pertinent part and vacated in part on other grounds,* 101 F.3d 683 (2d Cir.1996); *Murray v. Kirkpatrick,* 06-CV-0598, 2007 WL 541986, at *2 (W.D.N.Y. Feb.13, 2007) ("[P]laintiff does not have a constitutional right to have his grievances processed or to ensure that grievances are processed properly.") [citations omitted]; *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.") [citations omitted]; *Cancel v. Goord,* 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar.29, 2002) (While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983.") [citation omitted]; *Ramos v. Hanslmaier,* 96-CV-0744, 1998 WL 101750, at *1 (S.D.N.Y. March 6, 1998) ("[An allegation of] indifference to grievances that [plaintiff] had filed with the [correctional] facility ... does not suggest any basis for inferring that ... [the action] violated any constitutionally protected rights.") [citations omitted]; *Muhammad v. McMickens,* 86-CV-7376, 1988 WL 7789, at *3 (S.D.N.Y. Jan.25, 1988) ("Violations of inmate grievances procedures, which are themselves not constitutionally required, do not give rise to a § 1983 claim.... Additionally, plaintiff's allegations do not implicate his right to be free from cruel and unusual punishment provided by the eighth amendment. While failure to process grievances may cause plaintiff frustration or loss of faith, such conduct is not the kind of 'barbarous' conduct which is 'shocking to the conscience.' ") [citations omitted].

---

**End of Document**                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1313348
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Istvan KELE, Plaintiff,
v.
Daniel G. MIDDAUGH, et al., Defendants.

No. 9:04-CV-0377 (TJM/GHL).
|
Dec. 22, 2005.
|
May 12, 2006.

**Attorneys and Law Firms**

Istvan Kele, Budapest, Hungary, Europe, Plaintiff, Pro Se.

Delbuono & Diodati, David R. Diodati, Esq., of Counsel, New Hartford, NY, for Defendant Middaugh.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION/DISCUSSION**

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred by this Court to the Hon. George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation dated December 22, 2005 recommended that Defendants' motion for summary judgment be denied. Neither party filed any objection to the magistrate judge's Report-Recommendation.

After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report-Recommendation for the reasons stated therein.

**II. CONCLUSION**

Therefore, Defendants' motion for summary judgment (dkt.# 35) is **DENIED WITH LEAVE TO RENEW.** *See Aiken v. Nixon,* 236 F.Supp.2d 211, 229 (N.D.N.Y.2002), [1] *aff'd* 80

Fed. Appx. 146, 2003 WL 22595837 (2d Cir. Nov. 10, 2003). Magistrate Judge Lowe shall determine whether the parties will engage in further discovery, and the date by which the Defendants must renew their motion for summary judgment should they elect to do so.

**IT IS SO ORDERED.**

GEORGE H. LOWE, Magistrate Judge.

*REPORT-RECOMMENDATION*

This action has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, U.S. District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. § 636(b). Istvan Kele ("Plaintiff") filed this action against Daniel Middaugh ("Defendant") and unnamed employees of the Oneida County Sheriff's Department under 42 U.S.C. § 1983, alleging that they violated his civil rights by denying him certain postage while he was incarcerated in the Oneida County Correctional Facility. Currently before the Court is Defendant's motion for summary judgment. For the reasons that follow, I recommend that Defendant's motion be denied.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [1] In determining whether a genuine issue of material [2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. [3] In addition, "[i]n actions in which one of the parties appears *pro se,* this Court is faced with the ... responsibility of granting significant liberality in how *pro se* pleadings are construed." [4] For example, where a plaintiff is proceeding *pro se,* and the defendant has filed a motion for summary judgment, the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest. [5]

Instrumental, then, to a motion for summary judgment (especially to a defendant's motion for summary judgment in a *pro se* action) is the movant's Statement of Material Facts.

Indeed, the Local Rules of Practice for this Court specifically require, and describe, such Statements:

> **\*2**  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.*

N.D.N.Y. L.R. 7.1(a)(3) [emphasis in original].

## II. ANALYSIS

Here, Defendant has failed to file *any* Rule 7.1 Statement of Material Facts, much less an "accurate and complete" one, as required by the Local Rule 7.1(a)(3). [6]  Thus, Defendant's motion must be denied. [7]

I reach this conclusion with some regret, since I believe that Defendant's legal argument in support of his motion for summary judgment may (if that argument were properly supported) have some merit-i.e., Defendant's argument that Plaintiff's Complaint should be dismissed because of Defendant's qualified immunity and lack of personal involvement in the alleged constitutional violations. [8]  Also with some merit *might* be other legal arguments (omitted from Defendant's brief) in support of a motion for summary judgment by Defendant-for example, arguments that (1) negligence by Defendant(s) under these circumstances is not actionable under 42 U.S.C. § 1983, [9]  (2) the "constitutional right" that Plaintiff claims generally does not exist (i.e., the right to correspond with family and friends living overseas, and/or the right to not be "discriminated against" due to the fact that one has family and friends overseas), or does not exist under the circumstances (in which, apparently, neither the person sending the communications nor the person(s) receiving the communications were citizens or permanent residents of the United States), (3) even if the Oneida County Correctional Facility had a regulation that infringed on Plaintiff's constitutional rights, that regulation was reasonably related to a legitimate penological interest, [10]  and (4) the deprivation at issue was *de minimus* in light of (a) the fact that Plaintiff could have communicated by family and friends in Hungary by telephone, and/or (b) the fact that the deprivation in question was temporary in nature (i.e., less than three months).

However, my regret at having to recommend the denial of Defendant's motion is tempered by the fact that Defendant's motion is (in addition to being in violation of the Local Rules and factually unsubstantiated) probably premature. Although discovery in this matter formally closed on May 30, 2005, [11] a discovery dispute is pending, [12]  the resolution of which *may* result in (1) my reopening discovery *sua sponte* and (2) Defendant disclosing to Plaintiff evidence (if it exists) that creates an issue of fact material to Defendant's motion. Perhaps in response to this fact, Defendant appears to argue that any uncompleted discovery is not material to his motion for summary judgment since Plaintiff cannot conduct any further discovery due to his inability to return to the United States. [13]  I find this argument creative but confusing, since Defendant acknowledges in a letter to me that the Court "can allow a trial to proceed even if the plaintiff cannot appear as was the case in *Dorsey v. Edge,* 819 F.2d 1066 (11th Cir.1987)." [14]  If the Court can allow a trial to proceed in Plaintiff's absence, why can it not allow discovery to proceed in Plaintiff's absence?

**\*3**  I note that, in his motion papers, Defendant attempts to adopt by reference the arguments advanced in support of a Rule 41(b) motion to dismiss for failure to prosecute filed by the defendants in a separate civil rights action filed by Plaintiff. [15]  I am not sure how an argument in support of a motion to dismiss can support a motion for summary judgment, since the two motions have different standards. In any event, I reject the arguments in support of the Rule 41(b) motion to dismiss in the separate action for the reasons stated in my Report-Recommendation in that action. (*See Kele v. Pelkey,* 9:03-CV-0170[LEK/GHL], Dkt. No. 64.)

In the event that the Court adopts my recommendation in this matter, I then would resolve the pending discovery dispute

and, if appropriate, reopen discovery and (when discovery closes) permit Defendant(s) to again move for summary judgment. If, during the completion of discovery, Plaintiff has failed to prosecute this matter, comply with any of the Federal Rules of Civil Procedure, and/or comply with any orders of the Court, I would permit Defendant(s) to move to dismiss under Rule 41(b).

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 35) be **DENIED;** and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Sec 'y of Health and Human Servs., 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1313348

## Footnotes

1    In *Aiken,* the Court noted:
     The [qualified immunity] defense "serves important interests in our political system," *Sound Aircraft Servs., Inc. v. Town of East Hampton,* 192 F.3d 329, 334 (2d Cir.1999), ensuring that damages suits do not "unduly inhibit officials in the discharge of their duties" by burdening individual officers with "personal monetary liability and harassing litigation." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987); *see Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998). For this reason, the Supreme Court has directed that "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 121 S.Ct. 2151, 2155-56 (2001).
     236 F.Supp.2d at 229.

1    Fed.R.Civ.P. 56(c).

2    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

3    *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) (citation omitted); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citation omitted).

4    *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y.1998); *see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* pleadings held "to less stringent standards than formal pleadings drafted by lawyers."); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989).

5    *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir.2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (motion for summary judgment in civil rights case).

6    (*See* Dkt. No. 35, consisting of only Part 1 [Def.'s Notice of Motion], Part 2 [Heim Aff.], Part 3 [Diodati Aff.], and Part 4 [Def.'s Mem. of Law].)

7    *See* N.D.N.Y. L.R. 7.1(a)(3) (*"Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."*) [emphasis in original]; *see also* Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir.2004) (citations omitted) (before the facts set forth in a Statement of Material Facts will be taken as true, those facts must be supported by the evidence in the record).

8    (*See* Dkt. No. 35, Part 4 [Def.'s Mem. of Law].)

9    *See Hubert v. Irvin,* 91-CV-0515, 1992 U.S. Dist. LEXIS 10431, at *7-8 (W.D.N.Y. June 30, 1992) (granting summary judgment to prison senior mail clerk because, at most, evidence showed that mail clerk was *negligent* with regard to the mailing of the plaintiff's letters, which is not actionable under 42 U.S.C. § 1983) (citation omitted).

10    *See Hubert,* 1992 U.S. Dist. LEXIS 10431, at *3-7 (granting summary judgment to prison superintendent because, even if prison rule regulating the "vendors" from whom inmates may receive packages infringed on the plaintiff's First Amendment right to practice his religion, that prison regulation was reasonably related to a legitimate penological interest, i.e., preventing the introduction of contraband into the prison); *Powell v. Godinez,* 93-CV-3469, 1997 U.S. Dist. LEXIS 14852, at *22-26 (N.D.Ill. Sept. 24, 1997) (granting summary judgment to prison mailroom supervisor because, even if prison rule demanding that inmates pay for postage to Canada infringed on the plaintiff's First Amendment right to petition the government for redress of grievances and/of the plaintiff's Fourteenth Amendment right to not be discriminated against, that prison regulation was reasonably related to a legitimate penological interest, i.e., controlling the cost of inmates' free mail).

11    (Dkt. No. 12 at 2 [Scheduling Order, filed 11/4/04].)

12    (Dkt. Nos. 13-15 [Plf.'s Motion to Compel, filed 1/12/05].) I note that I held the resolution of this discovery dispute in abeyance to permit Defendant to submit a motion to dismiss for Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (Dkt. Nos. 28, 33; Dkt. Entry dated 9/1/05 [Minute Entry].) However, Defendant did not file such a motion to dismiss but the instant motion for summary judgment. (Dkt. No. 34 [8/1/05 Letter from Diodati to Court stating, *inter alia,* that "Under these circumstances I do not believe a motion to dismiss is appropriate at this time."]; Dkt. No. 35, Part 1 [entitled "Notice of Motion for Summary Judgment"], Part 2 [Heim Aff., requesting that "summary judgment be granted" to Defendant], Part 3 [Diodati Aff., requesting that "summary judgment be granted" to Defendant, Part 4 at 3 [Def.'s Mem. of Law, concluding that "summary judgment should be granted" to Defendant"].)

13    (Dkt. No. 35, Part 3, ¶ 5 [Diodati Aff.].)

14    (Dkt. No. 34 [8/1/05 Letter from Diodati to Court].)

15    (Dkt. No. 35, Part 3, ¶ 6 [Diodati Aff.].)

---

**End of Document**                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 655628
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Therese LORE, Plaintiff,

v.

CITY OF SYRACUSE; City of Syracuse Police
Department; John Falge, in his official and
individual capacity; First Deputy Chief Daniel
Boyle, in his official and individual capacity; Deputy
Chief Robert Tassone, in his official and individual
capacity; City of Syracuse Mayor Roy Bernardi, in
his official and individual capacity; Lieutenant Mike
Rathbun, in his official and individual capacity;
Captain Mike Kerwin, in his official and individual
capacity; Rick Guy, City Corporation Counsel, in
his official and individual capacity; Michael Lemm,
in his official and individual capacity; John Doe,
in his official and individual capacity, Defendants.

No. 5:00-CV-1833.
|
Feb. 26, 2007.

**Attorneys and Law Firms**

Bosman Law Office, A.J. Bosman, Esq., Kernan, Kernan,
P.C., James W. Hyde, IV, Esq., James P. Godemann, Esq., of
counsel, Utica, NY, for Plaintiffs.

Smith, Sovik, Kendrick & Sugnet P.C., Kevin E. Hulslander,
Esq., Gabrielle M. Hope, Esq., of counsel, Syracuse, N.Y., for
Defendants.

Thomas J. Miller, Esq., of counsel, Syracuse, NY, for
Defendant Michael Lemm.

**MEMORANDUM DECISION AND ORDER**

HOWARD G. MUNSON, SR. J.

**\*1** Plaintiff, Therese Lore, is a Sergeant in the Syracuse,
New York Police department. In her complaint, amended
complaint, and second amended complaint, she alleges, *inter
alai,* that she was treated differently at the SPD because she
is a female. On December 1, 2000, plaintiff filed a verified
complaint in the United States District Court for the Northern

District of New York alleging that the named defendants'
actions violated 🔖 42 U.S.C. § 1983, Title VII of the Civil
Rights Act of 1964, as well as the First, Fifth and Fourteenth
Amendment of the United States Constitution. The request
relief seeks money damages to redress asserted statutory
damages caused by the unlawful actions. Michael Lemm was
not named as a defendant in plaintiff's original complaint.

On August 17, 2001, plaintiff filed an amended complaint
and a second amended complaint wherein Lemm was named
as a defendant. Paragraph 95 of the amended complaint
asserts that defendants Michael Lemm and a John Doe,
left threatening messages in a disguised voice on her home
telephone answering machine, which harassed, annoyed and
threatened her in such a manner it caused her extreme
emotional upset.

In plaintiff's second amended complaint, she alleges in
paragraph 95, that Michael Lemm and John Doe, and other
named defendants, conspired by "discussing the Plaintiff's
complaint(s) and agreeing to, or failing to, protect the
Plaintiff from calls" intended to inflict plaintiff with extreme
emotional distress, and cause her to discontinue her lawsuit

Currently before the court is defendant Lemm's motion
for summary judgment pursuant to Federal Rule of Civil
procedure 56, arguing that plaintiff's second amended
complaint fails to state a claim upon which relief can be
granted with respect to him. Plaintiff opposes defendant
Lemm's motion.

As discussed more fully below, defendant Lemm's Omotion
is denied, with leave to renew, for the failure of the parties to
the motion to follow the requisite procedural requirements for
such motion under the Local Rules of the Northern District
of New York.

The Local Rules are not empty formalities. Local Rules, such
as 7.1(a), 7.1(a)(3), 7.1(b)(1)(B), and 7.1(b)(3), "serve to
notify the parties of the factual support for their opponent's
arguments, but more importantly inform the court of the
evidence and arguments in an organized way-thus facilitating
its judgment of the necessity for a trial." 🔖 *Little v. Cox's
Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995). Each of
these functions is critical. A party's failure to comply with
these rules is fundamentally unfair to the opposing party.
The opposing party has a right to be informed of the factual
bases of his rival's case and the specific foundations for

those contentions of fact. Non-compliant conduct is also adverse to the conservation of judicial resources which are most efficiently used when the parties meet their adversarial duties in a tightly orchestrated and lucid manner. *Meaney v. CHS Acquisition Corp.,* 103 F.Supp.2d 104, 107 (N.D.N.Y.2000); *Niles v. New York Office of Mental Retardation and Development Disability,* 1996 WL 743839, at *6 (N.D.N.Y. Dec 20, 1996).

**\*2** The Local Rules of the Northern District provide a mechanism for the efficient resolution o f summary judgment motions.

Local Rule 7.1(a)(2), requires that an affidavit is required for all motions except for motions made pursuant to Fed.R.Civ.P. (12(b)(6), 12(c) and 12(f).

The affidavit must not contain legal arguments but must contain factual and procedural background as appropriate for the motion being made.

Local Rule 7.1(a)(1) directs that " "[a]ll memoranda of law shall contain a table of contents and, where ever possible, parallel citations."

Local Rule 7.1(a)(3), places the onus on the parties to marshal the evidence that either supports, or defeats, the motion. In this regard, Local Rule 7.1(a)(3) requires a party moving for summary judgment to submit a "Statement of Material Facts" which shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. N.D.N.Y.L.R. 7.1(a)(3). The failure of a moving party to file a properly supported Local Rule 7.1 Statement of Material Facts is fatal to a summary judgment motion. *Riley v. Town of Bethlehem,* 5 F.Supp.2d 92, 93 (N.D.N.Y.1998)

Once a properly supported Local Rule 7.1(a)(3) statement is submitted, the Local Rules require that the party opposing summary judgment file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue a rises. The non-

movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party. *Id.*

The responding Statement of Material Facts is not a mere formality, and the Courts of the Northern District apply this rule strictly. *N.Y. Teamsters Conference Pension & Retirement Fund v. Express Servicess, Inc.,* 426 F.3d 640, 648-49 (2d Cir.2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998)(*per curiam* )(accepting as true material facts contained in unopposed local rule statement of material facts); *Meaney v. CHS Acquisition Corp.,* 103 F.Supp.2d 104, 108 (N.D.N.Y.2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth no citations-specific or otherwise-to the record"); *McKnight v. Dormitory Auth. of State of N.Y.,* 189 F.R.D. 225, 227 (N.D.N.Y.1999)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); *Osier v. Broome County,* 47 F.Supp.2d 311, 317 (N.D .N.Y.1999) (deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

**\*3** Because both parties in this case have failed to follow the necessary procedural steps for this motion, it must be denied.

Defendant Lemm did not submit an affidavit with his motion papers, his memorandum of law does not contain a table of contents, and, wherever possible, parallel citations, and the paragraphs in his Material Statement of facts are unnumbered.

The plaintiff's response to the defendant Lemm's Statement of Material Facts consisted of a one sentence, general denial thereof. No record supported these denials, and this document does not meet the Local Rule requirements for opposing the defendant Lemm's Statement of Material Facts. Plaintiff's Memorandum of Law was made "in opposition to defendants' motions for summary judgment," however, the court was

unable to discern any mention of defendant Lemm's alleged actions in this memorandum.

This is precisely the scenario to which the Local Rules are aimed. In requiring full and strict compliance with these rules, the court is not splitting hairs. Local Rule rules have a crucial function. They were drafted to force litigants to focus sharply on the specific factual issues in dispute. By doing this, and providing precise citations to the record where the disputed, or undisputed, facts are located, both the parties and the court can move immediately to the gravamen of the case; absent this forced focus, the parties' briefs can remain, as is often the case, as "two ships passing in the night." *Cossack v. Burns,* 970 F.Supp. 108, 111 (N.D.N.Y.1997); see also *Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995) (stating that local rules "serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way-thus facilitating its judgment of the necessity for trial.").

If compliance with the Local Rules can be accomplished with the minimal statements provided here, any benefits inuring from them would be completely eviscerated.

Accordingly, because of both parties' counsels' non-compliance with the Local Rules practice for summary judgment procedure, defendant Lemm's motion for summary judgment is DENIED WITHOUT PREJUDICE, with leave to renew within thirty (30) days from the date of this decision and order.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 655628

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 25 of 57

2018 WL 1211111
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javell FOX, Plaintiff,
v.
Superintendent LEE, et al., Defendants.

No. 9:15-CV-0390 (TJM/CFH)
|
Signed 02/05/2018

**Attorneys and Law Firms**

Javell Fox, 12-B-1626, Attica Correctional Facility, Box 149, Attica, New York 14011, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, OF COUNSEL: MARIA E. LISI-MURRAY, ESQ., ADRIENNE J. KERWIN, ESQ., Assistant Attorneys General, The Capitol, Albany, New York 12224, Attorney for Defendants.

**REPORT-RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1** Plaintiff pro se Javell Fox ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Superintendent ("Supt.") Lee, DOCCS Commissioner ("Comm.") Anthony Annucci, Correction Deputy Superintendent of Administration ("Deputy Superintendent") Wendland, Correction Deputy Superintendent Security ("DSS") Russo, Deputy Calao, Captain ("Capt.") Webbe, Lieutenant ("Lieut.") Madison, Lieut. Simmons, Lieut. Sullivan, Sergeant ("Sgt.") Bey, Sgt. Connor, Sgt. Vanacore, Sgt. Barg, Corrections Officer ("C.O.") Kozak, C.O. Waugh, C.O. Miller, C.O. Henry, C.O. Williamson, C.O. S. Cruz, Corrections Steward C. Jennings, and Corrections Steward Diane Labatte—who at all relevant times, were employed at Eastern Correctional Facility ("Eastern")—violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments. Dkt. No. 76 ("Am. Compl."). Presently pending before the Court are plaintiff's Motion for Summary Judgment [2] pursuant to

Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56 and defendants' Cross-Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c). Dkt. Nos. 111, 118. [3]

On July 27, 2017, defendants opposed plaintiff's motion on the grounds that (1) it was premature, as discovery had not yet concluded; and (2) plaintiff's motion failed to comply with N.D.N.Y. Local Rules 7.1(a)(1), (a)(3). Dkt. No. 112. [4] Out of "extreme solicitude" to plaintiff pro se, the Court "accepted for filing plaintiff's enlarged Memorandum of Law ... that contains his statement of material facts within," and directed defendants to file a supplemental response. Dkt. No. 113. On August 9, 2017, plaintiff filed a reply. Dkt. No. 116. On August 18, 2017, defendants filed a supplemental response in opposition to plaintiff's Motion for Summary Judgment, and cross-moved for dismissal pursuant to Fed. R. Civ. P. 12(c). Dkt. No. 118. Plaintiff filed a reply to defendants' cross-motion. Dkt. No. 123. For the following reasons, it is recommended that plaintiff's Motion for Summary Judgment be denied, and defendants' Cross-Motion to Dismiss be denied.

**I. Arguments**

**A. Plaintiff's Motion for Summary Judgment**

**\*2** In support of his Motion for Summary Judgment, plaintiff filed a Statement of Material Facts. [5] On review of plaintiff's Motion for Summary Judgment, the facts will be related herein in the light most favorable to defendants as the nonmoving parties. See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record ... to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

**1. Free Exercise of Religion and Freedom of Expression**

On or about November 7, 2014, Lieut. Madison directed plaintiff to cut his hair because it was "shaved on the sides and dreadlocked in a Mohawk style." Dkt. No. 111-1 ("Pl.'s Mem. of Law") ¶ 1. Plaintiff refused, citing his right to freedom of expression and free exercise of religion. Id. On November 9, 2014, Lieut. Madison directed non-party C.O. Skred to issue

Case 9:18-cv-00336-AMN-TWD     Document 61     Filed 11/02/21     Page 26 of 57

Fox v. Lee, Not Reported in Fed. Supp. (2018)

plaintiff a misbehavior report charging him with refusing a direct order (106.11). Id. ¶¶ 2, 3. On or about November 11, 2014, Lieut. Simmons conducted a disciplinary hearing and found plaintiff not guilty, "acknowledg[ing] that the charge was unconstitutional and that plaintiff had a right to exercise his religion and a freedom of expression, equal protection of the law[,] and religious rights under the Religious Land Use and Institutionalized Persons Act of 2000." Id. ¶ 4.

On November 29, 2013, Lieut. Madison complained to C.O. Cruz about Lieut. Simmons' not guilty disposition at the November 2014 disciplinary hearing. Pl.'s Mem. of Law ¶ 5. C.O. Cruz informed Lieut. Madison that the next time he saw plaintiff, he would write him another misbehavior report because of his hairstyle. Id. On December 7, 2014, C.O. Cruz "abandoned his post" supervising inmates "on the other side of the jail" and directed C.O. Williamson and C.O. Waugh to frisk plaintiff. Id. ¶¶ 6, 7, 8. C.O. Williamson "pat frisked and strip frisked" plaintiff by forcing him "to remove his religious headgear and shake his hair out." Id. ¶ 11. After the frisk, C.O. Williamson and C.O. Waugh instructed plaintiff to return to his cell. Id. ¶ 12. Five minutes later, C.O. Williamson arrived to search plaintiff's cell. Id. ¶ 13. C.O. Williamson informed plaintiff that his cell was being searched because of plaintiff's hairstyle. Id. C.O. Waugh issued plaintiff a misbehavior report for "altered pants" and refusing to cut his hair. Id. ¶ 14. Lieut. Simmons commenced a disciplinary hearing [6] as to the December 7, 2014 misbehavior report and found plaintiff guilty of altered pants and not guilty of refusing a direct order. Id. ¶ 16. As to plaintiff's not guilty disposition, Lieut. Simmons stated that "plaintiff ha[d] a constitutional right to wear a Mohawk hairstyle and said hairstyle posed no threat to the safety, security[,] and order of the facility." Id. Plaintiff informed Lieut. Simmons on the record that he had been retaliated against for a "favorable hearing," and that Lieut. Simmons was not supposed to find him guilty of altered pants. Id. Lieut. Simmons sentenced plaintiff to thirty days keeplock, [7] and thirty days loss of commissary, recreation, packages and phone privileges. Id. ¶ 17.

**\*3** As part of a grievance investigation, [8] Supt. Lee assigned Capt. Webbe to investigate plaintiff's claims of harassment by C.O. Waugh, C.O. Williamson, C.O. Cruz, and Lieut. Madison. Pl.'s Mem. of Law ¶ 20. Capt. Webbe "covered up" C.O. Waugh, C.O. Williamson, C.O. Cruz, and Lieut. Madison's conduct. Id. ¶ 21. Capt. Webbe affirmed that there was no official misconduct, and that Sgt. Connor gave the officers permission to frisk plaintiff and search his cell.

Id. ¶ 22. As part of a grievance investigation, [9] Supt. Lee assigned DSS Russo to investigate Capt. Webbe's "covering up official misconduct." Id. ¶ 24. DSS Russo "covered up" any misconduct of lower-level officers. Id. Supt. Lee also "covered up" the misconduct of his subordinates. Id. ¶ 27. On January 30, 2015, C.O. Kozak issued plaintiff a "frivolous misbehavior report" in retaliation for plaintiff's grievance against C.O. Cruz. Id. ¶ 56.

Lieut. Madison ordered plaintiff to remove his "religious headgear," and directed Sgt. Vanacore to issue plaintiff a misbehavior report for his hairstyle. Pl.'s Mem. of Law ¶ 68. On March 6, 2015, C.O. Cruz and C.O. Miller also wrote plaintiff a misbehavior report for his hairstyle. Id. ¶¶ 69, 147. Both misbehavior reports charged plaintiff with untidy person (118.30), and refusing a direct order (106.11). Id. ¶ 70. On or about May 2, 2015, Lieut. Madison approached plaintiff's cell and remarked that he "can't believe plaintiff still got [sic] that stupid haircut." Pl.'s Mem. of Law ¶ 120. Lieut. Madison directed non-party Lieut. Geminez to write plaintiff a misbehavior report. Id. Eventually, plaintiff suffered a "mild heart attack" due to the "stress [of] retaliation." Id. ¶ 118.

On or about June 1, 2015, non-party C.O. Calotti issued plaintiff a misbehavior report for "having magazines and books." Pl.'s Mem. of Law ¶ 144. One of these magazines was a religious magazine. Id. ¶ 145. On or about June 12, 2015, Lieut. Simmons sentenced plaintiff to thirty days keeplock. Id. When plaintiff explained that he had a constitutional right to have books, magazines, and religious reading material, Lieut. Simmons told him to "take it up with the court [because] he don't [sic] care." Id. ¶ 146. On or about June 16, 2015, Dep. Russo denied plaintiff permission to attend Ramadan services, fast, and "brotherhood with fellow prisoners as plaintiff is registered N.O.I." Id. ¶ 125.

On or about July 18, 2015, plaintiff was released from keeplock. Pl.'s Mem. of Law ¶ 130. During a pat frisk, [10] Sgt. Bey questioned plaintiff about the instant lawsuit. Id. ¶ 133. On or about August 2, 2015, Sgt. Barg and non-party C.O. Krantz planted marijuana on plaintiff. Id. ¶ 134. Sgt. Barg placed plaintiff in protective custody so that he would be unable to access his property to prepare for the disciplinary hearing. [11] Id. ¶ 135. After the hearing, [12] Sgt. Barg released plaintiff from protective custody. Id. ¶ 138. Sgt. Barg informed plaintiff that "he planted the marijuana

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 27 of 57

and had Officer Krantz make the report and that he got the marijuana from the locker. Id. ¶ 139. Plaintiff received fifty days keeplock stemming from this incident. Id. ¶ 141.

On a date plaintiff does not specify, Lieut. Madison harassed plaintiff about his religious headgear and forced him to remove it. Pl.'s Mem. of Law ¶ 142. Lieut. Madison called plaintiff an "idiot" for wearing the religious headgear. Id.

### 2. Conditions of Confinement

While plaintiff was in keeplock, C.O. Henry, Sgt. Vanacore, and non-party C.O. Cotton refused to unlock plaintiff's cell door so that he could receive his meals. Pl.'s Mem. of Law ¶ 28. Because there were no food slots at ground level, plaintiff had to climb to the top of the cell bars and "slide his open food tray ... through the top of the ceiling" to retrieve his meals each day. Id. ¶¶ 28, 32. To fit through the slot, plaintiff had to remove the lid on his food tray, often resulting in paint chips falling from the ceiling into his food. Id. ¶ 32. C.O. Henry harassed plaintiff, calling him a "monkey" as he climbed to retrieve his food. Id. ¶ 28. On December 23, 2014, plaintiff fell while climbing to retrieve his meal. Id. ¶ 33. Plaintiff was hospitalized for three days with a "damaged [ ] lower back," and walked with a cane for six weeks. Id. ¶ 34. Plaintiff was released to a cell that did not require him to "use the steps,"[13] but was soon transferred back to his old cell conditions. Id. ¶¶ 35, 37. Eventually, plaintiff was transferred to a cell with a ground-level "feed up slot." Id. ¶ 41.

**\*4** While keeplocked, plaintiff was subjected to "nearly two weeks" of extreme cold weather, as "civilians" repaired holes in the windows. Pl.'s Mem. of Law ¶ 42.[14] Corrections officers did not provide plaintiff with additional blankets or clothing, and the heat was off. Id. ¶ 42. Corrections officers denied plaintiff cleaning products to clean the feces, urine, and spit stains in his cell's toilet and sink. Id. ¶ 44. Capt. Webbe directed Sgt. Bey to "threaten plaintiff to cut his hair or receive a Tier III misbehavior report." Pl.'s Mem. of Law ¶ 74. Sgt. Bey subsequently issued plaintiff a Tier III misbehavior report. Id. ¶ 77.[15]

### 3. Sexual Harassment

On January 26, 2015, plaintiff was transferred to Eastern's west wing. Pl.'s Mem. of Law ¶ 47. The next day, C.O. Cruz

escorted plaintiff to a mental health counseling session. Id. ¶¶ 50, 51. On the return escort, C.O. Cruz brought plaintiff to a secluded area and "sexually frisked" him. Id. ¶ 51. C.O. Cruz "began to go up plaintiff's testicle and penis as he searched plaintiff's body, he pulled plaintiff's legs in a way to seem as if he was being kinky and a dominatrix." Id. ¶ 52. On February 12, 2015, while escorting plaintiff to his disciplinary hearing, C.O. Cruz conducted a pat frisk, in which he "pulled the back of plaintiff's pants down[,] [caressed] plaintiff's thighs, [ ] grinded his penis against plaintiff's buttocks, groped plaintiff's penis and testicles, and then stated, 'I forgot your pussy hurts.' " Id. ¶ 58. At an unspecified date, while Supt. Lee made his rounds, plaintiff requested a transfer from C.O. Cruz's housing unit; Supt. Lee refused the transfer request. Id. ¶ 63. C.O. Cruz's "perverted" behavior continued, and, on various occasions, he opened plaintiff's cell door while plaintiff was naked, which would allow other inmates to observe plaintiff naked. Id. ¶ 62.[16] At an unspecified date, C.O. Cruz instructed plaintiff to "get the fuck on the wall." Pl.'s Mem. of Law ¶ 105. Plaintiff complied, and C.O. Cruz "pull[ed] plaintiff's pants up into the crack of [his] buttock[s], kick[ed] plaintiff's feet, rub[bed] his hands up plaintiff's penis[,] and then banged plaintiff's head on the wall." Id. ¶ 106. That same day, C.O. Cruz ordered plaintiff to return to his cell, and denied plaintiff recreation. Id. ¶ 107. C.O. Cruz told plaintiff that he "can't wait" until plaintiff was transferred to another jail so that "he could get plaintiff stabbed the fuck up." Id. ¶ 108.

### 4. Due Process

Lieut. Simmons conducted a hearing[17] and informed plaintiff that "his supervisors told him to find [plaintiff] guilty." Id. ¶ 72. Deputy Superintendent Wendland conducted a Tier III hearing[18] as to Sgt. Bey's misbehavior report, and incorrectly stated that plaintiff's hair was "braided and in locks." Id. ¶ 79. At Deputy Superintendent Wendland's hearing, plaintiff produced a prison counselor as a witness, who testified that plaintiff wore his hair in "locks." Id. Plaintiff informed Deputy Superintendent Wendland that his hairstyle was "a part of his religious practice." Id. ¶ 77.[19] Deputy Superintendent Wendland found plaintiff guilty for refusing to cut his hair "after ... [Sgt. Bey] told her that Captain Webbe sent him to threaten [plaintiff]." Id. ¶ 82. Sgt. Vanacore issued plaintiff a misbehavior report for refusing a direct order to cut his hair. Pl.'s Mem. of Law ¶ 109-10. Lieut. Simmons conducted a Tier II disciplinary hearing, and found

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 28 of 57

Fox v. Lee, Not Reported in Fed. Supp. (2018)

plaintiff guilty "because his supervisors told him to[ ]." Id. ¶¶ 110-11. [20]

**\*5** On or about April 27, 2015, plaintiff received a misbehavior report for refusing a direct order and violation of grooming standards. Pl.'s Mem. of Law ¶ 124. Lieut. Sullivan conducted a disciplinary hearing, [21] and stated that "he knows it's nothing wrong with [plaintiff's] hair, but [he] should cut it because Lt. Madison don't [sic] like it." Id. Lieut. Sullivan sentenced plaintiff to thirty days in keeplock, in addition to the five months he already served. Id.

On or about May 15, 2015, Capt. Webbe conducted a disciplinary hearing, [22] and stated that "Supt. Lee sent him to hold the hearing so that he could skim [23] plaintiff real good." Pl.'s Mem. of Law ¶ 121. Capt. Webbe found plaintiff guilty, and sentenced him to four months keeplock and four months loss of phone, commissary, packages, and property. Id. ¶ 122. Capt. Webbe ordered plaintiff to surrender his Koran, religious paperwork and newspapers, and books and magazines. Id. ¶ 123.

On June 18, 2015, plaintiff was scheduled to be released from keeplock, but Lieut. Simmons changed his release date to July 18, 2015. Pl.'s Mem. of Law ¶ 128. Due to continued extensions for reasons plaintiff does not specify, plaintiff spent an additional seventy-two days in keeplock past his release date. Id. ¶ 129.

### 5. Access to the Courts

Ms. Labatte and Mr. Jennings, both "corrections stewards," refused to give plaintiff "copies," despite plaintiff's indigent status. Pl.'s Mem. of Law ¶ 97. Plaintiff requested copies "for months to do [an] Article 78 for misbehavior reports plaintiff received, and because of the denial, plaintiff has missed the [four] month deadline." Id. ¶ 98. Deputy Calao, Mr. Jennings, and Ms. Labatte continued to deny plaintiff "copies," and because of those denials, plaintiff "lost a non-frivelous [sic] claim." Id. ¶ 143.

### 6. Defendants' Response in Opposition

In opposition, defendants argue that (1) plaintiff failed to provide a complete and accurate statement of material

facts pursuant to N.D.N.Y. Local Rule 7.1(a)(3); and (2) plaintiff's submissions fail to establish his entitlement to summary judgment. Dkt. No. 118-3 ("Def.'s Mem. of Law") at 3-4. Defendants deny the majority of plaintiff's allegations, admitting only that (1) plaintiff filed a grievance on December 10, 2014; (2) Capt. Webbe found no official misconduct following an investigation regarding a frisk and search of plaintiff's cell; (3) plaintiff filed a complaint requesting to be removed from Eastern's west wing following harassment from C.O. Cruz; (4) on March 6, 2015, C.O. Cruz issued plaintiff a misbehavior report; (5) plaintiff received a misbehavior report for possession of property in an unauthorized area, contraband, and providing false statements/information; and (6) C.O. Miller co-signed a misbehavior report against plaintiff. Dkt. No. 118-1 at 3, 4, 5, 6, 10. Defendants allege plaintiff injured his back by falling off of a chair and slipping on ice. Id. at 4. Defendants further contend that the temperature in west wing was not ten degrees, as plaintiff alleges, but rather "estimated to be 67-71 degrees." Id. Defendants argue that plaintiff was not moved to the west wing out of retaliation, as he suggests; rather, plaintiff was "in keeplock status pending a disciplinary hearing for altering the waistband of all his pants such that contraband could be hidden." Id. at 5.

**\*6** In reply, plaintiff argues that (1) this Court "excused" his failure to comply with Local Rule 7.1(a)(3); and (2) he establishes his entitlement to summary judgment on all of his claims. Dkt. No. 123-2 at 3-4. Plaintiff also contends that defendants' cross-motion to dismiss should be denied because they failed to "properly refute" plaintiff's motion for summary judgment. Id. at 13-14.

### B. Defendants' Cross-Motion to Dismiss

Defendants cross-move for dismissal pursuant to Fed. R. Civ. P. 12(b)(c), arguing that (1) plaintiff failed to "allege facts sufficient to state a claim, much less prove one"; and (2) plaintiff failed to exhaust his administrative remedies. Def.'s Mem. of Law at 19-20. In opposition, plaintiff argues that defendants' cross-motion should be denied because (1) defendants failed to "properly refute plaintiff's motion for summary judgment"; (2) plaintiff alleges facts sufficient to state a claim; and (3) plaintiff exhausted his administrative remedies, and in the alternative, administrative remedies were unavailable. Dkt. No. 123-3 at 13-14.

## II. Legal Standards

### A. Summary Judgment Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law....

**\*7** Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Motion to Dismiss under Fed. R. Civ. P. 12(c)

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw, 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005)). The Court is required to "accept[ ] as true the complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor." Id. However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible....") (citations omitted).

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 30 of 57

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). Although a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

### C. N.D.N.Y Local Rule 7.1(a)(3)

N.D.N.Y. Local Rule 7.1(a)(3) requires a party moving for summary judgment to file and serve a Statement of Material Facts. See N.D.N.Y. L.R. 7.1(a)(3). "The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." Id. The opposing party is required to file a response to the Statement of Material facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." Id. "Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id. (emphasis omitted).

**\*8** A court is not required to "perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002). The Local Rules are not "empty formalities," and courts within this District have routinely denied a party's motion for summary judgment based on their failure to file a Statement of Material Facts. See Jackson v. Broome Cty. Corr. Facility, 194 F.R.D. 436, 437 (N.D.N.Y 2000) (denying the defendant's motion for summary judgment for failure to comply with the Local Rules); Monroe v. Critelli, No. 9:05-CV-1590 (FJS/GHL), 2008 WL 508748, at *2-3 (N.D.N.Y. Feb. 21, 2008) (same); Kele v. Middaugh, No. 9:04-CV-0377 (TJM/GHL), 2006 WL 1313348, at *2 (N.D.N.Y. May 12, 2006) (same); see also Lore v. City of Syracuse, No. 5:00-CV-1833, 2007 WL 655628, at *1 (N.D.N.Y. Feb. 26, 2007) (internal quotation marks and citation omitted) ("The Local Rules are not empty formalities[,] ... serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments

in an organized way—thus facilitating its judgment of the necessity for a trial. Each of these functions is critical. A party's failure to comply with these rules is fundamentally unfair to the opposing party.").

### III. Discussion [24]

### A. Procedural Issues

### 1. Statement of Material Facts

Plaintiff failed to submit a Statement of Material Facts in conjunction with his Motion for Summary Judgment; instead, his memorandum of law contains a "Facts" section with numbered paragraphs. Pl.'s Mem. of Law at 4-39. In opposition, defendants argued, in part, that plaintiff's failure to provide a Statement of Material Facts pursuant to Local Rule 7.1(a)(3), and that his motion should be denied on that ground. Dkt. No. 112 at 7. On August 1, 2017, the undersigned issued a Text Order stating that, "[o]ut of extreme solicitude to plaintiff's pro se status, the Court accepts for filing plaintiff's enlarged ... Memorandum of Law for filing that contains his statement of material facts within." Dkt. No. 113. Defendants now renew this argument, contending that plaintiff's "factual statement is insufficient and improper and therefore, defendants cannot properly respond as required by the Local Rules." Def.'s Mem. of Law at 3. In deference to plaintiff's pro se status, the undersigned does not recommend dismissal of plaintiff's motion on this ground. See Bulter v. Hyde, No. 9:08-CV-0299 (LEK/GHL), 2009 WL 3164753, at *3 (N.D.N.Y. Sept. 29, 2009) (declining to recommend dismissal of the pro se plaintiff's Motion for Summary Judgment due to the plaintiff's failure to file an "accurate and complete" Statement of Material Facts). Therefore, the undersigned will review the summary judgment record, and inconsistent and unsupported facts contained in plaintiff's facts section will not be accepted as true. See, e.g., McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999) ("Thus, the Court deems the portions of [d]efendants 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted.").

Insofar as plaintiff argues that defendants failed to properly refute his facts section, the undersigned concludes that defendants' response "mirror[s] the movant's [facts] by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 7.1(a)

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 31 of 57

(3); Dkt. No. 118-1. For each denial, defendants set forth a specific citation to the record. See Dkt. No. 118-1. Therefore, the undersigned determines that defendants properly refuted plaintiff's facts section.

### 2. Prematurity of Summary Judgment Motion

In their July 27, 2017 submission, defendants argue that plaintiff's Motion for Summary Judgment is premature because defendants have not completed discovery. Dkt. No. 112 at 5. Plaintiff contends that the motion is not premature because in the "2015 order[,] the Court directed defendants to take plaintiff[']s depositions and defendants willfully failed to." Dkt. No. 123-2 at 3 n.1.

**\*9** Generally, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). However, "[t]he nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (citing Celotex Corp., 477 U.S. at 326, 106 S.Ct. 2548). "Under Rule 56(f), summary judgment 'may be inappropriate where the party opposing it shows ... that he cannot at the time present facts essential to justify his opposition." Id. (citing FED. R. CIV. P. 56(e) advisory committee's note to 1963 amendment). Nevertheless, a "trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery." Id. (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290-99, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

Plaintiff commenced this action on April 2, 2015. Dkt. No. 1 ("Compl."). The Mandatory Pretrial Discovery and Scheduling Order directed that all discovery be completed before April 5, 2016. Dkt. No. 33 at 4. On February 2, 2016, plaintiff filed a motion to amend his complaint and submitted his mandatory disclosures. Dkt. Nos. 42, 43. On April 1, 2016, plaintiff filed a second motion to amend his complaint. Dkt. No. 55. On July 27, 2016, the undersigned issued a Text Order denying plaintiff's February 2, 2016 leave to file a motion to amend, and acknowledging that his April 1, 2016 motion to amend would be reviewed by the Court. Dkt. No. 65. On May 19, 2016, defendants filed a letter motion requesting an extension of the April 5, 2016 discovery deadline "to depose the plaintiff after a decision is

rendered on the plaintiff's motion to amend his complaint." Dkt. No. 60. On June 2, 2016, the undersigned issued a Text Order resetting the discovery deadline to June 30, 2016, and staying defendants' motion to extend the discovery deadline until the undersigned decided plaintiff's motion to amend. Dkt. No. 61. On December 19, 2016, the undersigned granted plaintiff's April 1, 2016 motion to amend his complaint. Dkt. No. 75. The undersigned set new answer deadlines, and new defendants were served. Text Min. Entry dated Dec. 19, 2016. On June 14, 2017, plaintiff filed a motion to supplement his complaint. Dkt. No. 105. On June 19, 2017, the undersigned issued a Text Order directing that all discovery be completed by October 2, 2017. Dkt. No. 106. On June 29, 2017, plaintiff advised the Court that he would not be submitting a second amendment to his complaint. Dkt. No. 109. On July 17, plaintiff moved for summary judgment. Dkt. No. 111.

Defendants argue that due to (1) the June 2, 2016 stay of discovery; (2) the December 19, 2016 grant of plaintiff's motion to amend; and (3) plaintiff's indication that he wanted to further supplement his complaint, they did not have ample opportunity to depose plaintiff. Dkt. No. 112-1 ¶¶ 39-41. In light of the fact that plaintiff's case has been pending for over two years, in the interest of judicial efficiency, the undersigned declines to recommended dismissal of plaintiff's Motion for Summary Judgment on the basis that it is premature. Defendants are not prejudiced by such conclusion as the undersigned recommends plaintiff's Motion for Summary Judgment be denied. See Young v. Benjamin Dev. Inc., 395 Fed.Appx. 721, 723 (2d Cir. 2010) (summary order) ("Even if Young had been granted the discovery he sought, it would not have changed the outcome of this matter."); Davidson v. Talbot, No. 9:01-CV-0473, 2005 WL 928620, at *16 (N.D.N.Y. Mar. 31, 2005) ("Moreover, limited discovery that may possibly address the issue of exhaustion would not shed any further light on the merits of his constitutional claims, which the Court has already found to be frivolous and lacking merit."). Therefore, it is recommended that defendants' Motion to Dismiss be denied on this ground.

### 3. Exhaustion

**\*10** Defendants contend that plaintiff failed to exhaust his administrative remedies prior to commencing this action. Def.'s Mem. of Law at 20-22. Plaintiff argues that he fully exhausted his administrative remedies. Dkt. No. 123-2 at 4 n.3, 13. Plaintiff claims that he appealed his grievance

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 32 of 57

alleging retaliation and harassment to CORC on or about January 2, 2015. Id. at 14. When CORC failed to render a decision within the requisite time frame, he initiated the present action in federal court, "as he was being abused and had no other avenue." Id. Additionally, plaintiff contends that, as to his Eighth Amendment conditions of confinement claims, the grievance supervisor refused to forward his grievances to "administrative [sic] at the highest channels, and when plaintiff attempted to forward [them] [himself], the mail clerks discarded [the mail] so plaintiff was blocked." Pl.'s Mem. of Law ¶ 30.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016). [25]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 4. Did Plaintiff Exhaust his Administrative Remedies?

**\*11** There is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5. [26] "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216, 127 S.Ct. 910. Nevertheless, failure to exhaust may be the basis for dismissal on a motion to dismiss for failure to state a claim. See id. It is well-settled that:

> If non[-]exhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted.

> If non[-]exhaustion is not clear from the face of the complaint, a defendant's motion should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused.

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 33 of 57

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Scott v. Gardner, 287 F.Supp.2d 477, 485 (S.D.N.Y. 2003) (internal quotation marks omitted) (quoting McCoy v. Goord, 255 F.Supp.2d 233, 248 (S.D.N.Y. 2003)).

> If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a [Rule] 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes.

Trapani v. Pullen, No. 9:14-CV-00556 (TJM/TWD), 2016 WL 1295137, at *6 (N.D.N.Y. Feb. 18, 2016) (internal quotation marks and citations omitted). To the extent that plaintiff discusses possible exhaustion, both his complaint and his amended complaint reference filing grievances, but do not comment on the status of those grievances or the level they were at in the administrative process. See generally Compl.; Am. Compl. [27] Because plaintiff has said "little" regarding exhaustion his complaints, non-exhaustion is not "readily apparent" from the face of his complaint. See Trapani, 2016 WL 1295137, at *6; Morgan v. Ward, No.1:14-CV-7921-GHW, 2016 WL 427913, at *1 (S.D.N.Y. Feb. 2, 2016) ("Because exhaustion of remedies is an affirmative defense, and the plaintiff's failure to exhaust his remedies is not apparent on the face of the complaint, the motion to dismiss the action in its entirety is denied."); cf. Lewis v. Hanson, No. 9:16-CV-804 (MAD/TWD), 2017 WL 4326084, at *3 (N.D.N.Y Sept. 28, 2017) ("In his July 5, 2016 complaint, Plaintiff states that his 'grievance is pending.' Therefore, it is clear from the face of the complaint that Plaintiff had not exhausted his administrative remedies at the time he initiated this action."); Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *4 (N.D.N.Y. Apr. 8, 2015) (establishing that because the plaintiff's complaint stated "grievance is still pending," it was clear from the face of the complaint that the plaintiff had not exhausted his administrative remedies).

**\*12** As non-exhaustion is not clear from the face of plaintiff's complaint, in order to consider the documents defendants attach to their motion, defendants' motion must be converted to one for summary judgment for the limited purpose of determining exhaustion. See Gardner, 287 F.Supp.2d at 487. However, the Federal Rules require that this Court "ensure that the opposing party is given proper notice of the conversion." McCoy, 255 F.Supp.2d at 251 (citing Villante v. Dep't of Corr. of City of New York, 786 F.2d 516, 521 (2d Cir. 1986)). "Such notice is especially important when a plaintiff is pro se; the Second Circuit has required 'unequivocal notice' of conversion." Id. (citing Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir. 1983)). Defendants have not provided plaintiff with "unequivocal notice" of potential conversion; thus, the undersigned recommends that defendants' Motion to Dismiss be denied without prejudice, with the opportunity to renew by way of a combined motion to dismiss and motion for summary judgment limited to the issue of exhaustion, or, in the alternative, by way of an exhaustion hearing, should defendants request such a hearing. See Dawkins v. Jones, No. 03Civ.0068(DAB)(AJP), 2005 WL 196537, at *1 (S.D.N.Y. Jan. 31, 2005) (denying the defendants' motion to dismiss because non-exhaustion is unclear from the face of the complaint, and granting leave to renew as a combined motion to dismiss and for summary judgment).

**B. Merits Review of Motion for Summary Judgment**

**1. First Amendment**

Plaintiff contends that defendants violated his First Amendment rights by (1) infringing on his freedom of expression; (2) preventing him from freely exercising his religion; (3) subjecting him to retaliation; and (4) infringing on his right of access to the courts. Pl.'s Mem. of Law at 44-54, 69. Defendants argue that plaintiff fails to establish his entitlement to summary judgment. Def.'s Mem. of Law at 5-10.

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 34 of 57

## a. Freedom of Expression and Free Exercise Claims [28]

Plaintiff contends that Supt. Lee, DSS Russo, Lieut. Madison, Lieut. Simmons, Lieut. Sullivan, Deputy Superintendent Wendland, Capt. Webbe, Sgt. Bey, Sgt. Vanacore, Sgt. Barg, [29] C.O. Waugh, C.O. Miller, C.O. Williamson, and C.O. Cruz violated his First Amendment free exercise rights by "punish[ing] [him] for expressing his religious belief through his Mohawk hairstyle." Pl.'s Mem. of Law at 44, 49. The First Amendment protects the right to free exercise of religion. See generally 🟨 Cutter v. Wilkinson, 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." 🟨 Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing 🔲 Pell v. Procunier, 417 U.S. 817, 822 (1974)).

> To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective.

🟨 Farid v. Smith, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted). This right is not absolute and can be limited due to the inmate's "incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." 🟨 O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted); see also 🟨 Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990) ("The governing standard is one of reasonableness, taking into account whether the particular regulation ... is reasonably related to legitimate penological interests.") (citations omitted).

> The Turner Court determined that the four factors to be considered are: 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) what impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

**\*13** 🟨 Benjamin, 905 F.2d at 574 (citing Turner v. Safely, 483 U.S. 78, 89-91 (1987)).

### i. Sincerely-Held Belief

It is the plaintiff's burden to establish that "the disputed conduct substantially burdens his sincerely held beliefs." 🟨🅰 Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006) (citing 🟨 Ford, 352 F.3d at 591). However, in assessing whether a plaintiff's belief is sincerely held, courts may not "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." 🟨 McEachin v. McGuinnis, 357 F.3d 197, 201 (2d Cir. 2004) (quoting 🟨 Hernandez v. Comm'r, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)) (internal quotation marks omitted).

Defendants contend that they "have no ability to counter plaintiff's bald, conclusory statement of belief, or challenge whether his beliefs related to his hairstyle are 'religious in nature' with any admissible evidence" because of the lack of discovery. Def.'s Mem. of Law at 6. The undersigned agrees, and concludes that the record is insufficient to determine whether plaintiff has a sincerely-held belief in the Anunaki religion.

In 🟨 Singh v. Goord, the Second Circuit acknowledged the "difficulty of assessing the sincerity of an individual's

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 35 of 57

religious beliefs." Singh v. Goord, 520 F.Supp.2d 487, 499 (S.D.N.Y. 2007). Nonetheless, it concluded that the plaintiff had established the first prong of the test, as the evidence indicated that:

> 1) plaintiff was born a Sikh, was raised as a Sikh, and regularly attended Sikh services growing up; 2) plaintiff consistently expressed his belief in Sikhism since he was first incarcerated; and that 3) plaintiff has engaged in hunger strikes in protest of the denial of religious exercise, and has continued to adhere to the teachings of his religion, despite being punished for doing so.

Id.

Here, plaintiff offers no evidence as to the sincerity of his religious beliefs other than the conclusory allegation that his "religious belief is sincerely held as [he] is a member of the Anunaki religion." Pl.'s Mem. of Law at 44, 48-49; cf. Panayoty v. Annucci, 898 F.Supp.2d 469, 482-83 (N.D.N.Y. 2012) (concluding that the plaintiffs' detailed declarations explaining their religion's structure and belief system established that the religion was, "for First Amendment purposes, religious in [its] scheme of beliefs and such beliefs [were] sincerely held."). The record also does not sufficiently support plaintiff's allegation that his Mohawk hairstyle "is religious and represents in part higher conscious [and] resurrection," or that his hairstyle is otherwise related to his sincerely-held religious beliefs. Dkt. No. 123-2 at 5. Further, insofar as plaintiff claims that yoga magazines constitute religious materials, Pl.'s Mem. of Law ¶ 145—and their confiscation violated his constitutional rights—there is not enough information in the record to establish whether the yoga magazines relate to his faith to amount to religious reading materials.

**\*14** Moreover, unlike the plaintiff in Singh, there is no indication in the record that plaintiff "consistently expressed his belief ... since he was first incarcerated"; indeed, the record suggests the opposite. Singh, 520 F.Supp. at 499. In his amended complaint, plaintiff alleges that he is registered "N.o.I." ("Nation of Islam"), [30] and that the defendants

prevented him from "attend[ing] services for the month of Ramadan[,] for fasting[,] and Brotherhood with fellow prisoners." Am. Compl. at 40. Thus, plaintiff's amended complaint conflicts insofar as he indicates he is a member of the Nation of Islam in one portion of the complaint, and of the Anunkai religion in his Motion for Summary Judgment. Compare Am. Compl. at 40 ("N.o.I") with Pl.'s Mem. of Law at 44, 48-49 (member of Anunkai religion). Such inconsistencies in plaintiff's allegations create an issue of material fact regarding the religion with which plaintiff identified that cannot be decided on summary judgment. See Jordan v. Fischer, 773 F.Supp.2d 255, 262 (N.D.N.Y. 2011) ("Insofar as Jordan contends that he should be entitled to summary judgment on this claim, the court rejects that contention in light of the factual disputes and inconsistencies in Jordan's allegations."). Further, plaintiff has not established that he has a sincerely-held belief as a member of multiple religions. Therefore, the record is unclear as to whether plaintiff has a sincerely-held belief in the Anunaki religion.

#### ii. Legitimate Penological Purpose

Even if the undersigned concluded that plaintiff established a "sincerely-held belief" in the Anunaki religion, plaintiff's claim must be denied because defendants establish that they had a legitimate penological purpose. See Salahuddin, 467 F.3d at 274. Once a plaintiff has demonstrated a sincerely-held religious belief, the burden shifts to defendants to establish a legitimate penological purpose. See id. If a legitimate penological purpose is identified, the Court must then assess its reasonableness under the Turner factors set forth above. See subsection III.B.1.a., supra.

Assistant Commissioner for Correctional Facilities James A. O'Gorman and DSS Russo declared that DOCCS Directive 4914 regulates grooming standards as "hair styles can [ ] be used to hide or transport contraband, including but not limited to, drugs, weapons and unauthorized communications." Dkt. No. 119-14 ("O'Gorman Decl.") at 3; Dkt. No. 119-15. ("Russo Decl.") at 3. Thus, because "[p]reventing the smuggling of contraband, such as weapons and drugs, comports with the type of penological interests contemplated under the Turner ... standard," defendants have set forth a legitimate penological interest. Benjamin v. Coughlin, 905 F.2d 571, 578 (2d Cir. 1990). DSS Russo further declares that plaintiff's "disciplinary history has occasions where drugs and smuggling have occurred," and that plaintiff's hairstyle

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 36 of 57

"become[s] difficult to search when the need arises." Russo Decl. at 4. Plaintiff does not argue that defendants' alleged justification is pretextual, and the record does not support such a conclusion. See [img] Lowrance v. Coughlin, 862 F.Supp. 1090, 1103 (S.D.N.Y. 1994) ("Plaintiff has successfully demonstrated that the exercise of his First Amendment rights was a substantial factor motivating this transfer, and that the justification offered by the defendants was a pretext. During plaintiff's incarceration at Auburn, several incidents occurred demonstrating hostility by DOCS personnel toward plaintiff's exercise of his right to religious freedom and free speech."). Thus, plaintiff has not established that there is no genuine dispute as to any material fact to warrant summary judgment. FED. R. CIV. P. 56(a). Accordingly, it is recommended that plaintiff's Motion for Summary Judgment as to his freedom of expression and free exercise claims be denied.

**b. Retaliation**

Plaintiff contends that his "right to the freedom of speech to file grievances and civil suits is protected, [and] defendants took adverse action against [him] for filing grievances and civil suits about [their] violations of his freedom of expression by him wearing a Mohawk haircut and his free exercise of religion." Pl.'s Mem. of Law at 53.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]' " See, e.g., [img] Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting [img] Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by [img] Swierkiewicz v. Sorema, N. A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). A retaliation claim under [img] Section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. See [img] Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); [img] South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under [img] Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting [img] Gill

v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560, 122 S.Ct. 999). In order to prove an adverse action, a plaintiff must show that the defendant's " 'retaliatory conduct ... would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.... Otherwise, the retaliatory act is simply de minimis, and therefore outside the ambit of constitutional protection.' " [img] Roseboro v. Gillespie, 791 F.Supp.2d 353, 366 (S.D.N.Y. 2011) (quoting [img] Dawes, 239 F.3d at 292-93). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." [img] Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." [img] Barclay v. N.Y., 477 F.Supp.2d 546, 558 (N.D.N.Y. 2007).

**\*15** To satisfy the first element of a retaliation claim, a plaintiff must show that he engaged in a protected activity. See [img] Espinal, 558 F.3d at 128. The Second Circuit has concluded that use of the prison grievance system constitutes a protected activity. See [img] Gill, 389 F.3d at 384; [img] Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) ("Moreover, intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that [img] section 1983 is intended to remedy.") (alteration and internal quotation marks omitted); see also [img] Roseboro, 791 F.Supp.2d at 367 (finding that the filing of a grievance is a protected activity); [img] Mateo v. Fischer, 682 F.Supp.2d 423, 433 (S.D.N.Y. 2010) (same).

Plaintiff contends that: (1) on or about November 11, 2014, Lieut. Simmons conducted a disciplinary hearing and found plaintiff not guilty of refusing a direct order to cut his hair; (2) on November 29, 2014, Lieut. Madison "complain[ed] about plaintiff being found not guilty"; (3) C.O. Cruz "volunteered to assure that plaintiff [would] be punished"; (4) plaintiff filed a grievance against Lieut. Madison; (5) C.O. Cruz directed C.O. Williamson to write plaintiff a misbehavior report for refusal to comply with DOCCS Directive 4914 "out

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 37 of 57

of retaliation for plaintiff's grievances"; (6) on December 23, 2014, Sgt. Bey issued plaintiff a misbehavior report for his refusal to cut his hair "out of retaliation again after plaintiff was not found guilty on two occasions"; (7) on January 16, 2015, Deputy Superintendent Wendland conducted a misbehavior hearing and found plaintiff guilty for refusing to cut his hair; (8) C.O. Kozak issued plaintiff a frivolous misbehavior report for unspecified behavior; (9) C.O. Waugh subjected plaintiff to retaliatory searches "out of retaliation"; (10) Capt. Webbe, DSS. Russo, and Supt. Lee "refused to stop their subordinates and punished plaintiff out of retaliation for plaintiff's grievances"; (11) in April 2015, Lieut. Simmons conducted a disciplinary hearing and found plaintiff guilty of refusing a direct order to cut his hair; and (12) C.O. Miller, Sgt. Vanacore, and Sgt. Barg "punished plaintiff for refusing to cut his hair ... out of retaliation for plaintiff writing grievance [sic] and wearing a Mohawk hairstyle." Pl.'s Mem. of Law at 53-56.

Although plaintiff alleges that defendants retaliated against him because he filed grievances, plaintiff's own recitation of the facts also suggests that defendants retaliated against him because he was found not guilty at disciplinary proceedings, wore a Mohawk hair style, or some combination of the two. See Pl.'s Mem. of Law at 53-56. Thus, defendants' alleged motive is unclear. First, plaintiff has not established that his grievances were a "substantial or motivating factor" for defendants' alleged adverse action. Cole v. Fischer, 416 Fed.Appx. 111, 113 (2d Cir. 2011) (summary order) ("To show retaliation, [the plaintiff] was required to present evidence that his constitutionally protected conduct in filing past grievances was a substantial or motivating factor for a prison official's adverse action.") (citing Bennett v. Goord, 343 F.3d 122, 137 (2d Cir. 2003)). Second, to the extent that plaintiff suggests that his Mohawk hair style—which he wore as an expression of his religion—was the "substantial or motivating factor" for defendants' alleged adverse action, plaintiff must establish that "the disputed conduct substantially burden[ed] his sincerely[-] held religious beliefs." Washington v. Gonyea, 538 Fed.Appx. 23, 26 (2d Cir. 2013) (summary order). Even if it were clear that plaintiff was arguing that his religion was a substantial or motivating factor for defendants' conduct, because plaintiff has not demonstrated that he has a sincerely-held religious belief, he cannot show defendants' conduct "burdened" a sincerely-held religious belief. Washington, 538 Fed.Appx. at 26. Thus, plaintiff fails to demonstrate that his religion, through his hair style, was a substantial or motivating factor for defendants' conduct. Finally, insofar as plaintiff suggests

that his "not guilty" disposition at a disciplinary hearing was a substantial and motivating factor for defendants' conduct, such circumstantial evidence may establish a causal connection between a plaintiff's conduct and a defendant's adverse action, but does not constitute protected conduct. See Barclay, 477 F.Supp.2d at 558 ("Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, *finding of not guilty at the disciplinary hearing,* and statements by defendants as to their motives.") (emphasis added). Accordingly, it is recommended that plaintiff's Motion for Summary Judgment as to his retaliation claims be denied.

### c. Access to the Courts

**\*16** Plaintiff contends that Deputy Calao violated his right of access to the courts by "refus[ing] to appoint [him] an inmate law clerk and instead forc[ing] [him] to use a book request system." Pl.'s Mem. of Law at 69-70. Plaintiff further contends that Mr. Jennings and Ms. Labatte delayed sending his appeal brief relating to a state court claim and denied him copies. Id.

### i. Inmate Law Clerk

Plaintiff contends that Deputy Calao knew that "plaintiff was keeplocked confined and couldn't physically get to the law library to do research and need[ed] a law clerk to assist him." Pl.'s Mem. of Law at 69. Instead, Deputy Calao "refused to appoint plaintiff [an] inmate law clerk and [ ] forced plaintiff to use a book request system making research very hard and time consuming." Id. Defendants argue that (1) plaintiff cannot allege actual injury; and (2) plaintiff does not have a constitutional right to an inmate law clerk. Def.'s Mem. of Law at 14-15.

The Supreme Court has held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); see also Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

This right is not unlimited and "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program was subpar in some theoretical sense." Lewis, 518 U.S. at 351, 116 S.Ct. 2174. Thus, to demonstrate an actionable injury, "a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." Vega v. Artus, 610 F.Supp.2d 185, 201 (N.D.N.Y. 2009) (citations omitted); see also Lewis, 518 U.S. at 351-52, 116 S.Ct. 2174 (explaining the actual injury requirement). Such injury must affect "a nonfrivolous legal claim [which] had been frustrated or was being impeded due to the actions of prison officials." Warburton v. Underwood, 2 F.Supp.2d 306, 312 (W.D.N.Y. 1998) (citations omitted); Shine v. Hofman, 548 F.Supp.2d 112, 117-18 (D. Vt. 2008) (explaining that actual injury "is not satisfied by just any type of frustrated legal claim because the Constitution guarantees only the tools that inmates need in order to attack their sentences ... and ... challenge the conditions of their confinement.") (internal quotation marks and citations omitted).

Plaintiff does not establish in non-conclusory terms that Dept. Calao deliberately and maliciously denied him legal assistance. See Pl.'s Mem. of Law at 71. Plaintiff solely argues that "[d]efendant[ ] Calao ... deliberately violated [his] right of access to the courts."). Moreover, the record lacks evidence of Dep. Calao's intent. Insofar as plaintiff contends that the book request system did not amount to legal assistance, courts tend to give "close scrutiny to ... remote control arrangements"—like book request systems—"[b]ecause of the practical difficulties in doing research without free access to a library." Griffin v. Coughlin, 743 F.Supp. 1006, 1023 (N.D.N.Y. 1990) (internal quotation marks and citation omitted). The Griffin Court found that a book request system failed to provide the plaintiffs with "meaningful, adequate access to the courts," relying on the plaintiffs' allegations that they were unable to "browse through materials in order to compare legal theories and formulate ideas," "experience[d] delays in receiving books," and "receive[d] books other than the ones they requested." Id. at 1023-24. The record here lacks such allegations. Plaintiff merely alleges that the book request system was "very hard and time consuming." Pl.'s Mem. of Law at 69. However, he does not contend that he was unable to obtain the legal materials he requested.

*17  Even assuming Deputy Calao acted deliberately and maliciously in denying plaintiff an inmate law clerk, the record does not establish that Deputy Calao's alleged denial resulted in actual injury. See Lewis, 518 U.S. at 351-52, 116 S.Ct. 2174 (explaining the actual injury requirement). Plaintiff's contentions that he "lost a civil suit against the City of Utica Police Department for brutality that [he] was unable to appeal because he had no help and was denied copies[,] [and] also [ ] was unable to do Article 78 to the Court" are not supported in the record. Pl.'s Mem. of Law at 70. Thus, it is unclear whether Deputy Calao impeded plaintiff's meritorious claim. As the record is unclear as to whether plaintiff suffered actual injury due to Deputy Calao's denial of an inmate law clerk, it is recommended that plaintiff's Motion for Summary Judgment as to his access to the courts claim against Deputy Calao be denied.

### ii. Interference with Legal Mail

Plaintiff contends that Mr. Jennings and Ms. Labatte "held [his] appeal brief for three weeks before mailing it and once the court received it, it was untimely and dismissed." Pl.'s Mem. of Law at 70. Plaintiff further claims that if Mr. Jennings and Ms. Labatte had "sent [his] appeal brief expeditiously as they supposed too [sic] plaintiff would have won his appeal and been released from prison." Id. Further, plaintiff contends that Mr. Jennings and Ms. Labatte denied him copies. Pl.'s Mem. of Law at 69-70. Defendants argue that plaintiff does not have a constitutionally-protected right to "expeditious mail delivery." Def.'s Mem. of Law at 15. [31]

"A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). To state a prima facie access to the courts claim based on interference with legal mail, the plaintiff must establish (1) that a prison official deliberately and maliciously interfered with his or her mail, and (2) that interference caused actual injury. Id. (citation omitted). Such injury must affect "a nonfrivolous legal claim [which] had been frustrated or was being impeded due to the actions of prison officials." Warburton, 2 F.Supp.2d at 312 (citations omitted). Without identification of the underlying action which was prejudiced, actual injury, and by extension a First Amendment violation, cannot be established. See Christopher v. Harbury, 536

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 39 of 57

U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) ("[T]
he underlying cause of action ... is an element that must be
described in the complaint, just as much as allegations must
describe the official acts frustrating the litigation.").

First, plaintiff has failed to establish, and there is no indication
in the record, that either Mr. Jennings or Ms. Labatte
deliberately or maliciously interfered with his mail. Plaintiff
makes no mention of Mr. Jennings or Ms. Labatte's conduct,
beyond the conclusory allegation that they continued to deny
plaintiff "copies," and because of those denials, plaintiff "lost
a non-frivolous [sic] claim." Pl.'s Mem. of Law ¶ 143. Second,
even if plaintiff had demonstrated intent, plaintiff has not
established actual injury. With regard to the "non-frivolous
[sic] claim," plaintiff claims that if Mr. Jennings and Ms.
Labatte had "sent [his] appeal brief expeditiously as they
supposed too [sic] plaintiff would have won his appeal and
been released from prison." Id. at 70. In support of that
contention, plaintiff proffers a letter dated December 25,
2014 that he contends he sent to Ms. Labatte concerning
"advance forms and mail" that Ms. Labatte was "holding" and
"slowing up [his] access to the court, legal support, and to
the statesmen." Dkt. No. 111-2 at 34. Plaintiff also proffers
an Appellate Division scheduling notice, dated April 9, 2015,
setting an appeal briefing schedule. Id. at 34. However, as
defendants argue, the Appellate Division scheduling notice
plaintiff submits is dated April 5, 2015; thus, the scheduling
notice cannot coincide with any lawsuit plaintiff referenced
in the December 25, 2014 letter to Ms. Labatte because the
scheduling notice is dated four months after the issue plaintiff
claims in his letter. Compare Dkt. No. 111-2 at 32 with
Dkt. No. 111-2 at 34. If the scheduling notice does coincide
with the issue plaintiff references in the December 25, 2014
letter, plaintiff has failed to demonstrate this connection.
Therefore, because plaintiff fails to identify the underlying
cause of action he alleges Mr. Jennings and Ms. Labatte have
prejudiced by denying him required copies and failing to
expeditiously send mail, it is recommended that plaintiff's
Motion for Summary Judgment as to his access to the courts
claim be denied.

### d. Access to Reading Materials

**\*18** As to plaintiff's claim about denial of access to
the remaining magazines, which he does not allege were
religious in nature, plaintiff contends that Capt. Webbe,
Lieut. Simmons, and Supt. Lee violated his constitutional
rights by denying him access to magazines. Pl.'s Mem. of

Law at 67. Plaintiff's claim, however, cannot stand because
inmates do not have a constitutional right to privileges such
as reading materials. See generally Montalvo v. Lamy, 139
F.Supp.3d 597, 605 (W.D.N.Y. 2015) ("[P]risoners have no
constitutional right to access a commissary."); Rosales v.
LaValley, No. 9:11-CV-106 (MAD/CFH), 2014 WL 991865,
at \*11 (N.D.N.Y. Mar. 13, 2014) ("It is well established that
prison inmates do not have a constitutional right to watch
television because the amenity is not considered a necessity
for inmates."). Plaintiff has no constitutional right to non-
religious magazines or other reading materials. Therefore, it is
recommended that plaintiff's Motion for Summary Judgment
is denied as to his denial of non-religious reading materials
claim.

### 2. Fourth Amendment

Plaintiff contends that Sgt. Connor, C.O. Williamson, and
C.O. Cruz violated his Fourth Amendment rights during a
search/strip search and cell search. Pl.'s Mem. of Law at
65-66. Defendants argue that "plaintiff cannot establish that [ ]
conduct by any defendant violated the Fourth Amendment."
Def.'s Mem. of Law at 12. The Fourth Amendment establishes
that "[t]he right of the people to be secure in their persons ...
against unreasonable searches and seizures[ ] shall not
be violated." U.S. CONST. amend. IV. Generally, inmates
are not afforded the same privacy rights as non-inmates
because "[l]oss of ... privacy [is an] inherent incident[ ] of

confinement." Bell v. Wolfish, 441 U.S. 520, 536, 99 S.Ct.
1861, 60 L.Ed.2d 447 (1979); see Nash v. McGinnis, 315
F.Supp.2d 318, 320 (W.D.N.Y. 2004) ("One of the incidents
of confinement for a convict is the loss of privacy, which
serves the legitimate purpose of retribution as well as the
institutional security needs of the prison system. We therefore
hold that 'society is not prepared to recognize as legitimate
any subjective expectation of privacy that a [convict] might
have in his prison cell.' ") (quoting Willis v. Artuz, 301
F.3d 65, 69 (2d Cir. 2002)). "Strip frisks pass constitutional
muster, even if the strip frisk is conducted without probable
cause, so long as the search is reasonable and not abusive."

Shabazz v. Pico, 994 F.Supp. 460, 473 (S.D.N.Y. 1998)

(citing Bell, 411 U.S. at 558-60, 93 S.Ct. 1713).
In assessing reasonableness under the Fourth Amendment,
"[c]ourts must consider the scope of the particular intrusion,
the manner in which it is conducted, the justification for

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 40 of 57

Fox v. Lee, Not Reported in Fed. Supp. (2018)

initiating it, and the place in which it is conducted." Bell, 441 U.S. at 558, 99 S.Ct. 1861.

### a. Cell Search

Insofar as plaintiff contends that Sgt. Connor, C.O. Williamson, and C.O. Cruz violated his Fourth Amendment rights during a cell search, "[t]he Supreme Court has held that searches of prison cells do not implicate protected constitutional rights; prisoners have no reasonable expectation of privacy within the confines of their cell." Leitzsey v. Coombe, 998 F.Supp. 282, 289 (W.D.N.Y. 1998) (citing Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)); DeMaio v. Mann, 877 F.Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, *even arbitrary searches*, implicate no protected constitutional rights.") (emphasis added). Therefore, it is recommended that plaintiff's Motion for Summary Judgment on his Fourth Amendment claim regarding cell searches be denied.

### b. Strip Search/Frisk

Plaintiff contends that C.O. Williamson "pat frisked and strip frisked" plaintiff by forcing him "to remove his religious headgear and shake his hair out." Pl.'s Mem. of Law at 65, ¶ 11. Defendants argue that the "removal of headgear, and shaking out one's hair" fails to implicate a right to bodily privacy as a matter of law. Def.'s Mem. of Law at 12. The undersigned agrees with defendants. Plaintiff fails to establish, and the record does not suggest, that it was unreasonable for C.O. William to order plaintiff to remove his headgear and shake his hair during the search. See Rodriguez v. Mercado, No. 00 CIV. 8588 JSRFM, 2002 WL 1997885, at *1, 6 (S.D.N.Y. Aug. 28, 2002) (determining that the defendant corrections officer's request that the plaintiff remove his "religious hat" and search his hair during a search did not violate the plaintiff's Fourth Amendment rights). Plaintiff does not allege that the search was abusive, nor does he detail the manner in which either C.O. Williamson or C.O. Cruz conducted the search beyond stating that C.O. Williamson "directed [him] to get against the wall" and "pat frisked and strip frisked" him. Am. Compl. at 10-11;[32] see Shabazz, 994 F.Supp. 460, 473 (S.D.N.Y. 1998) ("Strip frisks pass constitutional muster, even if the strip frisk is conducted without probable cause, so long as the search is

reasonable and not abusive.") (citing Bell, 411 U.S. at 558-60, 93 S.Ct. 1713). As there is no evidence that the search was unreasonable or abusive, it is recommended that plaintiff's Motion for Summary Judgment as to his Fourth Amendment claim regarding a strip/pat frisk be denied.

### 3. Eighth Amendment

**\*19** Plaintiff contends that Supt. Lee, Capt. Webbe, Lieut. Simmons, Lieut. Sullivan, and C.O. Henry violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment due to the conditions of his confinement. Pl.'s Mem. of Law at 59-64. Plaintiff further contends that C.O. Cruz violated his Eighth Amendment rights by subjecting him to excessive force and sexual harassment. Id. at 72.

### a. Conditions of Confinement

Plaintiff contends that the aforementioned defendants "locked [him] in a cell that had no feed up slot to receive meals." Pl.'s Mem. of Law at 59. Plaintiff was forced to "climb up the bars" of his cell[33] and "slide his food through the slot in the ceiling," which forced him "to eat food with hair, paint chips, and dust in it." Id. at 59-60. Plaintiff further claims that his cell "had urine and feces on and in the toilet, and green spittal [sic] in the sink," and that defendants denied him cleaning supplies. Id. at 60. Moreover, plaintiff contends that his cell "was directly across from a window that had a 8 to ten inch hole in it and the weather outside was ten degrees," and defendants refused to provide him with clothing, additional blankets, or heat. Id. at 60-61. Defendants argue that plaintiff fails to establish that Supt. Lee, C.O. Henry, Capt. Webbe, Lieut. Sullivan, and Lieut. Simmons were personally involved in creating or contributing to the alleged adverse conditions. Def.'s Mem. of Law at 11-12.

"The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective ... and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). Objectively,

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 41 of 57

the deprivation must be "sufficiently serious [such] that [the inmate] was denied the minimal civilized measure of life's necessities[.]" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citation omitted). To satisfy the subjective prong of the test, the inmate must show that "the defendant official acted with a sufficiently culpable state of mind ... such as deliberate indifference to inmate health or safety." Id. (internal quotation marks and citation omitted; see also Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002).

The objective prong of the test can be satisfied where the plaintiff pleads "conditions [that] either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health[.]" Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017) (quoting Walker, 717 F.3d at 125). There is no "static test" to determine whether an alleged deprivation is sufficiently serious to satisfy the objective prong. Id. Rather, courts must determine whether the conditions violate "contemporary standards of decency." Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)) (additional citation omitted).

### i. Unsanitary Cell Conditions

**\*20** Plaintiff contends that he was "confined to a cell that had urine and feces on and in the toilet, and green spittal [sic] in the sink." Pl.'s Mem. of Law at 60. Courts have held that "chronic exposure to human waste will give rise to a colorable [ § 1983] claim." Florio v. Canty, 954 F.Supp.2d 227, 234 (S.D.N.Y. 2003) (internal quotation marks omitted) (quoting Ortiz v. Dep't of Corr., No. 08 Civ. 2195, 2011 WL 2638137, at \*6 (S.D.N.Y. Apr. 29, 2011), report and recommendation adopted, 2011 WL 2638140 (S.D.N.Y. July 5, 2011)). In Florio, the Southern District of New York dismissed the plaintiff's Eighth Amendment claim, finding that the plaintiff's exposure to waste in his cell was "only for brief periods" totaling "less than a few hours," and, therefore, "simply too minor to state an Eighth Amendment claim." Florio, 954 F.Supp.2d at 235. In Gaston v. Coughlin, the Second Circuit held that the plaintiff's exposure to "human feces, urine, and sewage water" for "several consecutive

days" constituted an Eighth Amendment violation. Gaston v. Coughlin, 249 F.3d 156, 165-66 (2d Cir. 2001).

Here, plaintiff does not allege how long the feces and urine remained in or on the toilet or how long the spittle remained in the sink; instead, he states that he was "forced to live in these conditions for months." [34] See Pl.'s Mem. of Law at 61. There is no indication that the feces, urine, or spittle amounted to anything other than "stains," plaintiff's own allegations indicate that those stains were confined to plaintiff's toilet and sink. Pl.'s Mem. of Law at 60; cf. Florio, 954 F.Supp.2d at 238 (noting that the human waste was not limited to the plaintiff's toilet, but, instead, "ankle high" in his cell). Therefore, based on the current record, the undersigned cannot determine whether the conditions in plaintiff's cell constituted "chronic exposure" to give rise to an Eighth Amendment claim. See Florio, 954 F.Supp.2d at 234 (quoting Ortiz, 2011 WL 2638137 at \*6).

However, even assuming that plaintiff's cell conditions met the objective component of the test, plaintiff has not established that defendants had a "sufficiently culpable state of mind" to satisfy the subjective component. See Walker, 717 F.3d at 125. Aside from plaintiff's conclusory allegation that "defendants deliberately and maliciously subjected [him] to cruel and unusual punishment," the record lacks evidence regarding Capt. Webbe, Supt. Lee, Lieut. Simmons, and Lieut. Sullivan's mental state. Pl.'s Mem. of Law at 63. Moreover, the record does not suggest that Capt. Webbe, Lieut. Simmons, and Lieut. Sullivan had any control over his cell conditions. See generally Felix-Torres v. Graham, 687 F.Supp.2d 38, 52 (N.D.N.Y. 2009) ("[E]ven if the Court were to find that some admissible record evidence exists that Defendant Ryerson had a supervisory role in assisting qualified inmates in obtaining lower bunk assignments, the Court can find no admissible record evidence that Defendant Ryerson, as a supervisor, was personally involved in the constitutional violations alleged."). Insofar as plaintiff contends that Supt. Lee "knew about ... [the] conditions and refused to do anything," Pl.'s Mem. of Law at 61, plaintiff's conclusory statement, unsupported by any details of when or the manner in which Supt. Lee learned of the conditions, fails to establish a culpable mental state. See Walker, 717 F.3d at 125.

To the extent that plaintiff suggests that the denial of cleaning supplies demonstrates that defendants had a culpable mental

Case 9:18-cv-00336-AMN-TWD   Document 61   Filed 11/02/21   Page 42 of 57

Fox v. Lee, Not Reported in Fed. Supp. (2018)

state regarding his allegedly dirty cell, the record is unclear as to whether Capt. Webbe, Supt. Lee, Lieut. Simmons, and Lieut. Sullivan knew or were aware that plaintiff had been denied cleaning supplies as plaintiff does not specifically allege that he requested the cleaning supplies from these defendants or that it was these defendants who denied his request. See Ortiz, 2011 WL 2638137 at *9 ("Plaintiff does not sufficiently allege that defendants actually knew of and disregarded a substantial risk to plaintiff's health or safety, or that defendants were aware of facts from which they could have inferred that there was a substantial risk of serious harm, that they drew such an inference and that they disregarded it."). Additionally, the denial of cleaning supplies, without more, does not give rise to an Eighth Amendment violation. See Gonzales v. Hasty, 269 F.Supp.3d 45, 53-54, 64 (E.D.N.Y. 2017) (concluding that the defendants' failure to supply the plaintiff cleaning supplies when they knew the plaintiff's cell was dirty is "not the type of claim[ ] that the Eighth Amendment is meant to remedy."); Dolberry v. Levine, 567 F.Supp.2d 413, 417-18 (W.D.N.Y. 2008) (citing cases for the proposition that denial of cleaning supplies does not amount to a constitutional violation).

**\*21** Moreover, although plaintiff contends that he suffered "small bumps on his body from the dirty cell," even if plaintiff were to demonstrate that the "bumps" were caused by his cell condition, de minimis injury does not amount to a constitutional violation. See id. (finding that the plaintiff's skin rash is a de minimis injury that does not give rise to a constitutional claim).

Therefore, because plaintiff has not established both the subjective and objective components of an Eighth Amendment analysis, it is recommended that his Motion for Summary Judgment as to his Eighth Amendment claim regarding unsanitary cell conditions and denial of cleaning supplies be denied.

### ii. Cold Living Conditions

Plaintiff alleges that defendants subjected him to "nearly two weeks of extreme cold weather," as "civilians" repaired holes in the windows of or adjacent to his cell. Pl.'s Mem. of Law ¶ 42. During this time, Supt. Lee denied him additional blankets. Id. The Second Circuit has held that exposure to severely cold temperatures for an extended period of time may constitute an Eighth Amendment violation. See Corselli v. Coughlin, 842 F.2d 23, 37 (2d Cir. 1988) (reversing the district court's grant of summary judgment where the plaintiff established that he was exposed to "bitterly cold temperatures for approximately three months."); Gaston, 249 F.3d at 165 (reversing the district court's grant of summary judgment where the plaintiff alleged that the windows in his cell block "remained unrepaired the entire winter, exposing him to freezing and sub-zero temperatures.").

Plaintiff clearly states that he was exposed to the cold for "nearly two weeks," which is below the thresholds that courts in this district have found sufficient to amount to an Eighth Amendment violation. See Corselli, 842 F.2d at 37 (three months); Gaston, 249 F.3d at 165 ("the entire winter"); cf. Cusamano v. Carlsen, No. 9:08-CV-755 (FJS/GHL), 2011 WL 7629512, at *8 (N.D.N.Y. Dec. 16, 2011) (concluding that the plaintiff's exposure to the cold for "about two weeks" was not "so serious" as to amount to an Eighth Amendment violation). Although plaintiff contends that Supt. Lee "refuse[d] to give [him] ... extra clothing" after C.O. Williamson took "all" of plaintiff's clothing, wearing the same clothes for two weeks does not amount to a constitutional violation. See Crichlow v. Fischer, No. 9:17-CV-00194 (TJM/TWD), 2017 WL 6466556, at *13 (N.D.N.Y. Sept. 5, 2017) (citing cases for the proposition that there is "no Eighth Amendment Violation where [an] inmate was forced to wear the same uniform for three weeks."); Mortimer Excell v. Fischer, No. 9:08-CV-945 (DNH/RFT), 2009 WL 3111711, at *5 (N.D.N.Y. Sept. 24, 2009) (finding no Eighth Amendment violation where the plaintiff was forced to wear the same clothes for two weeks). Insofar as plaintiff suggests that Supt. Lee deprived him of sufficient clothing for the cold temperatures, defendants refute plaintiff's allegation that it was "ten degrees," Pl.'s Mem. of Law at 60, contending that the temperature in the west wing was "estimated to be 67-71 degrees." Dkt. No. 118-1 at 4. Thus, a disputed issue of fact remains as to whether Supt. Lee deprived plaintiff of sufficient clothing for the requisite temperature.

As to plaintiff's claim that Supt. Lee denied him additional blankets, although courts have found an Eighth Amendment violation "when a plaintiff is subjected to extreme cold for an extensive period of time," Vaiana v. Nassau Cty. Dept. of Corr., No. 11-CV-1013 (JFB) (WDW), 2012 WL 541086, at *4 (E.D.N.Y. Feb. 21, 2012), based on the facts plaintiff alleged, he has not demonstrated that he was subjected to the

cold for an extensive period of time. Although there is no bright-line rule, plaintiff has not established that two weeks of exposure to cold cell temperatures amounts to an "extensive period of time." See Corselli, 842 F.2d at 37; Gaston, 249 F.3d at 165. Further, there exist disputed facts regarding the cell temperatures as defendants argue that the cell temperature was "estimated to be 67-71 degrees." Dkt. No. 118-1 at 4.

*22 Even assuming that plaintiff's cell conditions met the objective component of the test, plaintiff has not established that defendants had a "sufficiently culpable state of mind" to satisfy the subjective component. See Walker, 717 F.3d at 125. Aside from plaintiff's conclusory allegation that "defendants deliberately and maliciously subjected [him] to cruel and unusual punishment," Pl.'s Mem. of Law at 63, there is no evidence regarding Capt. Webbe, Supt. Lee, Lieut. Simmons, and Lieut. Sullivan's mental state. See Gaston, 249 F.3d at 164 (citing cases for the proposition that the Second Circuit has applied the deliberate indifference standard to assess conditions of confinement claims). Further, the record does not support a contention that Capt. Webbe, Supt. Lee, Lieut. Simmons, and Lieut. Sullivan "knew of and disregarded an excessive risk," Farmer, 511 U.S. at 837, 114 S.Ct. 1970, to plaintiff's health or safety because, as plaintiff himself claims, the windows were repaired within two weeks. Pl.'s Mem. of Law ¶ 42; see Cusamano, 2011 WL 7629512, at *8 (concluding that the plaintiff's exposure to the cold for "about two weeks" was not "so serious" as to amount to an Eighth Amendment violation). Moreover, plaintiff has not demonstrated that there is no genuine dispute of material fact as to his allegations regarding the lack of heat. See Dkt. No. 118-1 at 4 (alleging that the temperature in the west wing was "estimated to be 67-71 degrees."). Therefore, because plaintiff cannot establish both the subjective and objective components of an Eighth Amendment analysis, it is recommended that his Motion for Summary Judgment as to his Eighth Amendment claims regarding his exposure to cold temperatures be denied.

### iii. "Feed-Up Slot"

Plaintiff contends that his cell did not have a "feed-up slot to receive meals." Pl.'s Mem. of Law at 59. Because defendants did not open plaintiff's door to hand him his food, plaintiff had to "climb up the bars and slide his food through the slot by the ceiling."[35] Id. Plaintiff fell "from being forced to climb up the bars to receive his [trays]" and "injured his back and had to be admitted to the prison hospital for nearly a week," and use a cane. Id. at 60.[36] An inmate may not be deprived of "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety."

Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). While, "no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (internal citation omitted). "To establish a valid claim that the denial of food ... constitutes an Eighth Amendment violation, one must establish that there was a sufficiently serious condition that resulted from the food not being received. A condition is serious for constitutional purposes if it presents a condition of urgency that may result in degeneration or extreme pain." Lewis v. Zon, 920 F.Supp.2d 379, 387 (W.D.N.Y. 2013) (internal quotation marks and citations omitted).

Plaintiff does not allege that defendants outright denied him food, rather, that the cell's configuration required him to climb to retrieve his meals, eventually resulting in injury and that the process of retrieving his food tray resulted in the contamination of his food. See Pl.'s Mem. of Law at 59-60. Defendants contend that the injuries plaintiff references were caused by plaintiff's falling and/or slipping on ice, not by falling in his cell while retrieving his food tray, a contention that plaintiff's medial records supports. Dkt. No. 118-1 at 4 ("Plaintiff fell off a chair and slipped on ice); see Dkt. No. 123-4 at 33 ("Pt. fell off chair c/o back pain."). Moreover, as noted, plaintiff also suggests that his cell contained "steps" that he used to reach his food trays, conflicting with his allegation that he was forced to "climb up the bars." Compare Pl.'s Mem. of Law ¶ 35 ("I was put on a unit that didn't require [me] to use the steps.") with Pl.'s Mem. of Law at 60 (alleging that he was "forced to climb up the bars" to receive his food tray). However, the lack of a feed-up slot at the ground level of plaintiff's cell arguably "pose[d] an unreasonable risk of serious damage to [the plaintiff's] health," and satisfies the objective component. See Darnell, 849 F.3d at 30.

*23 Plaintiff does not allege, and the record does not suggest, that Capt. Webbe, Supt. Lee, Lieut. Simmons, Lieut. Sullivan, Supt. Lee, or C.O. Henry assigned plaintiff to this cell, had control over an inmate's placement in a particular cell, or had the ability to transfer plaintiff out of the cell. Plaintiff does

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 44 of 57

not claim in nonconlusory terms that Capt. Webbe, Lieut. Simmons, Lieut. Sullivan, or Supt. Lee were aware of the lack of a "feed-up slot" in plaintiff's cell or were aware that plaintiff's required method of obtaining his food tray put him at risk of injury.

To the extent that plaintiff contends that his food contained "hair, paint chips and dust" because he "had to take the lid off" to slide the tray through the "opening in the ceiling," which caused these particles to fall into his food, Pl.'s Mem. of Law at 60, such claim "could be characterized as a sufficiently serious prison condition to satisfy the objective prong of a conditions-of-confinement claim." Gray v. Metro. Det. Cntr., No. 09-CV-4520(KAM)(LB), 2011 WL 2847430, at *11 (E.D.N.Y. July 15, 2011) (concluding that an "allegedly contaminated meal ... could be characterized as a sufficiently serious prison condition to satisfy the objective prong."). However, plaintiff does not allege, and the record does not suggest, that Capt. Webbe, Lieut. Simmons, Lieut. Sullivan, or Supt. Lee placed the hair, paint chips, or dust in plaintiff's food, nor is there any indication that they knew that the way in which plaintiff received his food tray caused these particles to fall into plaintiff's food. See id. ("Plaintiff has not alleged that either of the [i]ndividual [d]efendants had actual knowledge that plaintiff's food was contaminated at the time they served it."). As plaintiff has not established that defendants intentionally contaminated his food, plaintiff has not demonstrated an Eighth Amendment violation. Gray, 2011 WL 2847430, at *11

As plaintiff has failed to establish that there is no genuine dispute as to any material fact to warrant summary judgment, it is recommended that plaintiff's Motion for Summary Judgment as to his Eighth Amendment claims relating to the lack of a "feed-up slot" at ground level be denied. FED. R. CIV. P. 56(a). Moreover, insofar as plaintiff suggests that C.O. Henry harassed him by "call[ing] him a monkey" and "teas[ing]" him for having to climb to obtain his food tray, Pl.'s Mem. of Law at 59, "[a]llegations of verbal abuse, without more, generally fail to state an actionable claim under the Eighth Amendment." Morrison v. Hartman, 898 F.Supp.2d 577, 584 (W.D.N.Y. 2012). Thus, plaintiff has failed to demonstrate C.O. Henry violated his Eighth Amendment rights on this ground.

**b. Excessive Force**

Plaintiff contends that, during a pat frisk, C.O. Cruz "kicked plaintiff's feet apart, pulled plaintiff's pants between his buttocks and banged plaintiff's head against the wall." Pl.'s Mem. of Law at 72. As a result, plaintiff sustained a "permanent knot on the right side of [his] forehead." Id. "The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (quoting Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). To state a prima facie claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element of the excessive force analysis is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm [ ] constitute[s an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9, 112 S.Ct. 995). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10, 112 S.Ct. 995 (internal quotation marks and citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted).

**\*24** The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Id. (quoting Hudson, 503 U.S. at 7, 112 S.Ct. 995). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "[1]

the extent of the injury and the mental state of the defendant[;] [2] ... the need for the application of force; [3] the correlation between that need and the amount of force used; [4] the threat reasonably perceived by the defendants; and [5] any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Plaintiff has not established that there is no genuine dispute as to any material fact as to whether C.O. Cruz used excessive force, and whether that force was malicious. See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (internal quotation marks and citation omitted) ("[T]he malicious use of force to cause harm constitutes an Eighth Amendment violation[ ] per se ... whether or not significant injury is evident."). Although plaintiff submits medical records in support of his motion, they do not pertain to the incident with C.O. Cruz. See Dkt. No. 111-2 at 20-23. Further, it is unclear if plaintiff sought medical treatment after the incident. See Henry v. Brown, No.14-CV-2828 (LDH)(LB), 2016 WL 3079798, at * (E.D.N.Y. May 27, 2016) ("[W]here undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries attributed to an alleged use of excessive force, no reasonable jury could credit plaintiff's account of the happening.")(internal citation and quotation marks omitted). Nonetheless, "any or even no injuries resulting from the events plaintiff described could amount to a per se constitutional violation." Brown v. Dubois, No. 9:15-CV-1515 (LEK/CFH), 2017 WL 2983305, at *9 (N.D.N.Y. June 16, 2017) (citing Baskerville v. McCarthy, 411 F.3d 45, 48-49 (2d Cir. 2005)); Tafari v. McCarthy, 714 F.Supp.2d 317, 352 (N.D.N.Y 2010) (internal quotation marks and citation omitted) (denying the defendants' motion for summary judgment because although the plaintiff's injuries were de minimis, "the extent of injury suffered by the inmate is only one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.").

Assessing the subjective prong of the excessive force analysis, plaintiff does not set forth C.O. Cruz's alleged mental state other than to claim that C.O. Cruz was "furious" that plaintiff submitted a grievance against him. [37] Pl.'s Mem. of Law at 73. Other than plaintiff's self-serving allegation, the record does not contain enough factual background as to C.O. Cruz's mental state at the time of the pat-frisk to conclude

that he acted maliciously or sadistically. See Sims, 230 F.3d at 21; Santiago v. C.O. Campisi Shield No. 4592, 91 F.Supp.2d 665, 668, 673 (S.D.N.Y. 2000) (concluding that the plaintiff's allegations that the defendant "singled him out to punish him for their altercation the day before," and "assaulted him without provocation," satisfied the subjective prong of the Eighth Amendment analysis). Therefore, it is recommended that plaintiff's Motion for Summary Judgment as to excessive force claim against C.O. Cruz, be denied.

### c. Sexual Harassment

**\*25** Plaintiff contends that during a frisk on January 25, 2015, C.O. Cruz "intentionally made contact with [his] genitalia, buttock[s], thighs and chest in a [sic] intimate dominatrix way that served no penological purpose and was undertaken with the intent to humiliate [him]." Pl.'s Mem. of Law at 72. Plaintiff claims that C.O. Cruz "began to go up plaintiff's testicle and penis as he searched [his] body, he pulled plaintiff's legs in a way to seem as if he was being kinky and a dominatrix." Id. ¶ 52. Defendants argue that because they "have no idea what is meant by 'intimate dominatrix way,' " they are "unable to ascertain if plaintiff has a plausible argument" under established case law. Def.'s Mem. of Law at 16.

In Crawford v. Cuomo, the Second Circuit stated that a single incident of sexual abuse may violate the Eighth Amendment if it is "sufficiently severe or serious." Crawford, 796 F.3d at 257. The Crawford Court explained:

> [t]o show that an incident or series of incidents was serious enough to implicate the Constitution, an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia. A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment. Similarly, if the situation is reversed

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 46 of 57

and the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact.

Id. Ultimately, in assessing whether an Eighth Amendment violation has occurred, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." Id. at 257-58 (citing Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (determining that an Eighth Amendment inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.")).

The record is unclear whether C.O. Cruz intended to humiliate plaintiff or act for his own sexual gratification during the January 27, 2015 pat frisk. See Crawford, 796 F.3d at 257. Plaintiff does not explain how C.O. Cruz acted in a "kinky and dominatrix" way. Pl.'s Mem. of Law at ¶ 52. Plaintiff also does not proffer evidence as to whether C.O. Cruz's contact with his body was incidental to C.O. Cruz's legitimate duties, or whether he touched plaintiff to gratify himself, humiliate plaintiff, or both. Id. at 257-58. Thus, a disputed issue of fact remains as to the January 27, 2015 incident.

Plaintiff further alleges that on February 12, 2015, while escorting plaintiff to his disciplinary hearing, C.O. Cruz conducted a pat frisk in which he "pulled the back of plaintiff's pants down[,] [caressed] plaintiff's thighs, [ ] grinded his penis against plaintiff's buttocks, groped plaintiff's penis and testicles, and then stated, 'I forgot your pussy hurts.' " Id. ¶ 58. Although C.O. Cruz's alleged February 12, 2015 conduct took place during a pat frisk, which, if properly conducted, serves a valid penological purpose, the nature of C.O. Cruz's alleged actions, combined with his sexual commentary, suggests that C.O. Cruz intended to humiliate plaintiff or act for his own sexual gratification. See Shepherd, 2017 WL 666213, at *18 ("Even if each pat frisk, if properly conducted, could have served a valid penological objective, the alleged aggressive squeezing and fondling of Plaintiff's

genitalia, combined with the accompanying threats of sexual violence or retaliation, would allow a reasonable factfinder to find that the corrections officers lacked a penological purpose and intended to sexually gratify themselves, to humiliate Shepherd, or both."); Shannon v. Venettozzi, 670 Fed.Appx. 29, 31 (2d Cir. 2016) (summary order) ("These [sexually-explicit] statements, in conjunction with Shannon's description of the forcefulness of some of the pat-downs, were sufficient to plausibly allege that Officer McTurner conducted the pat-downs either 'to gratify [his] sexual desire or to humiliate' Shannon, neither of which is a permissible motivation, rather than for any legitimate penological purpose."); Allah v. Morrison, No. 14-CV-6735, 2016 WL 4017340, at *3-4 (W.D.N.Y. July 22, 2016) ("[The defendant's] alleged taunts to [the plaintiff], including the statements, 'you know what I want' and 'give me what I want and you'll get what you want', suggest that [the defendant's] conduct was designed to humiliate [the plaintiff], gratify herself, or both."); see also Crawford, 796 F.3d at 259 ("[The defendant's] demeaning comments, including the statements '[t]hat doesn't feel like a penis to me,' [and] 'I'll run my hands up the crack of your ass if I want to' ... suggest that [the defendant] undertook the search in order to arouse himself, humiliate [the plaintiff], or both."). However, the record does not definitively support a conclusion that C.O. Cruz intended to humiliate plaintiff; thus, as defendants deny that this conduct occurred, a reasonable fact finder could conclude that C.O. Cruz did not intentionally touch plaintiff in a sexual manner, and that he did not intend to humiliate plaintiff and/or gratify himself. See Crawford, 796 F.3d at 257-58. Therefore, it is recommended that plaintiff's Motion for Summary Judgment be denied on this ground.

### 4. Fourteenth Amendment Due Process

**\*26** Plaintiff contends that Supt. Lee denied him a "fair hearing and failed to be [a] fair and impartial" hearing officer by "purposely den[ying] [him] the right of due process ... [because] plaintiff refus[ed] to cut his hair and filing grievances," and "subjecting plaintiff to confinement that was atypical hardship." Pl.'s Mem. of Law at 75-76. Plaintiff further contends that Capt. Webbe, DSS Russo, Lieut. Simmons, and Deputy Superintendent Wendland acted as hearing officers and "punished plaintiff for refusing to cut his hair under atypical and hardship confinement." Id. at 78. Plaintiff claims that Lieut. Sullivan violated his due process rights by finding him guilty of refusing a direct

order, after finding him innocent in two earlier disciplinary hearings regarding his hairstyle. Id. at 79. Defendants argue that plaintiff fails to explain "why or how Supt. Lee was not impartial." Def.'s Mem. of Law at 17.

The Due Process Clause of the Fourteenth Amendment states: "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. To set forth a prima facie due process claim, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted); see Mitchell v. Keane, 974 F.Supp. 332, 342 (S.D.N.Y. 1997) ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege *both* that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process.") (emphasis added).

### a. Liberty Interest

Plaintiff reiterates the conditions of confinement claims alleged in his Eighth Amendment claim. See subsection III.B.3.a. supra. An inmate has a protected liberty interest in being free from segregated confinement but only where the alleged deprivation imposed amounts to an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (quoting Sandin, 515 U.S. at 484, 115 S.Ct. 2293); see Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (quoting Sandin, 515 U.S. at 486, 115 S.Ct. 2293) ("Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous."). Based on the analysis set forth in Section II.E.1,

the undersigned assumes for the purposes of this assessment that plaintiff's 240 days in keeplock implicates a liberty interest.

### b. Procedural Due Process

Although inmates retain their constitutional right to due process protections, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the fully panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); see also Arce v. Walker, 139 F.3d 329, 335 (2d Cir. 1998) (holding that an inmate is entitled to minimal due process protections when being involuntarily placed in administrative confinement).

> Certain due process protections therefore apply where disciplinary proceedings may lead to the loss of good time credit or would subject an inmate to solitary confinement in the SHU. Inmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken.

**\*27** Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted).

### i. Supt. Lee

Plaintiff suggests that Supt. Lee failed to act as a fair and impartial hearing officer. An inmate is entitled to a fair and impartial hearing officer to preside over his or her disciplinary hearing. See Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). However, "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." Francis v. Coughlin, 891

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 48 of 57

F.2d 43, 46 (2d Cir. 1989). Instead, "due process requires only that the hearing officer not be a 'hazard of arbitrary decision making.' " Espinal v. Goord, 180 F.Supp.2d 532, 539 (S.D.N.Y. 2002) (quoting Wolff, 418 U.S. at 571, 94 S.Ct. 2963). Due process is thereby satisfied so long as there is "some evidence" that substantiates the hearing officer's decision. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Plaintiff does not allege any facts regarding Supt. Lee's disciplinary hearing, and, therefore, the undersigned is unable to determine whether Supt. Lee acted as a fair and impartial hearing officer. Thus, it is recommended that plaintiff's Motion for Summary Judgment as to his due process claims against Supt. Lee be denied.

### ii. DSS Russo

Insofar as plaintiff claims that DSS Russo violated his due process rights by "punish[ing] [him] for refusing to cut his hair under atypical and hardship confinement," such claim cannot stand. Pl.'s Mem. of Law at 78. The record does not establish that DSS Russo conducted any of plaintiff's disciplinary hearings. Therefore, it is recommended that plaintiff's Motion for Summary Judgment as to his due process claim against DSS Russo be denied on this ground.

### iii. Capt. Webbe

Plaintiff claims that Capt. Webbe stated that "Supt. Lee sent him to hold the hearing so that he could skim plaintiff real good." Pl.'s Mem. of Law ¶ 121. However, plaintiff does not proffer the disciplinary hearing transcripts. Plaintiff offers a disciplinary disposition attributed to Capt. Webbe, but it is unclear if this is the hearing plaintiff refers to as he alleges Capt. Webbe's hearing commenced "on or around May 15, 2015," and the proffered disposition is dated April 9, 2015. Pl.'s Mem. of Law ¶ 121; Dkt. No. 123-4 at 118. Thus, the undersigned is unable to conclude whether there was "some evidence" to substantiate Capt. Webbe's disciplinary dispositions. Superintendent, Mass. Corr. Inst., 472 U.S. at 455, 105 S.Ct. 2768. Thus, plaintiff has not established that there is no genuine dispute as to any material fact to warrant summary judgment. FED. R. CIV. P. 56(a). Therefore, it is recommended that plaintiff's Motion for Summary Judgment as to his due process claim against Capt. Webbe be denied.

### iv. Lieut. Simmons

Plaintiff claims that Lieut. Simmons informed plaintiff that "his supervisors told him to find [plaintiff] guilty." Pl.'s Mem. of Law ¶ 72. However, plaintiff does not proffer the disciplinary hearing transcripts. Plaintiff offers disciplinary dispositions attributed to Lieut. Simmons, but those dispositions do not correspond with the dates plaintiff set forth in his facts section, and it is unclear whether these represent the hearings plaintiff claims violated his due process rights. Thus, the undersigned is unable to conclude whether there was "some evidence" to substantiate Lieut. Simmons' disciplinary dispositions. Superintendent, Mass. Corr. Inst., 472 U.S. at 455, 105 S.Ct. 2768. Thus, plaintiff has not established that there is no genuine dispute as to any material fact to warrant summary judgment. FED. R. CIV. P. 56(a). Therefore, it is recommended that plaintiff's Motion for Summary Judgment as to his due process claim against Lieut. Simmons be denied.

### v. Lieut. Sullivan

*28 Insofar as plaintiff contends that Lieut. Sullivan was biased because he "stated off the record that he had to [find plaintiff guilty] because his supervisors (Webbe, Lee, and Russo) told him too [sic]," Pl.'s Mem. of Law at 79, plaintiff has proffered no evidence to substantiate his claim other than his self-serving allegation. See Sloane v. Borawski, 64 F.Supp.3d 473, 488 (W.D.N.Y. 2014) ("Plaintiff's bare, conclusory assertion that [the defendant] denied him a fair and impartial hearing is belied by the evidence in the record before this Court."); Tirino v. Local 164, Bartenders and Hotel and Restaurant Emp. Union, AFL-CIO, 282 F.Supp. 809, 817 (E.D.N.Y. 1968) ("Such conclusory statements fall far short of the requirement of Fed. R. Civ. P. 56(e) that evidentiary facts must be offered in support of a motion for summary judgment."). Therefore, it is recommended that plaintiff's Motion for Summary Judgment as to his due process claim against Lieut. Sullivan be denied.

### vi. Deputy Superintendent Wendland

Plaintiff claims that Deputy Superintendent Wendland, as his hearing officer, incorrectly stated that plaintiff's hair was

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 49 of 57

"braided and in locks," and asked improper questions of witnesses. Pl.'s Mem. of Law ¶¶ 79, 79-80.[38] Plaintiff does not proffer the disciplinary hearing transcript for this hearing or provide a disciplinary disposition, and the undersigned is unable to conclude whether there was "some evidence" to substantiate Deputy Superintendent Wendland's disciplinary dispositions. Superintendent, Mass. Corr. Inst., 472 U.S. at 455, 105 S.Ct. 2768. Moreover, there is no indication that Deputy Superintendent Wendland denied plaintiff the opportunity to call witnesses, Luna, 356 F.3d at 487; indeed, plaintiff's memorandum of law establishes that he did call a witness. Pl.'s Mem. of Law ¶ 79, p. 25. Thus, plaintiff has not established that there is no genuine dispute as to any material fact to warrant summary judgment. FED. R. CIV. P. 56(a). Therefore, it is recommended that plaintiff's Motion for Summary Judgment as to his due process claim against Deputy Superintendent Wendland be denied.

### 5. Supervisory Liability

Plaintiff contends that Comm. Annucci and Supt. Lee "were aware ... that the cells at Eastern [ ] had no way for inmates to receive food if they are confined ... [and] did nothing even after plaintiff fell and injured his back." Pl.'s Mem. of Law at 82-83. Plaintiff further claims that Supt. Lee "did nothing after plaintiff made [him] aware that he was being punished and confined for wearing a Mohawk hairstyle." Id. at 83. Defendants argue that plaintiff's contentions "amount to no more than claims of respondeat superior liability," and that neither "Superintendent Lee or Commissioner Annucci were personally involved in any of the alleged constitutional claims." Def.'s Mem. of Law at 19.

Supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). In this Circuit, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). However, supervisory personnel may be considered personally involved in their subordinate's conduct if:

(1) the defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;

**\*29** (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).[39] Absent a subordinate's underlying constitutional violation, there can be no supervisory liability. See Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see also Elek v. Inc. Vill. of Monroe, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability.").

Plaintiff seems to suggest that because Supt. Lee and Comm. Annucci "walk around [the facility] and inspect the prison," they knew of the alleged constitutional violations, and failed to remedy the wrong. See Pl.'s Mem. of Law at 82-83. This argument falls under the second Colon factor. See Colon, 58 F.3d at 873. Plaintiff does not claim that he sent a letter to either Supt. Lee or Comm. Annucci informing them of the lack of "feed-up slots" in the cells and how the failure to have a feed-up slot at ground level put him at risk of injury, nor does plaintiff contend that he verbally informed either defendant of his concerns regarding the feed-up slot. Supt. Lee and Comm. Annucci's potential presence in the facility does not amount to actual knowledge of plaintiff's conditions of confinement and does not constitute personal involvement under the second Colon factor. See Colon, 58 F.3d at 873.

Moreover, as to plaintiff's claim that Supt. Lee "did nothing after plaintiff made [him] aware that he was being punished and confined for wearing a Mohawk hairstyle," Pl.'s Mem. of

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 50 of 57

Law at 83, the record belies his claim. After plaintiff informed Supt. Lee of these alleged violations, Supt. Lee directed Capt. Webbe and DSS Russo to investigate his claims. Pl.'s Mem. of Law ¶¶ 20, 24. As it is within the purview of a superior officer to delegate responsibility to others, Supt. Lee's referral to subordinate officers does not suffice to demonstrate his personal involvement. See Vega v. Artus, 610 F.Supp.2d 185, 198 (N.D.N.Y. 2009) (finding no personal involvement where "the only involvement of the supervisory official was to refer the inmate's complaint to the appropriate staff for investigation.") (citing Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs., 491 F.Supp.2d 342, 347 (W.D.N.Y. 2007)).

 *30  Insofar as plaintiff contends that Comm. Annucci failed to train employees on how to "properly respect prisoner's constitutional rights" and failed to supervise subordinates at Eastern, plaintiff's conclusory statement, unsupported by the record, does not amount to personal involvement. Pl.'s Mem. of Law ¶¶ 99-100. Plaintiff may not name and attempt to hold liable these individuals merely because they hold positions of authority within the prison system without substantiating claims against them. See Colon, 58 F.3d at 874 ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim."); cf. Thomas v. Calero, 824 F.Supp.2d 488, 509 (S.D.N.Y. 2011) ("We believe that, as a matter of pleading, [Director of Special Housing/Inmate Disciplinary Programs] Bezio's actions, by affirming CHO Calero's determination with only a modification of the penalty, are sufficient to demonstrate personal involvement and could lead a trier of fact to impose liability under the second Colon factor."); Rodriguez v. Selsky, No. 9:07-CV-0432 (LEK/DEP), 2010 WL 980273, *6 (N.D.N.Y. Mar. 15, 2010) ("Those cases concluding that a plaintiff's allegations that defendant [Director of Special Housing and Inmate Disciplinary Programs for DOCS] Selsky reviewed and upheld an alleged constitutionally suspect disciplinary determination are enough to show his personal involvement in the alleged violation appear to be both better reasoned and more consistent with the Second Circuit's position regarding personal involvement.").

Accordingly, it is recommended that plaintiff's Motion for Summary Judgment as to his supervisory liability claims against Supt. Lee and Comm. Annucci be denied.

**IV. Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby **RECOMMENDED**, that plaintiff's Motion for Summary Judgment (Dkt. No. 111) be **DENIED**; and it is further

**RECOMMENDED**, that defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c) (Dkt. No. 118) be **DENIED without prejudice**, and with opportunity to renew by way of a combined motion to dismiss and motion for summary judgment limited to the issue of exhaustion or, in the alternative, by way of an exhaustion hearing, should defendants request such a hearing; and it is further,

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order in full, the Clerk of the Court will return this case to the Magistrate Judge to set deadlines for this renewed motion; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [40]

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1211111

**Fox v. Lee, Not Reported in Fed. Supp. (2018)**

Case 9:18-cv-00336-AMN-TWD   Document 61   Filed 11/02/21   Page 51 of 57

## Footnotes

1   This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2   Plaintiff does not move for summary judgment on his Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims.

3   Plaintiff's Motions for Contempt, Dkt. Nos. 117, 129, 130, 131, 138, will be addressed in a subsequent decision. Plaintiff's Motion for Preliminary Injunction, Dkt. No. 128, is currently before the assigned District Judge for review.

4   In their original memorandum of law in opposition, defendants argued that plaintiff failed to comply with N.D.N.Y. Local Rule 7.1(a)(1), (3) by filing a motion exceeding the twenty-five page limit and failing to file a separate Statement of Material Facts with specific record citations. Dkt. No. 112 at 7-8. Defendants have re-alleged their argument as to the Material Statement of Facts in their Memorandum of Law in Opposition and Cross-Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c), and it will be discussed infra. See Dkt. No. 118-3 ("Def.'s Mem. of Law") at 3.

5   Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

6   Plaintiff does not specify the tier of the disciplinary hearing.

7   "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

8   Plaintiff does not identify the grievance associated with this investigation.

9   Plaintiff also does not identify the grievance underlying this investigation.

10  Plaintiff does not indicate when the pat frisk occurred.

11  Plaintiff does not specify the disciplinary hearing to which he is referring or the tier of the hearing.

12  Plaintiff does not indicate the tier of the hearing.

13  Although unclear, it appears that plaintiff is indicating that he was required to climb up the stairs, rather than climb his cell's bars, to retrieve his food from a slot near the ceiling of his ceil.

14  Plaintiff does not provide a date as to when these alleged violations occurred.

15  Plaintiff does not specify the subject matter of the Tier III misbehavior report.

16  Plaintiff's facts section contains two paragraphs (¶ ) labeled with 62. See Pl.'s Mem. of Law at !3, 24. The information cited here is taken from the ¶ 62 on page 24 of plaintiff's memorandum of law.

17  It is unclear from plaintiff's submission to which disciplinary hearing he is referring, or if the undated and March 6, 2015 misbehavior reports were consolidated into one hearing.

18  Plaintiff does not state when this hearing was held.

Fox v. Lee, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00336-AMN-TWD    Document 61    Filed 11/02/21    Page 52 of 57

19    Plaintiff's facts section contains two paragraphs (¶ ) labeled 77. See Pl.'s Mem. of Law at 24, 25. The information cited here is taken from the ¶ 77 on page 25.

20    Plaintiff does not specify the subject matter of this hearing.

21    Plaintiff does not specify the tier of the disciplinary hearing nor does he state when this hearing was held.

22    Plaintiff does not specify the tier of the disciplinary hearing.

23    Plaintiff defines "skim" as ensuring that he received maximum time. Pl.'s Mem. of Law ¶ 121.

24    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

25    In  Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

26    First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

27    Insofar as defendants argue that "plaintiff's own amended complaint states that plaintiff did not exhaust many of his claims," Def.'s Mem. of Law at 5 n.5, the undersigned notes that plaintiff also suggests that there may be an excuse for the failure to exhaust. In the portion of the amended complaint that defendants cite, plaintiff contends, regarding his Eighth Amendment conditions of confinement claim, that the "grievance supervisor refused to forward plaintiff's grievances to administration at the highest channels, and when plaintiff attempted to forward it [him]self[,] the mail clerks discarded it ... so plaintiff was blocked." Am. Compl. ¶ 30. This, plaintiff suggests that administrative remedies may have been unavailable.

28    Plaintiff's freedom of expression claim is "cognizable under the First Amendment's Free Exercise Clause." Shepherd v. Fisher, No. 08-CV-9297 (RA), 2017 WL 666213, at *31 (S.D.N.Y. Feb. 16, 2017). Therefore, plaintiff's freedom of expression claim will be discussed in conjunction with his free exercise claim.

29    Plaintiff alleges that Sgt. Barg only violated his free exercise of religion. Pl.'s Mem. of Law at 48.

30    Plaintiff varies in the capitalization of "N.o.I."

31    Defendants note that plaintiff brought this First Amendment access to the courts claim against Ms. Labatte in a prior lawsuit. See Dkt. No. 119-11 at 8-9; Fox v. Labatte, No. 9:15-CV-0144 (LEK/DJS), 2016 WL 1266958 (N.D.N.Y. Mar. 31, 2016). Because the Court in Fox v. Labatte concluded that plaintiff "did not exhaust all of his available administrative remedies prior to bringing the within action," his claim was dismissed without prejudice, and, therefore, he is not barred from bringing the claim in the present action. See Leal v. Johnson, 315 F.Supp.2d 345, 347 (W.D.N.Y.) ("Thus, although the exhaustion requirement is not jurisdictional, Richardson v. Goord, 347 F.3d 431 (2d Cir. 2003), where it appears that plaintiff has begun, but not completed, the grievance procedure, the appropriate course would be to dismiss the action without prejudice to allow plaintiff to meet the exhaustion requirement.") (internal citation omitted).

32    Plaintiff contends that C.O. Williamson and C.O. Cruz strip frisked him, but does not allege that he removed his clothing during the incident. Am. Compl. at 10-11.

33    As indicated earlier, plaintiff also suggests that he had to climb stairs in order to reach his food ray. Thus, the record is unclear as to whether plaintiff's only method of retrieving his food was to climb his cell bars or if he also had access to stairs. <u>Supra</u> at 8 n.13.

34    It is unclear if plaintiff is referring to the unsanitary conditions or the cold temperatures. <u>See</u> Pl.'s Mem. of Law at 61.

35    As indicated, plaintiff also suggests that he had to climb stairs in order to reach his food tray. <u>Supra</u> at 8 n.13, 44 n. 33.

36    In his Facts section, plaintiff alleges that he remained in the hospital for three days. Pl.'s Mem. of Law ¶ 34.

37    Plaintiff does not bring a retaliation claim against C.O. Cruz for this incident. <u>See</u> subsection II.C.2. <u>supra</u>.

38    Plaintiff's facts section contains two paragraph (¶ ) 79s. <u>See</u> Pl.'s Mem. of Law at 24, 25. The information cited here is taken from both ¶ 79s on pages 24 and 25 of plaintiff's memorandum of law.

39    Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F.Supp.2d 367, 376 (N.D.N.Y. 2011), <u>rev'd in part on other grounds sub nom.</u>, Pearce v. Labella, 473 Fed.Appx. 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five <u>Colon</u> factors); Kleehammer v. Monroe Cnty., 743 F.Supp.2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third <u>Colon</u> categories pass Iqbal's muster...."); D'Olimpio v. Crisafi, 718 F.Supp.2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

40    If you are proceeding <u>pro</u> <u>se</u> and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(C).

---

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 3164753
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Keith Terrell BUTLER, Plaintiff,

v.

J. HYDE, T. Dishaw, T. Howard, R.
Gill, K. Compo, J. Barse, Defendants.

No. 9:08–CV–0299 (LEK/GHL).
|
Sept. 29, 2009.

**Attorneys and Law Firms**

Keith Terrell Butler, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, David L. Cochran, Esq., of Counsel, Albany, NY,
for Defendants.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–
Recommendation filed on September 21, 2009 by the
Honorable George H. Lowe, United States Magistrate Judge,
pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the
Northern District of New York. Report–Rec. (Dkt. No. 45).
After ten days from the service thereof, the Clerk has sent
the entire file to the undersigned, including the objections
by Plaintiff Butler, which were filed on September 25, 2009.
Objections (Dkt. No. 47).

It is the duty of this Court to "make a de novo determination of
those portions of the report or specified proposed findings or
recommendations to which objection is made." 28 U.S.C.
§ 636(b). "A [district] judge ... may accept, reject, or modify,
in whole or in part, the findings or recommendations made
by the magistrate judge." *Id.* This Court has considered the
objections and has undertaken a de novo review of the record

and has determined that the Report–Recommendation should
be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report–Recommendation (Dkt. No. 45)
is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it
is further

**ORDERED,** that Plaintiff's Motion for summary judgment
(Dkt. No. 30) be **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all
parties.

**IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant
to 42 U.S.C. § 1983, has been referred to me for Report
and Recommendation by the Honorable Lawrence E. Kahn,
Senior United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and Local Rule 72.3(c). Plaintiff Keith Terrell Butler
alleges that Defendants violated his Eighth Amendment rights
by subjecting him to excessive force. Currently pending
before the Court is Plaintiff's motion for summary judgment
pursuant to Federal Rule of Civil Procedure 56. (Dkt. No.
30.) For the reasons that follow, I recommend that Plaintiff's
motion be denied.

### I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges that on July 29, 2007, he was assaulted by
Defendant Correction Officers J. Hyde, K. Compo, J. Barse,
J. Dishaw, T. Howard, and Sgt. Gill. Plaintiff alleges that as
he was entering his cell, Defendants Hyde, Compo, and Barse
threw him on the floor and Defendant Hyde began bending his
right fingers and punching him in the back. Defendant Barse
twisted Plaintiff's left ankle, almost breaking it. Defendant
Dishaw twisted Plaintiff's left arm and punched him in
the back of the head. Defendant Howard twisted Plaintiff's
right ankle and punched Plaintiff in the back several times.
Defendant Compo bent Plaintiff's right wrist and punched him
several times in the right ribs. Defendant Gill bent the toes on

Plaintiff's right foot and broke the skin, drawing blood. (Dkt. No. 1.)

Plaintiff's complaint requests money damages, an order to "give back 24 months of SHU time," a preliminary injunction, and release from the SHU. (Dkt. No. 1 ¶ 9.) Plaintiff now moves for summary judgment. (Dkt. No. 30.) Defendants have opposed the motion. (Dkt. No. 40.) Plaintiff has filed a reply. (Dkt. No. 44.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

**\*2** Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Major League Baseball Properties, Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008). Federal Rule of Civil Procedure 56 and Local Rule 7.1(a)(3) provide the procedural guidelines for meeting this initial burden.

Local Rule 7.1(a)(3) requires parties moving for summary judgment to file and serve a Statement of Material Facts. This statement "shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." Facts that are not in the Statement of Material Facts need not be considered. *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000). The rule thus puts the onus on the parties to marshal the evidence that supports the motion. *Id.* A district court has no duty, on a motion for summary judgment, to perform an independent review of the record to find proof of either a factual dispute or the lack of a factual dispute. *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *accord, Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371–72 (N.D.N.Y.2003) (Hurd, J.). "Our District's requirements are not empty formalities. Rules such as L.R. 7.1(a)3 'serve to notify the parties of the factual support

for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way-thus facilitating its judgment of the necessity for trial.' " *Jackson v. Broome County Correctional Facility,* 194 F.R.D. 436, 437 (N.D.N.Y.2000) (*citing Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995)).

Local Rule 7.1(a)(3) clearly states that the *"[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."* (Emphasis in original.)

Here, Plaintiff has not filed an accurate and complete Statement of Material Facts. He has filed a "Statement of Material Facts That Are In Dispute," which lists 13 facts. Only one of these facts—that Plaintiff sustained torn ligaments in his right ankle—is supported by a citation to evidence. (Dkt. No. 30 at 4–5 [1].) Plaintiff has also filed a "Statement of Material Facts That Are Not in Dispute," which lists five facts that are not supported by any citation to evidence. (Dkt. No. 30 at 6.)

**\*3** Defendants argue that Plaintiff's motion should be denied based on his failure to file a proper Statement of Material Facts. (Dkt. No. 40–4 at 1–2.) However, given the special solicitude that I am required to give to *pro se* civil rights litigants, I decline to recommend denying Plaintiff's motion on this ground.

## III. ANALYSIS

Plaintiff moves for summary judgment, arguing that his Eighth Amendment rights were violated as a matter of law. (Dkt. No. 30.)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102.

When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual

Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

> In determining whether the use of force was wanton and unnecessary, it [is] proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response.

*Hudson,* 503 U.S. at 7 (punctuation omitted). In other words, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9. Because much of an excessive force inquiry rests on whether officers' behavior was reasonable, the issue is generally reserved for a jury "whose unique task it [is] to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct." *Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir.1999).

Here, Defendant Compo declares that on July 29, 2007, he was outside Plaintiff's cell. Plaintiff was on his bed and unresponsive. (Dkt. No. 40–2 ¶ 3.) Defendant Compo notified his supervisor, Defendant Gill. Defendant Gill and a nurse came to the door of Plaintiff's cell. They could not get any response from Plaintiff. Defendant Gill then ordered Defendants Compo and Hyde "to enter the cell so that [Plaintiff] could be examined to protect his health and safety. As we entered the cell, [Plaintiff] came out of his bed in an aggressive manner and tried to strike me. [Defendants] Dishaw, Barse and Howard then entered the cell to assist myself and [Defendant] Hyde in restraining and maintaining control of [Plaintiff]." (Dkt. No. 40–2 ¶ 4.)

**\*4** Defendant Compo declares that the "degree of force used in restraining [Plaintiff] was necessary and reasonably required for self defense ... to prevent injury to myself, the other officers and [Plaintiff]." (Dkt. No. 40–2 ¶ 5.) Defendant Compo "reasonably believed that the degree of force was reasonably necessary ... The force was applied in a good faith effort to maintain and restore discipline, to prevent injury and in self defense. At no time did any of the officers ... use excessive force." (Dkt. No. 40–2 ¶ 6.)

As Plaintiff admits, Defendant Compo's testimony raises a triable issue of fact regarding whether Defendants violated Plaintiff's Eighth Amendment rights. (Dkt. No. 44 at 3) ("The affidavits of the Plaintiff and the Defendants are squarely contradictory as to what force was used, when it was used, and why it was used ... the factual dispute is ... material ... For the foregoing reasons the defendants' motion for summary judgment should be denied [2] .") Therefore, I recommend that the Court deny Plaintiff's motion for summary judgment.

**ACCORDINGLY,** it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 30) be ***DENIED.***

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3164753

---

**Footnotes**

1    Page numbers refer to the page numbers assigned by the Court's electronic filing system.

2    Defendants have not moved for summary judgment.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.